UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MASSACHUSETTS

KEITH NIEMIC,
                PLAINTIFF

V.

MICHAEL MALONEY, PETER ALLEN, DAVID NOLAN,
PAT MULVEY, DAVID BRIEN, PAUL MURPHY, GARY
HEBDA, ANN MARIE AUCOIN, DICK SOLOMON,
BEVERLY VEGLAS, SUSAN MARTIN, STAN GALAS,
KRISTIE LADOUCEUR, ARTHUR BREWER, JUNE
BINNEY, JEFF SHOREY, KARA ERDODY, DONNA
FITZGERALD, DONALD KERN, GURVINDER JAISWAL,

        DEFENDANTS.

CIVIL ACTION NO.

COMPLAINT

FILED IN DISTRICT COURT OFFICE
'04 JUN 29 A 11:45

JURY TRIAL DEMANDED

Preliminary Statement

    This is a civil rights action filed by Keith Niemic, a state prisoner, for damages, declaratory, and injunctive relief under 42 U.S.C. §1983 alleging denial of due process and medical care in violation of the first, fourth, sixth, eighth, and fourteenth Amendments to the constitution; unwarranted invasion of privacy in violation of the fourteenth Amendment and 5 U.S.C. §552 (b)(6), denial plaintiff his constitutional right to access court in violation of the due process clause, and equal protection clause of the fourteenth Amendment, the first Amendment, and the privileges and immunities clause of Article IV of the constitution, denial of plaintiff his right to the United States Mail, in violation of the first and fourteenth Amendments to the constitution and 18 USC §1708, the denial of due

Process and equal protection under the fourteenth Amendment in disciplinary proceeding, resulting in illegal and excessive fines in violation of the eighth Amendment, and fourteenth Amendment to the constitution. The plaintiff does allege Retaliation and conspiracy to deny him his constitutional rights.

The plaintiff also alleges the torts of assault and battery and negligence, as well as "force, or threat of force" intimidation, or coercion, and the privacy Act.

Jurisdiction

1. The court has jurisdiction over the plaintiff's claims of federal constitutional rights under 28 U.S.C. § 1331 (a)

2. The court has supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. §1367

Parties

3. Plaintiff, Keith Niemic is a natural person incarcerated at mci-cedar Junction walpole (Hereinafter "walpole") all events described in this complaint did occur in walpole, where plaintiff was incarcerated.

4. Defendant, Michael Maloney is a natural person who was formerly employed as the Commissioner of Corrections in Boston, Massachusetts. He is responsible for promulgating and maintaining statewide departmental regulations regarding the right and privileges of all Massachusetts prisoners pursuant to M.G.L.c. 124 §1 et seq. He is sued in both official and individual capacities.

5. Defendant, Peter Allen is a natural person who was formerly employed as Superintendent of walpole facility in Massachusetts. He is responsible for implementation of all applicable laws and regulations of walpole. He is sued in both official and individual capacities

6. Defendant, David Nolan is a natural person who is employed by the Department of Correction (Hereinafter "D.O.C.") a superintendent of walpole facility. He is responsible for implementation of all applicable laws and regulations of walpole, pursuant to MGL c.124 §1. He is sued in both his official and individual capacities.

7. Defendant, Pat Mulvey is a natural person who is employed at walpole by the D.O.C. as an inner Perimeter Security officer (Hereinafter "IPS") He is responsible for security and investigations in the facility pursuant to 103 DOC 518 (unpromulgated regulations.) He is sued in both his official and individual capacities

8. Defendant, David Brien is a natural person who is employed at walpole as an IPS officer. He is responsible for security and investigations in the facility pursuant to 103 DOC 518 (unpromulgated regulations) He is sued in both his official and individual capacities.

9. Defendant, Paul Murphy is a natural person who is employed by the D.O.C., who was formerly an IPS officer while at walpole, His responsibility was for security and investigations in the facility pursuant to 103 DOC 518 (unpromulgated regulations) he was an IPS officer during the time of the allegations raised in this complaint. He is being sued in both his official and individual capacities

10. Defendant, Gary Hebda is a natural person who is employed by the D.O.C. at walpole, as a mail room officer. He was a former IPS officer who, began working in the mail room. He is responsible for the handling and distribution of incoming MAIL, Legal mail, after opening and reading to check for contraband, and also for all outgoing U.S. mail, pursuant to M.G.L. c.127 §87; and 103 CMR 481; He is being sued in both his official and individual capacities.

11. The Defendant, Ann Marie AuCoin is a natural person who is employed by the D.O.C. at walpole facility as an institutional Grievance Coordinator. She is responsible for speedy, fair, and impartial resolution of inmate complaints upon interview of the inmate, and the staff person of which the problem occured, pursuant to MGLc. 127§§ 38E-38G, and 103 CMR 491. She is being sued in both her official and individual capacities.

12. Defendant Dick Soloman is a natural person employed by the D.O.C. at the walpole facility as a recreation officer in the facility Library. He is responsible for providing inmates with adequate access to court Lewis v. Casey, 518 U.S. 343 (1998) with material needed to access court pursuant to M.G.L.c. 124 81. and 103 CMR 478, He is being sued in both official and individual capacities.

13. Defendant Beverly Veglas is a natural person employed by the D.O.C. at walpole. as the Library, Law Library clerk. She is responsible for providing inmates with meaningful access to court by making available the materials necessary pursuant to M.G.L.c. 124 81, 103 CMR 478. and Stone v. Boone, No. 73-1083-T (D. MASS. oct. 1974) (Tauro, J.). She is being sued in both her official and individual capacities.

14. Defendant Susan Martin is Director of Health Services for the D.O.C. She is responsible for overseeing in concert with contracted health care providers the provision of Health care services, and proper medical records pursuant to MGLc. 124 81; 103 DOC 610; 103 DOC 630; 103 DOC 607; and 105 CMR 205.00; for all of massachusetts prisoners. She is a natural person and being sued in both her official and individual capacities

4

15. Defendant, Kristie LaDouceur is a natural person employed by the DOC as the Department Grievance Coordinator. She is responsible for reviewing all grievance appeals denied at the superintendents level, pursuant to M.G.L. c. 124 § 1; c. 127 § 38E; and 103 CMR 491. She is being sued in both her official and individual capacities.

16. Defendant Stan Galas, is a natural person employed by the DOC through U-Mass correctional Health (hereinafter "U-mass") at Walpole as a Health Service Administrator. He is responsible for managing the Health services to prisoners through the contracted health care providers pursuant to 103 DOC 610; 103 DOC 630. He is being sued in both his official and individual capacities.

17. Defendant, Arthur Brewer, is a natural person employed by U-mass as the program medical Director. He is responsible for overseeing the provision of contracted healthcare for U-mass through the DOC facilities. pursuant to M.G.L. c. 124 § 1; and 103 DOC 610. He is being sued in both his official and individual capacities.

18. Defendant June Binney, is a natural person employed by U-mass as a Program Director. She is responsible for the provision of contracted healthcare for U-mass through the DOC. pursuant to M.G.L. c. 124 § 1; and 103 DOC 610. She is being sued in both her official and individual capacities.

19. Defendant Gurvinder Jaiswal is an M.D. for U-mass, employed at DOC facilities. She is responsible for providing adequate medical treatment to all prisoners c. 124 § 1; 103 DOC 630; 103 DOC 610. This Dr. was employed at Walpole during the time of the allegations raised in this complaint. She is sued in both her official and individual capacities.

20. Defendant, Jeff Shorey is a natural person employed by the DOC through U-mass. He is responsible for providing care to sick prisoners pursuant to M.G.L.c. 124 §1; 103 DOC 630; and 103 DOC 610. He is being sued in both his official and individual capacities.

21. Defendant, Kara Erdody is a natural person employed by u-mass who was formerly employed at walpole for the medical treatment of its prisoners she was at walpole during the time of the allegations raised in this complaint. She was a nurse practitioner, and was responsible for providing adequate medical treatment to all prisoners. pursuant to M.G.L. c. 124 §1; 103 DOC 630; and 103 DOC 610. She is being sued in both her official and individual capacities.

22 Defendant, Donna fitzgerald is a natural person employed by the DOC through U-mass. she is responsible for providing care to sick prisoners pursuant to M.G.L.c. 124 §1; 103 DOC 630; and 103 DOC 610. she is being sued in both her official and individual capacities

23. Defendant, Donald Kern, is a natural person and is a Doctor (MD) for U-mass. employed at walpole. He is responsible for providing adequate medical treatment to all prisoners pursuant to M.G.L. c. 124 §1; 103 DOC 630; and 103 DOC 610. He is being sued in both his official and individual capacities.

Facts

24. Plaintiff who has complained of liver pain, and who has requested medical treatment for it since 1997, was finally started on interferon Liver treatment on December 31, 2001 which was prescribed by specialists at Lemuel Shattuck Hospital to take for one year to treat Hepatitis C.

25.   Prior to the interferon treatment, which consisted of taking Ribavarin daily and injections of interferon three times a week causing serious side effects of flue like symptoms, plaintiff has had a chronic migraine condition which pain has caused blurry vision, dizziness, nausea, vomiting, resulting in his inability to take part in daily recreation activities, and has further denied him from enjoying daily showers, reading, three meals a day, causing weight loss.

26.   On November 23, 2001 Dr. Nicholas Rencricca did prescribe a medicine for plaintiffs migraine that was intervened and denied to him by non doctor staff, resulting in extreme emotional Distress, and untreated pain.

27.   On November 25, 2001 Dr. Kasim Gouda did prescribe a medicine for plaintiffs interrupted prescription above at # 26, in which was also intervened and denied to plaintiff by non doctor staff, resulting in further emotional Distress and pain.

28.   Because of the ineffective treatment of various medicine, in addition to the interruption of Doctor's treatment, plaintiff made many requests for diagnosis and treatment with a Neurologist for migraines that were denied by the former Health care providers resulting in various filed complaints by plaintiff.

29.   In May of 2002 after approximately five months of interferon treatment and constant migraine headaches Dr. Khalid Mohamed did prescribe a medicine for plaintiffs migraines, which was intervened and denied to plaintiff by non doctor staff, resulting in extreme emotional Distress, and extreme pain by the combination of migraine and the interferon and Ribavarin side effects, resulting in various filed complaints by the plaintiff to Defendant susan martin

30. Plaintiff did see defendant Dr. Jaiswal on: May 24, 02; May 28, 02; on May 31, 02; and June 3, 02. he did explain that he cannot endure the the side effects of interferon Liver treatment with ineffective migraine treatment; do to the extreme pain of both, combined.

31. Defendant Jaiswal did act with deliberate indifference to plaintiffs serious medical need by denying him treatment with a neurologist, and who further prescribed an arbitrary treatment for migraines that does harm the Liver

32. U-MASS, and DOC. defendants have improperly prescribed plaintiff medications for migraine management that were previously prescribed and informed by plaintiff of its ineffectiveness, or informed of its cause of secondary harmful effect.

33. In June of 2002 plaintiff was forced to give up his Liver treatment do to the improper migraine management combined with interferon side effects, causing plaintiff extreme emotional Distress, because he was showing positive results from such treatment.

34. Plaintiff did appeal the deliberate indifference of his serious medical needs to defendants Susan Martin, June Binney, Michael Maloney, and which were also addressed to defendant Arthur Brewer, all of whom did acquiece in such treatment by their failure to correct the improper and capricious medical treatment being rendered above.

35. Plaintiff was allowed to recieve treatment with a neurologist on April 4, 2003 who did try several different forms of prescribed treatment.

36. On April 15, 2003, approximately, ten days without plaintiffs reciept of the prescribed treatment from the Neurologist, defendant Stan Galas acting as Nurse Practitioner did prescribe to plaintiff Axert in the place of Midrin ordered by the Neurologist on April 4, 2003 in addition to Neurologists order for verapamil

37. On April 30, 2003 plaintiff was seen by defendant Nurse practitioner Kara Erdody in response to plaintiffs "sick call request slip", plaintiff stated that he feels suicidal because the pain is so bad, and improperly treated, this defendant did expressly question plaintiffs veracity, implying contrivance and refused to treat plaintiff, this was witnessed by a D.O.C. officer.

38. On May 8, 2003 plaintiff was seen by defendant Dr. Jaiswal in response to plaintiffs sick call request slip in which he addressed to the defendant that he has been having shortness of breath, and chest pain, stomache pain, from the Axert, medication, and verapamil from defendant Galas on 4-5-03

39. On June 6, 2003 plaintiff was prescribed a new effective treatment from the Neurologist, and this Doctor did leave written record questioning the cause of migraine as Anxiety related.

40. Plaintiff is also a mental Health patient and did file a civil action in state court in 98 pro'se where DOC and former contracted Health care providers correctional Medical Services (cms) did deny plaintiff the evaluation and treatment of a psychiatrist for his first two years in state prison at walpole.

41. On July 10, 2003 plaintiff did submit a letter, and sick call request slip to defendant Dr. Jaiswal requesting medical treatment for H pylori stomache

condition, and request to re-start liver treatment.

42.  U-MASS lab results did show that on July 9, 2003 plaintiff was positive for H pylori infection, and that his viral load for Hepatitis was up to 101879 which is unhealthy.

43.  Plaintiff has read study's and information regarding Liver Disease and Hepatitis-C, and quick effective treatment is the preferred means of hoping to eradicate such disease.

44.  Plaintiff requested Dr. Jaiswal on July 7, 2003 to allow him to begin pegylate treatment for Hepatitis C, so that he could resume the previously prescribed Hepatitis treatment that was interrupted by negligence in treating his migraines.

45.  Defendant Jaiswal did state that there is a six month waiting list for pegylate treatment and that she will put plaintiffs name on the list, and it is expensive treatment.

46.  On July 16, 2003 plaintiff was seen by defendant NP Kara Erdody for H-pylori, and he requested to begin Hepatitis pegylated treatment because of pains in his Liver, this defendant told him there was a six month waiting list, and that it is expensive treatment.

47.  Approximately on July 17, 2003 plaintiff did notify U-MASS, and DOC defendants, June Binney, Susan Martin, that he will be forced to file a tort claim for their failure to release copies of his medical records to him.

48.  Plaintiff has filed several appeals to the supervisor of public Records by both the contracted Health Care, and DOC constant refusal to give plaintiff copies of his requested medical records

10

49. Approximately on September 8, 2003 an inmate was observed unconscious in his cell in the Department Segregation Unit ("DSU") 10 Block and recieved medical treatment for apparent overdose of drugs.

50. Approximately on September 8, 2003 IPS defendants Pat Mulvey, David Brien and Paul Murphy did extract all the inmates including plaintiff, out of their segregation cells in 10 Block and placed in the yard. So these defendants could search all of the cells,

51. Approximately in 2001 plaintiff filed for, criminal show cause hearings, and civil complaint against these three IPS defendants, (and others not addressed herein) in state court for allegedly attempted extortion, threats, and trying to make plaintiff become an informant. Such action is still pending in court. Keith Niemic v. Peter Pepe et al, Norfolk, SS. CIV. AC. NO. 0392

52. While the IPS defendants were returning all the inmates to their cells they did escort plaintiff to the "new mans section" and by threats, coercion, and intimidation ordered him to furnish a urine specimen otherwise he would be placed in an isolation cell upstairs in the HSU ward.

53. Plaintiff did submit a urine specimen upon fear of being placed into isolation, and further threats of retaliation, coercion and intimidation.

54. These three IPS defendants did request u-mass defendant Jeff shorey to reveal to them the contents of plaintiff's medical record which defendant shorey had done over plaintiffs objection. The same procedure was done with defendant Kara Erdody over plaintiffs objection.

11

55. On this day September 8, 2003 the three IPS defendants ordered defendant Jeff shorey to forcefully diagnose plaintiff, the evaluation of which were soley for informational purposes, not theraputic as plaintiff was in decent health and in sound mind.

56. On September 8, 2003 defendant Jeff shorey did physically grab the plaintiff and forced plaintiff to medical treatment above and over plaintiffs clear audible objections and refusal of treatment, causing extreme emotional distress

57. Defendant Jeff shorey upon completeing his forced evaluation of plaintiff did then reveal his findings to the IPS defendants above and over plaintiffs objections.

58. IPS defendants, Mulvey, Brien, and Murphy, did then bring plaintiff to see defendant Nurse practitioner Kara Erdody on September 8, 2003 who did also force plaintiff to medical treatment above and over plaintiffs clear audible objections

59. Defendant Kara Erdody upon completeing her forced evaluation of plaintiff did reveal her findings for informational purposes only, above and over plaintiffs objections to the IPS.

60. At all times on September 8, 2003 plaintiff never sought nor requested medical treatment.

61. At all times on September 8, 2003 plaintiff was not in need of life saving treatment

62. At all times on September 8, 2003 plaintiff was in sound mind and body being fully competent negating the need for substituted judgment by medical staff, where there was no need for life saving treatment.

63. On September 8, 2003 upon completion of plaintiff's forced evaluation the IPS defendants did upon threat of force, and threat of harm, intimidate and coerce plaintiff and ordered him to pose a certain way so that defendant Pat Mulvey could photograph the plaintiff's body, causing extreme emotional Distress, and Anxiety.

64. At no time on September 8, 2003 was plaintiff given notice of his right to informed consent, nor were the actions of the defendants concerning the elligibility for public assistance programs.

65. The three IPS defendants did reveal to U-Mass defendants that the plaintiff allegedly rendered a dirty urine in which the U-Mass defendants did write down and record within plaintiff's medical record above and over his objections

66. The three IPS defendants did not disclose the results of plaintiffs urinalyses to him in seclusion, nor did they notify plaintiff about the alleged results beforehand, and collected plaintiffs medical info from Shoney & Erdody over plaintiffs objection.

67. The three IPS defendants did then lock plaintiff in isolation while laughing and joking, causing plaintiff to be locked in an empty cell with only the clothes he had on, for several days with no Bible, tooth brush or toothpaste no phone access, no paper, envelopes, or stamps, which caused him to miss a pre scheduled visit, causing plaintiff severe Anxiety, and extreme emotional duress, and fearful thoughts of suicide because he could not notify any superior prison staff, the court or his family to tell what the defendants were doing to him.

68. On September 18, 2003 plaintiff was escorted over to the Departmental Disciplinary unit (Hereinafter "DDU") to begin serving a one year sentence that was the result of a disciplinary report resulting from his illegal placement in DSU 10 Block Segregation on March 5, 2003 for complaining to D.O.C. Authority that he was assaulted by a guard, who is also a defendant in the civil matter addressed at II 51.

69. On September 22, 2003 plaintiff was seen by defendant Dr. Jaiswal, in response to his sick call request complaining about burning urination, and lesions next to the groin area, and complaints of continuous pain in the liver, requesting to continue (restart) liver treatment.

70. On September 22, 2003 defendant jaiswal told the plaintiff that he cannot begin liver treatment because he gave a dirty urine

71. On September 22, 2003 plaintiff did file two medical grievances with Health Administrator defendant Stan Galas who later responded by stating that the Regional Medical Director and the Shattuck GI department decided to delay Liver treatment for an alleged dirty urine.

72. Defendant Stan Galas did further state that the IPS defendants can have the right to investigate any medical information it wishes, citing 103 DOC 518, and did also state that HSU staff dont need permission to diagnose or examine inmates, which caused plaintiff extreme emotional distress

73. Defendant Stan Galas found no wrong in U-Mass defendants physical battery upon plaintiff, thus denying plaintiffs grievance

74.  At No time did the u-mass defendants provide plaintiff with any Kind of quasi judicial hearing to determine if in fact that the plaintiff was guilty, before they deprived him of Substantial Liver treatment.

75.  On September 15, 2003 plaintiff filed a grievance regarding the actions by the IPS defendants on September 8, 2003 that was denied and was denied upon further Appeal to defendant Peter Allen.

76.  The IPS defendants David Brien did write a disciplinary Report on the Plaintiff for submitting an alleged dirty urine, and plaintiff was notified that he will have to pay $179.00 for future urine tests.

77.  After plaintiffs move to the DDU on September 18, 2003, plaintiff was forced to go without his Legal material and medical records, and all of his personal papers, and records for a lengthy amount of time, until receipt of these materials.

78.  Plaintiff made Legal material requests to defendants Dick Soloman, and Beverly veglas in the facilities Main Library, on September 22, 2003 in which both defendants failed to send plaintiff the requested materials within the 48 hour time limit set forth in the DDU orientation manual.

79.  Plaintiff in preparation of trying to preserve his Legal rights did request the last names of u-mass defendants Nurse Jeff, and Nurse practitioner Kara from Health Services Administrator Defendant Stan Galas (Hereinafter "HSA") who refused to furnish plaintiff with such information

80.    Plaintiff did again submit a legal material request to Law Library defendants Dick Solomon, and Beverly Veglas Herein after ("Library def's") on September 26, 2003 requesting reciept of his previously requested legal material.

81.    On October 1, 2003 and on Oct. 15, 2003 plaintiff was seen by U-Mass defendant Kara Erdody, in response to plaintiffs various sick call slips in which plaintiff complained of Liver and abdominal pain and drastic loss of weight of 20 Lbs in one month, and requested proper medical treatment at which this defendant did expressly accuse the plaintiff of seeking extra food in his dietary supplement request, and further denied plaintiff any medical treatment for his Liver causing plaintiff extreme emotional duress

82.    Plaintiff did send three U-Mass clinical complaints to HSA defendant Stan Galas dated 10-12-03; 10-15-03; and 10-23-03, each addressing the extreme pain that plaintiff is suffering in the DDU do. to the deliberate indifference to his serious medical needs in which defendant Galas responded on october 22, 2003 ignoring various medical complaints with severe pain, and further denied plaintiff a dietary supplement declaring there was no weight loss.

83.    Plaintiff was diagnosed in September 2003, of having two swollen lymph-nodes that were on each side of the groin area and relatively small.

84.    As time progressed plaintiff has continuously complained of pain in his lower abdomen and groin area with constant draining of his penis, and plaintiff has literally begged and pleaded to be given adequate tests, and treatment for eight months and U-Mass, as well as D.O.C. defendants denied him proper care

causing plaintiff to expressly state that the pain physically and emotionally are too much to bear, and that he is going to lose his mind.

85.   Defendant Dr. Kern in response to plaintiffs various medical grievances did arbitrary diagnose plaintiff on May 17, 2004 as having only one innocuous inguinal cyst, when in fact plaintiff does have several swollen lymph nodes/Lesions. noted by another Dr.

86.  On October 15, 2003 plaintiff did send a C.o.r.i. violation complaint to defendant Peter Allen

87.  Plaintiff was not being given adequate access to necessary legal material to prepare for his ("dirty urine D-Report" Hearing) on October 21, 2003, so plaintiff was forced  to submit legal material requests to the Boston college, where the Law Library defendants did disregard the time limits in fulfilling plaintiffs DDU Requests for Legal material

88  On October 21, 2003 plaintiff did attend his Disciplinary Hearing for D-Report #22831 ("Dirty urine allegedly")

89.  At plaintiffs D-Board hearing were several guards including defendant Pat Mulvey of the IPS who were not requested to be present by the plaintiff, all of which took place in the DDU "legal visit room" with a fixed video camera on the wall.

90.  At the D-Board hearing plaintiff was denied his previously requested cassette tape recording of the hearing, pursuant to the 103 CMR 430

91. After defendant IPS officer Brien finished his opening and direct testimony before the D-Board officers, and several others, plaintiff began questioning this witness who began contradicting himself and immediately defendant Pat Mulvey interrupted plaintiffs cross questioning (exam) of this witness, and pulled defendant Brien out of the D-Board hearing thus abruptly ending the D-Board proceeding over plaintiffs objection to Mulvey's actions.

92. Before the D-Board Hearing was concluded, the D-Hearing officer inadvertently expressed that plaintiff will have to pay a $179.00 restitution fee.

93. The plaintiff was presented with only the confirmation urine test at his D-Board hearing, at no time did defendants present any record evidence of the initial requisite urine test pursuant to the defendants own regulations 103 Doc 525.

94. Plaintiff was questioning defendant David Brien regarding the absense of the required initial urine test results, when defendant Pat Mulvey interrupted and exited the hearing with defendant Brien.

95. Plaintiff was found guilty and an illegal fine of $358.00 was imposed upon the plaintiff under the guise of restitution, in addition to having six months loss of privileges imposed, regarding loss of visits, telephone, television, Radio, and commisary.

96. On October 26, 2003 plaintiff did file an appeal of the D-Boards finding to defendant Peter Allen superintendent,

97.    On October 27, 2003 plaintiff did file a grievance with the institutional Grievance Coordinator regarding the excessive, illegally imposed fine that was arbitrarily given to plaintiff, and was arbitrarily denied by this defendant.

98.    The D.O.C. defendants did knowingly conspire to deprive the plaintiff of his protected rights where his personal account was frozen before the superintendent defendant Peter Allen ruled on plaintiffs appeal of the D-Board findings

99.    On October 31, 2003 plaintiff did appeal the denial of his grievance for the excessive, and illegally imposed fine under the guise of restitution.

100.   On November 6, 2003 the plaintiff did file a sworn affidavit grievance Appeal to U-Mass defendant Arthur Brewer regarding the events that took place on September 8, 2003, and the subsequent health care deprivations that plaintiff has endured, in which this defendant gave an arbitrarily vague response two months later causing plaintiff undo pain and suffering

101.   Plaintiff did politely write notices to Library defendants on November 2003, requesting to allow plaintiff equal access to Law Library materials to that of the inmates in population

102.   On November 2003 the superior court ordered plaintiffs complaint dismissed because of his inability to properly and timely access court

103.   On November 9, 2003 plaintiff did again address the long delay in his being able to recieve legal materials in a request to the defendant Beverly Veglas

104.  On November 12, 2003 the Law Library defendants did refuse to furnish plaintiff with xerox copies of pertinent sections of Mass Practice Series, thus denying plaintiff the ability to prepare and file a civil action in Superior court in the nature of Certiorari regarding his D-Board hearing, and grievances for the imposed excessive fines, and restitution.

105.  The DDU has a very small book cart which holds an assorted amount of law books, any and all materials necessary, to adequately access the court, are to be provided by the institutions law library, and according to the DDU orientation manual the law library are to fulfill legal material requests within 48 hours.

106.  Plaintiff did write several request to staff notices and submitted them to the law library defendants in November 2003 seeking adequate access, and equal treatment from the Law Library defendants, at which these defendants would not respond.

107.  On November 13, 2003 plaintiff did file a grievance with the institutional Grievance Coordinator (Hereinafter "IGC") regarding the Law Library defendants wanton and capricious behavior in denying plaintiff access to necessary materials to access court.

108.  On November 14, 2003 Library defendant Dick Solomon did write to the plaintiff stating that the Department of Correction Legal Department confirmed that the Law Library does not have to submit any MASS Practice copies or otherwise to the plaintiff, and he did refer plaintiff to tort action

M.G.L. c. 258, instead, thus causing plaintiff confusion and anxiety by denying him to pursue the proper legal action that best benefits him.

109.  On November 18, 2003 plaintiff's Appeal to the superintendent defendant Peter Allen regarding the "alleged dirty urine" D-Board hearing was denied.

110.  On November 18, 2003 plaintiff did send a complaint to the Massachusetts criminal History Board regarding the actions of the u-mass and D.O.C. defendants on September 8, 2003, at which plaintiff never did recieve a response.

111.  Plaintiff has endured missing incoming, and outgoing u.S. mails for several years.

112.  DOC. defendant Gary Hebda has previously refused to accept u.S. mail addressed to the plaintiff that was from a Massachusetts public agency relating to legal matters, and health care issues.

113.  DOC defendant Gary Hebda has denied plaintiff from sending u.S. mail to the Secretary of the commonwealth while in DDU

114.  Since plaintiff's placement in DDU on September 18, 2003 he has been recieving mail with post marks that are up to a week old, and has not recieved mail that was sent to him from various people through the u.S. post office

115.  On October 16, 2003 plaintiff did write the defendant Superintendant Peter Allen requesting to recieve a copy of mail monitor signed by him, who never responded to plaintiffs request

21

116. Since September 18, 2003 plaintiff has written to various state agencies addressing the denial of proper health care, and the denial of necessary legal materials to petition the court, many of which plaintiff never recieved a response from.

117. On November 19th and the 20th of 2003 plaintiff did send sworn affidavits to Deputy of operations Steve Silva, and defendant superintendent Peter Allen regarding Law Library defendants constant refusal to give plaintiff adequate access to necessary legal material

118. On November 20, 2003 plaintiff being in great abdominal/Liver pain and further loss of weight, sent an affidavit(sworn) to defendant Stan Galas HSA, in the form of a grievance complaint, requesting a dietary supplement asserting that other's are noticing his weight loss, and that such supplement would be adequate in helping him maintain his health, and further sought treatment for his liver.

119. On November 20, 2003 plaintiff was evaluated by a podiatrest for the numbness in both feet and one leg who did recognize neuropathy on the plaintiff, and upon a discussion with plaintiff the Dr. assured him that he will refer plaintiff to a Dr. to look into his liver condition,.

120. On December 1, 2003 after not hearing a response from HSA defendant Galas, plaintiff did send a grievance to him addressing the cruel and unusual punishment that he is enduring by the u-mass defendants regarding his health care, by failing to treat him

121. On December 8, 2003 HSA defendant Stan Galas did respond to plaintiffs affidavit, grievance addressed herein at ¶118, who did disregard plaintiffs liver pain and loss of weight, stating that plaintiff could address such complaints to the G.I clinic.

122. On December 17, 2003 plaintiff was brought to the GI clinic at Lemuel shattuck hospital in which the evaluating clinician informed the plaintiff after addressing his several complaints, that the GI clinic are only concerned with, and on notice for, plaintiffs stomache problems, and did order an endoscopy be performed.

123. Plaintiff is a mental health patient and recieves medication three times a day.

124. Each time plaintiff is transported outside of the prison, the U-MASS and D.O.C. defendants continuously deny him reciept of his noontime medications through the transportation officers pursuant to their own regulations, see also M.G.L.c. 94C § 7(d)(3), thus causing plaintiff extreme emotional duress and anxiety by arbitrary grievance responses.

125. Approximately on December 5, 2003 defendant Arthur Brewer U-MASS program director did respond to plaintiffs grievance Appeal addressed herein at ¶100 by arbitrarily expressing his unconcern in a one line sentence. causing plaintiff to experience great despair, and contemplation of suicide.

126. Do to continuous problems with missing incoming and outgoing mail, the plaintiff did again submit a request to staff form to defendant Superintendent Peter Allen on December 8, 2003 requesting notice if there is an authorized mail monitor on plaintiffs mail pursuant to 103 CMR 481. in which this defendant never responded to plaintiff causing plaintiff extreme mental anguish.

127. During December 2003, and the first week of January 2004, the Law Library defendants did continue to delay returning plaintiffs legal material requests, and did further return incomplete legal material to plaintiff deliberately in response to plaintiff's complaints, causing him unecessary emotional pain and anguish.

128. Because the Law Library defendants were acting with deliberate indifference to plaintiffs' constitutional rights while isolated in the DDU segregation, plaintiff was forced to make legal material requests from various law school libraries.

129. Plaintiff is serving an illegal and erroneous life sentence in which his direct Appeal was affirmed do to ineffective assistance of counsel.

130. Plaintiff is trying to pursue post-conviction relief, where he had recently, while in the DDU, learned of newly discovered evidence from his case and he cannot properly petition the court with such novel matters which illustrate a prima facie showing of a substantial miscarriage of justice because the Law Library, and DOC defendants wantonly with callous disregard of his constitutional rights deny him necessary legal material, or proper legal assistance, to access court.

131. Plaintiff is also trying to maintain several other civil matters in the superior court while pro'se, which are also civil right violation cases, and some of the defendants addressed in those cases, are also defendants listed herein.

132. On March 8, 2001 a criminal show cause hearing was held at wrentham District Court at 11:15 AM against defendant IPS Pat Mulvey, and another, in which defendant Pat Mulvey did testify under oath before the magistrate that the IPS defendants did open, and read plaintiff's outgoing U.S. mail and further stamped such envelope alleging that the "contents may not have been evaluated..."

133. Plaintiff did write a letter describing the seriousness of his Liver condition, peripheral Neuropathy, fasting Hypoglycemia, and abdominal pain, and nervousness, addressed to U-MASS defendant Arthur Brewer and sent the letter to defendant Brewer on December 8, 2003 requesting to be allowed to continue his interrupted liver treatment.

134. On January 23, 2004 defendant Arthur Brewer did respond to plaintiff's request for treatment letter above at #133, by denying him treatment for twelve months in which he based his decision on plaintiff's "alleged dirty urine" incident, on 9-8-03 where plaintiff was not given any kind of hearing by U-mass defendants to factually determine his guilt or innocence thus causing plaintiff extreme emotional duress, and suffering of great physical discomfort

135. On December 14, 2003 plaintiff did file a medical grievance Appeal to DOC defendant Sue Martin Division of Health services, from the denial of HSA defendant Stan Galas from properly entertaining the complained of events on September 8, 2003

136. Approximately two months later defendant Sue Martin did respond to plaintiff's grievance Appeal on February 25, 2004 by arbitrarily denying it, causing plaintiff extreme Anxiety.

25

137.    In December 2003 plaintiff filed multible sick call request slips requesting treatment for Migraine headaches, swollen Lymph nodes, burning urination, pains in groin area.

138.    The U-Mass defendants continuously delay examining plaintiff upon reciept of his sick call requests contrary to their own regulations 103 DOC 630.

139.    The plaintiff was examined by Dr. Kern the defendant on December 31, 2003 and this defendant did act with cruel and unusual treatment to plaintiff by deliberately falsifying medical findings and recording such libel in plaintiffs medical chart, and he did Knowingly with intent to cause harm ignore plaintiffs complaints of pain in his liver, and in his groin declaring that plaintiff "doesnt Know anything".

140.    Plaintiff did suffer extreme Emotional distress and physical pain do to defendant Kern's express deliberate indifference,

141.    Plaintiff did again file several sick call request slips, subsequent to defendant Kern's refusal to treat plaintiff on December 31, 2003, Plaintiff again complained of migrain and Liver pain, in addition to Lymph nodes, also requesting blood tests be taken, in which prison Guard Cahil was bringing other inmates to see Dr. Kern and upon plaintiffs request to be seen, cahil responded that plaintiff had "pissed off" Dr. Kern because he refused to see plaintiff

142.    Plaintiff did file complaints with the Executive office of Health and Human Services and to HSA Defendant Stan Galas regarding the deliberate indifference to his healthcare needs.

143. Plaintiff is an ordained minister, who has studied spiritual philosophy for several years and did purchase a congregation certificate through his church, to allow him to instruct other inmates with an interest in God, or spiritual studies.

144. Plaintiffs church did several times mail to plaintiff his purchased congregation certificate, that were not recieved by the plaintiff, nor were they returned to the church previously or at any time.

145. Plaintiff's U.S. mail was deliberately being withheld from him for harassment purposes, and knowingly mishandled by Gary Hebda and D.O.C. defendants.

146. D.O.C. defendant Gary Hebda did knowingly mishandle, and or steal plaintiffs United States postage, that was addressed to him, causing plaintiff to suffer monetary loss, and denial of plaintiffs right to recieve u.s. mails under the U.S. Constitution, Mass. General Laws, and promulgated regulations of the D.O.C.

147. Plaintiff did file grievance, complaints, to defendant David Nolan, and to the IGC defendant Ann Marie Aucoin whom Arbitrarily denied to meet with the plaintiff, and concluded that no mail was being withheld from plaintiff.

148. Defendant superintendent David Nolan did arbitrarily deny plaintiffs grievance Appeal regarding missing U.S. Mail, causing extreme Anxiety and hardship on plaintiff.

149. Plaintiff was forced to send all of his substantial outgoing mail by certified mail to prevent such mails from being stolen.

150.  D.O.C. defendant Gary Hebda did Knowingly harass plaintiff with the intent to cause loss, and harm, by returning to sender, U.S. mail that was addressed to the plaintiff, and by his actions continuously did harm plaintiff

151.  Plaintiff has continuously endured stress and anxiety by the U-mass nurses who have previously given him crushed medication, that was the cause of severe chest pain, and has repeatedly addressed this negligence to U Mass. HSA defendant Stan Galas by repeated negligence.

152.  On January 22, 2004, plaintiff did file a sworn affidavit complaint with the HSA defendant Stan Galas, stating that he has filed several sick call request slips, since January 1, 2004 regarding painful migraines, and particularly stated the pain he is suffering from the Lesions in the groin area expressly stressing his fear of tumors - cancer, in which he again requested to be evaluated by a specialist who has Knowlege in such field and also requested unbiased immediate treatment for his headaches, addressing timeliness pursuant to 103 DOC 630

153.  Defendant Stan Galas has ignored plaintiffs pain  : in several responses to plaintiffs complaints, and letters.

154.  Defendant Stan Galas upon reciept of plaintiffs January 22, 2004 Affidavit/complaint, did respond Knowingly with deliberate indifference to plaintiffs serious medical needs by putting off his seriously painful condition for another week. Causing plaintiff extreme mental anguish and suffering physical pain, resulting in his inability to eat or sleep properly. also in violation of their own regulations pursuant to 103 DOC 630

155. Plaintiff did again file a complaint to HSA defendant Stan Galas on January 28, 04 requesting to be examined for his painful suffering, that has gone approximately thirty days without treatment or examination do to the U-Mass defendants animosity towards the plaintiff for filing complaints.

156. On January 25, 2004 plaintiff did submit Legal material request and pro se motion to stay, seeking copies to send to the court and other (Mental Health care) defendants in a previous pending action via the DDU case worker who delivered such material to the Law Library.

157. On January 27, 2004 Law Library defendants did deliberately with-hold Legal material, including plaintiffs crafted motion which was done knowingly because plaintiff did assert time limits that he had to file such motion to avoid a summary Judgment ruling, when plaintiffs discovery had been incomplete, the Library defendants gave plaintiff only a portion of what he requested.

158. Plaintiff was unable to properly serve copies of his filings with the defendants in that matter, do to the deliberate and Malicious indifference of Law Library defendants, and plaintiff did clarify this fact in a sworn Affidavit/letter sent to defendants Attorney.

159. The plaintiff sent the Law Library defendants the same material addressed above at ¶157 to copy again so that he can also serve copies to the defense counsel.

160. Plaintiff did send several requests, for legal copies, and research material, to the Law Library during the first two weeks of February 2004 that were not completed.

161. Approximately on February 19, 2004 Law Library defendant Dick Solomon did knowingly, and maliciously write a fraudulent Disciplinary Report on the plaintiff to cause plaintiff to remain in the DDU longer than he is supposed to, and to further cause plaintiff to endure loss of privileges by such frivolous ticket.

162. Any inmate who recieves a Major Ticket (Disciplinary Report) while in the DDU has to serve the sanctions imposed by the Hearing officer, and also has to forfeit one month toward his DDU sentence, thus having to do an extra month, do to receipt of the ticket.

163. Plaintiff did file a grievance on defendant Dick Solomon on February 20, 2004 for his deliberate and wanton actions toward the plaintiff.

164. Defendant Dick Solomon did again maliciously write frivolous Disciplinary Reports in which were knowingly fraudulent against the plaintiff for helping two other inmates with their legal work,

165. Plaintiff did send several request to staff forms to both of the Law Library defendants asking politely for fair and equal treatment many of which were never responded to.

166. The Disciplinary officer upon investigation into the various D-Reports written by defendant Dick from Library, did recognize acquiecingly how frivolous they were and declined to pursue them, and were dismissed against plaintiff.

167. Approximately on February 25, 2004 the Law Library defendants did Knowingly with intent to delay, harass, intimidate and harm the plaintiff, sending plaintiffs completed Legal requests with material to the inmates that plaintiff did once help.

168. Approximatly on or about February 25, 2004 the Law Library defendants did Knowingly for the purpose of trying to prove truth to Dick Solomans deceptive D-Reports that were part of this contrivance did send plaintiff legal material requests submitted by the other two inmates plaintiff once helped.

169. Plaintiff did send a request to staff, to the Law Library defendants on April 1, 2004 requesting to be given his previously submitted Summary Judgment motion with copies, and further stated in particular that the 48 hour time limit has been up, and that the time limits for filing such motion are up.

170. Library defendant Beverly Veglas did respond to plaintiffs request above at #169. in a wantonly arbitrary manner that plaintiff will recieve his material within three to five working days, causing plaintiff extreme anxiety and fear of losing another case do to these two defendants deliberate indifference.

171. Library defendants did Knowingly, with intent to harm plaintiff, utilize semantics ostensibly, combined with the savy of Legal terminology to visciously

taunt, and torture the plaintiff, and conceal they're mens rea from other prison staff.

172. Plaintiff did file a legal material request to the Law Library defendants on April 27, 2004, seeking a copy of one Massachusetts statute, and the most recent shepard case on commonwealth v. St. Pierre 387 NE2d 1135 (1979)

173. The defendants Dick Surlomorri and Beverly veglas answered plaintiffs legal request above at ¶172 by knowingly with intent to harass, sending him the St. Pierre case.

174. The plaintiff on May 2, 2004 did again request the Law Library defendants to furnish plaintiff with the most recent shepard case on St. Pierre and also asked why the defendants are continuously denying him what he asks for.

175. The Library defendants did respond to plaintiffs May second request by alleging they enclosed the shepard cases, stating that they could not give him the shepard cites.

176. Both Library defendants did also enclose a second response to plaintiffs 5-2-04 request evidencing consciousness of liability by accusing him of accusing both Library defendants, and further alleging that plaintiffs Shepard case on St. Pierre was infact sent to him contrary to his assertion.

177. On the Library defendants second response, addressed above at ¶176, they did make an evidentiary admission revealing of both defendants ostensible semantics.

178.    The plaintiff while trying to conduct his research for post conviction relief did again for the third time request from Library defendants to please be given the most recent shepard case on commonwealth v. St. Pierre, 387 NE2d 1135(1979). This third request was made on May 4, 2004.

179.    On May 5, 2004 the library defendants did respond to plaintiffs shepard case request above at #178 by sending to him only the cite of the shepard case, and not the requested shepard case itself.

180.    Plaintiff did again for the fourth time in approximately ten days request the reciept of the most recent shepard case from the Library defendants. causing him extreme emotional distress in overwhelming fear of losing his ability to petition the court on plaintiffs illegal conviction.

181.    On May 24, 2004 plaintiff did submit a request to staff to Library defendant Beverly Veglas requesting to know why both defendants continuously act in wanton and capricious manner to plaintiff, and further stating that if they would only give to him the requested shepard cases, rather than only the shepard cites plaintiff would not have to file grievances, or sue defendants.

182.    On May 27, 2004 defendant Beverly Veglas did respond to plaintiffs request addressed above at #181 in ostensible semantics stating inter alia, that they will send plaintiff the shepard cited page from the shepard book only from which he can choose the cases from.

183.   On May 25, 2004 while suffering constant extreme emotional Distress by the deliberate indifference of both Library defendants, did submit a request to staff to defendant Beverly Veglas, plainly establishing his emotional duress, by pleading with this defendant to be able to recieve what legal material he asks for, rather than what is sent to him in an arbitrary manner.

184.   In plaintiffs May 25th request to staff he clearly stated that do to the defendants purposeful delays, and deliberate inconvenience that he cannot Appeal his conviction which will result in a court order if they do not stop they're nonsense.

185.  On May 27, 2004 defendant Beverly veglas did respond to plaintiffs May 25th request with ostensible semantics, and in doing so did make an evidentiary admission contradictory to her position previously held, and asser- ted, thus illuminating consciousness of liability, and this defendant did further by threat, and threat of force to intimidate, coerce, and to place fear in, the plain- tiff that if he does not stop complaining about the violations of his con- stitutional rights, he will be punished, thus causing him suicidal, and negative thoughts.

186.  On June 1, 2004 plaintiff did send a request to staff to defendant veglas, responding to her May 27th threat, by politely stating that if the Library defen- dants would simply send to plaintiff the most recent shepard case as requested, instead of a copy of the shepard book page he would have an idea of the law pertinent to what he was searching for, and further explained that because they send to him pages of shepard book cites, he has no available legal resources in DDU to help him understand, or be able to find the

distinction between the cases therein, or to the point of law being researched pertinent to plaintiffs goal, Plaintiff also in extreme respect and politeness, did request to recieve the several Legal material requests that have not been returned to plaintiff for days, and did specify time limits for court.

187. On June 3, 2004 defendant Dick Solomon did respond with deliberate indifference by stating "this matter has been previously addressed" causing plaintiff extreme Anxiety, and despair, with inability to sleep, or eat for several days

188. On June 8, 2004 plaintiff did again request to recieve only what he requests for legal material instead of being given collateral material which is the cause of delay, and more important the loss of cases that are substantial but lost to the astensible semantics that are never ending by these defendants,

189. Library defendant Dick solomon did with intent to cause harm, Knowingly ignore plaintiff's repeated requests to recieve previously requested Legal material, and by such Knowlege did cause substantial harm to the plaintiff.

190. Library defendant Beverly veglas did with intent to cause harm, Knowingly ignore plaintiffs repeated requests to recieve previously requested legal material, and by such Knowlege did cause substantial harm to plaintiff.

191. The Library defendants did purposely ignore plaintiffs request for receipt of most recent shepard cases, instead sending him shepard page cites, plaintiff then would submit the shepard cites given to him, back to the Library trying to recieve those cases, who would then return the same shepard cites, only, several times in a row, resulting in plaintiff's loss of the originally sought case

192. On December 29, 2003 while actively trying to litigate a state court civil rights action plaintiff did file with that court a verified motion for a Departmental Disciplinary Unit prisoner to recieve adequate law library material equat to inmates in general population, because of the Law Library defendants actions.

193. Plaintiff has filed several grievances regarding lack of adequate Law material access to Institutional Grievance Coordinator defendant Ann Marie Aucoin who arbitrarily would not discuss, or personally inquire with the plaintiff pursuant to 103 CMR 491., and who with wanton disregard, Arbitrarily denied such grievance[s].

194. Plaintiff would then Appeal such grievance denials to Superintendant, defendant David Nolan, who also in reckless, and wanton disregard of plaintiffs rights did arbitrarily deny such grievance Appeals, for Law material access.

195. DOC. defendant Department Grievance Coordinator Kristie Ladouceur has reviewed plaintiffs grievance for lack of access to necessary legal materials and has further, Knowingly with intent to cause emotional Distress and harm, did Arbitrarily deny plaintiffs grievance claim[s]

196. On February 24, 2004 plaintiff did file a sworn affidavit complaint to Health Service Administrator defendant Stan Galas regarding the extreme chest pains suffered by plaintiff from not being able to recieve his noon time medication while out of the institution, and also addressed the cruel and unusual treatment, and unprofessional conduct of nurse Donna Fitzgerald by recklessly announcing my private medical treatment loudly on the tier, and deliberately splashing my medication on me and the floor.

197.  U-Mass defendant Nurse Donna Fitzgerald did retaliate against the plaintiff for his February 24th complaint, by repeating the same actions complained of, on February 25th and the 26th, 2004, and denied plaintiff from observing his medication before being crushed, and further assaulted plaintiff who then again filed an affidavit (sworn) complaint to HSA defendant Stan Galas on February 25th, and a regular written complaint on February 26, 2004.

198.  Approximately on February 27, 2004 plaintiff did go to Lemuel Shattuck Hospital to see the Neurologist who did prescribe a specific, and New treatment.

199.  Dr. Bharani the Neurologist had last seen plaintiff on June 6, 2003 and did schedule plaintiff to go back sooner but the U-MASS, and D.O.C. defendants failed to provide plaintiff for such scheduled visit, and also failed to honor his prescribed treatment.

200.  Defendant Dr. Donald Kern upon reciept of the Neurologist's treatment plans did Knowingly deviate from such prescribed treatment ordered on 2-27-04 and did intentionally try to harm the plaintiff by exchanging a Nasal spray prescription for that of another medication that was once prescribed to the plaintiff but discontinued because of it causing chest pain

201.  The combination of these arbitrarily changed medicine did result in constant verbal complaints to the nurse who with deliberate indifference ignored plaintiff.

202.  The remaining medication that was ordered by the Neurologist, one of which was previously prescribed and discarded as ineffective years earlier, both were not effective at present, one of which caused "strange feeling" and anxiety

203. Plaintiff did complain to HSA defendant Stan Galas on March 3, 2004 complaining about such medical problems with the medicine causing secondary problems.

204. Defendant Stan Galas waited with Deliberate indifference for approximately two weeks before responding to plaintiff's serious medical needs, and on March 22, 2004 did respond Knowing that it was the same medications that he once pre-scribed, caused plaintiff chest pain, did feign ignorance of this and by use of semantics did manipulate and coerce plaintiff to endure such ill treatment or it would appear that plaintiff simply refused treatment.

205. On March 30, 2004 plaintiff did address a medical complaint with the HSA defendant Stan Galas clarifying that he notified defendant Dr. Kern about the "chest pain" medication, in which he, Knowingly with intent to harm the plaintiff did disregard such notice and did Maliciously cause plaintiff to have to take such medication anyway if he wanted relief from the Migraines, and addressed poor record keeping.

206. On April 6, 2004 HSA defendant Stan Galas did respond to Plaintiffs 3-30-04 complaint letter, with marked inadverence on the date, did by vicarious Admission deny negligence, in deliberately intending to harm the plaintiff.

207. On March 29, 2004 defendant Dr. Kern did see the plaintiff in response to a sick call request dated 3-18-04 for swollen Lymphnodes, burning urination and headaches that make him sick to his stomach

208. defendant Dr. Kern did Knowingly, and willingly with the Malicious intent to cause cruel and unusual Punishment order only one Aspirin for

plaintiff to take when a headache occurs. on March 29, 2004.

209. Plaintiff was again brought to the Neurologist on April 2, 2004 and plaintiff discussed with Dr. Bharani that he seeks an effective migraine treatment so that he can then resume the necessary inter- feron Liver treatment, in which this Neurologist did then order Celebrex for migraine managment

210. defendant Dr. Kern did with malicious intent to harm the plaintiff, Knowingly and willingly ignored the Neurologists prescription and forced plaintiff to endure the sadistic and cruel and unusual punishment of only one Aspirin for serious Migraines

211. On April 18, 2004 plaintiff did file a medical complaint with the defendant superintendent Dave Nolan regarding Dr. Kerns Arbitrary and wanton treatment

212. On April 21, 2004 defendant HSA Stan Galas did respond to both complaints addressed to him, and defendant Supt. Dave Nolan dated 4-12-04 and 4-18-04, in which he, by use of ostensible semantics did knowingly and willingly justify Dr. Kerns Arbitrary treatment, by allowing such general practitioner the open door to act in such deliberate disregard when ever it strikes him to overrule the prescribed treatment from a specialist in his field of expertise, causing plaintiff extreme emotional distress, and physical pain and suffering.

213. On April 26, 2004 HSA defendant Stan Galas did again write the plaintiff and by consciousness of liability did knowingly and willingly and fraudulently stated that plaintiff agreed to a regimen of only one aspirin

214. On May 8, 2004 plaintiff did address a medical complaint to HSA Stan Galas, complaining for the Ninth month straight that he is still in great pain from the Lesions that have gone deliberately ignored and did assure legal action would result unless he immediately stopped this cruel and unusual punishment, and has implied suicidal thoughts, and losing his mind, which went ignored.

215 Plaintiff did again write medical complaints to the superintendent defendant Dave Nolan, and to HSA defendant Stan Galas, on May 14, 2004 pleading for treatment of his painful Lesions and expressly stating his fear of it being cancer.

216. Upon a visit with defendant Dr. Kern on May 17, 2004 where plaintiff begged and pleaded to be diagnosed or examined by a urologist, and stated that his penis is still discharging "some kind of fluid" and that he is in constant pain and suffering. Dr. Kern adamantly denied such treatment and while smiling and holding up his index finger said he can check plaintiffs ass, causing plaintiff to be physically restrained by a correctional guard.

217. Any time an inmate leaves his cell in DDU he is escorted by one or two guards and is always handcuffed behind his back, and with leg Irons on.

218. Defendant Dr. Kern did knowingly and willingly write a false entry in plaintiffs medical record, for the purposeful intent of causing grievous bodily harm.

219. Plaintiff began pissing blood approximately on June 1, 2003 and complained to the defendants about difficulty in urinating and sharp pains in lower abdomen, groin, and his sides. Dr. Kern only allowed plaintiff to see the proctologist surgical consultant as a cruel joke, plaintiff could barely move, he was in such pain.

40

220. On June 4, 2004 the U-MASS and D.O.C. defendants did have Lieutenant Macdonald come to plaintiffs cell and told him Dr. Kern doesn't believe that he is pissing blood, and told plaintiff that he had to "cuff up" to be removed to an isolation cell in D-wing of DDU to have a cathedar shoved down his penis, and denied him treatment with a urologist.

221. On June 9, 2004 U Mass defendant Donna Fitzgerald at evening med. rounds did angrily yell at the plaintiff while he was at his food slot waiting to get his medication, and she did throw his medication cup at him and refused to give him his medication that evening. This event did take place on C-4 unit where a camera did record such event.

222. Plaintiff did file a medical grievance and did also file a regular grievance with the IGC. regarding defendant Fitzgerald.

223 On June 11, 2004 in response to plaintiffs sickcall request slip, complaining of urinary pain, a U-Mass Nurse Naomi. did threaten, intimidate and coerce plaintiff by threat of bodily harm and cold and callous treatment with a cathedar, and refused to allow plaintiff treatment with a urologist.

224. Plaintiff has written complaints, grievance appeals to the DOC. commissioner Kathleen Dennehy on May 8, 2004 and again on June 14, 2004

225. Plaintiff has had this matter addressed to D.O.C. defendant sue Martin Division of Health Services, who was deliberately indifferent in her response to plaintiff on May 11, 2004

226. On June 9, 2004 U-MASS defendant Arthur Brewer did respond to plaintiffs grievance complaint of May 2004 with ostensible semantics being deliberately indifferent to plaintiffs serious medical needs.

227. D.O.C defendant did make an evidentiary admission to other DOC persons, and to plaintiff when Gary Heboda - mail room officer did assert that he "allegedly" sent, mail that was sent to the plaintiff, back to the sender in an arbitrary and capricious manner.

228. DOC defendant Gary Heboda did knowingly and willingly return U.S. postage to sender that was addressed to plaintiff and never notified plaintiff of such acts prior to doing so, neither was plaintiff afforded any kind of quasi judicial Hearing, or right to due process before being subjected to such substantial loss of property.

229. Approximately on March 19, 2004 the D.O.C. defendants did knowingly and intentionally try to obstruct justice by putting a freeze on plaintiffs personal prison account ostensibly to deny plaintiff from filing with the Superior court, response to IPs defendants motion for summary judgment, and plaintiffs opposition motion for summary judgment.

230. The DOC defendants did knowingly and willingly return to plaintiff his legal mail on March 19, 2004, and refused plaintiff from sending out United States postage.

231. Plaintiff did send his legal material to court with the help of another inmate on March 21, 2004 because DOC defendants did purposefully deny plaintiff his right to the U.S. mail, or his property with intent to cause loss or harm.

232. On March 24, 2004 plaintiff did file motion with the court to stay proceedings and order defendants to allow plaintiff access to court.

233. Plaintiff now experiencing trouble urinating with blood in his urine did Appeal once again to the Arbitrary HSA defendant demanding to be evaluated by a urologist where he did give a urine in front of Lieutenant Belisle on Approximately June 9, 2004 which was then forwarded to medical, and despite the Blood in it was never written down nor recorded anywhere, thus causing plaintiff extreme torment and abuse, through conspiracy.

234. Defendant HSA Galas, did again with arbitrary wanton callousness did use manipulation and coercion in denying plaintiff adequate health care treatment by blaming plaintiff for not being cooperative, thus causing extreme emotional torment and anxiety

235. Plaintiff in addition to the daily physical pain, which has kept him from going outside for several months to enjoy his one hour of fresh air, has been experiencing nightmares, and contemplation of suicide to escape the mental pain, and the physical daily pain, prompting greater fear that he may have to take a hostage or die trying, so that he can barter for health care.

Claims for Relief

## COUNT I

Deliberate denial of segregation prisoner to access court in violation of 42 U.SC. § 1983

Plaintiff realleges the facts contained in paragraphs 78,80,87, 101 through 108,127,156 through 195 and incorporates them herein.

236. The plaintiff has a secured right under the Due Process clause to access the court.

237. The plaintiff has a secured right under the Equal Protection Clause to access the court.

238. The plaintiff has a secured right under the first Amendment to access the court.

239. The plaintiff has a secured right under the Privileges and Immunities clause of Article IV of the constitution to access the court, and sixth Amendment as pro se prisoner.

240. The defendants DICK solomon, and Beverly veglas violated plaintiffs right to be free from threats, indimidation or coercion while acting under the color of law, or an attempt to do so, or by force or threat of force, constitutes a tort under the MASS. CIVIL RIGHTS ACT, under state law.

241. The defendants Solomon, and veglas in deliberately withholding particular legal material Knowingly, while plaintiff is a pro se litigant, causing him to request the same pertinent, and substantial material several times in the course of days and weeks, while intentionally, and with malice sending him collateral material relevant to that of what he needs, while has notified both defendants of time limits for court, and the loss of litigation, was cruel and unusual punishment by causing extreme emotional distress and mental anguish, proscribed by the eighth Amendment, and denied plaintiff's right under the first, and fourteenth Amendment, as well as his right under Privileges and immunities clause of Article IV of the constitution to access court

## COUNT II

Disparity and arbitrary handling of prisoner's incoming and outgoing United States mail in violation of 42 USC § 1983

Plaintiff realleges the facts contained in paragraphs 110 through 117, 126, 132, 143 through 149, 227-231 and incorporates them herein.

245. The plaintiff has a secured right under the Due Process clause to incoming and outgoing United States Mail, and Equal Protection clause of such U.S. mail.

246. The plaintiff has a secured right to United States mail under the first Amendment to the constitution

247. The plaintiff has a secured right to be notified of rejection of u.s. mail written by or addressed to him and that author be given reasonable opportunity to protest decision and that complaints be referred to prison official other than person who originally disapproved correspondence under the fifth Amendment to the constitution.

248. The plaintiff has a secured right to unabridged access to court through the u.s. mail under the first, fifth, and fourteenth Amendments to the constitution.

249. The defendants Gary Hebda, Michael Maloney, Peter Allen, David Nolan, Ann Marie Aucoin, Kristie Ladouceur, David Brien, Pat Mulvey, Paul Murphy

46

242.. The failure of defendants Maloney, Allen, Nolan, Aucoin, and LaDouceur, upon notice of grievance, and grievance Appeal, to take disciplinary action against the Library defendants for depriving plaintiff of the materials as needed to access court, or to intervene and correct such deprivation was a willing, and knowing participation in violation of plaintiffs constitutional rights

243. The combined and mutual agreement of defendants, Solomon, Veglas, Maloney, Allen, Nolan, Aucoin, and Ladouceur to not help plaintiff in any way shape or form to acquire the materials needed to properly access court in a timely manner, where plaintiff lost his right to proceed to state court under certiorari to address erroneous Disciplinary hearings, erroneous and arbitrary Grievance procedures, as well as enduring the loss of having a superior court action dismissed was all caused by the defendants conspiracy to bring about such results and is a violation of the Due Access Clause, and the Equal Protection clause of the fourteenth Amendment by their failure to intervene at any time to help preserve plaintiffs secured rights, and as retaliation was violation of the Eighth Amendment.

244. The defendants, Solomon, Veglas, Maloney, Allen, Nolan, Aucoin, and LaDouceur violated plaintiffs constitutional rights under the fourteenth Amendment by arbitrarily, and improperly denying him equal access to legal material as that of other inmates, and a willing and knowing violation of they're own promulgated regulations in doing so, in violation of the first Amendment, and the privileges, and immunities clause of Article IV of the constitution, and violated the sixth Amendment to the constitution.

did know that plaintiff had pending state litigation against IPS defendants and all such defendants did withhold plaintiff's outgoing Legal mail willingly to defeat, and deny, plaintiff's action by time limits imposed by the court resulting in plaintiff sending his Legal mail through another inmate, and further resulting in a motion filed in court to order the defendants to give plaintiff access to court through the U.S. mail, the actions of defendants failure to address such grievances, grievance appeals, and informal complaints was a knowing, and deliberate denial of plaintiff's first, fifth, and fourteenth Amendments to the constitution, and by retaliation violation of the Eighth Amendment to the constitution.

250. Defendants Hebda, Maloney, Allen, Nolan, Aucoin, Brien, Mulvey, Murphy Ladouceur did knowingly, and willingly, conspire to retaliate against the plaintiff by deliberately, stealing, and withholding his incoming, and outgoing, regular mail, Legal MAil, privileged mail, and did cause him monetary loss, and property loss by such consistent conspiracy, did willingly decline to grant plaintiff an unbias grievance, or grievance Appeal, in violation of plaintiff's right to due process, and equal protection of the fourteenth Amendment in violation of the first Amendment, and in violation of the fifth Amendment to the constitution.

251. Defendants, Hebda, Allen, Nolan, Brien, Mulvey and Murphy, purposefully, willingly and knowingly used the U.S. mail to threaten, harass, coerce and intimidate, plaintiff from using the U.S. mail, constitutes a tort under the Massachusetts CIVIL Rights Act.

## COUNT III

Deliberate indifference to serious medical need in violation of 42 USC §1983

Plaintiff realleges the facts contained in paragraphs 24 through 39, 41 through 48, 52 through 62, 69 through 72, 81 through 85, 100, 116, 118 through 125, 133 through 142, 150 through 155, 196 through 226.

252.   Plaintiff has a secured right to be free from cruel and unusual punishment under the Eighth Amendment to the constitution

253.   The defendants, Maloney, Brewer, Binney, Allen, Jaiswal, Galas, Martin, were responsible for the delay and denial of access to medical personnel as a Neurologist to properly exercise judgment and treat plaintiffs migraine problem, the failure of which resulted in plaintiffs inability to continue with his Life saving Liver treatment, where he notified such Authorities of such improper health care previously, and continuously, was a violation of the Eighth Amendment to the constitution

254.  Defendants Brewer, Galas, Erdody, Jaiswal, Binney, Martin were responsible for delay and denial of plaintiffs being able to recieve treatment for H pey-lori, and denial of pelalate/interferon re-start and continuation after plaintiff was allowed to begin treatment effectively on June 6, 2003 for migraines, thus in violation of the eighth Amendment to the constitution

255. Defendants Maloney, Allen, Nolan, Martin, Galas, Erdody, Binney, Brewer, Shorey, Jaiswal, Mulvey, Murphy, Brien, and Kern, did all act with cruel and unusual punishment by their direct participation, and failure to correct, or address such deliberate indifference by grievance and grievance appeals. where plaintiff was forced to undergo evaluation only for information purposes, was physically assaulted over his pleas to stop, was denied his right to informed consent, and was illegally punished with evidence that he was forced to give to use against himself, and was denied medical treatment under pretext of such evidence, and was put into forced isolation for several days in violation of the Eighth Amendment to the constitution.

256. Defendants, Maloney, Martin, Brewer, Jaiswal, Binney, Galas, Allen, Nolan, Kern, did deny plaintiff right to due process under the fourteenth Amendment where they did allow plaintiff to be arbitrarily denied health care treatment for an alleged dirty urine without any kind of hearing to determine if such alleged facts are true, did violate the Eighth Amendment of the constitution and equal protection of fourteenth Amendment.

257. Defendants, Mulvey, Murphy, Brien, Erdody, Shorey, did with intent to deprive plaintiff of his constitutional rights, use by threat, and threat of force, to intimidate and coerce plaintiff to urinate against his will, to pose for photographs against his will by threats of harm and intimidation, and was forced to submit to medical evaluation for evidentiary and informational purposes against plaintiffs will, and objections, while being in sound mind and good health, was denied his right to informed consent, and was using force against the plaintiff without need or provocation constituted the tort of assault and Battery under the law of

Massachusetts.

258. Defendants Mulvey, Murphy, and Brien who did take part with defendants Shorey, and Erdody in forced medical treatment for evidence and informational purposes where he was denied health care as a result of the coerced, and forced examination was cruel and unusual punishment in violation of the Eighth Amendment and self incrimination in violation of the Fifth Amendment.

259. Defendants Mulvey, Murphy, Brien, Shorey, and Erdody, did all act with knowing disregard to plaintiffs rights to Equal protection, and Due process under the fourteenth Amendment by their actions addressed above for denial of right to refuse treatment.

260. Defendants, Mulvey, Murphy, and Brien did knowingly use force and threat of force under the color of Law and official position to intimidate and coerce plaintiff to submit to urinating against his will by such threats, and by posing for photographs by such threats, also where plaintiff was threatened and coerced to undergo assault and Battery for informational purposes, and later placed into forced isolation was intended to bring the results that were achieved, constitutes the tort of violating the Massachusetts Civil Rights Act by intentional infliction of emotional distress.

261. Defendants Shorey and Erdody who did commit battery upon plaintiff were acting in violation of their own Regulations constitutes the tort of negligence under the law of Massachusetts

262. Defendants Martin, Maloney, Binney, Brewer, Galas, Waiswal, Nolan, Allen, who all have failed to adequately oversee the work of the employees who did

harm the plaintiff constitutes the tort of negligence under the law of massachusetts.

263.   Defendants Maloney, Allen, Nolan, Martin, Binney, Brewer, Kern, Jaiswal, Galas, Erdody, Shorey, Murphy, Brien, Mulvey, LaDouceur, Aucoin, Solomon, Veglas, and Hebda, did each in coordination of their actions conspire to deny plaintiff his right to adequate medical health care treatment in violation of the Eighth Amendment to the constitution.

264.   Defendants Kern, Nolan, Galas, Maloney, Binney, Brewer, Martin, Allen, Ladouceur, have denied plaintiff access to medical personnel qualified and necessary to exercise judgment about a particular medical problem was a violation of the Eighth Amendment to the constitution.

265.   Defendants Jaiswal, Galas, Erdody, Shorey, Kern, did fail to inquire into essential facts that are necessary to make a professional judgment and the failure of which did cause great suffering on the plaintiff in violation of the Eighth Amendment to the constitution.

266.   Defendants, Galas, Jaiswal, Kern, Erdody, Shorey, Binney, Brewer, Martin, Maloney, Allen, and Nolan, were negligent in keeping plaintiffs medical records for adequacy and accuracy, which caused plaintiff continuous harm in violation of the Eighth Amendment to the constitution.

267.   Defendants Kern, and Jaiswal, did deliberately record erroneous information based on their subjective opinion in denying plaintiff adequate health care treatment in violation of the Eighth Amendment.

268.    Defendant Kern, did by use of threat, threat of force, intimidation and coercion have employee's threaten plaintiff that he will be held down with a cathedar shoved down his penis while handcuffed, and inside an isolation cell constitutes a tort in violation of the Massachusetts civil Rights Act

269.    Defendant Fitzgerald conduct in throwing and splashing his medication on him in addition to denying him his medication was deliberate indifference to his serious medical needs in violation of the eighth amendment to the constitution

270.    Defendant Kern who prescribed only one Aspirin to take at the onset of migraines was wicked and wanton cruel and unusual where plaintiffs record illustrates the strength and severity of his migraines in violation of the eighth Amendment to the constitution.

271.    Defendant Kern, who purposefully, denies plaintiff access to a urologist where he's been urinating blood, and problems with Lesions on his groin and plaintiff has been pleading for ten months to be treated by such qualified individual, in which Kern laughing and joking with his finger in the air saying "no but I'll check your ass" is in violation of the eighth Amendment to the constitution

272.    Defendant Kern who has consistently and repeatedly interrupted the Neurologists prescribed treatment which continuously affected plaintiff negatively was a violation of the Eighth Amendment.

273.    Defendants Maloney, Nolan, Allen, Martin, LaDouceur, Aucoin, Binney, Brewer,

52

Hebda, veglas, solomon, Brien, Murphy, Mulvey, Galas, Erdody, Kern, Shorey, jaiswal, and Fitzgerald by they're Knowing and deliberate acts which have denied plaintiff from recieving adequate and unbias healthcare for over ten months while in DDU segregation, and for depriving him of equal protection of the Law with denial of Due Process the long consistency of which in ten months not to have one grievance or grievance appeal granted was the intentional infliction of emotional distress, constitutes a tort for violation of the Massachusetts CIVIL Rights Act

## COUNT IV
unwarranted invasion of privacy in violation of 42 USC § 1983

Plaintiff realleges the facts contained in paragraphs 47, 48, 54 through 62, 65 through 67, 69 through 75, 86, 110.

274. The plaintiff has a secured right under the United States constitution to the right of privacy in medical diagnoses and other medical information, under the FOIA; Privacy Act.

275. Defendants Mulvey, Murphy, Brien, Erdody, shorey, did personally take part Knowingly and willingly to disseminate, and disclose, private, confidential, and medical information of the plaintiff, and the exchange of such information by the U-mass defendants was to deny expensive medical treatment, while the exchange of the information by the DOC defendants was used to incriminate the plaintiff in violation of the Fifth Amendment, and did create the imposition of possible pending criminal charges, six month's loss of privileges and imposition of an illegally imposed fine, in violation of the exemption clause

of the freedom of information Act.

276.    Defendants Maloney, Allen, Nolan, Aucoin, Martin, Galas, Jaiswal, Ladouceur, Brewer, Binney, at whom plaintiff did address the violation of his privacy rights to, by Letter, grievance, grievance appeal, each Knowingly, methodically, and willingly did deny plaintiff's complaint of his deprivation of such protected rights, with wanton deliberate indifference by actively taking part in this action, in violation of the exemption clause of the freedom of information Act, Privacy Act.

277.    Defendants Maloney, Allen, Nolan, Aucoin, Martin, Galas, Jaiswal, Brewer, Ladouceur, Binney, Mulvey, Murphy, Brien, Erdody, shorey, did Knowingly and willingly conspire to deprive plaintiff of such rights, in violation of the United States Constitution.

278.    Defendants, Maloney, Allen, Nolan, Aucoin, Martin, Galas, Jaiswal, Brewer, Ladouceur, Binney, Mulvey, Murphy, Brien, Erdody, shorey did Knowingly and willingly conspire to deprive plaintiff of his rights to privacy in violation of the exemption clause of the freedom of information Act. Privacy Act.

279.    Defendants Maloney, Allen, Nolan, Aucoin, Martin, Galas, Jaiswal, Brewer, Ladouceur, Binney, Mulvey, Murphy, Brien, Erdody, shorey did Knowingly and willingly disseminate, and disclose plaintiffs medically private information not for his health care preparation or treatment, but was disseminated and disclosed purposefully with Knowledge to deny him medical treatment, and to cause him loss, constitutes the tort of privacy Act violation under the law of massachusetts.

280. Defendants Maloney, Allen, Nolan, Aucoin, Martin, Galas, Jaiswal, Brewer, Kern, Ladouceur, Binney, Mulvey, Murphy, Brien, Erdody, Shorey, by the use of the exchanged private, confidential, and medical information without informed consent of plaintiff, or signed release, which was used against plaintiff was violation of the fourth amendment to the constitution, and the fifth amendment to the United States Constitution

## COUNT V

Deliberate denial of Due Process, and Equal protection in violation of 42 USC §1983

Plaintiff realleges the facts contained in paragraphs 51 through 77, 79, 86 through 102, 109 through 115, 128 through 131, 228 through 231.

281. Defendants Mulvey, Maloney, Murphy, Brien, Allen, Nolan, Aucoin, Ladouceur, Martin, Galas, Erdody, Kern, Binney, Brewer, Jaiswal, Shorey, Hebda, Solomon, Veglas, Fitzgerald, by their methodical and continuous actions, in an arbitrary manner, whom all have ignored, and repeatedly denied plaintiff's constant notices of, extreme emotional pain, inability to properly address Disciplinary Board, inability to access U.S. Mail, inability to acquire Legal material, inability to acquire necessary health care, and further notice and implied expression of physical and mental suffering for ten months was retaliation for filing such complaints in violation of the Eighth Amendment to the constitution.

282. Defendants Mulvey, Brien, Murphy, Maloney, Allen, Nolan, Veglas, Solomon, Aucoin, Ladouceur, Hebda, did actively, directly, and indirectly, and sub-

sequently upon, Appeal, grievances, and grievance Appeals. did knowingly and willingly continue to deny plaintiff Equal protection and Due process even after notice, and repeated notice that plaintiff's Disciplinary Hearing was interrupted and abruptly ended by IPS defendants, while plaintiff was attempting to question IPS defendant Brien why there was not the required two urinalysis test results; and the D-Board hearing officers inadvertent notice that he had already concluded plaintiff's guilt before D-Board hearing was ended by IPS defendants, in violation of the fourteenth Amendment to the constitution.

283.    Defendants Mulvey, Brien, Murphy, Maloney, Allen, Nolan, Veglas, Solomon, Aucoin, Ladouceur, Hebda, did knowingly, and willingly deprive plaintiff from preparing, and presenting a defense at his Disciplinary hearing, and an Appeal therefrom, which was all of an arbitrary and maliciously calculated manner. where plaintiff had an illegal and excessive fine imposed under the guise of restitution, as a result of the arbitrary and bias D-Board hearing, in which the defendants had frozen plaintiffs prison account before the superintendant had decided the D-Board Appeal decision, which illustrates, the bias and arbitrary manner in the running of affairs in walpole in violation of the fourteenth Amendment to the constitution.

284.    Defendants Mulvey, Brien, Murphy, Maloney, Allen, Nolan, Veglas, solomon, Aucoin, Ladouceur, Hebda, Brewer, Binney, Martin, Erdody, Coates, Jaisual, Shorey, Kern, fitzgerald did all knowingly and willingly take part directly, indirectly, in a material way which resulted in evidence that was

illegally obtained and used against plaintiff at his Disciplinary hearing, and evidence which was used subsequent to the D-Board hearing and harmful to the plaintiff, in which plaintiff faced investigation or charges filed by the District Attorneys office was also forced to endure loss of privileges, ie. visits with family, loss of telephone, Loss of commisary, Loss of television and radio, and isolated in segregation with an illegally imposed excessive fine was a violation of the fifth Amendment to the constitution.

285. Defendants listed above at ¶ 284 by their actions in part and in whole, which have harmed plaintiff, and where plaintiff is a prose litigant trying to petition the court, and address the court for ten months is violation of the sixth Amendment to the constitution

286. Defendants listed above at ¶ 284, by their actions in whole, and in part where plaintiff did suffer fine and punishment at his Disciplinary Hearing were a tort of negligence under the law of massachusetts.

287. Defendants listed above at ¶ 284 by their actions in whole and in part where plaintiff did suffer fine and punishment at his Disciplinary hearing were brought with the intentional infliction for emotional distress constitutes a tort for violation of the massachusetts civil Rights Act.

Relief Requested

WHEREFORE, plaintiff requests that the court grant the following relief :

57

A. Issue a declaratory Judgment stating that:

1. A Declaratory Judgment, declaring that it has been Established as a matter of right and Law, that incarcerated litigants, such as the plaintiff who moves the court pro se are to be and/or have their pleadings by this court more "LIBERALLY CONSTRUED" then that of counsel.

2. A Declaratory Judgment, declaring that the plaintiffs VERIFIED COMPLAINT 'MUST' via (mandatory Language), be treated as that of an Affidavit... as it contains specific fact(s) that the plaintiff Knows to be true and accurate.

3. A Declaratory Judgment, Declaring that in a civil action a pro se party may "NON-COMPOS-MENTIS, Plead his own Disabilities"

4. A Declaratory Judgment, declaring that when anyone who seeks relief against D.O.C. officials and/or any other governmental official, it will serve public interest in granting such relief, because, it is always in the PUBLICS INTEREST for Prison officials as well as governmental officials TO OBEY THE LAW. ("RESPECT FOR THE LAW, PARTICULARLY BY OFFICIALS RESPONSIBLE FOR THE ADMINISTRATION OF THE CORRECTIONAL SYSTEM, IS IN ITSELF A MATTER OF THE HIGHEST PUBLIC INTEREST")

5. A Declaratory Judgment, declaring that the plaintiffs civil Rights were violated under the commonwealths civil Rights Act, [iF] there was any 'THREATS' made against the plaintiff, which is defined as involving the intentional exertion of pressure to make him fearful or apprehensive of injury

or HARM, 'INTIMIDATION' involves putting him in fear for purposes of compelling or deterring conduct, and 'COERCION' involves application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done. As described therein.

6.  A Declaratory Judgment declaring that the D.O.C. regulations 103 DOC 518 is unconstitutionally vague, and unconstitutionally hidden from public interpretation and review and is ultra vires, until its promulgation pursuant to M.G.L. c. 30; Further Declaring that in No way can such D.O.C. regulations be violative of 5 USC. sec. 552(b), M.G.L. c. 4 § 7 cl. Twenty-sixth (c); or M.G.L. c. 111 § 70E

7.  A Declaratory Judgment declaring that the D.O.C. regulation 103 DOC 525 is unconstitutional by the D.O.C. failure to comply with M.G.L. c. 30 requirement, and is ultra vires by its use and fining inmates under the guise of restitution.

8.  A Declaratory Judgment, declaring that claim of Abuse of process can be substantiated and proved by Establishing and satisfying its (3) essential elements of the state law tort of Abuse of Process, such as; 1. "process was used;" 2. "for an ulterior or illegitimate purpose"; 3. "resulting in damages."

9.  A Declaratory Judgment declaring that No freeze on an inmates account nor any money can be withheld from the inmate unless by order of the court.

10. A Declaratory Judgment declaring that defendants Mulvey, and Briens actions at the plaintiffs disciplinary Hearing, and defendants, Maloney, Allen, and Ladouceu

actions in sustaining it, violated plaintiffs rights under the Due Process clause of the fourteenth Amendment to the United States constitution.

11. A Declaratory Judgment, declaring that anyone who represents himself or herself as prose, such as the plaintiff, acts as his own attorney in defending and/or prosecuting civil and criminal matters in a court of law, and that the plaintiff is entitled to the same rights, protections and privacy within his pleadings and/or work as is afforded licensed counsel pursuant to that of the 'work product Doctrine and/or rule'.

12. A Declaratory Judgment declaring that the actions of defendants Solomon, and veglas in denying plaintiff unbiased reciept of necessary Legal material, and defendants, Maloney, Allen, Aucoin, Nolan, Ladoucew, in failing to inter-vene and correct such actions and deprivations that continue, are violations and retaliatory and in violation of plaintiffs fourteenth Amendment Rights first Amendment rights, and sixth Amendment rights to the U.S. constitution.

13. A Declaratory Judgment, declaring that transportation officers for the department of corrections, while acting within their official duties are allowed the right to lawfully possess and distribute controlled substances to inmates that are transfered and/or transported to and from court, and are required to take prescribed and necessary medication(s) for either medical and/or psychiatric conditions, pursuant to and in accordance with M.G.L.c. 94 c § 7(d)(3), of the controlled substance provision.

14. A Declaratory Judgment, declaring that the Department of Correction defendants, and the U-Mass correctional defendants failure to adhere to their own promalgated regulations was a violation of plaintiffs fourth, first, fifth, sixth, eighth, fourteenth Amendment rights to the constitution.

15. A Declaratory Judgment, declaring that a prison official, or employee whether through contract or not who files a false charges and/or disciplinary report against an inmate, states a cause of action under § 1983 if such actions infringed upon the inmates substantive constitutional rights.

16. A Declaratory Judgment, declaring that the Legal material available to the prisoners in D.D.U. and the provision of Legal material from the main Library is unconstitutional and must be improved according to the standards of Lewis v. Casey, 518 U.S. 343(1995), and Cepulonis v. fair 563 F. Supp. 659, 660 (D. Mass. 1983), aff'd in relevant part by 732 F.2d (1st cir 1984)

17. A Declaratory Judgment, declaring that supervisory liability of officials using a negligence standard would result in de-facto respondeat superior liability for officials, therefore; under HARLOW v. FITZGERALD, 457 U.S. 800 at 818, the officials would be immune UNLESS a reasonable person in his position would Know that his own conduct infringed a constitutional right of the plaintiff, see ANDERSON v. CREIGHTON, 483 U.S. 635 at 640, 107 S.Ct. 3034 at 3039; Consequently, a supervisor can be held liable under Section 1983, when a reasonable person in the supervisor's position would have Known that the conduct infringed the consti-

tutianal rights of the plaintiff, see FOXE.R.U.CROSS, 635 F. 2nd 476 at 484, and his conduct was _causally related_ in the constitutional violation committed by his subordinate, see WILSON.V.A ATTHEDAY, 757 F.2nd 1227 at 1241.

18. A Declaratory Judgment, declaring that punitive damages can be awarded under a 1983 claim, if the individuals metro was found to be of Evil intent or Demonstrates "RECKLESS OR CALLOUS INDIFFERENCE TO CONSTITUTIONAL RIGHTS"

19. A Declaratory Judgment, declaring that pursuant to F.R.CIV.P. Rule-8 (a)(1), as long as the plaintiff notifies the Defendant of the nature and grounds of the claims and/or complaint, such an action shall not be dismissed.

20. A Declaratory Judgment, declaring that a declaratory judgment action, in which it was alledged that the commissioner of an administration who has wrongfully exercised his delegated powers and acted in excess of his statutory authority was not entitled and/or subject to dismissal as an uncontested suit, but must... be considered as an action based on individual and not sovereign actions. Title 28 USCA § 2201 *13278, .

21. A Declaratory Judgment, declaring that further relief based on a declaratory judgment may be granted after reasanable notice and hearing against the adverse party whose rights were determined by the judgment, shall mean that any further relief sought need NOT have been demanded or even proved in the original action for declaratory relief, and that this section *13916 of 28 USCA § 2202 authorizes further relief

based on the declaratory Judgment and any additional facts which might
be necessary to support such relief can be proved on the hearing provided in
this section or in an ancillary proceeding if that is necessary. See EDWARD B.
MARKS MUSIC CORP. V. CHARLES K. HARRIS MUSIC PUB. CO., 255 F. 2nd 518,
cert., denied 79 S.Ct. 51.

22.   A Declaratory Judgment, declaring that when any officer and/or
employee of this state intentionally and/or Knowingly submits a
false statement or document to a state agency, that person has violated
and/or interfered with the plaintiffs state and federal constitutional Rights.
by violating this states statutory provision G.L. c. 268 § 6A.

23.   A Declaratory Judgment, declaring that the failure of the defendants
Ladouceur, and Aucoin, to act unbiased, and in accordance with
103 CMR 491, and M.G.L.c. 127 § 38E did violate plaintiffs fourteenth
Amendment Right to Equal protection, and Due Process.

24.   A Declaratory Judgment, declaring that defendants Maloney, Nolan,
Allen, and Hebda did deny plaintiffs right to the U.S. mail and
did violate his first and fourteenth Amendment Rights to the constitution

25.  A Declaratory Judgment, declaring that the defendants Galas, Kern, Allen,
Jaiswal, Erdody, Shorey, Brewer, Binney, Mortin, Fitzgerald Nolan, Maloney,
by their delay and denial of over ten months in continuing refusal to
allow plaintiff examination and treatment for type 1 Hepatitis C, and
denial of treatment for Lesions/swollen Lymph nodes was cruel and

unusual treatment in violation of the Eighth Amendment to the constitution.

26. A Declaratory Judgment, declaring that all defendants herein refusal to allow plaintiff access to the U.S. mails, refusal to allow plaintiff to access court, refusal to allow plaintiff life saving medical treatment and the constant denial to address such wrongs upon grievance, or formal notice was infact a conspiracy to violate plaintiffs constitutional rights under the first, fourth, fifth, sixth, Eighth, fourteenth Amendments, and the privileges and immunities clause of Article IV of the constitution.

27. A Declaratory Judgment, declaring that the plaintiff was/is entitled as a matter of law and right to medical/psychiatric privacy and confidentiality when being treated [OR] medicated by the institutions care givers and/or medical department.

28. A Declaratory Judgment, declaring that the failure of D.O.C. contracted Health care to honor or respect a SPECIALIST's prescribed treatment for an inmate who's Doctor    is a specialist in his field is deliberate indifference to his serious medical need

29. A Declaratory Judgment, declaring that the plaintiff who has recieved medical treatment for a particular health condition for a lengthy amount of time, and who has a medical ailment that he himself is more familiar with than the arbitrary and inattentive evaluation of the prison Doctor, the plaintiffs knowlege of the most helpful, beneficial treatment through experience, and who's physical pain from his own body must be accorded the weight.

64

and attention of health care providers as substantial in providing the most humane, and unbiased health care.

B. Issue an injunction ordering defendants Nolan, Martin, Brewer, Binney, Galas, or their agents to:

1. Immediately arrange for plaintiff to be evaluated and treated by urology department at Lemuel Shattuck Hospital, for necessary tests to alleviate plaintiff's pain for the Lesions/swollen Lymph nodes, to also determine if such is cancerous, with No interruptions thereof.

2. Immediately arrange for plaintiff to be treated and evaluated by the Neurologist at Lemuel Shattuck Hospital to control his chronic migrain headaches, with no interruptions thereof.

3. Immediately arrange for plaintiff to be treated, and evaluated by the Doctors at Lemuel Shattuck Hospital to begin pegylate/Ribavarin for his chronic Hepatitis C. with no interruptions thereof.

4. . Carry out without delay the treatment directed by such medical practitioner.

C. Issue an injunction ordering defendant Nolan to:

1. Release the plaintiff from the illegally imposed fine of $358.00

2. Expunge the disciplinary convictions described in this complaint from

the plaintiffs institutional record.

D. Award compensatory damages in the following amounts:

1. $100,000 jointly and severally, against defendants Mulvey, Murphy, Brien, Shorey, and Erdody, for the physical and emotional injuries sustained as a result of their forcing plaintiff to give a urine and forced medical treatment.

2. $100,000 jointly and severally against defendants Solomon, and Veglas, for punishment and emotional injury resulting from their denial of legal material resulting in lost causes of action and their continuous taunting of the plaintiff while in DDU segregation, while trying to seek court relief from harm

3. $100,000 jointly and severally against defendants Kern, and Galas, for the physical and emotional harm resulting from their failure to provide adequate medical care to the plaintiff, and express notice of plaintiffs great pain and suffering.

4. $50,000 jointly and severally against defendants Allen, Nolan, and Hebda, for the physical and emotional injury resulting from the stealing, withholding, and refusal to allow plaintiff to mail out, or recieve privileged mail, directly related to health/mental health care matters, and religion.

5. $20,000 jointly and severally against defendants Aucoin, and Ladouceur for the physical and emotional injury resulting from their arbitrary and Bias

repeated denial of plaintiff's notice to them of improper health care, in addition to formal grievances repeatedly denied regarding denial of Legal material necessary to access court, false Disciplinary Reports, Denial of Due process at the Disciplinary hearing, illegal fine, the illegal imposition of double fine, Missing Mail.

6. $75,000 jointly and severally against defendants Maloney, Martin, Binney, Brewer. Jaisual, for the physical and emotional injury Resulting from direct formal notice to such Authority specifically addressing the deliberate indifference, wanton and malicious conduct by their subordinates at which they are responsible, and whom denied plaintiff health care despite several explicit formal notice of the harm done and suffering endured.

7. $10,000 jointly and severally against defendant Fitzgerald for the physical and emotional injury resulting from this nurse, splashing, and throwing his medication on him while in need of it. and for denial of adequate medical care to the plaintiff.

E. Award punitive damages in the following amounts :

1. $20,000 each against defendants Mulvey, Murphy, Brien, Shorey, Eddy,

2. $20,000 each against defendants Solomon, and veglas.

3. $20,000 each against defendants Kern, and Galas

4. $10,000 each against defendants Allen, Nolan, and Heleda.

5. $5000 each against defendants Aucoin and Ladouceur.

6. $15,000 each against defendants Maloney, Martin, Binney, Brewer, and Jaisard.

7. $5000 against defendant Fitzgerald.

Respectfully Submitted
Keith Niemic        DATED: 6-15-04
Keith Niemic pro-se
PO Box 100  DDU
South Walpole, MA. 02071

VERIFICATION OF FACTS

I, Keith Niemic, declare:
That I am the plaintiff in the above entitled matter, I have read the foregoing complaint and know the contents thereof, that the same is true of my own Knowledge, and as to those matters I believe them to be true.
I declare under the pains and penalties of pejury that the foregoing is true and correct.

Keith Niemic
Keith Niemic      DATED: 6-15-04

68