UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

KEITH NIEMIC
PLAINTIFF

V.

MICHAEL MALONEY, ET.AL.
DEFENDANTS

CIVIL ACTION
NO. 04-11482-NMG

VERIFIED PROVISIONAL
MOTION FOR REPLEVIN OF PROPERTY

Now comes plaintiff in the above entitled matter who, pursuant to FED.R.CIV.P. RULE 64, does respectfully request this Honorable court to grant plaintiff a provisional writ of Replevin wherein the [1] Department of Correction defendants, whom under color of state law did impermissibly seize, and deny plaintiff access to the money in his prison account, thus denying him substantive Due Process, by alleging that he owes a $179.00 fine under guise of restitution, for allegedly rendering a dirty urine sample, in September 2003.

In support of this motion plaintiff does attach a brief sworn statement of facts with supporting documents, and brief memorandum of Law.

Wherein, Plaintiff respectfully requests that this court take Judicial Notice of Adjudicative facts pursuant to FED.R.CIV.P. RULE 201 (b)(d)(f) and requests an opportunity to be heard if this court finds that it will expedite the courts decision, (e).

---

[1] The D.O.C. defendants have deprived defendant access to money in his account to pay court ordered initial partial filing fee, thus delaying summons being served on defendants EXHIBIT-7



#6043

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE APPEAL FORM
## FORWARD TO SUPERINTENDENT

**Name** NIEMIC KEITH **Institution** MCI CEDAR JUNCTION

**Number** W61426 **Housing** DDU **Appeal Date** 18-OCT-2004 **Date Of Grievance** 06-OCT-2004

**Appeal Received Date** 19-OCT-2004

**Appeal** Treasurer Stowe illegally put extortive freeze on my account upon contrivance with Captain Grossi and D-board for an illegal fine that acting Supt. Steve Silva took care of in early 2004. I am being illegally denied access to court and my own money were this fine was already straightened out, but is being brought up 10 months after Dept. Supt. Silva and my family took care of the matter already. DOC being executive branch can not keep me from my money except by order of the court judicical branch of government.

**Remedy Requested** To be given access to my money, access to court and where Mass Dec. rights and Mass General Laws chp. 127 s 3 mandates that you can not deprive my of money. And I want my property free from cruel and unusual punishment.

**Staff Recipient** Aucoin Ann Marie CO I

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 19-OCT-2004 **Decision Date** 21-OCT-2004 **Decision** DENIED

**Decision By** Nolan David F SUPERINTENDENT

**Reasons** I concur with the IGC. The Disciplinary Office was contacted and informed this office that the freeze of $179.00 on your account is a result of sanction from disciplinary report #22831. The sanction was lifted during the appeal process, and invoked once your appeal was denied. Your inmate transaction report was reviewed and confirmed that you have not paid this restitution. The Treasurer's Office was contacted and is aware of the error stating restitution is owed in the amount of $358.00, and in fact has only frozen your account for the amount of $179.00.

**Signature** [signature] **Date** 10/22/04

## INMATE RECEIPT

**Inmate's Name** NIEMIC KEITH **Institution** MCI CEDAR JUNCTION

**Number** W61426 **Appeal Received Date** 19-OCT-2004

**Staff Recipient** Aucoin Ann Marie CO I

**Superintendent's Signature**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

**Name** NIEMIC KEITH **Grievance#** 6043 **Institution** MCI CEDAR JUNCTION

**Commit No.** W61426 **Housing** DEPARTMENT DISCIPLINARY UNIT **Date Of Incident** 20041006 **Date Of Grievance** 20041006

**Complaint** Treasure Mary Stowe ~~upon contrivance with~~ captain Grossi are trying to extort me for money in violation of GL 265 & 25, and contrary to statute GL.c.127&3 by saying that I owe 179.00 on a d-report that has already been taken care of when it was initially 358.00. Acting Superintendant Mr. Steven Silva did notify the treasure's office that the restitution, and freeze had been taken care of (see exhibit 1&2. I was recently told by a DOC correctional employee that Captain Grossi had initiated that the treasurer reinstitute the old freeze on my account in retaliation for filing grievance #5434 aganist Mr. Grossi in which the DOC is now investigation. Treasurer Mary Stowe in violation of GL.c.274&7, did submit to me a recent regenerated d-report see the lower left hand corner of exhibit 8&3 in violation of GLc 268&13B and the actions of which are in violation of GLc 127&3 attached as exhibit 6 and my state and federal constitutional rights by knowing denying me access to court where I explicitly stated to Ms. Stowe several times that money that was recently put into my account is to pay for court fee's. see exhibits 3&4 see also exhibit 7. The combined actions of which are further in violation of GL.c. 12&11i& c.265&37, and usca const Amend B, by attempts to coerce, harrass and intimidate, where Captain Grossi is already a defendant in an ongoing civil action for attempted extortion for trying to procure me as an informant rat, against my will. I cannot access the U.S. Mails nor court by these actions.

**Remedy Requested** To immediatly be given access to my money pursuant to statute 127&3 and to not be harrassed, intimidated through coercion to stop litigation or grievances against Captain Grossi for his illegal conduct where in my money was already straiten out.

**Staff Recipient** Aucoin Ann Marie CO I

**Staff Involved**

**Signature**

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20041006 **Decision Date** 20041013

**Signature** Aucoin Ann Marie CO I

**Final Decision** DENIED

**Decision** The Treasurer's Office as well as the disciplinary office was contacted and this office has learned that there was an error in your account that the Treasurer is aware of. You owed restitution for a disciplinary report. Your appeal had not been decided so the money was lifted upon that decision. Once the appeal was decided, the restitution was placed back against your account. Although your restitution indicates you owe $358 you actually only owe $179. You have not yet paid this amount. The Treasurer is well aware of this issue and you will ONLY be charged for the $179.

**Signature** Ann Marie **Date** 10/13/04

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

Please return copy of Exhibits and this Request.

DEPARTMENT OF CORRECTION

INMATE REQUEST TO STAFF MEMBER

REC'D SUPT'S OFFICE
MCI CEDAR JUNCTION
2004 OCT 20 A 8:59

TO: Supt. David Nolan
(Name and Title of Officer)

DATE: 10-19-04

SUBJECT: State completely but briefly the problem which you desire assistance (give details)

Re: Grievance No. 6043, Appeal.

Dear Mr. Nolan,

Enclosed are (11) eleven papers of exhibits pertinent to the above Appeal, which illustrate my Fee/Restitution, was already taken care of, and pursuant to GLc 127§3 (Ex-6) DOC must give me access and safe keep my property/money only. Only Judicial Branch can order, and take money, upon Litigation

(Use other side of page if more space is needed)

ACTION REQUESTED: (State exactly how you believe your request may be handled; that is, exactly what you think should be done, and how.)

To have access immediately to my money to access court, and to pay for certified mail, because I am missing postage and I need proof of service that my mail leaves this prison Both Legal mail and Regular mail.

NAME: Keith Niemi

No.: W61426

Work Assignment: N/A

Living Quarters: DDU C-3

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)

DATE:

EXHIBIT 1

# COMMONWEALTH OF MASSACHUSETTS
# DEPARTMENT OF CORRECTION
## Inmate Transaction Report

**Date :** 20040618 11:35

Page : 1

Commit# : W61426

Name : NIEMIC, KEITH, ,

Inst : MCI CEDAR JUNCTION

Block : DEPARTMENT DISCIPLINARY UNIT

Cell/Bed : 243/C4

MCI CEDAR JUNCTION

Statement From 20040601

To 20040618

| Transaction Date | Type | Receipt # | Check No | Inst Name | Notes | Personal Income | Personal Expense | Savings Income | Savings Expense |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Total Transaction before this Period :** | **$962.07** | **$936.48** | **$0.00** | **$0.00** |
| 20040607 22:30 | CN - Canteen | 2909212 | | CJ | ~Canteen Date : 20040607 | $0.00 | $14.80 | $0.00 | $0.00 |
| 20040610 07:35 | IS - Interest | 2927796 | | CJ | | $0.06 | $0.00 | $0.00 | $0.00 |
| 20040610 08:46 | ML - Mail | 2939491 | 1857 | CJ | ~GEORGE CASTILLO | $50.00 | $0.00 | $0.00 | $0.00 |
| 20040614 08:18 | ML - Mail | 2948782 | | CJ | ~POSTAL MONEY ORDER/INMATE CLASSIFIED | $60.00 | $0.00 | $0.00 | $0.00 |
| 20040614 08:48 | ML - Mail | 2948917 | | CJ | ~NO NAME GIVEN | $10.00 | $0.00 | $0.00 | $0.00 |
| 20040614 10:01 | EX - External Disbursement | 2949789 | 31044 | CJ | ~EDWARD R. HAMILTON BOOKSELLER | $0.00 | $15.45 | $0.00 | $0.00 |
| 20040614 11:59 | EX - External Disbursement | 2950660 | 31043 | CJ | ~PRISON LEGAL NEWS | $0.00 | $18.00 | $0.00 | $0.00 |
| 20040618 08:45 | ML - Mail | 2974931 | 6193325 M. O. | CJ | ~LYNNE GOFFE | $100.00 | $0.00 | $0.00 | $0.00 |
| | | | | | | $220.06 | $48.25 | $0.00 | $0.00 |

| | Personal | Savings |
|---|---|---|
| **Balance as of ending date :** | $197.40 | $0.00 |

**Current Balances :**

| Personal | Savings | Freeze | Loan | Restitution | Sentence |
|---|---|---|---|---|---|
| $197.40 | $0.00 | $100.00 | $0.00 | $358.00 | $0.00 |

This was a system error - disregard - internal audit is aware and are working on it. This has = reflected when you rec'd the $100 on 6/18, the system automatically freeze that $ * But a "glitch" in the system removed your "old freeze" to cause ...

Karen
Inmate Accts

EXHIBIT 2

DEPARTMENT OF CORRECTION

INMATE REQUEST TO STAFF MEMBER

TO: M. Stowe, Treasurer DATE: 11-21-03
(Name and Title of Officer)

SUBJECT: State completely but briefly the problem which you desire assistance (give details)

Acting Supt. Stevan Silva sent noticed to this office that the freeze was to be lifted from my account, on 11-13-03.
But on 11-20-03 I was denied from mailing privileged certified mail Because it was written frozen Account. insufficient funds I also cannot order or receive the canteen order of stamps unless this gets straightened out.

(Use other side of page if more space is needed)

ACTION REQUESTED: (State exactly how you believe your request may be handled; that is, exactly what you think should be done, and how.)

I'd like access to my money as ordered by Steve Silva So I can MAIL out legal privileged mail and get my needed Stamps
Send 6 month print out of account thank you

NAME: Keith Niemic No.: W61426

Work Assignment: N/A Living Quarters: DDU C-1 132

C1 132

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space) DATE:

freeze has been lifted from your account. Mail officer was looking at wrong column or balance list when viewing your balance (s).




DEPARTMENT OF CORRECTION

M C I CEDAR JUNCTION
TREASURER'S OFFICE

INMATE REQUEST TO STAFF MEMBER

TO: Ms. STOWE TREASURER (Name and Title of Officer)

DATE: 9-27-04

SEP 29 12 06 PM '04

SUBJECT: State completely but briefly the problem which you desire assistance (give details)

Is there a reason why I cannot send $40.00 out of my account to US District court. with request to you previously unanswered?

(Use other side of page if more space is needed)

ACTION REQUESTED: (State exactly how you believe your request may be handled; that is, exactly what you think should be done, and how.)

CAN I send $40.00 out of my account 20.00 being a loan on the $100.00 now in there on freeze? – we do not "issue loans"

NAME: Keith Niemie No.: W61426

Work Assignment: Living Quarters: DDU

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space) DATE:

No as there is a restitution freeze of $179.00 on your account for Dreport # 22831. Your appeal was denied and d office froze you for this. Once you pay this restitution you will be able to send disbursements out, etc.

EXHIBIT 4

DEPARTMENT OF CORRECTION

INMATE REQUEST TO STAFF MEMBER

9-22-04

TO: Ms. Stowe Treasurer Walpole DATE: 9-21-04
(Name and Title of Officer)

SUBJECT: State completely but briefly the problem which you desire assistance (give details)

Dear Ms. Stowe, I am requested by the court (See attached) to pay a fee of $40.01 within ten days from 9-19-04. I have recently recieved $120.00 in the mail in which $100.00 was in the form of a check in which I must wait (10) ten days to clear. May I please acquire your assistance in the following:

AND I thank you for your time and consideration

(Use other side of page if more space is needed)

ACTION REQUESTED: (State exactly how you believe your request may be handled; that is, exactly what you think should be done, and how.)

I request to advance loan $20.00 from the $100.00 in my account so that I can please forward ($40.01) forty dollars and one cent to the U.S. District Court CASHIER, Suite 2300 1 Court House WAY Boston MA 02210 As I am serving a life sentence, and assure that 20.00 will be replaced for the loan

NAME: Keith Niemic No.: W61426

Work Assignment: N/A Living Quarters: DDU C-3

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space) DATE:




# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### MCI CEDAR JUNCTION

**Date:** 2004 0920 09:47:24 **Inmate Income Receipt** **Receipt #** 3395692

**Institution :** MCI CEDAR JUNCTION

**Unit :** DEPARTMENT DISCIPLINARY UNIT

**Block:** 235

**Commit # :** W61426

**Name :** NIEMIC, KEITH

**Type Of Transaction :** ML - Mail

**Date of Transaction :** 20040920

**Source :** Personal Check

**External Contact :**

**Amount :** $ 100.00

**Comments :** SCOTT NIEMIC

**Current Balances :**

| Personal | Savings | Frozen | Sentence Fees | Restitution Fees | Loan Amount |
|---|---|---|---|---|---|
| 123.41 | .00 | 100.00 | .00 | 358.00 | .00 |

EXHIBIT 6



## § 3. Money and property of prisoners; records; custody and return; transmission to court; interest on deposits

They shall keep a record of all money or other property found in possession of prisoners committed to such institutions, and shall be responsible to the commonwealth for the safe keeping and delivery of said property to said prisoners or their order on their discharge or at any time before. The superintendents of correctional institutions of the commonwealth and the superintendents and keepers of jails, houses of correction and of all other penal or reformatory institutions shall, upon receipt of an outstanding victim and witness assessment, transmit to the court any part or all of the monies earned or received by any inmate and held by the correctional facility, except monies derived from interest earned upon said deposits and revenues generated by the sale or purchase of goods or services to persons in correctional facilities, to satisfy the victim witness assessment ordered by a court pursuant to section eight of chapter two hundred and fifty-eight B. Any monies derived from interest earned upon the deposit of such money and revenue generated by the sale or purchase of goods or services to persons in the correctional facilities may be expended for the general welfare of all the inmates at the discretion of the superintendent.

Amended by St.1962, c. 569; St.1994, c. 60, § 125; St.1996, c. 450, § 171.

### Historical and Statutory Notes

St.1861, c. 138.
P.S.1882, c. 222, § 1.
R.L.1902, c. 225, § 2.

St.1962, c. 569, an emergency act, approved June 19, 1962, added the second sentence.

St.1994, c. 60, § 125, approved July 10, 1994, and by § 315 made effective as of July 1, 1994, inserted the second sentence, and rewrote the former second sentence (now third), which prior thereto read, "Any interest accruing as a result of the deposit of such money may, by agreement with the prisoners concerned, be expended for the general welfare of all the inmates at the discretion of the superintendent".

St.1996, c. 450, § 171, an emergency act, approved Dec. 27, 1996, in the second sentence, substituted "two hundred and fifty-eight B" for "two hundred fifty-eight B".

### Code of Massachusetts Regulations

Correction department,
Inmate funds, see 103 CMR 405.01 et seq.
Inmate property policy, see 103 CMR 403.01 et seq.

### American Law Reports

Validity and construction of prison regulation of inmates' possession of personal property. 66 ALR4th 800.

### Law Review and Journal Commentaries

Criminal conviction and civil rights. (1962) 42 B.U.L.Rev. 110.

Search incident to incarceration. 30 Ann. Surv.Mass.L. 125 (1983).





### Library References

Convicts ⟹3.
Costs ⟹304, 310.
Criminal Law ⟹1220.
Prisons ⟹9.
WESTLAW Topic Nos. 98, 102, 110, 310.
C.J.S. Convicts § 4.
C.J.S. Criminal Law §§ 1759, 1761 to 1772, 1774 to 1786.
C.J.S. Prisons and Rights of Prisoners §§ 16, 20.

### Westlaw Electronic Research

See Westlaw Electronic Research Guide following the Preface.

### Notes of Decisions

Inventory searches 1

**1. Inventory searches**

To keep weapons and contraband from prison population is justification for preincarceration searches; this objective, however, does not justify inspection of contents of wallet if custodian is going to retain it. Com. v. Wilson (1983) 448 N.E.2d 1130, 389 Mass. 115.

Chapter 276, § 1 authorizing search to be made incident to an arrest only for purpose of seizing evidence of crime for which arrest has been made in order to prevent its destruction or concealment or for purpose of removing any weapon arrestee might use to resist arrest or to escape did not limit admissibility of evidence found during inventory search of defendant's wallet at county jail made pursuant to this section, requiring superintendents and keepers of jails to keep record of all money or other property found in possession of prisoners committed to such institutions; thus, motion to suppress lysergic acid diethylamide seized in the search of defendant's wallet as evidence of possession of lysergic acid diethylamide was properly denied. Com. v. Wilson (1983) 448 N.E.2d 1130, 389 Mass. 115.

Although demonstration that inventory search of defendant's wallet at county jail following arrest on charge of assault and battery by means of dangerous weapon was made pursuant to standard procedures could have been more detailed, routine nature of search was supported by trial court's finding that such searches are usual and by duty under this section of sheriff and his assistants to "keep a record of all money or other property found in possession of prisoners," and thus search of defendant's wallet was not unreasonable search in violation of his rights under U.S.C.A.Const. Amend. 4. Com. v. Wilson (1983) 448 N.E.2d 1130, 389 Mass. 115.

## § 4. Records of punishment by isolation

They shall keep a record of the name and number or other sufficient designation of every person punished by isolation, the day and hour when he was placed in isolation, the day and hour when released, the offense, and such remarks as may be necessary to complete the record. The commissioner shall ascertain whether the requirements of this section are observed.

Amended by St.1955, c. 770, § 14.

### Historical and Statutory Notes

St.1876, c. 61, §§ 2, 3.
P.S.1882, c. 222, §§ 4, 5.
R.L.1902, c. 225, § 3.
St.1916, c. 241, § 1.
St.1919, c. 350, §§ 82, 83.

St.1955, c. 770, § 14, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, in the first sentence, substituted "isolation" for "solitary imprisonment" in two places.

### Library References

Prisons ⟹9, 12, 13(5).
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 6, 16, 20 to 21, 25 to 27, 50 to 53, 55, 59.





- retrieve current, comprehensive history and citing references to a case with KeyCite

For more information on using Westlaw to supplement your research, see the Westlaw Electronic Research Guide, which follows the Preface.

*The section headings for Massachusetts General Laws Annotated have been editorially supplied.*

**Cross References**

Correctional institutions of the commonwealth, see c. 125, § 1 et seq.
Department of correction, generally, see c. 27, § 1 et seq.
General provisions relative to state departments, commissions, officers and employees, see c. 30, § 1 et seq.
Mental health legal advisors committee, volunteer legal assistance program, see c. 221, § 34E.
New England interstate corrections compact, see c. 125 App., § 1-1 et seq.
State administrative procedure, see c. 30A, § 1 et seq.

**Code of Massachusetts Regulations**

Correctional industries, department of corrections, see 103 CMR 455.01 et seq.

**Law Review and Journal Commentaries**

County jails and houses of correction. George F. McGrath, 9 Ann.Surv.Mass.L. 128 (1962).

Miranda as part of a prisoner's bill of rights: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 576.

Penal reform; powers and duties of department of correction. George F. McGrath, 2 Ann. Surv.Mass.L. 119 (1955).

Power of federal courts to order a state agency to cure a constitutional violation of another state agency: First Circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 316.

Requirements for state prison disciplinary hearings: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 533.

**Library References**

Prisons ⇐9.
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 16, 20.

**United States Supreme Court**

Confinement conditions and practices, custodial facilities, see Bell v. Wolfish, U.S.N.Y.1979, 99 S.Ct. 1861, 441 U.S. 520, 60 L.Ed.2d 447.

## § 1. Powers and duties of commissioner of correction

In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction, in this chapter called the commissioner, shall:

(a) designate, establish, maintain, and administer such state correctional facilities as he deems necessary, and may discontinue the use of such state correctional facilities as he deems appropriate for such action; provided that no state or county correctional facility named in paragraph (n) of section one of





chapter 125 shall be discontinued without specific authorization and approval of the General Court;

(b) maintain security, safety and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any such facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot or insurrection at any such facility, including but not limited to the development, planning, and coordination of emergency riot procedures with the colonel of state police, and take suitable measures for the restoration of order;

(c) establish and enforce standards for all state correctional facilities;

(d) establish standards for all county correctional facilities and secure compliance with such standards, if necessary, through the enforcement provisions of section one B of chapter one hundred and twenty-seven;

(e) establish, maintain and administer programs of rehabilitation, including but not limited to education, training and employment, of persons committed to the custody of the department, designed as far as practicable to prepare and assist each such person to assume the responsibilities and exercise the rights of a citizen of the commonwealth;

(f) establish a system of classification of persons committed to the custody of the department for the purpose of developing a rehabilitation program for each such person;

(g) determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer such persons to appropriate facilities and programs;

(h) establish training programs for employees of the department and, by agreement, other corrections personnel;

(i) investigate grievances and inquire into alleged misconduct within state correctional facilities;

(j) maintain adequate records of persons committed to the custody of the department;

(k) establish and maintain programs of research, statistics and planning, and conduct studies relating to correctional programs and responsibilities of the department;

(*l*) utilize, as far as practicable, the services and resources of specialized community agencies and other local community groups in the rehabilitation of offenders, development of programs, recruitment of volunteers and dissemination of information regarding the work and needs of the department;

(m) make and enter any contracts and agreements necessary or incidental to the performance of the duties and execution of the powers of the department, including but not limited to contracts to render services to committed offenders, and to provide for training or education for correctional officers and staff;



10

EXHIBIT 16



St.1939, c. 451, § 39, approved Aug. 10, 1939, in the third sentence, substituted "parole board" for "board of parole".

St.1955, c. 770, § 10, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, in the first sentence, substituted "each correctional institution of the commonwealth" for "the state prison, Massachusetts reformatory, state prison colony, state farm and reformatory for women".

### Library References

Prisons ⇐9.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 16, 20.

## § 7. Repealed by St.1954, c. 567, § 3

### Historical and Statutory Notes

St.1954, c. 567, § 3, an emergency act, repealing this section, was approved June 7, 1954.

The repealed section, which related to the parole board's powers and duties, was derived from:

St.1913, c. 829, §§ 1 to 3, 6.
St.1915, c. 35.
St.1915, c. 206.
St.1916, c. 241, §§ 1, 5.
St.1917, c. 201.
St.1917, c. 266, § 1.
St.1918, c. 214.
St.1919, c. 350, § 85.
St.1939, c. 451, § 40.
See c. 127, § 154.

## § 8. Reports of criminal cases by clerks of courts

Clerks of courts shall annually, on or before January fifteenth, make reports to the commissioner of all criminal cases commenced in the superior court in the several counties during the year ending on December thirty-first, and of all criminal cases entered therein on appeal during such time. Clerks of district courts shall annually, at the same time and for the same period, make like reports of criminal cases in which such courts have exercised jurisdiction, and shall state whether such jurisdiction was final or otherwise. Blank forms for such reports shall be prepared and furnished by the commissioner. Whoever refuses or neglects to make the report required of him by this section shall forfeit two hundred dollars.

Amended by St.1935, c. 48, § 1; St.1953, c. 319, § 18.

### Historical and Statutory Notes

St.1851, c. 216, § 2.
St.1852, c. 289, § 3.
G.S.1860, c. 14, §§ 11, 12, 15.
St.1881, c. 66.
P.S.1882, c. 219, §§ 34, 35, 37.
St.1882, c. 226, § 1.
R.L.1902, c. 222, § 6.

St.1935, c. 48, § 1, approved March 7, 1935, in the first sentence, substituted "January" for "October" and "December thirty-first" for "September thirtieth".

St.1953, c. 319, § 18, approved May 1, 1953, and by § 40 made effective Oct. 1, 1953, in the second sentence, deleted "and trial justices" following "district courts" and "or justices" preceding "have exercised".

Section 39 of St.1953, c. 319, provides:

"The powers and duties of trial justices shall hereafter be exercised and performed by justices of the district courts, and when used in any statute, rule or regulation the words 'trial justice' or any words connoting the same shall mean the justice of a district court, unless a contrary intent clearly appears. No party to a proceeding pending before a trial justice upon the effective date of this act shall lose any rights by reason of the abolishing of the position of trial justice."





### Library References

Clerks of Courts ⇐67, 69.
WESTLAW Topic No. 79.
C.J.S. Courts §§ 251 to 252.

## § 9. Monthly reports of arrests

The police commissioner of Boston, city marshals or chiefs of police and every officer making an arrest in a town not having a city marshal or chief of police shall make monthly reports to the commissioner of the number of persons of each sex arrested in their several towns. Such reports shall be classified according to offences. An officer who refuses or neglects to make such report shall be punished by a fine of fifty dollars.

### Historical and Statutory Notes

St.1882, c. 226, § 2.
St.1892, c. 290, § 3.
R.L.1902, c. 222, § 7.
St.1906, c. 291, § 10.

### Library References

Municipal Corporations ⇐181, 182, 183(5), 189(1) to 189(2).
WESTLAW Topic No. 268.

C.J.S. Municipal Corporations §§ 454 to 465, 471 to 472, 492 to 495, 497.

### Notes of Decisions

Public records 1

**1. Public records**

Even if certain records kept by police officers and employees are not public records, they are subject to being summoned before a proper tribunal in accordance with established rules of law. Dunn v. Board of Assessors of Sterling (1972) 282 N.E.2d 385, 361 Mass. 692.

Even if police monthly statistical reports to Commissioner of Corrections and to town selectmen are public records, inclusion in such reports of data derived from police arrest register and daily log did not make such subsidiary reports also public records available for review by the public. Town Crier, Inc. v. Chief of Police of Weston (1972) 282 N.E.2d 379, 361 Mass. 682.

All police records, whether public records or not, are subject to being summoned before a proper tribunal in accordance with established rules of law. Town Crier, Inc. v. Chief of Police of Weston (1972) 282 N.E.2d 379, 361 Mass. 682.

Police arrest register and daily log, entries in which were not made pursuant to requirement of law, were not "public records" and thus their public disclosure could not be compelled by writ of mandamus. Town Crier, Inc. v. Chief of Police of Weston (1972) 282 N.E.2d 379, 361 Mass. 682.

## * § 10. Corporate status of department for purpose of grants, gifts or bequests; site selection for new facilities; title to property

The department shall be a corporation for the purpose of taking, holding and administering in trust for the commonwealth any grant, gift or bequest made either to the commonwealth or to it for the use of persons under its control in any correctional facility of the department or for expenditure upon any work which the department is authorized to undertake. The department may accept, receive and use money, goods or services given for the general purposes of the department by the federal government or from any other source, public or private, and may comply with such conditions and enter into such agreements



12

EXHIBIT 7

## Orders on Motions

1:04-cv-11482-NMG Niemic v. Maloney, et al

**United States District Court**

**District of Massachusetts**

Notice of Electronic Filing

The following transaction was received from Weissman, Linn entered on 9/17/2004 at 12:52 PM EDT and filed on 9/16/2004

**Case Name:** Niemic v. Maloney, et al
**Case Number:** 1:04-cv-11482
**Filer:**
**Document Number:** 7

**Docket Text:**
Judge Nathaniel M. Gorton : ORDER entered granting [1] Motion for Leave to Proceed in forma pauperis. An initial partial filing fee of $ 40.01 is assessed pursuant to 28 U.S.C. s. 1915(b)(1). The remainder of the fee $139.99 is to be assessed in accordance with 28 U.S.C. s. 1915(b)(2). The Clerk shall return the complaint to the undersigned for screening on the merits pursuant to 28 U.S.C. s. 1915 (e)(2) and/or 1915A, and summonses shall NOT issue pending the completion of screening on the merits pursuant to 28 U.S.C. s. 1915(e)(2) and/or 1915A. (Weissman, Linn)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=9/17/2004] [FileNumber=671923-0]
[3f18b5ca9a405946f4bfd6e0a63ecf21040e84b85d15b8f7e5ccd62d7f3bf875858a
2f976ff02c7919b62e59b758765fd9ac68ae4d92d3dc4a11862b0b986cc7]]

**1:04-cv-11482 Notice will be electronically mailed to:**

**1:04-cv-11482 Notice will not be electronically mailed to:**

Keith Niemic
MCI Cedar Junction
P.O. Box 100
South Walpole, MA 02071

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEITH NIEMIC,
Plaintiff,

v.

MICHAEL MALONEY, ET AL.
Defendants.

CIVIL ACTION

NO 04-11482-NMG

NOTICE FOR PAYMENT OF PRISONER FILING FEE

To: THE TREASURER'S OFFICE AT MCI Cedar Junction AND TO ANY TREASURER'S OFFICE AT FACILITIES TO WHICH THE INMATE NAMED ABOVE MAY BE TRANSFERRED

PLEASE TAKE NOTICE THAT:

Plaintiff, a prisoner proceeding pro se and in forma pauperis, is obligated to pay the statutory filing fee of $150.00 for this action. See 28 U.S.C. § 1915(b)(1).

☒ Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff has been assessed the following:

- ☐ Full filing fee of $____ from available funds.
- ☒ An initial partial filing fee of: $40.01 due within ten (10) business days of receipt of this notice.
- ☒ Remainder of fee [$139.99] to be paid in accordance with 28 U.S.C. § 1915(b)(2) in monthly payments of 20% of the preceding month's income credited to the prisoner's account each time the amount in the account exceeds $10.00 until the filing fee is paid.

☐ Plaintiff has been without funds for six months and is currently without funds. Pursuant to 28 U.S.C. § 1915(b)(2), plaintiff is obligated to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account until the statutory filing fee of $ 150.00 has been paid in full.

The Treasurer's Office at the institution designated above is required to send to the Clerk of the Court the initial partial filing fee (if assessed) and monthly payments from plaintiff's prison trust account (or institutional equivalent) each time the amount in the prisoner's account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The monthly payments shall be sent on the last day of each month, beginning in the month subsequent to the date of this notice. The monthly payments shall continue until the balance of $ 150.00 is paid in full.

The prisoner's name and case number must be noted on each remittance. If a single check is provided in payment of filing fees for more than one prisoner, the amount to be allocated to each prisoner and case must be noted. All checks should be made payable to the "Clerk, U. S. District Court" and transmitted to:

U. S. District Court
Cashier - Suite 2300
1 Courthouse Way
Boston, MA 02210

TONY ANASTAS, CLERK

9/16/04
Date

By: s/ Linn A. Weissman
Deputy Clerk

cc: Plaintiff

EXHIBIT 8

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### DISCIPLINARY REPORT

**Inmate** NIEMIC, KEITH **Commit No** W61426 **Housing Unit** HOSPITAL

**Date** 09-SEP-2003 **D- Report No.** 22831 **Institution** MCI CEDAR JUNCTION

**OFFENSE(S) & CODE NO.:**

08-CONDUCT WHICH DISRUPTS
10-UNAUTHORIZED CONTROLLED SUBSTANCE

**Major** [X] **Minor** [ ]

**Description of Offense(s)**

On September 8, 2003 at approximately 5:35 p.m. inmate Keith Niemic provided a urine sample for urinalysis purposes. Upon performing a test of this specimen, a positive result was obtained for the presence of opiates and cocaine. Inamte Niemic was also evaluated by the on site Nurse Practitioner for medical evaluation and was found to have various needle marks noted to his bilateral antibiotic areas. An immediate review of his medical record noted no recent lab draws.

This specimen is being held in a secure area for evidence purposes. All proper authorities were notified.

**Has Inmate been placed on Awaiting Action Status** Yes [ ] No [X]

**Referred to DA** [ ] Yes [X] No **Referred to DDU** [ ] Yes [X] No

**Reporting Staff** David Brien C **Date** 09-SEP-2003 **Time** 14:37

**Days off** Fri Sat

**Shift** 7-3

**Shift Commander** William Grossi J **Date** 09-SEP-2003 **Time** 14:40

**Disciplinary Officer** Ernest Therien J **Date** 15-SEP-2003 **Time** 07:00

**Results** GUILTY

| Code Description | Sanctions | Start Date | End Date | # of Units | SS |
|---|---|---|---|---|---|
| 08-CONDUCT WHICH DISRUPTS | Loss Visits | 20031224 | 20040317 | 84 | |
| 10-UNAUTHORIZED CONTROLLED SUBSTANCE | Loss Telephone | 20031224 | 20040317 | 84 | |
| | Loss TV/Radio | 20031224 | 20040317 | 84 | |
| | Restitution | | 20031021 | 179 | |

**Reviewing Authority** William Grossi J **Date** 09-JAN-2004 **Time** 17:44

20040929 12:10




# COMMONWEALTH OF MASSACHUSETTS
# DEPARTMENT OF CORRECTION
## Inmate Transaction Report

**Date :** 20041007 10:16

Page : 1

| | |
|---|---|
| Commit# : | W61426 |
| Name : | NIEMIC, KEITH, , |
| Inst : | MCI CEDAR JUNCTION |
| Block : | DEPARTMENT DISCIPLINARY UNIT |
| Cell/Bed : | 235 /A |

MCI CEDAR JUNCTION

Statement From 20040601

To 20041007

| Transaction Date | Type | Receipt # | Check No | Inst Name | Notes | Personal Income | Personal Expense | Savings Income | Savings Expense |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Total Transaction before this Period : | $962.07 | $936.48 | $0.00 | $0.00 |
| 20040607 22:30 | CN - Canteen | 2909212 | | CJ | ~Canteen Date : 20040607 | $0.00 | $14.80 | $0.00 | $0.00 |
| 20040610 07:35 | IS - Interest | 2927796 | | CJ | | $0.06 | $0.00 | $0.00 | $0.00 |
| 20040610 08:46 | ML - Mail | 2939491 | 1857 | CJ | ~GEORGE CASTILLO | $50.00 | $0.00 | $0.00 | $0.00 |
| 20040614 08:18 | ML - Mail | 2948782 | | CJ | ~POSTAL MONEY ORDER/INMATE CLASSIFIED | $60.00 | $0.00 | $0.00 | $0.00 |
| 20040614 08:48 | ML - Mail | 2948917 | | CJ | ~NO NAME GIVEN | $10.00 | $0.00 | $0.00 | $0.00 |
| 20040614 10:01 | EX - External Disbursement | 2949789 | 31044 | CJ | ~EDWARD R. HAMILTON BOOKSELLER | $0.00 | $15.45 | $0.00 | $0.00 |
| 20040614 11:59 | EX - External Disbursement | 2950660 | 31043 | CJ | ~PRISON LEGAL NEWS | $0.00 | $18.00 | $0.00 | $0.00 |
| 20040618 08:45 | ML - Mail | 2974931 | 6193328/M.O. | CJ | ~LYNNE GOFFE | $100.00 | $0.00 | $0.00 | $0.00 |
| 20040623 10:48 | IC - Transfer from Inmate to Club A/c | 2989583 | | CJ | ~POSTAGE~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $6.95 | $0.00 | $0.00 |
| 20040623 11:24 | EX - External Disbursement | 2989629 | 31166 | CJ | ~WRITE A PRISONER.COM | $0.00 | $40.00 | $0.00 | $0.00 |
| 20040628 12:30 | IC - Transfer from Inmate to Club A/c | 3008518 | | CJ | ~POSTAGE~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $2.30 | $0.00 | $0.00 |
| 20040630 11:34 | EX - External Disbursement | 3017062 | 31256 | CJ | ~KRYSTAL NIEMIC | $0.00 | $10.00 | $0.00 | $0.00 |
| 20040702 11:13 | IC - Transfer from Inmate to Club A/c | 3033583 | | CJ | ~POSTAGE~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $2.67 | $0.00 | $0.00 |
| 20040702 11:39 | EX - External Disbursement | 3033637 | 31289 | CJ | ~EDWARD NIEMIC | $0.00 | $20.00 | $0.00 | $0.00 |
| 20040712 11:39 | EX - External Disbursement | 3066972 | 31369 | CJ | ~EDWARD NIEMIC | $0.00 | $50.00 | $0.00 | $0.00 |
| 20040713 17:10 | IS - Interest | 3075749 | | CJ | | $0.13 | $0.00 | $0.00 | $0.00 |
| 20040811 17:03 | IS - Interest | 3209772 | | CJ | | $0.13 | $0.00 | $0.00 | $0.00 |
| 20040823 22:30 | CN - Canteen | 3270556 | | CJ | ~Canteen Date : 20040823 | $0.00 | $14.80 | $0.00 | $0.00 |
| 20040825 09:34 | IC - Transfer from Inmate to Club A/c | 3277150 | | CJ | ~POSTAGE~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $1.06 | $0.00 | $0.00 |
| 20040830 22:30 | CN - Canteen | 3298366 | | CJ | ~Canteen Date : 20040830 | $0.00 | $14.80 | $0.00 | $0.00 |
| 20040901 08:33 | IC - Transfer from Inmate to Club A/c | 3304803 | | CJ | ~POSTAGE PER PROPERTY~POSTAGE - Z11~POSTAGE - Z11 | $0.00 | $1.52 | $0.00 | $0.00 |
| 20040907 22:30 | CN - Canteen | 3329624 | | CJ | ~Canteen Date : 20040907 | $0.00 | $14.80 | $0.00 | $0.00 |
| 20040908 16:50 | IS - Interest | 3335976 | | CJ | | $0.10 | $0.00 | $0.00 | $0.00 |
| 20040910 09:23 | EX - External Disbursement | 3362951 | 31969 | CJ | ~BOOK~EDWARD R. HAMILTON BOOKSELLER | $0.00 | $15.45 | $0.00 | $0.00 |
| 20040920 09:19 | ML - Mail | 3395692 | 7980425037 2/M.O. | CJ | ~SCOTT NIEMIC | $100.00 | $0.00 | $0.00 | $0.00 |
| 20040920 09:36 | ML - Mail | 3395853 | | CJ | ~EDWARD NIEMIC | $20.00 | $0.00 | $0.00 | $0.00 |
| | | | | | | $340.42 | $242.60 | $0.00 | $0.00 |

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
## Inmate Transaction Report

**Date :** **20041007 10:16**



Commit# : W61426

Name : NIEMIC, KEITH, ,

Inst : MCI CEDAR JUNCTION

Block : DEPARTMENT DISCIPLINARY UNIT

Cell/Bed : 235 /A

MCI CEDAR JUNCTION

Statement From 20040601

To 20041007

| | Personal | Savings |
|---|---|---|
| Balance as of ending date : | $123.41 | $0.00 |

**Current Balances :**

| Personal | Savings | Freeze | Loan | Restitution | Sentence |
|---|---|---|---|---|---|
| $123.41 | $0.00 | $0.00 | $0.00 | $358.00 | $0.00 |

EXHIBIT 13



The Commonwealth of Massachusetts
Executive Office of Public Safety
Department of Correction

50 Maple Street, Suite 3
Milford, Massachusetts 01757-3698
(508) 422-3300
www.magnet.state.ma.us/doc

Jane Swift
*Governor*

Jane Perlov
*Secretary*

Michael T. Maloney
*Commissioner*

Kathleen M. Dennehy
*Deputy Commissioner*

Ronald T. Duval
*Associate Commissioner*

TO: Michael T. Maloney
Commissioner

THROUGH: David Nolan
Director, Policy Development and Compliance Unit

FROM: Ronald T. Duval
Associate Commissioner, Administration

SUBJECT: Annual Review of Department Regulation 103 CMR 405 Inmate Funds

DATE: June 1, 2001

---

My office has reviewed department regulation 103 CMR 405, Inmate Funds. Pursuant to the recent Charles Welsh vs. the Department of Correction, Department of the State Police litigation, section 405.18 was declared ultra vires and void. Furthermore the judgement stated " The Department of Correction is enjoined from deducting DNA costs from wages earned by inmates or from any inmate account without consent and from freezing inmates' accounts for any reason associated with the assessment costs of collecting and processing DNA samples in absence of a court order or legislation expressly authorizing the seizure of the funds in question."

At this juncture, it is requested that the current regulation remain in effect withstanding the aforementioned judgement until such time said required changes can be ascertained through public hearing.

Approved: Michael T. Maloney
Michael T. Maloney, Commissioner

6-5-01
Date

405.02 Authorization

This policy is issued pursuant to M.G.L., c. 124, §1 (c), (q); c.127, §§3, 48, 48A, 49, 96, and 162; and M.G.L. c. 22E, §4, and Executive Order 399.

405.03 Cancellation

103 CMR 405.00 cancels all previous Department policies and procedures governing inmate accounts and money.

405.04 Applicability

103 CMR 405.00 applies to all employees, inmates and patients of Massachusetts correctional institutions and facilities.

405.05 Access to Regulations

103 CMR 405.00 shall be maintained within the central policy file of the Department and shall be accessible to all Department employees and inmates/patients. A copy of 103 CMR 405.00 shall also be maintained in each Superintendent's central policy file, fiscal office, and inmate library.

405.06 Definitions

Active Inmate - Refers to an inmate in the custody of the Department of Correction, i.e., has not been paroled or released, and has a status capable of transaction processing on the Department's Management Information System.

Cashbook - Journal posted manually to record the total of cash transactions processed through the Department's Management Information System.

Commissioner - The Commissioner of the Department of Correction.

Department - The Department of Correction.

Deposit - Process of transferring inmate account receipts to a depository approved by the State Treasurer.

Director of Administrative Services - The Central Office Administrator whose duties include the overall management of inmate funds.

405.07 Inmate Wages and Stipends

(1) It is the goal of the Department to have inmates maintain a respectable balance in their savings accounts at all times. This becomes increasingly important as inmates move toward lower custody status where they will eventually be required to expend their own funds for transportation, clothing, and food while they are establishing their work-release employment program.

The primary purpose for institutional savings is to insure that the inmate will be released with enough funds to aid in acquiring a residence and to be able to afford the expenses related to reintegrating in a community upon discharge or parole.

(2) Inmates may receive wages from the Commonwealth of Massachusetts or in the case of work-release programs, from private employers.

(3) If inmates receive wages from the Commonwealth of Massachusetts for work performed within the institution in which he is incarcerated, or for work performed in the Prison Industries Program, or any outside agency, he shall receive, at least monthly payment slips indicating the amount of money which will be credited to his personal and savings account.

In accordance with M.G.L. c. 127, s.48A, and with the exception of inmates serving a life sentence (1st or 2nd degree) or those declared sexually dangerous, at least 50 percent of an inmate's earned income received from the Department or any other state agency shall be credited to the inmate's savings account, the balance shall be credited to the inmate's personal account.

Inmates serving a life sentence (1st or 2nd degree) may be allowed to expend all liquid savings funds upon written approval of the Superintendent. Blanket requests for continuous transfer from savings to personal accounts for expenditure purposes should be documented in writing to the Superintendent. Approved blanket requests for continuous transfer may be rescinded at any time at the Superintendent's discretion. In the event of application for commutation or parole by said individual, approved blanket requests for continuous transfer shall be rescinded.

In accordance with M.G.L., c. 127, s.48A, inmates may expend liquid savings funds for circumstances of compelling need with the approval of the Superintendent. Such requests shall be submitted in writing to the Superintendent. No funds

| | |
|---|---|
| Skilled kitchen and maintenance workers | -Set wages as approved by the Commissioner<br>-50% forced savings |

Industries/Farm Services Hourly wages for inmates employed by Industries and Farm Services shall be determined by the percentage of the work force and degree of skill observed by the shop instructor or shop manager who reports directly to the Industries supervisor.

The hourly wages shall be as follows:

(a) Grade A - $1.00 an hour
(b) Grade B - $.75 an hour
(c) Grade C - $.50 an hour

A wage of $2.00 per day will apply to remaining workers not covered by specific categories delineated above.

In addition, based on job performance, longevity, and required skills, selected positions may be paid at $1.25/hour and $1.50/hour as determined by the Director of Industries.

Any exceptions from this pay scale shall require prior written approval from the Commissioner. All such written requests shall be submitted through the Director of Administrative Services.

(8) General. Inmates who receive wages through a work-release program or through a program in which a private employer provides work within the institution are prohibited from receiving compensation directly from an employer. Work-release checks should be mailed directly by the work-release program employer to the institutional Treasurer. All pay stubs must be presented to the Treasurer/Fiscal Manager's office. The Treasurer will then make all deductions both mandatory and voluntary before releasing wages to the inmate.

However, those inmates participating in the PPREP Program may receive their pay checks directly. However, they are responsible to mail their check stub or a copy thereof and program payment to their program coordinator who shall:

(a) verify that proper deductions and payments have been made, e.g., state/federal taxes, child support, etc;

(2) Any amount voluntarily agreed to for family allotment and personal necessities while confined.

The institution Treasurer shall obtain written consent by the inmate before making any voluntary deductions.

405.10 Interest Income Earned From Inmate Funds on Deposit

The Department shall maintain accounts with the State Treasurer that consolidates all inmate funds both personal and savings in custody of the Department in order to maximize interest income. The Department will credit each active inmate's account with interest earned by these accounts on a monthly basis based on their share of the net average daily balance. Net average daily balance shall be defined as the inmate's average daily balance less the amount of secured loans from these accounts. In order to be credited with interest income for the current period, an inmate must be active in the system the day the interest is posted.

405.11 Receipt of Funds Procedure - Inmate Account

(1) The mail room officer, control room officer, or other designated position are the Department of Correction employees who first receive inmate funds (check/cash from a donor or an institution). These employees shall make out a receipt slip for all receipts including checks received through the mail. These employees are also responsible for delivering all checks/cash to the Treasurer or Fiscal Manager.

(2) The procedures the mail room officer, control room officer, or designee shall follow are:

(a) Make out numbered receipt slip copies: (form DOC-CI-SECC-1)

(1) Treasurer's officer (cashier/account clerk)
(2) Receipt
(3) Donor
(4) Control/mail officer's receipt book (auditor)

(b) Deposit in strong box or Treasurer's office:

(1) Receipt slips to cashier (accounting clerk)
(2) Cash/checks to person preparing deposits (Treasurer's office)
(3) The Treasurer/Fiscal Manager shall take the cash/checks and:

(2) Persons receiving cash shall have no access to accounting records.

(3) Incoming receipts shall be controlled by someone other than those having access to cashbook or accounting records.

(4) Incoming mail shall be opened by a person without access to cash receipt records (i.e., Mail Room Officer).

(5) All receipts must be deposited intact.

(6) Cashing of checks from daily receipts is prohibited.

(7) Someone other than the person recording case receipts (i.e., Accounting Clerk) shall prepare the deposits (i.e., Treasurer). The duties of this person (Treasurer) shall be such that he has no access to the inmates' accounts and monthly bank statements.

(8) Specific persons shall be responsible for receipts from the time cash is received until it is deposited.

(9) Persons handling cash (i.e., Mail Room Officer Control Room Officer) shall not be able to obtain access to an inmate's accounts.

(10) When posting, always use the date of the source document (i.e., receiving slips for receipts, checks for disbursements).

405.13 Disbursement of Funds Procedures - Inmate Account

(1) Whenever an inmate wishes to initiate the withdrawal of funds from his personal account, he shall fill out a withdrawal/issue slip. These slips shall be made available to the inmates at designated area(s) within the correctional institution and when filled out shall include:

(a) Date
(b) Amount to be withdrawn (marked cash or check/payee)
(c) Purpose
(d) Inmate's signature

(2) An individual(s) designated by the Superintendent shall be responsible for submitting and approving the withdrawal/issue slip to the Treasurer's office. The Accounting Clerk/Cashier shall take the withdrawal/issue slip and:

(3) No checks shall be made payable to cash.

(4) All checks shall be pre-numbered.

(5) All disbursement shall be substantiated, signed issue/withdrawal slips.

(6) All such supporting documents shall be canceled in such a manner as to preclude their use a second time.

(7) A monthly bank reconciliation will be centralized for all DOC inmate funds on deposit.

(8) Monthly bank reconciliation will be made independently of the facilities recording inmate transactions.

(9) Petty cash funds shall be maintained on an imprest basis with the same standard documentary evidenced as for other disbursements.

(10) Voided checks must be appropriately filed and retained in accordance with the guidelines established by the Records Conservation Board.

(11) Authorized signatures shall be limited to employees having no access to cash receipts.

(12) The signing of checks in advance of actual need shall be prohibited.

(13) Supporting documents shall accompany checks submitted for signature.

(14) Only the Treasurer of Assistant Treasurer shall have access to the petty cash fund.

(15) Petty cash disbursements shall be approved by the Superintendent or designee.

405.15 Disposal of Money Seized as Contraband

Any money found in the possession of an inmate which is in excess of an amount authorized by the Superintendent shall be confiscated, and a disciplinary report written. The contraband shall be forwarded to the Superintendent who shall insure the money is credited to the inmate's savings account.

405.16 Outside Donations to Inmates

may be expended by the inmate. The Superintendent may continue to withdraw one-half of the money earned by an inmate while incarcerated or any unearned funds as they accumulate until full restitution is made. All of the money accumulated by a sexually dangerous inmate or an inmate serving a life sentence may be withdrawn until full restitution is made. The inmate may, at any time, consent to voluntary reimbursement in accordance with 103 CMR 405.17(1) and (2), execute a consent form to this effect. Should the inmate so consent and execute the consent form, the Superintendent shall rescind the impoundment order.

(5) In any case where the disciplinary process has resulted in an order of restitution as a sanction for costs incurred by the Commonwealth, the Superintendent may, at his discretion, reduce the amount of restitution to the extent he deems appropriate.

(6) The above provisions 405.17(1)-(5) may not apply to patients at the Bridgewater State Hospital, since they are not subject to disciplinary hearings.

405.18 Court Assessments and Other Authorized Assessments

(1) Court Assessments Any and all funds in an inmate's personal or savings account may be expended by the superintendent to satisfy an amount ordered by a court including restitution, fines, victim witness assessments, court costs, etc., notwithstanding the provisions of 405.17 and regardless of inmate consent.

(2) Other Authorized Assessments An inmate who is the subject of any authorized assessment, including but not limited to, the cost of preparing, collecting, and processing of DNA samples and other legislatively authorized assessments, may consent to having funds debited from his savings and personal accounts to satisfy such assessments.

(a) If an inmate is not considered indigent at the time of a DNA test or other assessment and has funds to cover the full cost of the test or assessment, the inmate shall be required to pay the amount owed in full.

(b) If an inmate is not considered indigent at the time of the DNA test or other assessment but does not have sufficient funds to cover the full amount owed, the inmate shall be required to make a partial payment using all available funds, both personal as well as savings over and above the $100.00 minimum required in the inmate's institutional savings account. The superintendent may order the impoundment of the

instead of the individual institutions and shall be accomplished on a system-wide basis (CR form).

405.21 Release of Money Upon Parole or Release from the Department's Custody

(1) Upon parole or release from the Department's custody, inmates will receive all monies in their personal and savings accounts, including applicable interest accrued, provided that they have relinquished all state property, and have signed the control room cash receipt book. For purposes of this transaction "paroled or released" is defined as the authoritative discharge of confinement from a Department of Correction facility. If the inmate questions the amount and circumstances of the monies in the remarks section of the receipt, action should then be initiated immediately by the Treasurer to bring about a resolution of the amount in question. All monies in an inmate's personal and savings account shall be delivered to the inmate in the form of a check. Only under certain mitigating circumstances, as approved by the Superintendent, may cash be used. If the inmate does not have at least $50 in combined personal and savings funds upon release, funds may be subsidized from the institutional budget, i.e., object code R12, subsidiary to sum $50. Any inmate-authorized debts owed to the institution may be deducted from this amount before the actual issuance of final funds.

(2) All monies arriving at the facility after the parole or release of an inmate shall be forwarded to his new address after deduction for amounts loaned to the inmate upon release (i.e., gate fee).

405.22 Audits of Inmate Account Records

The Department of Correction Internal Audit Division shall audit each institutional inmate fund whenever there is a change of a Treasurer/Fiscal Manager responsible for the fund.

405.23 Monthly Reports

(1) A Proof of Inmate Fund Trial Balance reconciles the inmate cashbook to the Department's Management Information System. (Attachment F). The original copy shall remain on file at the institution and a copy forwarded, via the Management Information System, to the DOC Internal Audit Division.

(2) A Reconcilement of Inmate Fund Bank Accounts reconciles the local depository account and the Department's centralized disbursement account (Attachment G). The original copy shall

Each Superintendent shall be responsible for implementation of this regulation and for the development of any and all necessary and appropriate institution policies and procedures.

405.28 Review Date

This policy shall be reviewed annually from the effective date by the Commissioner or his designee. The party or parties conducting the review shall develop a memorandum to the Commissioner with a copy to the central policy file indicating that the review has been completed. Recommendations for revisions, additions or deletions shall be included.

405.29 Severability Clause

If any article, section, subsection, sentence, clause or phrase of these regulations is for any reason held to be unconstitutional, contrary to statute, in excess of the authority of the Commissioner or otherwise inoperative, such decision shall not affect the validity of any article, section, subsection, clause or phrase of these regulations.