UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

KEITH NIEMIC
     Plaintiff
V.

DAVID NOLAN ET AL
     Defendants

CIVIL ACTION NO. 04-11482-NMG

DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
   KEITH NIEMIC declares under penalties of perjury:

1. I am plaintiff in this case. I make this declaration in support
of my motion for a temporary restraining order and a preliminary
injunction to ensure that I recieve necessary medical care, and
to ensure that I recieve my legal property necessary for adequate
court access, as well as ensuring that I recieve my address book
to contact family, friends and law offices, including seized personal property
so that defendants do not dispose of them contrary to statute.
(see EXHIBIT 1, attached MASS. GEN. LAW chap. 127 § 3)

2. As set forth in the complaint in this case. I was coerced and
threatened by force, and physically assaulted by prison staff on Sep-
tember 8, 2003 regarding a forced medical evaluation that was for
informational purposes only, resulting in the deprivation of an
already prescribed Hepatitis C Liver treatment, imposition of an
$179.00 fine, and denial of due process, and legal materials necessary
to adequately access court to litigate the matter.

3.   On June 13, 2005 after recieving brief medical treatment consisting of sutures, for several stab wounds and a herniated disk from an altercation in 3-Block "Walpole", defendant Pat Mulvey did take from me my personal address book, containing all of my family, friends, and post conviction attorney's addresses and phone numbers, which also contained 21 postage stamps, who then placed me in 10 Block segregation on Awaiting Action Pending investigation.

4.   After filing sick slips for approximately 20 days requesting to see a Dr. due to extreme pain, and innability to walk or stand properly, I did initiate a Hospital Services Unit, Emergency on July 9, 2005 due to severe back and leg pain where I remained untill July 18, 2005 in which I was recieving prescribed steroids, substantial pain relief, and was given x-rays.

5.   On July 25, 2005 while again residing back in 10 Block segregation, I was escorted to Lemuel Shattuck hospital for an MRI, which did confirm that I have a deteriorated disk of the P.4 + P.5 vertebrae.

6.   The defendants in this case were in reciept of service of process by the U.S. Marshals service approximately during the time of May 20, 2005, and June 8, 2005. (see EXHIBIT-2, attached process reciept and return for defendants David Nolan, and Arthur Brewer)

2

7.    On July 26, 2005 I was awoken in the early morning hours and along with several other inmates in 10 Block segregation were shipped to shirley MASS. at the Souza Baranowski Correctional Center, where we were all denied the reciept of all our prescribed medications, (those of us recieving meds,) and placed in special management units ("smu") where all of us prisoners were denied medical treatment for already existing medical conditions, and I was missing both legal, as well as personal property, as did other inmates, whereupon I did address such matters to my Post conviction attorney Ms. Deirdre L. Thurber via correspondence, who in turn addressed the matter to assistant Deputy Commissioner John Marshall, (see EXHIBIT 3, attached CC: correspondence)

8.    On July 27, 2005 due to lack of medical treatment and lack of medical screening upon arrival to SBCC my legs did go numb and go out underneath me in which I fell to the floor causing undescribable pain, and exasperating my herniated disk condition, necessitating several guards to carry me on a gurney to the smu Nurses station in an emergency, where the nurse on call, did only take my vital signs, directing the guards to bring me back to my segregated cell without a diagnosis or evaluation by a physician, physicians assistant, or Nurse Practitioner in contravention with the mandates set out in MASS. D.O.C. Medical

Services Policy, 103 DOC 6.30. (see EXHIBIT-4, attached pertinent portions of policy, and Dept. of Public health minimum standards Governing the conduct of physical Examinations in Correctional facilities). (see also EXHIBIT-3)

9.     Since plaintiffs arrival to the SBCC he has been unable to contact his family by phone, or correspondance, some of whom did recently move, and some of whom did have a visit scheduled at walpole; due to defendant Pat Mulvey's failure to return my address book, in which the institutional Grievance Coordinator at walpole, defendant Ann Marie Aucoin did approve my grievance on the matter (No. 11617) on June 28, 2005, asserting that "The address book is being returned to you from the IPS unit." (see EXHIBIT 5, attached grievance approval)

10.     Because defendant Pat Mulvey did seize my address book with stamps therein (21-37¢ stamps) on 6-13-05 my verified complaint for damages regarding the D.O.C. breach of Hoffer v. Fair, SJC #85-71 class consent decree stipulation contracts to fully comply with 103 CMR 421 due process for all segregation unit prisoners at walpole; has been dismissed because I was unable to call home to request my family to send $10.00 filing fee to Suffolk superior court by July 9, 2005. see (EXHIBIT 6, attached Judgment-Dismissal)

11.    Although defendant Superintendent of walpole David Nolan refused to return to me my address book upon a written request dated approximately June 19, 2005, in which I wanted to contact my family to let them know that I was stabbed, I did file a grievance appeal addressed to him dated July 28, 2005 regarding grievance approval above at ¶9 demanding the return of my address book. (See EXHIBIT 7, attached correspondence of Nolan, and grievance Appeal No. 11617)

12.    At the present moment, all of my pertinent material documents for the above entitled matter all of which does substantiate a great majority of the factual allegations set forth in my verified complaint, are in legal storage at walpole, as we are only permitted to posess one cubic foot of legal material at a time pursuant to property regulations 103 CMR 403.09(h)    (see EXHIBIT 8, attached property policy)

13.    Because walpole has not sent my (4) four boxes of legal material, to me from long term storage, I cannot properly put forth facts in an affidavit in response/opposition to the U-MASS medical defendants declaration of intent to file summary Judgment, in their "Joint statement pursuant to Local Rule 16.1." Docket Report No. 49. (see EXHIBIT 9, attached Joint statement.)

5

14.    I do own, Ten books, in that they are: (1) Blacks Law Dictionary (4) MASS. Practice Summary of basic Law (2) MASS. Practice books on Evidence, (1) MASS. Rules of Court - State, (1) MASS. Rules of Court - Federal, and (1) English Dictionary, and did have pose-ssion of these ten books in my cell as authorized by property policy 103 CMR 403.10(7)(d); prior to being stabbed, and placed in 10 Block Segregation. (see EXHIBIT 8, attached 403.10(7)(d):)

15.    103 CMR 403.12(1); .13(1), .14(1)(2)(3), .15(1)(2), set forth in the inmate property policy are unconstitutional, denying in-mates Due Process, and liberty interest granted by statute. G.L. c. 127§3; in that the above illustrated sections, set forth with mandatory language in the policy, does mandate, and allow the confiscation of any and all personal property that is "deemed" contraband, by a property, or other officer, without any provisions that provide a quasi-Judicial hearing (Due Process) before the "deemed contraband" is disposed of. (see EXHIBIT 8, attached sections 12-15.)

16. MASS. GEN. LAWS. chap. 127§3; does state in pertinent part: "They shall Keep a record of all money or other property found in possession of prisoners committed to such institutions, and shall be responsible to the commonwealth for the safe keeping and deliv-ery of said property, to said prisoners or their order on their discharge or at any time before". (see EXHIBIT-1, attached statute 127§3)

6

17.   On information and belief, there is a custom at MCI-cedar-Junction walpole, that upon an inmate being transfered to DSU 10 Block, from population, if he has (10) ten books in his cell, he will only be given (7) seven of those ten books in 10-block, whereupon the inmates release from segregation, he may acquire the 3 books that were retained by the property officer,.

18.   upon my placement in DSU 10 Block on June 13, 2005 I was given (7) seven books, with the walpole property officer withholding (3) three MASS Practice books, 14A, 14B, and 19, as well as arbitrarily withholding my (2) sony headphones (1) sentry table top radio, and walkman radio, all of which the property officer did legibly write on a disposal form "Not yours," and who did send me a Property contraband Notification and disposal form on July 28, 2005 directing me to dispose of all the items addressed herein. (see EXHIBIT 10, attached contraband and disposal form)

19.   My name is on each personal item above at #18, in addition to my con No. W61426, is further engraved upon both headphones and both radios, as is my name, as well being clearly marked on my color T.V. and fan; all of those items of which, are not recorded on the Ten block property inventory form by property officer Gillette, in violation of policy 103 CMR.403.8. resulting in my filing grievance/grievance Appeal (see EXHIBIT 11, attached ten

7

block property inventory form, and grievance reciept 11699, for this matter; THE GRIEVANCE WAS DENIED BY DEFENDANT AUCOIN, AND IS CURRENTLY BEING APPEALED TO DEFENDANT NOLAN)

20. I do not have a job, nor any means of acquiring a steady income, as this court did allow me, leave to proceed 'IN FORMA PAUPERIS,' Docket Report No. 7.

21. On information and belief, I did seek assistance from my family in helping me obtain the above mentioned legal books, due to the continuous retaliatory, and harrassing conduct of the Law Library defendants Veglas and Solomon, both of whom constantly deny me effective court access for several pending civil matters. (see EXHIBIT 12, attached grievance reciept 11697, for denial necessary legal materials inter alia)

22. On information and belief all of the facts set forth herein regarding denial of adequate medical attention, confiscation of my address book and stamps, seizing and contrabanding both my personal and legal material, in addition to randomly being transferred to another prison in which I have no means of contacting my family is retaliatory, for my filing complaints (see EXHIBIT 13 attached 'NOTIFICATION AWAITING ACTION/ADMIN. SEG. STATUS)

23. Because Defendant Mulvey will not give me my address book and stamps I cannot notify my family to recieve, or retrieve

8

the items deemed to be contraband, pursuant to 403.14(1)(a)(b), thereby leaving my property to be disposed of as seen fit by the defendants. (See EXHIBIT 8  403.14)(and EXHIBIT 10)

24.  I am housed inside a smu segregation cell, that has no handicap railings, and anytime that I am removed from this cell I am handcuffed behind my back with leg Irons on, the pain is so excruciating that I have not been able to go out-side for exercise, and I can no longer stand in the shower with-out my legs buckling, and being denied crutches to support my-self, I can no longer take showers and so far have been 5 days without one, due to worsening numbness in legs, and pain in back.

25.  I am suffering undescribable pain, and irreparable harm in the form of continued physical and mental pain and suffering and an increasing risk of possible paralysis, and that my lower half of my body will never be the same again and restored to its full usefulness because I am not being given physical ther-apy, nor are canes, crutches, or wheel chairs being given to me for easier mobility, as I've further been denied a back brace, and effec-tive pain management, and I am forced to sleep on an uneven plastic cover mattress, as well as having to retrieve my food at the door and manage to bring that and liquids to the desk at the opposite end of the cell without support; in addition to the fact that I cannot contact my family or loved ones to confide in, and seek advocacy help.

9

26. Defendant Arthur Brewer M.D. is the U-MASS medical for Prisons, Program Director, he is responsible for overseeing the provision of contracted health care for U-MASS through all of the MASS. D.O.C. facilities, and is responsible for overseeing the scheduling of medical appointments outside of prison, when a prisoner needs specialized treatment or evaluation.

27. Defendant Kathleen Dennehy is currently the commissioner of corrections in Boston, she was formerly the Deputy Commissioner. She is responsible for providing adequate health care to all MASS prisoners, and responsible for promulgating and maintaining statewide departmental regulations regarding the right and privileges of all MASS. prisoners. (See EXHIBIT 14, attached M.G.L. c. 124 §1 (a)-(s);)

28. Together these defendants have the responsibility, for providing the plaintiff the necessary medical care, housing, physical therapy, as well as the ability to arrange it. (See EXHIBIT 14)

29. Defendant Dennehy, as acting commissioner is responsible for the safe keeping, and delivery of plaintiffs personal/legal property to him.

30. For the reasons set forth in the memorandum of law filed with this motion, the plaintiff is entitled to a temporary Restraining order requiring the defendants to arrange for an examination and plan of treatment by a qualified specialist and to a preliminary injunction

requiring the defendants to carry out that plan of treatment.

31.   For the reasons set forth in the memorandum of law filed with this motion, the plaintiff is entitled to a temporary Restraining order requiring defendant Dennehy to arrange for safe keeping of all plaintiff's personal property, and to a preliminary injunction requiring defendants to safe keep all such property, and to deliver said property to plaintiff, and replace what is lost/destroyed.

32.   For the foregoing reasons, the court should grant the plaintiffs motion in all respects.

Pursuant to 28 U.S.C. 1746, I declare under Penalty of perjury that the foregoing is true and correct.

Keith Niemic
Keith Niemic
August 5, 2005.

11