*EXHIBIT 4*



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Health Services Division*
*P.O. Box 426*
*Bridgewater, MA 02324*
*Phone: (508) 279-8612*
*Fax: (508) 279-8651*
*www.mass.gov/doc*

**Mitt Romney**
Governor

**Kerry Healey**
Lieutenant Governor

**Edward A. Flynn**
Secretary

**Kathleen M. Dennehy**
Commissioner

**James Bender**
Acting Deputy Commissioner

TO:      Kathleen M. Dennehy, Commissioner

FROM:    Susan J. Martin, Director

DATE:    August 31, 2004

RE:      **IMPACT STATEMENT**
         **POLICY #:**            103 DOC 630
         **TITLE:**               Medical Services
         **REVIEWING AUTHORITY:** Susan J. Martin

As a result of my review of the aforementioned policy, I am recommending you amend the current policy. The revisions will have the following impact on the budget and training requirements if you chose to approve the revised policy.

|  | CURRENT | PROPOSED |
|---|---|---|
| **BUDGET** | | |
| Equipment: | No impact | No impact |
| Supplies: | No impact | No impact |
| Maintenance: | No impact | No impact |
| Training: | No impact | No impact |
| Staffing: | No impact | No impact |
| Dept. Database (if applicable) | No impact | No impact |
| Other: | No impact | No impact |
| **TRAINING** | | |
| Hours: | No impact | No impact |
| Who is to be trained: | No impact | No impact |
| Type of training: | No impact | No impact |
| **COLLECTIVE BARGAINING IMPACT** | No impact | No impact |
| **INMATE MANAGEMENT SYSTEM (IMS) IMPACT** | No impact | No impact |

Printed on Recycled Paper

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF CORRECTION (DOC)
HEALTH SERVICES DIVISION
103 DOC 630
MEDICAL SERVICES
TABLE OF CONTENTS

630.01    Treatment Philosophy ............................... 2
630.02    General Policy ..................................... 2
          Access to Health Care (Procedure Required) ......... 2
630.03    On-Site Physical Examination by Outside Physician
          (non-DOC, non-contractual provider physician) ...... 4
630.04    Outpatient Health Services Units (OHSU) ............ 5
630.05    Inpatient Health Services Units (IHSU) ............. 6
630.06    Medical Entrance Screen (Procedure Required) ....... 7
630.07    Ectoparasite (Scabies and Lice) Control Guidelines .. 9
630.08    Inmate Health Orientation .......................... 9
630.09    Intake Physical Examination ........................10
630.10    Sick Call (Procedure Required) .....................11
630.11    Periodic Physical Examinations .....................12
630.12    Specialty Consultations ............................13
630.13    Authorized/Unauthorized Health Care for inmates in/on
          Pre-Release, Release Programs ......................14
630.14    Inmate Co-Payment of Medical Services ..............15
630.15    Emergency Services .................................15
          Medical Disaster Plans .............................15
          Disaster Box .......................................16
630.16    Intra-System Transfers .............................16
630.17    Inmates in Segregation (Procedure Required) ........18
630.18    Use of Therapeutic Restraints ......................19
630.19    Refusal of Treatment at a Department Facility
          (Procedure Required) ...............................19
630.20    Refusal of Treatment at an Outside Hospital or Outside
          Clinic .............................................20
630.21    Release Procedures .................................21
Attachment A: Sample Letter from the Director of Health Services....23
Attachment B: Physician Release for Outside Medical Services........24
Attachment C: Inmate Release for Outside Medical Services...........25
Attachment D: 105 CMR 205 Standards Governing Physical Examinations.26
Attachment E: Code 99 Red Bag Contents..............................31
Attachment F: Medical Disaster Box Minimum Contents.................32
Attachments G - L are provided to facilities under separate cover...33
Attachment G: Medical History and Screening Form
Attachment H: Medical Restrictions Form
Attachment I: Classification Health Status Report Form
Attachment J: Intra System Transfer Form
Attachment K: Medical Entrance Inquiry Form
Attachment L: Release of Responsibility

| MASSACHUSETTS DEPARTMENT OF CORRECTION | DIVISION: HEALTH SERVICES |
|---|---|
| TITLE: MEDICAL SERVICES | NUMBER: 103 DOC 630 |

**PURPOSE:** The purpose of this policy is to define levels of medical care provided to inmates in all Department facilities.

**REFERENCES:** MGL c.124 §1(c), (q); MGL c.127, §16A
NCCHC Standards: P-07,P-09,P-17,P-28,P-29 P-31,P-32,P-33, P-34,P-37,P-38,P-39,P-40,P-41,P-44,P-45,P-46,P-52,P-66,P-68,P-70,P-71

**APPLICABILITY:** Public             **PUBLIC ACCESS:** Yes

**LOCATION:** Central Policy File, Facilities' Policy Files
Health Services Division Policy File
Inmate Libraries

**RESPONSIBLE STAFF FOR IMPLEMENTATION AND MONITORING OF POLICY:**
Director of Health Services
Superintendent

**PROMULGATION DATE:** 8/31/2004        **EFFECTIVE DATE:** 9/30/2004

**CANCELLATION:** This policy cancels all previous Department policy statements, bulletins, directives, orders, notices, rules, and regulations regarding inmate medical services.

**SEVERABILITY CLAUSE:** If any part of this policy is for any reason held to be in excess of the authority of the commissioner, such decision will not affect any other part of this policy.

630.01    Treatment Philosophy

Each facility shall provide access to medical, dental, and mental health services needed to maintain the basic health of inmates.

1.    Access to health care is an inmate's right and not a privilege.

2.    All health care services shall be provided in an atmosphere that assures privacy and dignity for both the inmate and the provider.

3.    All health care services shall be comparable in quality to that available in the community.

630.02    General Policy

1.    Each Superintendent shall develop written procedures for providing a system to insure unimpeded access to health care.  The procedure does not need to define levels of care, but the way that inmates access health care, including how they are informed regarding accessing health care (i.e., via orientation.)

Levels of health care to be provided are listed below. These levels of care may be provided either on-site, off-site in the community or at another Department facility.

a.    Self Care;
b.    First-aid;
c.    Emergency Care;
d.    Clinic Care;
e.    Infirmary Care;
f.    Hospital.

2.    The contractual medical provider shall ensure that continuity of care is maintained by assuring the proper flow of patient health information between the facility and other Department facilities or health care providers.

3.    The Department through the contractual medical provider shall ensure that the delivery of all health care is to be preceded by an explanation of the nature of such treatment.

September 2004                                            630 - 2

The Department and the contractual medical provider shall comply with all applicable statutes relating to informed consent procedures (M.G.L. c.111 §70E). The contractual medical provider shall have written guidelines for informed consent procedures.

4.   All treatment provided by contractual health care personnel shall be performed in accordance with Massachusetts General Laws, and the regulations of the following organizations/agencies:

a.   MA Boards of Registration in Medicine;
b.   MA Boards of Registration in Dentistry;
c.   MA Boards of Registration in Nursing;
d.   MA Boards of Registration in Pharmacy;
e.   MA Boards of Registration of Psychologists;
f.   MA Boards of Registration in Optometry;
g.   MA Boards of Registration of Dispensing Opticians;
h.   MA Boards of Registration in Physical Therapy;
i.   MA Boards of Registration in Podiatry;
j.   MA Boards of Registration of Social Workers;
k.   Massachusetts Department of Public Health;
l.   Massachusetts Department of Mental Health; and
m.   Any other applicable Federal or State Agency.

5.   Each facility shall have access to a contractual physician on-call 24 hours a day, seven days per week.

6.   The collection of health history information shall be conducted only by health trained or qualified health personnel. The collection of all other health appraisal data shall be performed only by qualified health personnel. This data shall be recorded only on current forms and/or electronic screens approved by the Director of Health Services or his/her designee and the Program Director of the contractual medical provider, and in accordance with 103 DOC 607, Medical Records.

7.   Each facility shall have provision for the immediate medical examination of any inmate suspected of having a communicable disease. All diseases covered by Department of Public Health (DPH) regulation 105 CMR 300 are to be reported by physicians to the local board of health in which the facility is located.  For further information on communicable diseases please refer to 103 DOC 631, Communicable Disease Policy.

8.  Generally, the contractual medical provider shall not be involved in the collection of forensic information from inmates.  Requests for such services should be forwarded to the DOC Health Services Division, who will contract another vendor for these services.  Any deviations shall be as governed by 103 DOC 620 Special Health Care Practices.

9.  All Facilities shall post a sign, in the intake area, instructing inmates on how to access care for immediate health needs.

10. The contractual medical provider shall develop written procedures for processing complaints regarding health care.  The procedure shall be communicated orally and in writing to inmates upon arrival in the facility.

630.03    On-Site Physical Examination by Outside Physician (non-DOC, non-contractual provider physician)

When a request is received for a non-contractual provider physician to examine an inmate all facilities shall instruct the person/inmate to submit a written request to the Director of Health Services.  The person shall also be informed that the written request is to include the reason for the examination, the name, address, and license number of the physician who will be performing the examination and the exact equipment to be used.  Please note that Inmates in pre-release status may request community based health care visits pursuant to 630.13.

The Health Service Division shall:

1.  Forward a letter, from the Director of Health Services, (attachment A) to the party requesting the examination, or to the physician who is to perform the examination, informing him/her of the following specific requirements of the DOC:

    a.  A waiver of liability (attachment B) must be signed by the physician and witnessed prior to the examination releasing both the Massachusetts Department of Correction and the contractual medical provider from any fees or medical liability.

    b.  The inmate involved must sign an authorization for the examination and waiver of liability (attachment C) releasing both the Department and the contractual medical provider from any costs or medical liability involved in or as a result of the examination. The inmate must also sign an authorization to release

medical information in order for the outside physician to examine the medical record (103 DOC 607, Medical Records, Attachment A & B).

    c.    The outside physician will be informed that s/he may perform only a non intrusive examination; may write recommendations on a consultation form; that neither the Department nor the contractual medical provider is obligated to comply with any consultation recommendations; that consultation reports will be reviewed by the on-site senior physician and that they may not write any orders or notes in any part of the medical record.

3.    The Health Services Division will contact the Board of Registration which governs physicians to confirm the current licensure of the physician to perform the examination and to confirm that there are no restrictions on his/her license to practice medicine.

4.    Upon completion of the steps one through three above the Health Services Division will approve or deny the request.

5.    The Health Services Division will contact the Health Services Administrator, at the facility involved, to arrange a date for the approved examinations, entry of physician, and notification of facility administration.

630.04    <u>Outpatient Health Services Units (OHSU)</u>

1.    Each facility Health Services Unit shall have a contractual physician who possesses a current, valid, unrestricted license to practice in Massachusetts and shall meet the following requirements:

    a.    Is a graduate of a Liaison Committee on Medical Education (LCME) or American Osteopathic Association (AOA) approved medical school in the United States or Canada or an international medical graduate who has completed either a fifth pathway year or a valid Educational Commission of Foreign Medical Graduates (ECFMG) certificate; and

    b.    Has completed an Accreditation Council for Graduate Medical Education Approved Residency Program in the United States;

    c.    Physicians designated as site medical directors shall be board certified in family practice, internal medicine, preventive medicine, infectious diseases, surgery, or emergency medicine.

2.  Nursing and/or paramedical services shall be provided under the direct supervision of a registered nurse and/or physician assistant and/or nurse practitioner.

Those IHSUs that offer infirmary care shall provide 24 hour nursing service, 7 days a week.

3.  All orders for care are signed or co-signed by a contractual physician.

4.  Admission and Discharge to the IHSU, that offer Infirmary care, shall be initiated only upon the order of a licensed contractual physician.

5.  All IHSUs shall have clinically trained health care personnel on site 24 hours per day, 7 days a week.

6.  The contractual medical provider shall establish a manual of nursing care procedures/protocols.

7.  A separate and complete medical record shall be generated for each patient admitted to an infirmary IHSU, other than at Bridgewater State Hospital (BSH).

8.  Physicians shall make daily rounds (including weekends) of all patients in the infirmary.

9.  Meals shall be served to patients within the IHSU.

10. All patients in IHSUs, that offer infirmary care, shall be within sight or sound of a health care staff member at all times.

630.06   Medical Entrance Screen

1.  Each Superintendent shall develop a procedure to identify all new arrivals at the facility. All inmates shall be medically screened prior to placement in the general population by qualified contractual health care personnel. All findings are to be recorded on a screening form. At facilities utilizing the Inmate Management System (IMS), the Mental Health/Substance Abuse History, Medical Orders, and Restrictions/Special Needs screens shall be completed. These screens shall subsequently be updated as necessary.

2.  The medical history and screening form shall include the following (attachment D, 105 CMR 205):

630.07    Ectoparasite (Scabies and Lice) Control Guidelines

Each Superintendent, in conjunction with the Health Service Administrator (HSA), will develop procedures for the examination for lice and for delousing.

1.    Inmates will be screened for scabies and lice at the time of admission or transfer to each facility (see medical history and screening form, attachment F). The procedure should state who is responsible for this screening and how it is documented.

2.    Treatment will be carried out as ordered by the physician on an individual basis. The procedure to carry out physician orders should be detailed in site-specific procedure, including correction staff involvement.

3.    Treatment will not be initiated on female inmates until pregnancy is ruled out.

4.    Inmates and staff will receive health care education material related to ectoparasite when indicated. Materials should be maintained in contractual medical provider infection control manual. The procedure should specify circumstance that indicates the need for this material to be distributed and how distribution is accomplished.

5.    Facility health and safety officer will be notified when ectoparasite control measures are needed in specific housing units. Procedure should detail notification process and action to be taken by correction staff to carry out necessary measures.

6.    Personal clothing, bedding, etc., of infested inmates will be placed in appropriately labeled laundry bag and laundered in hot water and machine dried. The procedure should detail direction as to who is responsible for tasks involved.

630.08    Inmate Health Orientation

Upon the arrival of an inmate at a facility, following commitment, return, or transfer, the facility shall provide the inmate with both verbal and written instructions that explain the procedures for gaining access to health care when needed. In the event that an inmate is unable to read, facility staff will make arrangements for the procedures to be explained verbally.

September 2004                                            630 - 9

5.    The contents of the physical examination shall be in compliance with the most recent DOC/Vendor contract, Massachusetts DPH regulations 105 CMR 205.200 (attachment D), ACA, NCCHC, and in the case of BSH, JCAHO Standards.

6.    Should an inmate's physical condition warrant special consideration for housing, job assignment or program participation, the contractual physician or his/her designee shall complete a Medical Restrictions Form (attachment H) and forward the form to the facility Classification Supervisor.

At facilities utilizing the Inmate Management System (IMS), medical restrictions shall be written on the Physician Order Sheet, and the data entered on the Medical Restrictions/Special Needs screen.

## 630.10    Sick Call

Access to daily sick call is an inmate's right and not a privilege.

1.    Each facility shall have written procedures for processing inmate health requests included in its sick call procedure.

2.    Each Superintendent, in conjunction with the HSA shall have written procedures for sick call conducted by a contractual physician or other qualified health personnel. The sick call procedure shall include how often and during what hours sick call is held at that facility. Sick call may be conducted on-site, off-site at another facility, or off-site at an outside health care facility.

3.    Sick call shall be available to each inmate five days per week. A physician shall be on site seeing patients/inmates a minimum of three and one half-hours per week per 100 inmates. Actual physician coverage for sick call at each site shall be determined by written agreement between the department and the contractual medical provider (staffing matrix). Nurse practitioners or physician assistants under the supervision of a physician can substitute for a portion of the physician's time seeing patients, with the approval of the director of health services.

4.    All requests must be processed and the Inmate seen by a RN or MD within twenty-four (24) hours or by the next regularly scheduled work day. All sick call slips must be sorted and triaged by a RN or MD as soon as possible, and

The Superintendent shall report to the Health Services Division, Regional Administrator any issues relative to the completion of the past due physical exams.

2.  A qualified health professional shall review medical records of inmates who are in age groups not requiring the periodic physical examinations on an annual basis. The review shall ensure that all inmates receive annual blood pressure checks and TB screening. At the discretion of the contractual health professional, the inmate shall be scheduled for a complete physical examination as deemed medically necessary.

3.  Upon completion of the physical examination, and all required/ordered laboratory tests, a qualified health professional shall discuss with the inmate results of the examination, its implications, and suggestions for further diagnosis and/or treatment.

4.  The content of all physical examinations shall be in compliance with the most recent DOC/Vendor contract, Massachusetts DPH Regulations 103 CMR 205, Section 205.200 (attachment D), ACA, NCCHC, and in the case of BSH, JCAHO Standards.

630.12   Specialty Consultations

Specialty consultations shall be available to each facility through on-site clinics, specialty clinics at the Lemuel Shattuck Hospital (LSH), other Department HSUs, or outside consultants. The specialty clinics shall include, but not be limited to, Orthopedic, General Surgery, ENT, Endocrinology, Dermatology, Optometry, Ophthalmology, Cardiology, Physical Therapy, OB-GYN, Podiatry, Radiology, Infectious Disease, and Mammography.

All consultation services shall be performed only at the request of a contractual physician and only after a consultation request has been prepared in writing and signed by the responsible contractual physician. A consultation summary will be expected from all specialists.

1.  On-site specialty clinics shall be scheduled at facilities as deemed necessary to meet the needs of the population by the HSA. The schedule of on-site specialty clinics will be approved by the Director of Health Services.

2.  All health care services for inmates (except for those provided on-site at the facility, at LSH or at another Department facility) must be approved in advance by the Director of Health Services or his/her designee. The only exception to this rule shall be medical emergencies and work related injuries covered by the inmate employer's Workman's Compensation insurance plans.

630.14    Inmate Co-Payment of Medical Services

A Co-Payment Policy exists which details the specific protocol for adhering to the policy in its entirety.  Please refer to Policy 103 DC 763 Inmate Medical Co-Payments.

630.15    Emergency Services

1.  Each facility will be provided with emergency medical and dental care twenty-four (24) hours a day, seven (7) days a week via an on-call physician service and/or on-site health care staff. The provision of these services shall be outlined in procedures written by the contractual medical provider that meet the specifications of Department policies 103 DOC 604, Outside Hospital Relations, and 103 DOC 105, Department Duty Officer.

2.  Each facility shall use the designation "Code 99" whenever a life-threatening emergency exists. Each facility shall have a written Code 99 Procedure applicable to its facility as required by 103 DOC 622, Death Procedures. An emergency "Code 99" or "red bag" will be available in HSUs for all emergency responses. (See attachment E for required contents of the Red Bag.)

3.  The Department's Medical Disaster Plan (see 103 DOC 560.04) shall be implemented upon the authority of the Director of Health Services, when s/he is notified by the Commissioner that a state of emergency has been declared.

    a.  Site specific Medical Disaster Plans, developed jointly by the facility's security staff and the contractual medical provider, must be approved by the Director of Health Services, as required in 103 DOC 604, Outside Hospital Relations, and 103 DOC 560, Disorder Management. The Director of Operations and Security must also approve each site specific Medical Disaster Plan.

September 2004                                                    630 - 15

c.   If medically indicated the inmate will be examined by a psychiatrist or mental health clinician, and/or physician, physician assistant or nurse practitioner. Current medical data will be obtained and reviewed.

d.   At sites not utilizing the Inmate Management System (IMS), when all pertinent medical and mental health information is gathered, the Classification Health Status Report form (attachment I) will be completed and sent to the facility classification supervisor prior to the scheduled appearance date.

2.   Whenever feasible the designated contractual health service personnel shall be notified at least three days prior to the transfer of an inmate.

Notification via Inmate Management System (IMS) is made by use of the Notification screen and/or Institution Schedule Query screen under Inter Institution Transfer.

3.   At the time of transfer, each inmate will be accompanied by his/her medical record, as set forth in DOC policy 103 DOC 607, Medical Records. Also, the sending facility's health service staff will make every effort to complete an Intra-system Transfer form (attachment J) prior to transfer to send with the medical record.

4.   If an inmate arrives at the receiving facility without the appropriate records and/or medications, the sending facility's health service staff shall immediately be notified.

5.   All intra-system transfers shall be screened by health trained or qualified health care personnel immediately upon arrival. An inquiry of whether the inmate is being treated for a medical, dental or a mental health problem shall be made. There shall also be an inquiry as to whether the inmate is presently on medication or whether the inmate has any current medical, dental or mental health complaints. Observation and listing of findings of general behavior, physical deformities or any signs of trauma shall be documented on the Medical Entrance Inquiry form (attachment K) or Intra-system Transfer form (attachment J). A recommended disposition based on observations, inquiry and findings must also be included (i.e. place in general population, place in general population with appropriate referral to routine or emergency health care services).

September 2004                                                    630 - 17

6.    If qualified health care personnel determine that a medical condition exists which is a contra-indication to admission or continued placement in segregation, this information must be documented in the medical record and immediately communicated to the superintendent or his/her designee or shift commander during non-business hours, for appropriate action, and to the Health Services Director.

630.18    Use of Therapeutic Restraints

Medical personnel shall utilize restraints pursuant to 103 DOC 650 Mental Health Services and only as a last resort for patients who are determined to be of danger to self or others. Under no circumstances shall therapeutic restraints be used as a disciplinary measure or as a convenience for facility medical staff.

630.19    Refusal of Treatment at a Department Facility

Each facility shall have written procedures for circumstances in which an inmate decides not to follow the advice of a health care professional.

1.    The following actions constitute examples of refusal of treatment by an inmate, but are not limited to these examples:

a.    Refusal to take medication prescribed by a contractual physician;

b.    Refusal to keep a medical, dental, or psychiatric appointment recommended by a qualified health professional.

2.    Whenever an inmate refuses treatment as defined above, s/he will sign a "release of responsibility" form (attachment L). A qualified health care professional shall witness the inmate's signature. In the event that the inmate refuses to sign the form two staff members shall sign the form as witnesses; at least one of whom must be a medical professional.

3.    The completed refusal of treatment form shall be included in the inmate's medical record. In all cases of refusal, documentation shall be written in the progress notes and on the release of responsibility form that the inmate was informed of the medical risks and possible consequences of his/her refusal.

September 2004                                                    630 - 19

3.  The completed refusal of treatment form shall be included in the inmate's hospital medical record and a copy sent to the Health Services Unit at the receiving prison facility.

4.  In any refusal situation hospital/clinic medical and mental health staff should attempt to persuade the inmate to consent to necessary treatment and clearly outline the risks of continued refusals. In most cases, the inmate can be persuaded to consent to treatment.

5.  In cases where the inmate continues to refuse treatment at an outside hospital, the attending or consulting physician shall contact the contractual medical provider to determine an appropriate course of action.

6.  Each DOC facility shall have a written policy for circumstances in which an inmate attempts to refuse an outside hospital/clinic appointment <u>prior</u> to being transported to the hospital or clinic. The policy shall address the following:

    a.  Procedures for notification of on-site facility health staff by security staff that an inmate is attempting to refuse a scheduled outside appointment prior to transport.

    b.  Procedures for notification of the responsible medical director or designee by on-site facility health staff that an inmate is attempting to refuse an outside appointment.

630.21   <u>Release Procedures</u>

Whenever an inmate is released from a maximum or medium security facility, the inmate shall, whenever possible, be given a physical examination prior to discharge. At a minimum security facility, the inmate's medical record will be reviewed and a health status report completed.

1.  When an inmate is discharged from a facility with on-site medical staff, a health status report should be completed by qualified health care staff, who should explain it fully to the inmate being discharged; a copy of the health status report should be provided to him/her. The original health status report shall be placed in the inmate's medical record. If, after completing the health status report, it is felt that a referral to an outside provider is necessary to continue medical care this shall be discussed with the inmate.

103 DOC 630 Attachment A

Date


Dear

Enclosed are release forms which are necessary to request consideration for an on site medical examination by an outside physician in a Massachusetts Department of Correction facility. Along with these releases it will be necessary for you to return to the Director Health Services, a written request for the on site examination stating specifically the nature of the examination you are requesting. Your request should include the name of the physician as well as his Massachusetts certification number.

This is also to advise you that only the Department's contractual medical staff determine when outside examinations or testing are medically necessary. However, in accordance with established Health Services procedures, a medical examination on site at a facility by an outside physician may be arranged with the permission of the Director of Health Services. If approved, the outside physician will be allowed to perform a non-intrusive examination of your client and review his Department of correction medical record, provided your client signs the necessary release of liability and costs. Please note that if approved, the cost of such examinations is to be borne by the inmate, not the Department of Correction nor its contractual medical provider.

Further, any outside physician must also sign a waiver of liability and costs. Any outside medical consultation reports would be reviewed by the on site medical director. Outside physicians may write their medical recommendations for treatment on consultation forms, but they may not write any medical orders or notes in any part of the medical record. Further, neither the Department of Correction nor its contractual medical provider is required to comply with any consultation recommendations made by an outside physician.

By copy of this letter, the medical director will be made aware of your request for an outside physician examination. If you have any questions regarding the process, please feel free to contact this office.

Sincerely,


Director of Health Services


cc:          Medical Director, (contractual medical provider)
             HSA, (appropriate facility)
             Counsel, DOC Legal Division


September 2004                                                    630 - 23

103 DOC 630 Attachment C

## MASSACHUSETTS DEPARTMENT OF CORRECTION - HEALTH SERVICES DIVISION
## RELEASE (Inmate)
### (OUTSIDE MEDICAL SERVICES)

I, _____, wish to obtain the medical services listed below. I agree to assume full

responsibility for payment for said services. In so doing, I understand that neither the Commonwealth of

Massachusetts Department of Correction, nor any of its agents, officials, employees, nor the medical

provider for the Department of Correction, will incur any financial obligations for said services. Further, I,

for myself and my agents, heirs, employees, successors, and assigns, agree to release and forever

discharge the Department Of Correction and all its agents, officials, employees, and the medical provider

for the Department of Correction, from any and all liability, causes of action, claims, suits, damages,

obligations, agreements, debts, judgments, or any other matter arising out of or in any way connected

directly or indirectly, with said medical services except as otherwise provided by state law.

Name and Address of Provider     _____

_____

_____

Nature of Services:     _____

_____

Signed,     _____
            (Inmate's Signature)

Date:     _____

Witness:     _____

Title:     _____

Date:     _____

103 DOC 630 Attachment D

September 2004                                        630 - 25

205.100    Inmates to be Screened
           Immediately upon admission to the correctional facility, and prior
           to being placed in the general inmate population, an Admission
           Health Screening Report Form, (105 CMR 205.600 Appendix B) shall be
           completed for each inmate by a person trained in the completion of
           such Form. Whenever possible such person shall be a member of the
           medical staff.

205.101    Inmates to Have Physical Examination

           Each individual committed to a correctional facility for a term of
           30 days or more shall receive a complete physical examination no
           later than fourteen days after admission to said facility. However,
           an inmate entering a correctional facility who is accompanied by a
           medical record containing a record of a complete physical
           examination conducted less than three months prior to his admission
           need not be given a complete physical examination. Each such inmate
           not receiving a complete physical examination shall, however, be
           seen by a physician, or by a physician's assistant or nurse
           practitioner under the supervision of a physician, who shall:

           (A) Review the inmate's medical record
           (B) Examine the inmate for any signs of trauma or disease which
               may have been incurred by the inmate after his most recent
               physical examination.
           (C) Conduct any examinations and tests which are medically
               indicated.
           (D) Review his findings and any required follow up services with
               the inmate.

205.102    Examinations to be Conducted by Licensed Personnel

           All physical examinations shall be conducted by a physician
           licensed to practice medicine in the Commonwealth of Massachusetts
           or by a properly licensed nurse practitioner or physician
           assistant under the supervision of said physician.

205.103    Examinations to be Conducted in Privacy

September 2004                                            630 - 27

205.200    Content of Physical Examination

    (A)   Inquiry concerning:

        (1)  Headache, recent head injury and loss of consciousness;
        (2)  Use of prescribed medicines;
        (3)  Chronic health problems such as heart disease, hypertension, seizure disorders, asthma, sickle cell disease, diabetes mellitus and tuberculosis;
        (4)  Regular use of barbiturates, sedatives, opiates, alcohol, and non-prescribed drugs including tobacco;
        (5)  Unusual bleeding or discharge;
        (6)  Recent fever or chills;
        (7)  Allergy to medication or other substances;
        (8)  Lacerations, bruises, abscesses, ulcers and itchiness;
        (9)  Prior significant illness and hospitalization;
        (10) Familial and domiciliary disease of significance;
        (11) Immunization status;
        (12) Current symptoms and abnormalities in the nervous, gastrointestinal, and respiratory, auditory, integumentary, endocrine, cardiovascular, ophthalmic, musculoskeletal and hemopoietic systems.

    (B)   Observation concerning:

        (1)  Behavior which includes state of consciousness, mental status, appearance, conduct, tremor and sweating;
        (2)  Signs of trauma, recent surgery, abscesses, open wounds, parenteral drug use, jaundice, pediculosis and communicable disease;
        (3)  Body deformities, ease of movement, scars;
        (4)  Dental decay, filled and missing teeth.

    (C)   Physical inspection and examination of organs and structures, with emphasis on the presence or absence of the following abnormalities of the:

        (1)  Head defects, contusions, lacerations and dried blood;
        (2)  Mouth lesions, decay;
        (3)  Ears gross hearing loss, blood/discharge fluid, eardrum, infection;
        (4)  Nose blood and other discharges, recent injury;
        (5)  Eyes bruises, jaundice, gross movement, pupil reactivity, visual acuity;
        (6)  Chest labored or unusual breathing, penetrating wounds, heart, breast;

September 2004

103 DOC 630 ATTACHMENT E
Page 1 of 1

MASSACHUSETTS DEPARTMENT OF CORRECTION – HEALTH SERVICES DIVISION
CODE 99 Red Bag Contents
Basic Life Support Equipment (Required at all sites):

| | | | |
|---|---|---|---|
| 1 | ½" Adhesive Tape | 1 | Small Flashlight and Batteries |
| 1 | 1" Silk Tape | 2 | Pen Lights |
| 2 | Band-Aids, 2" x 4" | 4 Pr | Gloves, non-sterile |
| 6 | Band-Aids, 3/4" x 3" strips | 1 | Aneroid sphygmomanometer w/adult cuff |
| 6 | Gauze sponges, sterile 4"x 4" | 1 | Stethoscope |
| 1 | Multi-trauma dressing 10"x 20" | 1 | Splint (limb immobilizer) |
| 2 | Kling, 3" conforming bandage | 1 | Neck immobilizer, adjustable |
| 2 | Eye dressing, oval | 4 | Tongue blades |
| 2 | Occlusive sterile gel dressing,large | 1 | Ambu bag with adult mask |
| 1 | Ace wrap | 1 | Oxygen tank (portable)w/regulator |
| 3 | Triangular bandages | 1 | Oxygen tubing |
| 1 | Cold pack, instant ice pack | 1 | Oxygen mask (adult size) |
| 1 | Rescue blanket, disposable | 1 | Nasal oxygen cannula |
| 1 | Burn sheet, sterile 60"x 90" | 1 | Microshield CPR shield |
| 2 | Ammonia inhalants | 1 | Saline eye irrigation, 4 oz. |
| 1 | Trauma (EMT) Scissors | 3 | Health Services Authorization in envelope with pen |
| 1 | Safety knife | 1 | Gown – disposable/fluid impervious |
| 3 | Berman oral airways (small, medium and large) | 1 | Mask w/eye shield OR mask and goggles |
| 1 | Oral glucose solution (instaGlucose 30 gm) | 1 | Glucometer with lancets and test strips and small sharps container |
| 1 | Suction machine with tubing and suction catheter | 1 | Automatic External Defibrillator (AED) |

Advanced Life Support Equipment Required to be kept in the Trauma Department of sites providing 24-hour nursing coverage. Optional for sites with less than 24-hour nursing coverage.

| | | | |
|---|---|---|---|
| 2 | IV Solution administration sets | 1 | IV Arm board |
| 3 | Angiocatheters 20 G x 1 ½" | 1 | Tourniquet |
| 1 | 500 cc Normal Saline IV Solution [0.9% sodium chloride] | 6 | Betadine [Povidone iodine] wipes |
| 1 | Dextrose 50% 50 ml injection [pre-filled syringe] | 1 | Narcan ampule [0.4 mg/ml] |
| 1 | ½" Adhesive tape | 1 | 1 cc Syringe w/22 Gx1" needle |
| | | 1 | EpiPen [epinephrine hydrochloride] |

September 2004

630 – 31

The following forms have been deemed part of 103 DOC 630.  However, they have been forwarded to institutions separately.  Please contact your Facility Policy Coordinator or Health Services Administrator for copies.

Attachment G: Medical History and Screening Form (UMCHP form)
Attachment H: Medical Restrictions Form (UMCHP—form)
Attachment I: Classification Health Status Report Form (UMCHP form)
Attachment J: Intra System Transfer Form (UMCHP form)
Attachment K: Medical Entrance Inquiry Form (UMCHP form)
Attachment L: Release of Responsibility (UMCHP form)

September 2004                                          630 - 33

# UMASS Correctional Health

## MEDICAL RESTRICTIONS

_____
INSTITUTION

_____    _____    _____
NAME                              ID #              D.O.B.

_____
DATE

TO: _____
          (D.O.C. DESIGNEE)

The above named inmate has been determined to have the following needs / restrictions due to a current medical condition:

| TYPE: | DATE | (FROM) | TO |
|-------|------|--------|----|
| NO WORK STATUS | _____ | | _____ |
| LIGHT WORK STATUS | _____ | | _____ |
| BOTTOM BUNK | _____ | | _____ |
| SPECIAL EQUIPMENT (DESCRIBE BELOW) | | | |
| _____ | _____ | | _____ |
| OTHER (DESCRIBE BELOW) | | | |
| _____ | _____ | | _____ |

**TRANSPORTATION RESTRICTIONS:**

| | | | |
|-------|------|--------|----|
| NO WAISTCHAINS | _____ | | _____ |
| NO HANDCUFFS | _____ | | _____ |
| NO ANKLE RESTRAINTS | _____ | | _____ |
| VEHICLE WITH CAR SEATS | _____ | | _____ |
| MEDICAL VAN | _____ | | _____ |

**MEDICAL REASON:**

_____
_____
_____
_____

SUBMITTED BY: _____ DATE: _____ TIME: _____
                        MD/PA/NP
REVIEWED BY: _____ DATE: _____ TIME: _____
                        HSA
APPROVED BY: _____ DATE: _____ TIME: _____
                SITE MEDICAL DIRECTOR

(ORIGINAL IN MEDICAL RECORD AFTER APPROVAL)
(COPY TO D.O.C. DESIGNEE)

## UMASS CORRECTIONAL HEALTH

## INTRASYSTEM TRANSFER FORM

Transferring Facility _____

Name _____ ID# _____ D.O.B. _____

Allergies _____

Current Acute Conditions / Problems _____

Chronic Clinics / Problems _____ Last Visit _____

| Medication Name & Dose | Instructions for Taking | Last Time Taken |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| PEG Interferon Reg # |  |  |

Current Treatments _____

Appointments Scheduled _____

Follow-up Care Needed _____

Consult pending? (check log) _____

Medical Assessment / TB Screening in chart   ☐ Yes   ☐ No      Date _____ Results _____ mm

Physical Disabilities / Limitations _____

Assistive Devices / Prosthetics _____

Therapeutic Diet   ☐ Yes   ☐ No      Type _____

Mental Health History / Concerns _____

    Currently treated by Mental Health   ☐ Yes   ☐ No

    History of Suicide Attempt   ☐ Yes   ☐ No      Date _____

    History of Psychotropic Medication   ☐ Yes   ☐ No

    Previous Psychiatric Hospitalization   ☐ Yes   ☐ No

Substance Abuse History   ☐ Yes   ☐ No

☐ Patient-specific medications and medical record sent.

Prepared by:

Signature and Title _____ Date _____ Time _____

******************************************************************************************************

## TRANSFER RECEPTION SCREENING

Receiving Facility _____

S: Current Medical / MH / Dental Complaint _____

_____

   Current Medications / Treatment / Diet _____

_____

_____

O: Physical Appearance / Behavior _____

   Rashes / Infestations _____

_____

   Deformities: Acute / Chronic _____

   T___ P___ R___ B/P___ / ___ Wt ____

A: _____

_____

_____

Reviewed By Physician

_____

Date and Time

8028 Rev. 2/02

P: Disposition (Any history of suicide attempt requires an immediate referral to Mental Health.)

   ___ General Pop.

   ___ Routine Sick Call

   ___ Emergency Referral

   ___ Physician Referral

      Urgent / Routine

   ___ Mental Health

      Urgent / Routine

   ___ Infirmary Placement

   ___ Dental

   ___ OTHER _____

☐ Consent for Treatment / Access Information Given

☐ Kitchen Notification of Special Diet, if Applicable

☐ KOP Agreement Reviewed / Updated

_____

Receiving Nurse's Signature

_____

Date and Time

# UmASS CORRECTIONAL HEALTH
## RELEASE OF RESPONSIBILITY

_____
Institution

Name: _____ ID # _____ D.O.B. _____

I hereby refuse to accept the following treatment / recommendations:

_____

_____

_____

**Potential Health Care Risk Associated With Refusal:**

_____

_____

_____

I acknowledge I have been fully informed of and understand the above treatments or recommendations and the risk(s) involved in refusing. I hereby release and agree to hold harmless UMass Correctional Health, its employees and agents from all responsibility and ill effect which may result from this action.

_____          _____
Inmate Signature                                          Date/Time

_____          _____
UMass Correctional Health Witness                    Date/Time

The aforementioned inmate has refused the listed medical treatment / recommendations and has refused to sign this form.

_____          _____
JMass Correctional Health Witness                    Date/Time

_____          _____
JMass Correctional Health/Other Witness              Date/Time