### § 30. Compensation to officers; reimbursement

No compensation shall be allowed to an officer for the performance of any services required by sections twenty-three to twenty-nine,[1] inclusive, but he shall be reimbursed by the commonwealth for his actual traveling expenses incurred in the performance of any duties therein required.

[1] Sections 24 and 26 of this chapter are repealed.

#### Historical and Statutory Notes

| St.1890, c. 316, § 5. | R.L.1902, c. 225, § 22. | St.1931, c. 350, § 9. |
| St.1900, c. 260, § 1. | St.1931, c. 301, § 103. | |

#### Library References

Prisons ⇌8.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 18 to 19.

### § 31. Repealed by St.1931, c. 350, § 10

### § 32. Treatment of prisoners

The superintendents of the institutions under the supervision of the department of correction shall treat the prisoners with the kindness which their obedience, industry and good conduct merit.

Amended by St.1955, c. 770, § 24; St.1957, c. 777, § 11.

#### Historical and Statutory Notes

| R.S.1836, c. 144, § 52. | P.S.1882, c. 221, § 25. |
| G.S.1860, c. 179, § 38. | R.L.1902, c. 225, § 24. |

St.1955, c. 770, § 24, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, rewrote the section, which prior thereto read:

"The warden and officers of the state prison shall treat the prisoners with kindness so long as they merit such treatment by their obedience, industry and good conduct."

St.1957, c. 777, § 11, approved Sept. 24, 1957, substituted "superintendents" for "principal officers".

#### Law Review and Journal Commentaries

Due process in prison disciplinary proceedings. William Babcock (1981) 22 B.C.L.Rev. 1009.

Press interviews of prisoners: Supreme Court, 1973 term. (1974) 88 Harv.L.Rev. 165.

Prison overcrowding: Double celling by what standard? (1982) 23 B.C.L.Rev. 713.

Requirements for state prison disciplinary hearings: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 533.

#### Library References

Prisons ⇌13(1).
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners § 20.

#### Westlaw Electronic Research

See Westlaw Electronic Research Guide following the Preface.

# DEPARTMENT OF CORRECTIONS

- retrieve current, comprehensive history and citing references to a case with KeyCite

For more information on using Westlaw to supplement your research, see the Westlaw Electronic Research Guide, which follows the Preface.

*The section headings for Massachusetts General Laws Annotated have been editorially supplied.*

### Cross References

Correctional industries, department of corrections, see 103 CMR 455.01 et seq.

Correctional institutions of the commonwealth, see c. 125, § 1 et seq.
Department of correction, generally, see c. 27, § 1 et seq.
General provisions relative to state departments, commissions, officers and employees, see c. 30, § 1 et seq.
Mental health legal advisors committee, volunteer legal assistance program, see c. 221, § 34E.
New England interstate corrections compact, see c. 125 App. § 1–1 et seq.
State administrative procedure, see c. 30A, § 1 et seq.

### Code of Massachusetts Regulations

Correctional industries, department of corrections, see 103 CMR 455.01 et seq.

### Law Review and Journal Commentaries

County jails and houses of correction. George F. McGrath, 9 Ann.Surv.Mass.L. 128 (1962).

Miranda as part of a prisoner's bill of rights: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 576.

Penal reform; powers and duties of department of correction. George F. McGrath, 2 Ann. Surv.Mass.L. 119 (1955).

Power of federal courts to order a state agency to cure a constitutional violation of another state agency: First Circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 316.

Requirements for state prison disciplinary hearings: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 533.

### Library References

C.J.S. Prisons and Rights of Prisoners §§ 16, 20.

Prisons ⇐9.
WESTLAW Topic No. 310.

### United States Supreme Court

Confinement conditions and practices, custodial facilities, see Bell v. Wolfish, U.S.N.Y.1979, 99 S.Ct. 1861, 441 U.S. 520, 60 L.Ed.2d 447.

## § 1. Powers and duties of commissioner of correction

In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction, in this chapter called the commissioner, shall:

(a) designate, establish, maintain, and administer such state correctional facilities as he deems necessary, and may discontinue the use of such state correctional facilities as he deems appropriate for such action; provided that no correctional facility named in paragraph (n) of section one of chapter 125 shall be discontinued without specific authorization and approval of the General Court;

(b) maintain security, safety and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any such facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot or insurrection at any such facility, including but not limited to the development, planning, and coordination of emergency riot procedures with the colonel of state police, and take suitable measures for the restoration of order;

(c) establish and enforce standards for all state correctional facilities;

(d) establish standards for all county correctional facilities and secure compliance with such standards, if necessary, through the enforcement provisions of section one B of chapter one hundred and twenty-seven;

(e) establish, maintain and administer programs of rehabilitation, including but not limited to education, training and employment, of persons committed to the custody of the department, designed as far as practicable to prepare and assist each such person to assume the responsibilities and exercise the rights of a citizen of the commonwealth;

(f) establish a system of classification of persons committed to the custody of the department for the purpose of developing a rehabilitation program for each such person;

(g) determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer such persons to appropriate facilities and programs;

(h) establish training programs for employees of the department and, by agreement, other corrections personnel;

(i) investigate grievances and inquire into alleged misconduct within state correctional facilities;

(j) maintain adequate records of persons committed to the custody of the department;

(k) establish and maintain programs of research, statistics and planning, and conduct studies relating to correctional programs and responsibilities of the department;

(l) utilize, as far as practicable, the services and resources of specialized community agencies and other local community groups in the rehabilitation of offenders, development of programs, recruitment of volunteers and dissemination of information regarding the work and needs of the department;

(m) make and enter any contracts and agreements necessary or incidental to the performance of the duties and execution of the powers of the department, including but not limited to contracts to render services to committed offenders, and to provide for training or education for correctional officers and staff;

### § 70E. Patients' and residents' rights

As used in this section, "facility" shall mean any hospital, institution for the care of unwed mothers, clinic, infirmary maintained in a town, convalescent or nursing home, rest home, or charitable home for the aged, licensed or subject to licensing by the department; any state hospital operated by the department; any "facility" as defined in section three of chapter one hundred and eleven B; any private, county or municipal facility, department or ward which is licensed or subject to licensing by the department of mental health pursuant to section nineteen of chapter nineteen; or by the department of mental retardation pursuant to section fifteen of chapter nineteen B; any "facility" as defined in section one of chapter one hundred and twenty-three; the Soldiers Home in Holyoke, the Soldiers' Home in Massachusetts; and any facility set forth in section one of chapter nineteen or section one of chapter nineteen B.

The rights established under this section shall apply to every patient or resident in said facility. Every patient or resident shall receive written notice of the rights established herein upon admittance into such facility, except that if the patient is a member of a health maintenance organization and the facility is owned by or controlled by such organization, such notice shall be provided at the time of enrollment in such organization, and also upon admittance to said facility. In addition, such rights shall be conspicuously posted in said facility.

Every such patient or resident of said facility shall have, in addition to any other rights provided by law, the right to freedom of choice in his selection of a facility, or a physician or health service mode, except in the case of emergency medical treatment or as otherwise provided for by contract, or except in the case of a patient or resident of a facility named in section fourteen A of chapter nineteen; provided, however, that the physician, facility, or health service mode is able to accommodate the patient exercising such right of choice.

Every such patient or resident of said facility in which billing for service is applicable to such patient or resident, upon reasonable request, shall receive from a person designated by the facility an itemized bill reflecting laboratory charges, pharmaceutical charges, and third party credits and shall be allowed to examine an explanation of said bill regardless of the source of payment. This information shall also be made available to the patient's attending physician.

Every patient or resident of a facility shall have the right:

(a) upon request, to obtain from the facility in charge of his care the name and specialty, if any, of the physician or other person responsible for his care or the coordination of his care;

(b) to confidentiality of all records and communications to the extent provided by law;

(c) to have all reasonable requests responded to promptly and adequately within the capacity of the facility;

242

(d) upon request, to obtain an explanation as to the relationship, if any, of the facility to any other health care facility or educational institution insofar as said relationship relates to his care or treatment;

(e) to obtain from a person designated by the facility a copy of any rules or regulations of the facility which apply to his conduct as a patient or resident;

(f) upon request, to receive from a person designated by the facility any information which the facility has available relative to financial assistance and free health care;

(g) upon request, to inspect his medical records and to receive a copy thereof in accordance with section seventy, and the fee for said copy shall be determined by the rate of copying expenses, except that no fee shall be charged to any applicant, beneficiary or individual representing said applicant or beneficiary for furnishing a medical record if the record is requested for the purpose of supporting a claim or appeal under any provision of the Social Security Act or federal or state financial needs-based benefit program, and the facility shall furnish a medical record requested pursuant to a claim or appeal under any provision of the Social Security Act or any federal or state financial needs-based benefit program within thirty days of the request; provided, however, that any person for whom no fee shall be charged shall present reasonable documentation at the time of such records request that the purpose of said request is to support a claim or appeal under any provision of the Social Security Act or any federal or state financial needs-based benefit program;

(h) to refuse to be examined, observed, or treated by students or any other facility staff without jeopardizing access to psychiatric, psychological, or other medical care and attention;

(i) to refuse to serve as a research subject and to refuse any care or examination when the primary purpose is educational or informational rather than therapeutic;

(j) to privacy during medical treatment or other rendering of care within the capacity of the facility;

(k) to prompt life saving treatment in an emergency without discrimination on account of economic status or source of payment and without delaying treatment for purposes of prior discussion of the source of payment unless such delay can be imposed without material risk to his health, and this right shall also extend to those persons not already patients or residents of a facility if said facility has a certified emergency care unit;

(l) to informed consent to the extent provided by law;

(m) upon request to receive a copy of an itemized bill or other statement of charges submitted to any third party by the facility for care of the patient or resident and to have a copy of said itemized bill or statement sent to the attending physician of the patient or resident; and

(n) if refused treatment because of economic status or the lack of a source of payment, to prompt and safe transfer to a facility which agrees to receive and treat such patient. Said facility refusing to treat such patient shall be responsi-

243

111 § 70E PUBLIC HEALTH

denomination, or patients whose religious beliefs limit the forms and qualities of treatment to which they may submit.

No provision herein shall be construed as limiting any other right or remedies previously existing at law.

Added by St.1979, c. 214. Amended by St.1979, c. 720; St.1983, c. 295; St.1985, c. 714, § 1; St.1986, c. 107; St.1986, c. 599, § 30; St.1987, c. 480, §§ 1, 2; St.1989, c. 155; St.1989, c. 341, § 66; St.1992, c. 311, § 2; St.1993, c. 110, § 146; St.1996, c. 202, § 2; St.1996, c. 445; St.1998, c. 194, § 151.

### Historical and Statutory Notes

St.1979, c. 214, was approved May 23, 1979.

St.1979, c. 720, approved Nov. 13, 1979, in the first paragraph, added "and any facility set forth in section one of chapter nineteen".

St.1983, c. 295, approved July 18, 1983, in the fifth paragraph, in cl. (m), substituted "an itemized bill" for "the bill", deleted "the" preceding "care" and added "and to have a copy of said itemized bill or statement sent to the attending physician of the patient or resident".

St.1985, c. 714, § 1, approved Dec. 31, 1985, in the sixth paragraph, in cl. (g), deleted "and" following "payment;", in cl. (h), substituted "; and" for a period and added cl. (i).

St.1986, c. 107, approved June 19, 1986, in the fifth paragraph, in cl. (l), deleted "and" which were internally monitored only; the annual percentage of deliveries in birthing rooms and labor-delivery-recovery rooms; the annual percentage which were externally monitored; the annual percentage of women who have had a caesarian section utilizing inductions, epidurals and general anesthesia; and the annual percentage of women breast-feeding upon discharge from said hospital."

St.1986, c. 599, § 30, by § 62 made effective July 1, 1987, substituted "section nineteen of chapter nineteen" for "section twenty-nine of chapter nineteen", and inserted "or by the department of mental retardation pursuant to section fifteen of chapter nineteen B".

St.1986, c. 599, was approved Dec. 16, 1986. Emergency declaration by the Governor was filed Dec. 17, 1986.

St.1987, c. 480, § 1, approved Nov. 10, 1987, in the sixth paragraph, deleted cl. (i), which read:

"in the case of a maternity patient, at the time of pre-admission, to complete information from an admitting hospital on its annual rate of primary caesarian sections; annual rate of repeat caesarian sections; the annual percentage of women who have had a subsequent successful vaginal birth; the annual percentage of deliveries in birthing rooms and labor-delivery-recovery-rooms; the annual percentage which were externally monitored only; the annual percentage which were internally monitored only; the annual percentage of women who have had a caesarian section utilizing inductions, epidurals and general anesthesia; and the annual percentage of women breast-feeding upon discharge from said hospital."

Section 2 of St.1987, c. 480, inserted the seventh paragraph.

St.1989, c. 155, approved June 19, 1989, rewrote the seventh paragraph, which prior thereto read:

"Every maternity patient, at the time of pre-admission, shall receive complete information from an admitting hospital: on its annual rate of primary caesarian sections; annual rate of repeat caesarian sections; the annual percentage of women who have had a subsequent successful vaginal birth; the annual percentage of deliveries in birthing rooms and labor-delivery-recovery rooms; the annual percentage which were externally monitored only; the annual percentage which were internally monitored only; the annual percentage of women who have had a caesarian section utilizing inductions, epidurals and general anesthesia; and the annual percentage of women breast-feeding upon discharge from said hospital."

St.1989, c. 341, § 66, an emergency act, approved Aug. 15, 1989, in the sixth paragraph, in cl. (h), substituted "viable." for "viable; and".

St.1992, c. 311, § 2, approved Dec. 31, 1992, in the fifth paragraph, rewrote cl. (g), which prior thereto read:

"upon request, to inspect his medical records and to receive a copy thereof in accordance with section seventy, and the fee for said copy shall be determined by the rate of copying expenses;".

St.1993, c. 110, § 146, approved July 19, 1993, and by § 390 made effective as of July 1, 1993, inserted the seventh paragraph.

St.1996, c. 202, § 2, approved July 29, 1996, in the eleventh paragraph, substituted "operated by and for persons who rely exclusively upon treatment by spiritual means through prayer for healing, in accordance with the creed or tenets of a church or religious denomination" for "operated or listed and certified by The First Church of Christ, Scientist, in Boston".

St.1996, c. 445, approved Dec. 24, 1996, inserted the ninth paragraph.

---

PUBLIC HEALTH 111 § 70E

St.1998, c. 194, § 151, an emergency act, approved July 30, 1998, and by § 443 made effective July 1, 1998, in the ninth paragraph, inserted "; provided, however, that for the purposes of this paragraph, the word facility shall not include a community day and residential setting licensed or operated by the department of mental retardation" following "resident".

### American Law Reports

Validity and construction of contract exempting hospital or doctor from liability for negligence to patient. 6 ALR3d 704.

Malpractice: liability of physician or hospital where patient suffers heart attack or the like while undergoing unrelated medical procedure. 17 ALR3d 796.

Hospital's liability for injuries sustained by patient as a result of restraints imposed on movement. 25 ALR3d 1450.

Liability of operating surgeon for negligence of nurse assisting operating surgeon. 29 ALR3d 1065.

Hospital's liability for injury or death to patient resulting from or connected with administration of anesthetic. 31 ALR3d 1114.

Liability of one requesting medical practitioner or hospital to furnish services to third party for cost of services, absent express undertaking to pay. 34 ALR3d 176.

Liability of hospital for refusal to admit or treat patient. 35 ALR3d 841.

Hospital's liability to patient injured going to or using bathroom or toilet facilities. 36 ALR3d 1235.

Liability for negligence in diagnosing or treating aspirin poisoning. 41 ALR3d 1358.

Duty of physician or nurse to assist patient while dressing or undressing. 42 ALR3d 1351.

Hospital's liability for injury allegedly caused by improper diet or feeding of patient. 48 ALR3d 1288.

Hospital's liability for injury caused through assault by a patient. 51 ALR3d 981.

Liability for injuries or death resulting from physical therapy. 53 ALR3d 1250.

Liability of hospital or medical practitioner under doctrine of strict liability in tort, or breach of warranty, for harm caused by drug, medical instrument, or similar device used in treating patient. 54 ALR3d 258.

Hospital's liability to patient injured, other than mental institution, for suicide of patient. 60 ALR3d 880.

Coverage and exclusions under hospital professional liability or indemnity policy. 65 ALR3d 969.

Malpractice: physician's duty to inform patient of nature and hazards of treatment in pregnancy and childbirth cases under the doctrine of informed consent. 69 ALR3d 1250.

Tort liability of physician or hospital in connection with organ or tissue transplant procedures. 76 ALR3d 890.

Discovery of hospital's internal records or communications as to qualifications or evaluations of individual physician. 81 ALR3d 944.

Patient's right to refuse treatment allegedly necessary to sustain life. 93 ALR3d 67.

Application of rule of strict liability in tort to person or entity rendering medical services. 100 ALR3d 1205.

False imprisonment in connection with confinement in nursing home or hospital. 4 ALR4th 449.

Liability in tort for interference with physician's contract or relationship with hospital. 7 ALR4th 572.

Propriety of hospital's conditioning physician's staff privileges on his carrying professional liability or malpractice insurance. 7 ALR4th 1238.

Hospital's liability for patient's injury or death as result of fall from bed. 9 ALR4th 149.

Physician—patient privilege as extending to patient's medical or hospital records. 10 ALR4th 552.

Hospital's liability for negligence in failing to review or supervise treatment given by doctor, or to require consultation. 12 ALR4th 57.

Applicability of doctrine of strict liability in tort to injury resulting from X-ray radiation. 16 ALR4th 1300.

Liability of mental care facility for suicide of patient or former patient. 19 ALR4th 7.

Liability of hospital, physician, or other individual medical practitioner for injury or death resulting from blood transfusion. 20 ALR4th 136.

Medical malpractice: instrument breaking in course of surgery or treatment. 20 ALR4th 1179.

Liability of blood supplier or donor for injury or death resulting from blood transfusion. 24 ALR4th 508.

## 127 § 117
Note 2

program of drug rehabilitation. Ladetto v. Commissioner of Correction (1979) 385 N.E.2d 273, 7 Mass.App.Ct. 1.

### § 117A. Temporary placement of prisoners in hospital or medical facility

Whenever the physician of any jail or house of correction certifies that any prisoner held therein requires medical, dental or other similar professional treatment which is not available in such jail or house of correction, the sheriff or, in the case of the house of correction in Suffolk county, the penal institutions commissioner of the city of Boston may temporarily place such prisoner in a hospital or medical facility to receive such treatment.

Added by St.1967, c. 258, § 1.

#### Historical and Statutory Notes

St.1967, c. 258, § 1, was approved May 11, 1967.

#### Code of Massachusetts Regulations

Release preparation and temporary release, furloughs, see 103 CMR 952.03.

#### Library References

Prisons ⇐17(2).
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 80 to 90, 126, 129, 138.

### § 118. Pregnant females

Whenever it appears that a female confined in any correctional facility, is about to give birth to a child, the physician of the institution where the inmate is confined shall send to the commissioner thereupon order her removal to a hospital near the institution where she is confined, but in no case shall such female be removed to the Tewksbury hospital or to any penal or reformatory institution for the purpose of giving birth. An inmate so removed shall be kept in such hospital until the physician thereof shall certify to said commissioner that she may safely be removed, whereupon the commissioner shall issue an order for her return to the correctional facility.

Amended by St.1938, c. 456; St.1941, c. 351, § 43; St.1941, c. 510, § 2; St.1958, c. 613, § 8C; St.1977, c. 582, § 2.

#### Historical and Statutory Notes

St.1854, c. 416, § 2.  
St.1856, c. 40.  
G.S.1860, c. 178, § 16.  
P.S.1882, c. 220, § 17.  
R.L.1902, c. 225, § 98.  
St.1906, c. 302, § 2.  
St.1916, c. 241, § 1.  
St.1919, c. 350, §§ 82, 83.  
St.1941, c. 510, § 2, approved July 23, 1941, in the first sentence, inserted "confined" following "female" and ", or under commitment to a department for defective delinquents referred to in section one hundred and seventeen," deleted "during her term of imprisonment" preceding "the physician" and substituted "the inmate is confined" for "she is held", "the commissioner shall" for "he shall", "she" for "the prisoner" and "such female" for "a prisoner", in the second sentence, substituted "inmate" for "prisoner" and added "or to the department for defective delinquents", and deleted the third sentence which read, "The expense of so removing a prisoner, and all hospital expenses incidental the giving birth, shall be paid by the commonwealth."

St.1938, c. 456, approved June 23, 1938, in the first sentence, added "near the institution where the prisoner is confined, but in no case shall a prisoner be removed to the state infirmary or to any penal or reformatory institution for the purpose of giving birth", and added in the third sentence.

St.1941, c. 351, § 43, approved June 4, 1941, in the first sentence, substituted "state hospital and" for "state".

St.1958, c. 613, § 8C, approved Oct. 3, 1958, in the first sentence, substituted "Tewksbury State Hospital and Infirmary" for "Tewksbury State Hospital".

St.1977, c. 582, § 2, approved Oct. 3, 1977, in the first sentence, substituted "in any correctional facility" for "under sentence in any prison, or under commitment to a department for defective delinquents referred to in section one hundred and seventeen", and, in the second sentence, substituted "the correctional facility" for "prison or to the department for defective delinquents".

178

## PRISONS
## 127 § 119

#### Cross References

Expense of removal, see c. 127, § 123.

#### American Law Reports

Constitutional right of prisoners to abortion services and facilities—federal cases, 90 ALR Fed 683.

#### United States Supreme Court

Prisoner's right to medical treatment, see Estelle v. Gamble, U.S.Tex.1976, 97 S.Ct. 285, 429 U.S. 97, 50 L.Ed.2d 251, rehearing denied 97 S.Ct. 798, 429 U.S. 1066, 50 L.Ed.2d 785, on remand 554 F.2d 653.

#### Library References

Prisons ⇐17(2).
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 80 to 90, 126, 129, 138.

### § 119. Hospital confinement as term of sentence

Any prisoner placed in a hospital or medical facility under section one hundred and seventeen, one hundred and seventeen A or one hundred and eighteen shall, during his absence from prison or the jail or house of correction, be considered as in the custody of the officer having charge of the prison, jail or house of correction, and the time of confinement in said hospital or medical facility shall be considered as part of the term of sentence.

Amended by St.1967, c. 258, § 2.

#### Historical and Statutory Notes

St.1882, c. 207, § 2.  
R.L.1902, c. 225, § 100.  
St.1906, c. 302, § 3.  
St.1967, c. 258, § 2, approved May 11, 1967, inserted "or medical facility" in two places, substituted "section one hundred and seventeen A or one hundred and seventeen" for "either of the two preceding sections" and inserted "or the jail or house of correction" and "jail or house of correction."

#### Library References

Prisons ⇐17(2).
WESTLAW Topic No. 310.

179

**Repealed**

The repealed section related to the transfer of an officer of a jail or house of correction to the state prison or the Massachusetts reformatory as a correction officer, and was derived from:

St.1904, c. 214.
St.1906, c. 243, § 1.
St.1919, c. 350, §§ 63, 64.
St.1926, c. 343, § 6.
St.1941, c. 344, § 11.

§ 12. Removal of unfaithful or incompetent officers or employees

Any officer or employee in any correctional institution of the commonwealth who is unfaithful or incompetent, or uses intoxicating liquor to excess, shall be forthwith removed by the commissioner.

Amended by St.1941, c. 344, § 12; St.1955, c. 770, § 17.

### Historical and Statutory Notes

St.1827, c. 118, § 7.
R.S.1836, c. 144, § 11.
St.1858, c. 162, § 1.
G.S.1860, c. 179, § 18.
St.1879, c. 294, § 16.
P.S.1882, c. 219, § 21.
St.1890, c. 267.
St.1901, c. 364, § 3.
R.L.1902, c. 225, § 11.
St.1906, c. 243, § 1.
St.1911, c. 181.
St.1919, c. 199, § 1.
St.1929, c. 170, § 2.

St.1941, c. 344, § 12, approved June 2, 1941, deleted "prison camp and hospital" following "women".

St.1955, c. 770, § 17, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, rewrote the section, which prior thereto read:

"An officer of the state prison who holds his place at the pleasure of the warden, or an officer or employee of the state prison colony, Massachusetts reformatory, reformatory for women or state farm who holds his place at the pleasure of the superintendent, who is unfaithful or incompetent, or who uses intoxicating liquor as a beverage, shall be forthwith removed by him."

### Cross References

Restrictions as to removal of officers, see c. 30, § 9B.

### Library References

Prisons ⇐7.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 15, 17.

§ 13. Removal of incompetent jailers or keepers of houses of correction

The jailer, superintendent or keeper of a jail or house of correction, except in Suffolk county, may be removed by the superior court for neglect of duty or for wasteful or extravagant use of supplies, upon complaint of the county commissioners, after notice to the sheriff and the person complained of and a hearing.

Amended by St.1979, c. 485, § 19.

### Historical and Statutory Notes

St.1859, c. 249, § 8.
G.S.1860, c. 178, § 20.
P.S.1882, c. 220, § 24.
R.L.1902, c. 225, § 12.

St.1979, c. 485, § 19 approved Aug. 10, 1979, substituted "superintendent" for "master".

---

### Library References

Prisons ⇐7.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 15, 17.

§ 14. Removal of officers using intoxicating liquor to excess

The sheriffs of the several counties and the penal institutions commissioner of Boston may remove any officer appointed by them, respectively, to any position of trust or authority in a jail or house of correction who is known to use intoxicating liquor to excess.

Amended by St.1939, c. 200.

### Historical and Statutory Notes

St.1858, c. 162, § 2.
G.S.1860, c. 178, § 45.
P.S.1882, c. 220, § 49.
St.1882, c. 6, § 4.
R.L.1902, c. 225, § 13.

St.1939, c. 200, approved May 12, 1939, substituted "may" for "shall forthwith" and "to excess" for "as a beverage".

### Library References

Prisons ⇐7.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 15, 17.

§ 15. Repealed by St.1955, c. 770, § 122

### Historical and Statutory Notes

St.1955, c. 770, § 122, an emergency act, repealing this section, was approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955.

The repealed section, derived from St.1892, c. 423, and R.L.1902, c. 225, § 14, authorized Vermont authorities to detain and transport Vermont criminals through the commonwealth.

§ 16. Physical examination of inmates; communicable diseases

The superintendents of the correctional institutions of the commonwealth, and the keepers and superintendents of jails and houses of correction shall cause a thorough physical examination to be made by a competent physician of each inmate in their respective institutions committed for a term of thirty days' imprisonment or more. In conducting the examination special attention shall be given to determining the presence of communicable diseases, particularly venereal diseases as defined under section six of chapter one hundred and eleven and pulmonary tuberculosis.

Amended by St.1933, c. 77, § 1; St.1941, c. 344, § 13; St.1948, c. 129, § 8; St.1955, c. 770, § 18; St.1957, c. 777, § 9; St.1979, c. 485, § 20.

### Historical and Statutory Notes

St.1918, c. 58, § 1.
St.1919, c. 199, § 1.
St.1924, c. 309, § 1.



### Library References

Prisons ⬅13(10).  
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 44 to 49.

## SOLITARY CONFINEMENT

### Law Review and Journal Commentaries

Due process in prison disciplinary proceedings. William Babcock (1981) 22 Boston College L.Rev. 1009.

### § 39. Segregated units; facilities; examinations

At the request of the superintendent of any correctional institution of the commonwealth, the commissioner may authorize the transfer, for such period as he may determine, to a segregated unit within any correctional institution of the commonwealth, of any inmate whose continued retention in the general institution population is detrimental to the program of the institution.

Such segregated unit shall provide regular meals, fully furnished cells, limited recreational facilities, rights of visitation and communication by those properly authorized, and such other privileges as may be established by the commissioner. Under the supervision of the department of mental health, all inmates confined to a segregated unit shall be given periodic medical and psychiatric examinations, and shall receive such medical and psychiatric treatment as may be indicated.

Amended by St.1955, c. 357; St.1955, c. 770, § 29; St.1957, c. 777, § 16.

### Historical and Statutory Notes

St.1911, c. 265, § 1.

St.1955, c. 357, approved May 13, 1955, in the first sentence, inserted "or training school".

St.1955, c. 770, § 29, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, rewrote the section, which prior thereto read:

"The officers of a juvenile reformatory school or training school shall not place an inmate in any cell, room or cage in solitary confinement. Whenever restraint or separation from the other inmates is necessary, confinement shall be permitted only in a place where the inmate is under the constant supervision of an officer of the school."

St.1957, c. 777, § 16, approved Sept. 24, 1957, in the first paragraph, substituted "superintendent" for "principal officer".

### Code of Massachusetts Regulations

Inmate segregation unit, correction department, see 103 CMR 421.01 et seq.

### Law Review and Journal Commentaries

Prisoner treatment; solitary confinement. George F. McGrath, 2 Ann.Surv.Mass.L. 126 (1955).

Requirements for state prison disciplinary hearings: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 533.

### Library References

Prisons ⬅13(5).  
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 21, 25 to 27.

otherwise orders, take or cause to be taken his name, age, height, weight, photograph and general description and copies of his finger prints in accordance with the finger print system of identification of criminals. The court may order to be taken the photograph and the aforesaid description and finger prints of a person convicted of a felony who is not committed to a penal institution. All such photographs and identifying matter shall be transmitted forthwith to the colonel of state police.

Amended by St.1941, c. 69; St.1996, c. 151, § 285.

### Historical and Statutory Notes

St.1890, c. 316, § 1.
St.1900, c. 260, § 1.
R.L.1902, c. 225, § 18.
St.1904, c. 241.
St.1905, c. 459, § 1.
St.1916, c. 241, § 1.
St.1919, c. 350, §§ 82, 83.
St.1931, c. 350, § 4.

St.1941, c. 69, approved March 8, 1941, in the third sentence, substituted "any crime" for "larceny or any felony".

St.1996, c. 151, § 285, approved June 30, 1996, and by § 690 made effective July 1, 1996, in the third sentence, substituted "colonel of state police" for "commissioner of public safety".

### American Law Reports

Admissibility, and prejudicial effect of admission, of "mug shot," "rogues' gallery" photograph, or photograph taken in prison, of defendant in criminal trial. 30 ALR3d 908.

### Library References

Prisons ⚖︎13(1).
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners § 20.

### § 24. Repealed by St.1931, c. 350, § 10

### § 25. Fugitives from justice

Whenever the officer in charge of a prison, lockup or other place of detention has received a request from any authority, either by circular or otherwise, to assist in the apprehension of a fugitive from justice, such officer may take an exact description of any person committed to such prison or held in such lockup or other place of detention, and may include in such descriptions copies of the finger prints in accordance with the finger print system of identification. But said officer shall not take a description of a person who, he has reason to believe, is not a fugitive from justice. All descriptions so made shall be forthwith transmitted to the office of the colonel of state police.

Amended by St.1996, c. 151, § 286.

### Historical and Statutory Notes

St.1906, c. 293.
St.1916, c. 241, § 1.
St.1919, c. 350, §§ 82, 83.
St.1931, c. 350, § 5.

St.1996, c. 151, § 286, approved June 30, 1996, and by § 690 made effective July 1, 1996, in the third sentence, substituted "colonel of

---

state police" for "commissioner of public safety".

### Cross References

Criminal offender record information system, see c. 6, § 167 et seq.

### Library References

Convicts ⚖︎1.
Criminal Law ⚖︎1226(2).
WESTLAW Topic Nos. 98, 110.
C.J.S. Convicts §§ 2 to 3.
C.J.S. Criminal Law §§ 1734 to 1736.

### § 26. Repealed by St.1931, c. 350, § 10

### § 27. District attorney to furnish criminal history

The district attorney who prosecuted such prisoners as are described in section twenty-three shall forward to the department of correction the criminal history of each prisoner as shown upon the trial, upon blanks to be furnished by the commissioner of correction.

Amended by St.1955, c. 770, § 22; St.1996, c. 151, § 287.

### Historical and Statutory Notes

St.1890, c. 316, § 3.
St.1900, c. 260, § 1.
R.L.1902, c. 225, § 19.
St.1916, c. 241, § 1.
St.1919, c. 350, §§ 82, 83.
St.1931, c. 350, § 6.

St.1955, c. 770, § 22, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, substituted "department of correction" for "officer in charge of the prison to which he is sentenced".

St.1996, c. 151, § 287, approved June 30, 1996, and by § 690 made effective July 1, 1996, substituted "commissioner of correction" for "commissioner of public safety".

### Library References

Criminal Law ⚖︎1226(1).
District and Prosecuting Attorneys ⚖︎8.
WESTLAW Topic Nos. 110, 131.
C.J.S. Criminal Law § 1734.
C.J.S. District and Prosecuting Attorneys §§ 20 to 21, 29 to 30.

### § 28. Descriptions, fingerprints and criminal history; records

The superintendents of the correctional institutions of the commonwealth and the keepers of jails and houses of correction shall keep a record of the descriptions and fingerprints taken under section twenty-three and of the criminal history of prisoners so described and fingerprinted, as shown by the records of the courts of the commonwealth, or of any other state, or by any other official records which are accessible, and shall attach to the record a photograph of such prisoner or file such photograph in such manner as to be readily found. Systems operated by the criminal history systems board, pursuant to sections one hundred and sixty-six through one hundred and seventy-seven, inclusive, of chapter six,[1] may be used for such recordkeeping purposes provided that such records remain subject to the regulations of said board.

Amended by St.1955, c. 770, § 23; St.1957, c. 777, § 10; St.1972, c. 805, § 4.

[1] So in enrolled bill; probably should read "sections one hundred and sixty-six through one hundred and seventy-eight, inclusive, of chapter six". Section 169 of chapter 6 is repealed.

# 127 § 115

PRISONS

## Historical and Statutory Notes

| | | |
|---|---|---|
| R.S.1836, c. 143, § 43. | St.1881, c. 220. | R.L.1902, c. 225, § 89. |
| G.S.1860, c. 178, § 2. | P.S.1882, c. 220, § 2. | St.1909, c. 312. |

## Cross References

Removals or transfers from or to jails,
Disease, see c. 111, § 108; c. 126, § 26.
Employment on industrial farms, see c. 126, § 37.
Fire or bombing, see c. 126, § 27.

## Library References

Prisons ⟨⇌⟩13.5(1).
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 130 to 138.

## § 116. Application of original sentence of prisoner removed or returned

A prisoner who is removed or returned under any provision of sections ninety-seven to one hundred and fifteen, inclusive, shall be held in the place of imprisonment to which he is so removed or returned under the terms of his original sentence, unless sooner discharged, and the period for which he is so removed shall be reckoned as a part of the term of his imprisonment.

## Historical and Statutory Notes

| | |
|---|---|
| St.1880, c. 208, § 3. | St.1899, c. 263, § 2. |
| P.S.1882, c. 89, § 47. | |
| St.1884, c. 214, § 1. | R.L.1902, c. 225, § 104. |
| St.1884, c. 255, § 15. | |
| St.1890, c. 180 § 2. | St.1895, c. 273. |

## Law Review and Journal Commentaries

Due process protection required prior to permanent interstate transfers of prisoners: First circuit, 1973-1974 term. (1975) 9 Suffolk U.L.Rev. 556.

## § 117. Medical, dental, or similar professional treatment

Whenever the physician of any state correctional facility certifies that any prisoner held therein requires medical, dental or other similar professional treatment which cannot safely or properly be given in such state correctional facility or the hospital at the Massachusetts Correctional Institution, Norfolk, the commissioner may temporarily place such person in an appropriate hospital or medical facility to receive such treatment.

Amended by St.1941, c. 510, § 1; St.1943, c. 120; St.1977, c. 582, § 1.

## Historical and Statutory Notes

| | |
|---|---|
| St.1882, c. 207, § 1. | St.1906, c. 302, § 1. |
| R.L.1902, c. 225, § 100. | St.1916, c. 241, § 1. |
| | St.1919, c. 350, §§ 82, 83. |

176

---

PRISONS  
127 § 117  
Note 2

St.1941, c. 510, § 1, approved July 23, 1941, inserted "or of any institution under the control of the department of correction at which the department of correction at which the department of correction at which any institution under the control of the department of defective delinquents is maintained" in place of "at the Massachusetts Correctional Institution, Norfolk"; inserted "in such prison," for "therein," and substituted "or a person under commitment to such a department, respectively," and "or institution, as the case may be,"

St.1943, c. 120, approved March 26, 1943, deleted "except for a capital crime," following "sentence," substituted "as the case may be" for "respectively," and added the exception clause.

St.1977, c. 582, § 1, approved Oct. 3, 1977, rewrote the section, which prior thereto read:

"Whenever the physician of any prison, or of any institution under the control of the department of correction at which a department for defective delinquents is maintained under section one hundred and twenty-three, or section one hundred and seventeen of chapter one hundred and twenty-three, certifies that a person held in such prison for trial or sentence, or a person under commitment to such a department, as the case may be, requires medical treatment which cannot safely or properly be given in such prison or institution, as the case may be, the commissioner may temporarily place such person in any hospital, except in the case of a person held in such prison for trial or sentence for a capital crime, in which case the commissioner may temporarily place such person in the hospital at the state prison colony."

## Cross References

Expense of removal, see c. 127, § 123.

## Library References

Prisons ⟨⇌⟩17(2).
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 80 to 90, 126, 129, 138.

## Westlaw Electronic Research

See Westlaw Electronic Research Guide following the Preface.

## United States Supreme Court

Involuntary transfer of prisoner to mental hospital, see Vitek v. Jones, 1980, 100 S.Ct. 1254, 445 U.S. 480, 63 L.Ed.2d 552.

## Notes of Decisions

Consent to treatment 1
Drug rehabilitation programs 2

### 1. Consent to treatment

Suit brought by Commissioner of Correction to compel prisoner to undergo life-saving hemodialysis was not rendered moot by prisoner's transfer to a minimum security facility, the object of his original refusal of treatments, nor by his reception of a kidney transplant, since his vacillating attitude toward treatment in the past, the possibility that the transplant might not be successful, and the necessity for him to cooperate in taking supportive medications combined to make the case viable; moreover, even assuming the right of prisoners to refuse lifesaving treatment in what amounts to an emergency situation was one of "public importance, capable of repetition, yet evading review," Commissioner of Correction v. Myers (1979) 399 N.E.2d 452, 379 Mass. 255.

Commissioner of Correction and the Department of Public Health possessed authority to compel an unconsenting, competent, adult prisoner to submit to live-saving hemodialysis treatments and related medications; although the prisoner's interest in refusing dialysis was strong enough, despite a positive prognosis, to counterbalance the state's usually predominate interest in preserving life, and although a patient's right of self-determination would normally be superior to the governmental interests in maintaining the ethical integrity of the medical profession and in permitting hospitals to care for those in their custody, the state's interest in upholding orderly prison administration tipped the balance in favor of authorizing treatment without consent. Commissioner of Correction v. Myers (1979) 399 N.E.2d 452, 379 Mass. 255.

### 2. Drug rehabilitation programs

There is no statutory provision requiring Commissioner of Correction or any other prison official to transfer a prisoner or to take any step to help secure transfer to a facility offering a

177

## 111 § 70E
### PUBLIC HEALTH

What constitutes personal matters exempt from disclosure by invasion of privacy exemption under state freedom of information act. 26 ALR4th 666.

Patient's right to disclosure of his or her own medical records under state freedom of information act. 26 ALR4th 701.

Medical malpractice: liability for failure of physician to inform patient of alternative modes of diagnosis or treatment. 38 ALR4th 900.

Federally qualified health maintenance organizations. 16 New Eng.L.Rev. 689 (1981).

Tortious maintenance or removal of life supports. 58 ALR4th 222.

Arbitration of medical malpractice claims. 24 ALR5th 1.

### Law Review and Journal Commentaries

Compliance with medical records subpoenas. Nancy R. Rice and Steven M. Sayers, 27 Boston B.J. No. 8, p. 12 (1983).

Law of patient care. Michael Broad, 68 Mass.L.Rev. 10 (1983).

Refusal of medical treatment by pregnant woman. 35 Suffolk U. L. Rev. 189 (No.1, 2001).

### Library References

Health ⚖=582.
Mental Health ⚖=51.
WESTLAW Topic Nos. 198H, 257A.
C.J.S. Mechanics' Liens §§ 86 to 92.

Malpractice, lack of informed consent, see Bishop, 17A Massachusetts Practice § 1126 (4th ed.).

Medical patient's right of confidentiality, breach, see Alperin and Shubow, 14B, 14C Massachusetts Practice §§ 13.112, 20.81, 20.318 (2d ed.).

Probate, agents, see Dunphy, 22 Massachusetts Practice § 44.3 (2d ed.).

### Comments.

Hospital records, see Young, Pollets and Poreda, 19 Massachusetts Practice Evidentiary Standard. 523.

Informed consent to treatment, see Nolan and Sartorio, 37 Massachusetts Practice § 282; Nolan and Sartorio, 37A Massachusetts Practice § 411 (2d ed.).

Rights of patients and residents in hospitals and nursing homes, see Alperin and Chase, 36 Massachusetts Practice § 551.5 et seq, (2d ed.).

### Notes of Decisions

In general 1
Blood test results 3
Confidentiality 4
Treatment decisions 2

#### 1. In general

Statute which states that "Every such patient or resident of said facility shall have, in addition to any other rights provided by law, the right to freedom of choice in his selection of a facility, a physician or health service mode" means that a patient has the right to choose a hospital or physician, not the right to choose both a facility and a physician. Bello v. South Shore Hospital (1981) 429 N.E.2d 1011, 384 Mass. 770. Health ⚖=582

Patients of physicians who were denied staff privileges at private hospital were not entitled to a declaratory judgment that hospital violated provisions of statute insofar as hospital deprived patients of their freedom to choose their physician and hospital facility where none of the patients had ever been a patient or resident of the hospital, in that under specific language of the statute patients lack the required legal standing to bring the action. Bello v. South

Shore Hospital (1981) 429 N.E.2d 1011, 384 Mass. 770. Declaratory Judgment ⚖=300

#### 2. Treatment decisions

One generally has right to refuse medical treatment. Com. v. St. Hilaire (1997) 686 N.E.2d 1045, 43 Mass.App.Ct. 743, review denied 691 N.E.2d 581, 426 Mass. 1108. Health ⚖=903

Neither statute, doctrine of informed consent, nor any other provision of law requires hospital to cease hydration and nutrition of patient upon request of guardian. Brophy v. New England Sinai Hosp., Inc. (1986) 497 N.E.2d 626, 398 Mass. 417. Health ⚖=915

A distinct adjudication of incapacity of an involuntarily committed mental patient to make treatment decisions, incompetence, must precede any determination to override the patient's right to make his own treatment decisions. Rogers v. Commissioner of Dept. of Mental Health (1983) 458 N.E.2d 308, 390 Mass. 489. Mental Health ⚖=51.15

An involuntarily committed mental patient has the right to make treatment decisions and does not lose that right until he is adjudicated incompetent by a judge through incompetence

248

### PUBLIC HEALTH
## 111 § 70F

proceedings. Rogers v. Commissioner of Dept. of Mental Health (1983) 458 N.E.2d 308, 390 Mass. 489. Mental Health ⚖=51.15

No state interest is sufficiently compelling in a nonemergency situation to overcome a decision of an incompetent mental patient to refuse treatment with antipsychotic drugs. Rogers v. Commissioner of Dept. of Mental Health (1983) 458 N.E.2d 308, 390 Mass. 489. Mental Health ⚖=51.20

In making a substituted judgment decision to forcibly medicate an involuntarily committed mental patient with antipsychotic drugs, the judge should consider the patient's express preferences regarding treatment, the strength of the patient's convictions to his refusal of treatment, the impact of the decision on the patient's family, to probability of adverse side effects, the prognosis with and without treatment, and any other relevant factors. Rogers v. Commissioner of Dept. of Mental Health (1983) 458 N.E.2d 308, 390 Mass. 489. Mental Health ⚖=51.15

#### 3. Blood test results

Admitting results of blood alcohol test performed during course of routine medical treatment for injuries from automobile accident in prosecution of defendant for driving while under the influence of intoxicating liquor did not

violate defendant's rights against interference with his privacy or to confidentiality of hospital records and communications. Com. v. Dube (1992) 601 N.E.2d 467, 413 Mass. 570. Constitutional Law ⚖=82(7)

#### 4. Confidentiality

Fact issues existed as to whether, under Massachusetts law, prospective employer reviewed prospective employee's medical records in violation of statutes prohibiting invasion of right to privacy and breach of confidentiality; precluding summary judgment. Pressman v. Brigham Medical Group Foundation Inc. D.Mass.1996, 919 F.Supp. 516. Federal Civil Procedure ⚖=2497.1

Under Massachusetts law, physician who applied for employment with hospital did not consent to or authorize review of his medical records at hospital, or provide notice that such review was within scope of investigation of his professional competence, when he signed authorization concerning appointment to hospital, for purposes of determining whether hospital invaded his right to privacy or committed breach of confidentiality by allegedly undertaking such review. Pressman v. Brigham Medical Group Foundation Inc. D.Mass.1996, 919 F.Supp. 516. Torts ⚖=8.5(8)

### § 70F. HTLV-III test; confidentiality; informed consent

No health care facility, as defined in section seventy E, and no physician or health care provider shall (1) test any person for the presence of the HTLV-III antibody or antigen without first obtaining his written informed consent; (2) disclose the results of such test to any person other than the subject thereof without first obtaining the subject's written informed consent; or (3) identify the subject of such tests to any person without first obtaining the subject's written informed consent.

No employer shall require HTLV-III antibody or antigen tests as a condition for employment.

Whoever violates the provisions of this section shall be deemed to have violated section two of chapter ninety-three A.

For the purpose of this section, "written informed consent" shall mean a written consent form for each requested release of the results of an individual's HTLV-III antibody or antigen test, or for the release of medical records containing such information. Such written consent form shall state the purpose for which the information is being requested and shall be distinguished from written consent for the release of any other medical information, and for the purpose of this section "HTLV-III test" shall mean a licensed screening antibody test for the human T-cell lymphotrophic virus type III.

Added by St.1986, c. 241.

249

111 § 70E                                                    PUBLIC HEALTH

ble for: ascertaining that the patient may be safely transferred; contacting a facility willing to treat such patient; arranging the transportation; accompanying the patient with necessary and appropriate professional staff to assist in the safety and comfort of the transfer, assure that the receiving facility assumes the necessary care promptly, and provide pertinent medical information about the patient's condition; and maintaining records of the foregoing.

Every patient or resident of a facility shall be provided by the physician in the facility the right:

(a) to informed consent to the extent provided by law;

(b) to privacy during medical treatment or other rendering of care within the capacity of the facility;

(c) to refuse to be examined, observed, or treated by students or any other facility staff without jeopardizing access to psychiatric, psychological or other medical care and attention;

(d) to refuse to serve as a research subject, and to refuse any care or examination when the primary purpose is educational or informational rather than therapeutic;

(e) to prompt life saving treatment in an emergency without discrimination on account of economic status or source of payment and without delaying treatment for purposes of prior discussion of source of payment unless such delay can be imposed without material risk to his health;

(f) upon request, to obtain an explanation as to the relationship, if any, of the physician to any other health care facility or educational institutions insofar as said relationship relates to his care or treatment, and such explanation shall include said physician's ownership or financial interest, if any, in the facility or other health care facilities insofar as said ownership relates to the care or treatment of said patient or resident;

(g) upon request to receive an itemized bill including third party reimbursements paid toward said bill, regardless of the sources of payment;

(h) in the case of a patient suffering from any form of breast cancer, to complete information on all alternative treatments which are medically viable.

Except in cases of emergency surgery, at least ten days before a physician operates on a patient to insert a breast implant, the physician shall inform the patient of the disadvantages and risks associated with breast implantation. The information shall include, but not be limited to, the standardized written summary provided by the department. The patient shall sign a statement provided by the department acknowledging the receipt of said standardized written summary. Nothing herein shall be construed as causing any liability of the department due to any action or omission by said department relative to the information provided pursuant to this paragraph. The department of public health shall:

(1) develop a standardized written summary, as set forth in this paragraph in layman's language that discloses side effects, warnings, and cautions for a

244

PUBLIC HEALTH                                                    111 § 70E

breast implantation operation within three months of the date of enactment of this act;

(2) update as necessary the standardized written summary;

(3) distribute the standardized written summary to each hospital, clinic, and physician's office and any other facility that performs breast implants; and

(4) provide the physician inserting the breast implant with a statement to be signed by the patient acknowledging receipt of the standardized written summary.

Every maternity patient, at the time of pre-admission, shall receive complete information from an admitting hospital on its annual rate of primary caesarian sections, annual rate of repeat caesarian sections, annual rate of total caesarian sections, annual percentage of women who have had a caesarian section who have had a subsequent successful vaginal birth, annual percentage of deliveries in birthing rooms and labor-delivery-recovery or labor-delivery-recovery-postpartum rooms, annual percentage of deliveries by certified nurse-midwives, annual percentage which were continuously internally monitored only, annual percentage which were continuously externally monitored only, annual percentage which were monitored both internally and externally, annual percentages utilizing intravenous, inductions, augmentation, forceps, episiotomies, spinals, epidurals and general anesthesia, and its annual percentage of women breast-feeding upon discharge from said hospital.

A facility shall require all persons, including students, who examine, observe or treat a patient or resident of such facility to wear an identification badge which readily discloses the first name, licensure status, if any, and staff position of the person so examining, observing or treating a patient or resident; provided, however, that for the purposes of this paragraph, the word facility shall not include a community day and residential setting licensed or operated by the department of mental retardation.

Any person whose rights under this section are violated may bring, in addition to any other action allowed by law or regulation, a civil action under sections sixty B to sixty E, inclusive, of chapter two hundred and thirty-one.

No provision of this section relating to confidentiality of records shall be construed to prevent any third party reimburser from inspecting and copying, in the ordinary course of determining eligibility for or entitlement to benefits, any and all records relating to diagnosis, treatment, or other services provided to any person, including a minor or incompetent, for which coverage, benefit or reimbursement is claimed, so long as the policy or certificate under which the claim is made provides that such access to such records is permitted. No provision of this section relating to confidentiality of records shall be construed to prevent access to any such records in connection with any peer review or utilization review procedures applied and implemented in good faith.

No provision herein shall apply to any institution operated by and for persons who rely exclusively upon treatment by spiritual means through prayer for healing, in accordance with the creed or tenets of a church or religious

245

**124 § 1**  **DEPARTMENT OF CORRECTIONS**

(n) seek to develop civic interest in the work of the department and educate the public and advise the general court as to the needs and goals of the corrections process;

(o) expend annually in the exercise of his powers, performance of his duties, and for the necessary operations of the department such sums as may be appropriated therefor by the general court;

(p) report annually to the secretary of health and human services, the governor and the general court;

(q) make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities.

(r) adopt policies and procedures, in consultation with the county sheriffs, establishing reasonable fees for haircuts that are provided to inmates at any county or state correctional facility. Except as otherwise provided, the commissioner or a county sheriff may charge each inmate a reasonable fee for any haircut provided. The commissioner of correction may deduct such fee from the inmate's account as provided for in section 48A of chapter 127.

(s) adopt policies and procedures establishing reasonable medical and health service fees for the medical services that are provided to inmates at any state jail or correctional facility. Except as otherwise provided, the commissioner may charge each inmate a reasonable fee for any medical and mental health services provided, including prescriptions, medication, or prosthetic devices. The fee shall be deducted from the inmate's account as provided for in section 48A of chapter 127. The commissioner shall exempt the following inmates from payment of medical and health services fees: medical visits initiated by the medical or mental health staff, consultants, or contract personnel of the department, prisoners determined to be terminally ill, pregnant, or otherwise hospitalized for more than 30 days successively during the term of incarceration and juvenile inmates and inmates who are undergoing follow-up medical treatment for chronic diseases. Notwithstanding any other provision of this section, an inmate shall not be refused medical treatment for financial reasons. The commissioner shall also establish criteria for reasonable deductions from moneys credited to the inmate's account as provided for in section 48A of chapter 127 to repay the cost of medical treatment for injuries that were self-inflicted or inflicted by the inmate on others.

(t) in accordance with clause (s), the commissioner shall as part of the rules and regulations on payments for medical services, require the department of corrections or the county correctional facility to ascertain whether any inmate seeking medical services has health insurance coverage and if said inmate does have health insurance coverage, said health insurance plan shall be billed for any services provided.

Amended by St.1939, c. 451, § 38; St.1941, c. 344, § 4; St.1955, c. 770, § 7; St.1956, c. 731, § 4; St.1972, c. 777, § 5; St.1973, c. 430, § 9; St.1996, c. 151, § 283; St.1998, c. 161, § 475; St.1999, c. 127, § 132; St.2000, c. 159, § 228.

4

---

**DEPARTMENT OF CORRECTIONS**  **124 § 1**

**Historical and Statutory Notes**

| St.1827, c. 118, § 7. | St.1879, c. 294, §§ 10, 12. |
| R.S.1836, c. 144, § 9. | 25, 35, 36. |
| St.1852, c. 275, § 6. | St.1881, c. 90, § 3. |
| G.S.1860, c. 71, § 32; c. 179, § 14. | P.S.1882, c. 88, § 4; c. 219, §§ 14, 16. |
| St.1866, c. 198, §§ 2, 3. | St.1884, c. 255, § 28. |
| St.1870, c. 370, §§ 7, 9, 10. | St.1884, c. 297, § 2. |
| St.1874, c. 385, § 12. | St.1886, c. 101, § 4. |
| St.1879, c. 291, §§ 1, 3, 7, 9. | St.1895, c. 146. |
| | St.1895, c. 195. |
| | St.1895, c. 259. |

| St.1905, c. 355. |
| St.1906, c. 243. |
| St.1911, c. 181. |
| St.1916, c. 241, § 1. |
| St.1919, c. 199, § 1. |
| St.1919, c. 350, §§ 82 to 84, 86. |
| St.1920, c. 341. |
| St.1931, c. 426, § 235. |

St.1939, c. 451, § 38, approved Aug. 10, 1939, in the last sentence, substituted "parole board" for "board of parole".

St.1941, c. 344, § 4, approved June 2, 1941, in the first sentence, deleted "the prison camp and hospital," preceding "the state prison colony", and, in the second sentence, deleted "prison", and, in the second sentence, deleted "prison camp and hospital," preceding "the state prison colony".

St.1955, c. 770, § 7, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, rewrote the section, which prior thereto read:

"The commissioner of correction, in this chapter called the commissioner, shall have the general supervision of the state prison, the Massachusetts reformatory, the state prison colony, the state farm and the reformatory for women, and of jails and houses of correction. He shall make rules for the direction of the officers of such institutions in the performance of their duties, for the government, discipline and instruction of the convicts therein, for the custody and preservation of the property connected therewith, for the supply of food, clothing and bedding in the state prison, Massachusetts reformatory, the state prison colony, state farm and reformatory for women, for teaching prisoners who are committed to a jail or house of correction for six months or more to read and write, for securing proper exercise for unemployed sentenced prisoners in jails and houses of correction, and for securing medical examination and supervision of prisoners in jails and houses of correction punished by solitary imprisonment. As soon as may be after such rules have been made the commissioner shall submit copies thereof to the governor and council, who may approve, annul or modify them. Jailers, keepers of houses of correction, county commissioners and the penal institutions commissioner of Boston shall make no rules inconsistent with the aforesaid rules. The commissioner of correction shall also from time to time cause to be printed in convenient form the statutes relating to the parole board and the powers of the duties and powers of said board, and shall annually during the month of January cause to be mailed one copy thereof to each justice of the superior and district courts, each trial justice, each sheriff and to each master, keeper, warden or superintendent of the penal institutions in the commonwealth, and to the board of probation commissioners, and to two hundred copies thereof.

Sections 116 and 117 of St.1955, c. 770, provide:

"Section 116. Notwithstanding the provisions of this act, all orders, rules and regulations made by the department of correction or any employee thereof, whatever his title, prior to the effective date of this act, shall remain in force until revoked, modified, amended or superseded by the department of correction under this act.

"Section 117. If any provisions of this act or the application of such provisions to any person or circumstance shall be invalid, the validity of the remainder of this act and the applicability of such provisions to other persons or circumstances shall not be affected thereby."

St.1956, c. 731, § 4, an emergency act, approved Oct. 5, 1956, and by § 33 made effective upon the appointment of a commissioner of probation, in par. (e), inserted "of the commonwealth" and "and control", "he or his representative shall make frequent visits to the jails and houses of correction and" and "all".

"In addition to the powers and duties given him by chapter twenty-seven and other provisions of law, the commissioner of correction, in this chapter called the commissioner, shall have the following powers and duties:—

"(a) He shall have general supervision of jails and houses of correction;

"(b) He shall, with the approval of the governor and council, make and publish, and from time to time may revise, rules and regulations for directing the work of the officers and employees of the department of correction, in this chapter called the department, and the correctional institutions of the commonwealth, for

St.1972, c. 777, § 5, approved July 18, 1972, rewrote the section, which prior thereto read:

5