UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEITH NIEMIC,<br> Plaintiff<br><br>VS.<br><br>STANLEY GALAS, ARTHUR BREWER, M.D.,<br>JUNE BINNEY, JEFF SHOREY, R.N.,<br>KARA ERDODY, R.N., DONNA<br>FITZGERALD, L.P.N., DONALD KERN, M.D.,<br>and GURVINDER JAISWAL, M.D., ET AL.,<br> Defendants | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 1:04-CV-11482-NMG<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' RESPONSE/OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

  NOW COME the defendants, Stanley Galas, Arthur Brewer, M.D., June Binney, Jeff Shorey, R.N., Kara Erdody, R.N., Donna Fitzgerald, L.P.N., Donald Kern, M.D., and Gurvinder Jaiswal, M.D. (the "medical defendants"), in the above-entitled matter, and hereby oppose plaintiff's request for a Temporary Restraining Order and Preliminary Injunction ("TRO/PI"). The medical defendants state that Mr. Niemic's Motion should be denied because plaintiff is unlikely to succeed on the merits of the civil rights claim, which forms the basis of this lawsuit. Specifically, the plaintiff seeks an injunction requiring that he be provided with medical treatment for his "herniated disc" by a "suitable doctor." However, the plaintiff's medical conditions have been treated appropriately at all times, and the defendants were not deliberately indifferent to plaintiff's serious medical needs. As such, the plaintiff has not established that he is entitled to injunctive relief, and his Motion for a Temporary Restraining Order and Preliminary Injunction should be denied.

  Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the defendants incorporate by reference herein the Affidavit of Arthur Brewer, M.D. (Exhibit 4).

958472v1

I.   **RELEVANT FACTS**

1.   Plaintiff is a pro se prisoner, currently incarcerated at Souza-Baranowski Correctional Center ("SBCC"). Plaintiff Niemic suffers from a herniated disc, resulting in lower back and leg pain. (See Exhibits 1, 2, and 3 attached, medical records).

2.   Plaintiff's Motion for a Temporary Ex Parte Restraining Order requests that this Court order the medical defendants to take Mr. Niemic to a suitable doctor (specifically, a qualified neuro specialist), and then carry out the doctor's orders. Specifically, the plaintiff requests that the Court order the medical defendants to arrange a course of treatment to mitigate his substantial pain, and he requests physical therapy and/or surgery to restore and maintain the full function of his back and legs.

3.   The medical defendants have provided plaintiff with adequate and appropriate medical treatment for his herniated disc and head wounds. (Exhibits 1, 2, and 3).

4.   Regarding plaintiff's head wounds, the plaintiff was involved in an altercation with another inmate on June 13, 2005. (Exhibit 1, progress note). When Mr. Niemic was brought down to MCI-Cedar Junction's ("MCI-CJ") Health Service Unit ("HSU"), the MCI-CJ medical staff applied nylon sutures on his two large head lacerations, and treated the plaintiff's pain with lidocaine. (Exhibit 1, progress note).

5.   On June 23, 2005, all Mr. Niemic's sutures were removed, and were reported to be clean and dry, with no drainage noted. (Exhibit 1).

6.   When the plaintiff requested his wounds be reviewed on July 2, 2005, Dr. Augustin Enaw examined the lacerations on July 11, 2005, noting no apparent infection. (Exhibit 1, progress note).

7.      Mr. Niemic's sought-after relief specifically focuses on his herniated disc. Specifically, the plaintiff requests that the medical defendants send him to a neuro specialist and then either provide him with physical therapy or surgery to repair his movement. However, there is no evidence in the medical records indicating that the medical defendants denied Mr. Niemic medical consultations or restorative treatment, or that the medical defendants failed to treat the plaintiff's back pain with medication.

8.      During plaintiff's incarceration at MCI-CJ, Mr. Niemic complained of back pain on July 2, 2005. (Exhibit 1, sick call request). On July 9 and July 11, 2005, the MCI-CJ medical staff prescribed him Motrin, Toradol and Percocet to treat his pain. (Exhibit 1, physician orders).

9.      The MCI-CJ medical staff sent Mr. Niemic to Greystone Radiology Associates for a review of his painful back condition on July 12, 2005. (Exhibit 2, outside medical records). Specifically, C. Michael Williams, M.D. reported on three lumbar spine views, which indicated that there is no evidence of compression fracture, narrowed disc space, or significant degenerative disease. There were no lesions seen, and the views of Mr. Niemic's lumbar spine were normal. (Exhibit 2).

10.     Dr. Williams' review of the plaintiff's cervical spine revealed that, while there was localized lower cervical spondylosis and degenerative joint disease at the C6-7 level, there was no evidence of fracture or subluxation seen. (Exhibit 2).

11.     In response to the somewhat abnormal report, on July 12, 2005, MCI-CJ nurse practitioner, May Votock, requested an MRI of plaintiff's lumbar spine, at the Lemuel Shattuck Hospital ("LSH"), to further evaluate Mr. Niemic's back pain. (Exhibit 3 attached, UMCH specialty referral request).

958472v1

12. While the MRI was pending, on July 12th and then July 18th, MCI-CJ physician, Dr. Carl Singletary, prescribed the plaintiff Motrin, Robaxin, Percocet, Toradol injections, and Ultram to treat the his lower back pain. (Exhibit 1, physician orders).

13. Mr. Niemic was then sent to the New England Medical Center on July 25, 2005, where Refeeque Bhadelia, M.D. reviewed his lumbar spine. Dr. Bhadelia found that at the L4-5 level, Mr. Niemic had disc herniation on the right side, extending superiorly to the right lateral recess of L4, and extending to the right L4-5 neural foramen. (Exhibit 2). The doctor showed concern that plaintiff's disc herniation could irritate his L4 nerve root. (Exhibit 2).

14. Mr. Niemic was transferred from MCI-CJ to the Souza Baranowski Correctional Center ("SBCC") on July 26, 2005, the day after the medical defendants learned of Mr. Niemic's disc herniation diagnosis. (Exhibit 1, intrasystem transfer form).

15. After reviewing Mr. Niemic's medical records, on July 26th, SBCC's physician, Dr. Paul Tavares, prescribed Ultram, and Angela D'Antonio, R.N. continued plaintiff's current medicine regimen. (Exhibit 1, physician order and sick call request).

16. Additionally, on July 28, 2005, Nurse D'Antonio prescribed Mr. Niemic Robaxin for his back spasms, and continued plaintiff's Ultram taper. (Exhibit 1, physician order).

17. On August 2, 2005, Nurse D'Antonio requested a neurosurgical consult evaluation at New England Medical Center to review Mr. Niemic's right disc herniation. (Exhibit 3). While this consult was pending, Dr. Tavares and Nurse D'Antonio continued to prescribe plaintiff with Ultram. (Exhibit 1, physician order).

18. On August 6, 2005, Mr. Niemic requested crutches to assist in ambulation when showering. (Exhibit 1, sick call request). In response, Nurse D'Antonio requested that plaintiff meet with Dr. Tavares to discuss the crutches because crutches are not usually used to assist with

4

958472v1

back pain, and because Mr. Niemic did not appear to have any difficulty walking. (Exhibit 1, progress note).

19. On August 10, 2005, Dr. Tavares met with Mr. Niemic, noting that plaintiff sat comfortably on the exam table. While plaintiff requested an increase in his Ultram medication, or else an oxycodone prescription, Dr. Tavares noted concern over these requests, given plaintiff's Hepatitis C. Additionally, Dr. Tavares advised against using crutches, as they would harm Mr. Niemic's back even more. (Exhibit 1, progress note).

II.  **INJUNCTIVE RELIEF STANDARD**

To obtain a temporary restraining order, the moving party must demonstrate that, without the requested relief, it would suffer irreparable harm, not capable of remediation by final judgment in law or equity. Commonwealth v. Massachusetts Crinc, 392 Mass. 79, 87 (1984); Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617, n.11 (1980). The moving party must also show that there is a likelihood that it would prevail on the merits of its claim at trial. Commonwealth v. Massachusetts Crinc, 392 Mass. at 87. The motion judge must then balance these two factors against a showing of irreparable harm which would ensue from the issuance, or denial, of an injunction and the "chance of success on the merits" presented by the opposing party. Id.; Packaging Industries Group, Inc., 380 Mass. at 616-617. When the balance of hardship measured in the light of the legal merits cuts in favor of the moving party, it is entitled to a preliminary injunction. Commonwealth v. Massachusetts Crinc, 392 Mass. at 617.

III. **THE RELIEF PLAINTIFF SEEKS IN HIS MOTION FOR TRO/PI FAILS TO RELATE TO THE TREATMENT PROVIDED BY THE MEDICAL DEFENDANTS IN THIS UNDERLYING CAUSE OF ACTION.**

The plaintiff's Motion for TRO/PI requests that the medical defendants, or specifically the Program Director, defendant June Binney, arrange an appointment with a neuro specialist,

provide him with medication, and then either give him physical therapy or surgery to repair his legs and back. The relief sought is centered around the alleged mistreatment of Mr. Niemic's herniated disc, not around the treatment of his head wounds. While plaintiff's complaint stems solely from his medical treatment at MCI-CJ, this Motion for TRO/PI stems from medical treatment for Mr. Niemic's herniated disc–treatment which was solely administered at SBCC, a prison where none of the named medical defendants are employed.

Contrary to plaintiff's motion, the medical records reflect that plaintiff was not diagnosed with a herniated disc until July 25, 2005, the day before his transfer from MCI-CJ to SBCC. (Exhibit 2). As such, the medical defendants listed in plaintiff's underlying claim (all employees at MCI-CJ) never treated Mr. Niemic's herniated disc. Moreover, the medical records reflect that when the medical defendants were notified of plaintiff's back pain on July 2, 2005, they made continuous efforts to treat the plaintiff's lower back pain with examinations and medication. (Exhibits 1 and 2). Given that the relief sought by Mr. Niemic in his Motion for TRO/PI is related to the treatment provided after he left the medical defendants' prison facility, and given that the medical defendants in this underlying complaint provided adequate treatment for plaintiff's back pain before his diagnosis, this Motion should be dismissed.

## IV. THE PLAINTIFF HAS NOT AND CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS IN HIS UNDERLYING CLAIM.

In the case at bar, the plaintiff has requested that he be sent to a neuro specialist and that he receive both medication and physical therapy or surgery to cure his back pain. However, not only are these requests moot, but Mr. Niemic's evidence does not and will not demonstrate a likelihood of success on the merits. (Exhibit 1, progress note).

958472v1

A.  Plaintiff Cannot Establish a Likelihood of Success on the Merits Because the Relief Sought is Moot.

Because Mr. Niemic is already receiving the relief requested in his Motion for TRO/PI, this claim is moot. The plaintiff is currently being prescribed pain medication to treat his lower back pain, while a neurosurgical consult with New England Medical Center is pending. (Exhibit 1, physician orders and progress notes). Specifically, Dr. Tavares prescribed Mr. Niemic Ultram and Baclotin until his consult at New England Medical Center. (Exhibit 1, progress note). Additionally, the UMCH staff at SBCC already requested that Mr. Niemic see a neurosurgical physician as soon as possible. (Exhibits 1 and 3). As such, the Court should deny the plaintiff's motion, as there is now no actual controversy, and, thus, the plaintiff is unlikely to prevail on the merits of his claim.

B.  The Medical Records Indicate That the Plaintiff Will Not be Able to Prove Deliberate Indifference at Trial.

The plaintiff must demonstrate that it is more likely than not that he will succeed on the merits of his claims. He has not and cannot so demonstrate such a likelihood of success in this case on his claims of an Eighth Amendment Violation.

It is clear that "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions' sufficiently harmful to evidence deliberate indifference to serious medical needs." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). In Estelle, the Supreme Court articulated that plaintiff must demonstrate that the specific acts or omissions relative to a prisoner's medical treatment constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." Id.; see Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985). "Where there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional or evidence of acts or omissions so

7

958472v1

dangerous with respect to health or safety, that a defendant's knowledge of a large risk can be inferred summary judgment is appropriate." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

In Ferranti, the court held that where medical attention was given to an inmate, disagreement as to the appropriate course of medical treatment, or the source of treatment, did not constitute "deliberate indifference" and, as such, was not actionable as a violation of the Eighth Amendment. Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980). Similarly, in Layne, the court held that even substandard medical treatment would not constitute a cognizable claim absent a showing of "deliberate indifference" to the serious medical needs of an inmate. Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1980); Langton v. Commissioner of Correction, 34 Mass. App. Ct. 564 (1993)(alleged conditions under which inmates tested for tuberculosis did not constitute "deliberate indifference to serious medical needs").

As set forth above, assuming a plaintiff can satisfy the first prong of the Estelle standard by a showing of his "serious medical needs," something more than negligent treatment must then be alleged to state a claim for violations of the Eighth Amendment proscription against the infliction of cruel and unusual punishment. Echoing the Supreme Court's rationale in Estelle, the Court of Appeals for the Sixth Circuit has said: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Neither an inadvertent failure to provide adequate care nor negligent treatment or diagnosis is actionable under 42 U.S.C. §1983, as the offending conduct must be wanton.

In order to establish deliberate indifference, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991). Where, as in this case, the dispute concerns not the absence of medical care, but the choice of a certain course of treatment, the plaintiff must prove that the treatment was so clearly inadequate that it shocks the conscience or that it amounts to a refusal to provide essential care. See Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991); Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1980).

1.  The medical defendants were not deliberately indifferent to Mr. Niemic's medical needs.

Because Mr. Niemic's Motion for TRO/PI and the medical records fail to demonstrate that the medical defendants in this underlying cause of action treated plaintiff with deliberate indifference, this Motion should be dismissed. The plaintiff's sole allegations against the medical defendants in this underlying complaint, who are staffed by UMCH at MCI-CJ, is that they failed to diagnose or treat his back pain and head wounds. Specifically, plaintiff's motion states that on June 13, 2005, medical defendant, Stanley Galas, gave him sutures on two of his many head lacerations, and that the MCI-CJ staff failed to diagnose or examine his back condition. However, Mr. Niemic admits in his next sentence that, after he complained of back pain in early July, the MCI-CJ medical staff housed him in the HSU and treated his pain with medication until his condition could be examined by an outside doctor. Because plaintiff even admits that the UMCH staff treated his back pain with medications until a consult could be scheduled, Mr. Niemic fails to demonstrate that the medical defendants, named in the underlying complaint, were deliberately indifferent to his medical needs.

Moreover, the medical records reflect that the medical defendants did not treat Mr. Niemic's conditions with deliberate indifference. Plaintiff suffered head lacerations during

9

an altercation with another inmate on June 13, 2005. (Exhibit 1, progress note). In response, the medical defendants sutured his head wounds on June 13, 2005, removed the sutures on June 23, 2005, and reviewed the wounds for infection on July 11, 2005. (Exhibit 1, progress notes). Given that there was no infection in any of plaintiff's wounds, sutured or not, the records indicate that the medical defendants were not deliberately indifferent to plaintiff's medical needs.

The records also demonstrate that the medical defendants were not deliberately indifferent to plaintiff's lower back pain. While Mr. Niemic alleges in his motion that his back pain was not treated until July 18, 2005, the medical records reflect that on July 12, 2005, only three (3) days after he initially complained to the medical defendants of his back pain, his condition was reviewed by Dr. C. Michael Williams of Greystone Medical Associates. The medical defendants did not seek a neurosurgical consult at this time because Dr. Williams' report stated that there was no evidence of a compression fracture, narrowed disc, or significant degenerative disease in plaintiff's lumbar spine. (Exhibit 2). To verify the lumbar spine view, on that same day, July 12th, the MCI-CJ medical staff requested an MRI of plaintiff's lumbar spine and started treating his back pain with Toradol injections and Percocet. (Exhibit 3, consult request; Exhibit 1, physician order). Subsequent to ordering this consult, and prior to plaintiff's transfer on July 26, 2005 to SBCC, on July 18, 2005, the UMCH staff at MCI-CJ reviewed Mr. Niemic's lower back pain. (Exhibit 1, progress note). Based on Dr. Singletary's examination, the medical defendants continued to treat that pain with Toradol, Percocet, and Ultram. (Exhibit 1, progress notes and physician orders).

Given that the records clearly demonstrate that the medical defendants provided Mr. Niemic with thorough and continuous treatment for his head wounds and lower back pain, the course of treatment provided by the medical defendants cannot possibly be categorized as

"repugnant to the conscience of mankind" or "an unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). As such, the plaintiff cannot succeed on the merits of his Eighth Amendment claim.

    2.    <u>The SBCC staff was not deliberately indifferent to Mr. Niemic's serious medical needs.</u>

The medical records attached and submitted to this Court come nowhere near to meeting the extremely difficult burden of establishing that the UMCH staff at SBCC were deliberately indifferent to Mr. Niemic's serious medical needs. Mr. Niemic has received extensive medical evaluations, care, and treatment for his herniated disc at SBCC. (Exhibits 1, 2, and 3). The UMCH staff at SBCC have and continue to send plaintiff to neuro specialists for treatment and evaluation. Specifically, on August 2, 2005, Angela D'Antonio, R.N. requested a neurosurgical consult for Mr. Niemic at the New England Medical Center. (Exhibit 3; Exhibit 1, progress notes). Mr. Niemic's condition was also closely monitored by the UMCH staff at SBCC–specifically, Dr. Tavares, and R.N. D'Antonio. (Exhibit 1). Given the various outside clinical recommendations and the active treatment Mr. Niemic is receiving at SBCC, the course of treatment provided to the plaintiff thus far cannot possibly be categorized as "repugnant to the conscience of mankind" or "an unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).

In view of the extensive and ongoing evaluations and care being received by Mr. Niemic, he has not and cannot show a likelihood of success on the merits of his claims, and his request for injunctive relief should be denied.

958472v1

V.   **THE PLAINTIFF HAS NOT AND CANNOT DEMONSTRATE THAT HE WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED**

Aside from mere speculation, plaintiff has presented no medical evidence to support his assertions that he will suffer irreparable harm if injunctive relief is not granted. Given the lack of any support for Mr. Niemic's claim of irreparable harm, he is not entitled to injunctive relief.

WHEREFORE, for the foregoing reasons, the medical defendants respectfully request that this Court deny the plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

|  |  |
|---|---|
| I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail on this 8th day of September, 2005.<br><br>/s/ James A. Bello<br>_____<br>James A. Bello / Lisa R. Wichter | Respectfully Submitted,<br>The Defendants,<br>STANLEY GALAS, ARTHUR BREWER, M.D., JUNE BINNEY, JEFF SHOREY, R.N., KARA ERDODY, N.P., DONNA FITZGERALD, L.P.N., DONALD KERN, M.D. AND GURVINDER JAISWAL, M.D.<br>By their attorneys,<br><br>/s/ James A. Bello<br>_____<br>James A. Bello, BBO #633550<br>Lisa R. Wichter, BBO #661006<br>MORRISON MAHONEY LLP<br>250 Summer Street<br>Boston, MA 02210<br>(617) 439-7500 |

958472v1