**EXHIBIT B**

# RADIOLOGY ASSOCIATES
## *Greystone*

PATIENT NAME: KEITH NEIMIC
DATE OF BIRTH: 6-19-68
DATE OF EXAM: 7-12-05

REFERRING PHYSICIAN: DR. SINGLETARY
MCI-CEDAR JUNCTION

LUMBAR SPINE/THREE VIEWS:

FINDINGS: There is no evidence of compression fracture, narrowed disc space, or significant degenerative disease. No destructive lesions are seen.

IMPRESSION: Normal examination.

CERVICAL SPINE/TWO VIEWS:

FINDINGS: There is localized lower cervical spondylosis and degenerative joint disease at the C6-7 level. No fracture or subluxation is seen.

IMPRESSION: Lower cervical spondylosis and degenerative joint disease.

Thank you for referring this patient.

Very truly yours,

CMW/sm
450 Veterans Memorial Parkway
7-13-05

C. Michael Williams, M.D.

W

CARL SINGLETARY, M.D.
JUL 1 5 2005

Metacomet Executive Office Park — 450 Veterans Memorial Pkwy, Bldg 2 — East Providence, RI 02914 — T 435-3041 • F 435-3042

Bayside Medical Building — 235 Plain Street — Providence, RI 02905 — T 272-8510 • F 272-0315

Warwick Office — 469 Centerville Road, Suite 103 — Warwick, RI 02886 — T 738-9002 • F 732-4167

Greystone Office — 450 Veterans Memorial Pkwy, Bldg 2 — East Providence, RI 02914 — T (401) 223-7031 • F (401) 223-7036

New England Corporate Office — 38 Hamlet Avenue — Woonsocket, RI 02895 — T (401) 762-0020 • F (401) 762-1819

American College of Radiology Accreditation CT • Mammography • Ultrasound    American Institute of Ultrasound in Medicine Accreditation OB/GYN • Abdomen

## New England Medical Center
## MRI Department

### Telephone: 617-636-0207

## IMAGING INTERPRETATION

| | |
|---|---|
| Name: | KEITH NIEMIC |
| Hospital # : | LS00087643 |
| DOB: | 06/19/1968 |
| Ordering Physician: | SINGLETARY, CARL MD |
| Date Ordered: | 07/27/05 |
| Patient Location: | MRINEMC.L |
| Examination: | MRI LUMBAR SPINE |
| Service Date: | 07/25/05 |

**Clinical Indication:**

TECHNIQUE: T1, T2 and inversion recovery sagittal and T2 axial images of the lumbar spine were acquired.

FINDINGS: From T12-L1 to L3-4, no abnormalities are noted.

At L4-5 level, there is a disc herniation visualized on the right side, which extends superiorly to the right lateral recess of L4 and extending to the right L4-5 neural foramen. The disc herniation could irritate the right L4 nerve root.

At L5-S1 level, no abnormalities are seen. The distal spinal cord shows normal signal intensities.

**IMPRESSION:**

Right sided disc herniation at L4-5 level extending superiorly to the right lateral recess of L4 and extending to the right neural foramen at L4-5 level. The disc herniation could irritate the right L4 nerve root. Clinical correlation recommended.

Radiologist: _____
BHADELIA, REFEEQUE MD

Transcriptionist Initials:      JEE
Transcription Date and Time:  08/01/05 1451

CC:

1 of 1

Reviewed c MD
FFO fr Neuro-
Surg.

[signature]
8/2/05 1302

# UMC SPECIALTY REFERRAL REQUEST

SITE **CJ**     DATE OF REQUEST **7/10/05**     DATE REQUEST FAXED **7/25/05 10 AM**

REQUESTING CLINICIAN **Nay Vetock**     ON SITE: ☐    OFF SITE: ☒    **#135569**

I/M NAME **Keith Niemi**    I/M ID **W61426**    I/M DOB **6-19-68**

INCARCERATION END DATE **Life**    Initial Referral _____    Follow-Up _____

SPECIALTY REQUEST **MRI – lumbar spine**    FACILITY ~~Name~~ **LSH**

### RATIONALE FOR REQUEST:
Acute sciatica c̄ abnormal neuro exam

### SYMPTOMATOLOGY/EXAM DATA:
1st reported LBP 6/14 p̄ altercation. Pain has increased to severe intensity c̄ shooting pain down lateral thigh to knee. Constant numbness + tingling in LE
⊕ tenderness lumbar spine + rt. buttock.
⊕ SLR on ® at 10° ⊖ SLR on left

### LAB/X-RAY DATA:
absent ® knee reflex; Ⓛ knee reflex 3+ (reg I/m elicited c̄ shackles)
strength ↓ ® calf + ankle

L/S spine films pending

### RELATED TREATMENT HISTORY:
Started on Prednisone c̄ taper 7/10 and Motrin. Given ice pack

### COMMENTS:
HCV ⊕

Clinician Signature **N. Vetock NP**
Clinician Stamp **N. Votock, R.N.P.**

Date Received by UR Department _____
CARL SINGLETARY, M.D.
JUL 12 2005 **CS**

*Do not delay treatment that is medically urgent or emergent.
*For security reasons inmates must not be informed of date, time or location of proposed treatment or hospitalization.

4/12/05

Approved 7/14

## UMASS CORRECTIONAL HEALTH
### INTRASYSTEM TRANSFER FORM

Transferring Facility: CJ
Name: Niemic           ID#: W61426   D.O.B. 6-19-68
Allergies: Benadryl
Current Acute Conditions / Problems:
Chronic Clinics / Problems: HCV, HBV,           Last Visit: _____

| Medication Name & Dose | Instructions for Taking | Last Time Taken |
|---|---|---|
| See MAR | | |
| PEG Interferon Reg # 0 | | |

Hep A vaccine done

Current Treatments: 0
Appointments Scheduled: 0
Follow-up Care Needed: 0
Consult pending? (check log): 0
Medical Assessment / TB Screening in chart: ☒ Yes ☐ No   Date 3/5/04   Results 0 mm
Physical Disabilities / Limitations: 0
Assistive Devices / Prosthetics: 0
Therapeutic Diet: ☐ Yes ☒ No   Type: _____
Mental Health History / Concerns:
  Currently treated by Mental Health: ☐ Yes ☐ No
  History of Suicide Attempt: ☐ Yes ☐ No
  History of Psychotropic Medication: ☐ Yes ☐ No   Date: _____
  Previous Psychiatric Hospitalization: ☐ Yes ☐ No
Substance Abuse History: ☐ Yes ☐ No
☐ Patient-specific medications and medical record sent
Prepared by:
Signature and Title: [signature]   Date 7/26/05   Time 10

---

### TRANSFER RECEPTION SCREENING
Receiving Facility: SBCC
S: Current Medical / MH / Dental Complaint: SLP DISC
Current Medications / Treatment / Diet: Adderal, Celexa, Colace, Ultram, Maalox, Metamucil

Needs Rx Plans

O: Physical Appearance / Behavior: _____
Rashes / Infestations: Open Sore Great @ toe
Deformities: Acute / Chronic:
A: P 84, R __, BP 140/80, Wt 136
Feels NAD

P: Disposition (Any history of suicide attempt requires an immediate referral to Mental Health.)
  ___ General Pop.
  ___ Routine Sick Call
  ___ Emergency Referral
  ___ Physician Referral
       Urgent / Routine
  ___ Mental Health
       Urgent / Routine
  ___ Infirmary Placement
  ___ Dental
  ✓ OTHER   3rd flr
☐ Consent for Treatment / Access Information Given
☐ Kitchen Notification of Special Diet, if Applicable
☐ KOP Agreement Reviewed / Updated

Receiving Nurse's Signature: [signature]
Date and Time: 7/26/05  0630

Reviewed By Physician
Date and Time: 8/2/05  11AM

8022 Rev. 2/02

**Philip Tavares, M.D.**

# UMCH SPECIALTY REFERRAL REQUEST

SITE **SBCC**   DATE OF REQUEST **8/2/05**   DATE REQUEST FAXED _____

REQUESTING CLINICIAN **ANGELA S. D'ANTONIO**  ON SITE: ☐   OFF SITE: ☒

I/M NAME **NIEMIC KEITH**   I/M ID **W61426**   I/M DOB **6/19/68**

INCARCERATION END DATE _____   Initial Referral ✓   Follow-Up ____

SPECIALTY REQUEST **Neurosurgical Eval.**   FACILITY **NEMC Neurosurgery**

**RATIONALE FOR REQUEST:**
Pt c̄ ® side disc herniation at L4-L5

**SYMPTOMATOLOGY/EXAM DATA:**
Pt c/o severe LBP & pain extending into ® leg
along c̄ numbness/tingling in upper extremities
∅ dysfunction bowel/bladder
Unable to examine in 5mm c̄ ankle & wrist restraints
but on prisons MD exam –
antalgic gait, ↓sensation to touch LLE SLR 60°® 30° on ℗

**LAB/X-RAY DATA:**
MRI – 7/25/05 – all attached

**RELATED TREATMENT HISTORY:**
NSAIDS, po steroids, Ultram, Robaxin
Oxycodone, Nubain

**COMMENTS:**


Clinician Signature _Angela D'Antonio_   Date Received by UR Department _____
Clinician Stamp
ANGELA S. D'ANTONIO, RN, CS

*Do not delay treatment that is medically necessary urgent or emergent.
*For security reasons inmates must **not** be informed of date, time or location of proposed treatment or hospitalization.

4/12/05

**EXHIBIT D**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEITH NIEMIC,<br>    Plaintiff<br><br>VS.<br><br>STANLEY GALAS, ARTHUR BREWER, M.D.,<br>JUNE BINNEY, JEFF SHOREY, R.N.,<br>KARA ERDODY, R.N., DONNA<br>FITZGERALD, L.P.N., DONALD KERN, M.D.,<br>and GURVINDER JAISWAL, M.D., ET AL.,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 1:04-CV-11482-NMG<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF ARTHUR BREWER, M.D.

I, **ARTHUR BREWER, M.D.**, on oath depose and swear that:

1. I am licensed to practice medicine in the Commonwealth of Massachusetts.

2. I am the Program Medical Director for UMass Correctional Health ("UMCH"), and have held this position since January 1, 2003. As Program Director, my duties are generally administrative in nature. While I provide direct treatment to inmates at times, in Mr. Niemic's case, I did not provide him with any direct medical care.

3. UMCH is the healthcare provider from the Massachusetts Department of Correction ("MDOC") and was the provider for all the Massachusetts prison facilities during the times relevant to this Motion for a Temporary Restraining Order and Preliminary Injunction.

4. While Mr. Niemic claims that I, along with the other named medical defendants, was deliberately indifferent to his head wounds and herniated disc, by failing to diagnose and treat these conditions, the UMCH staff at MCI-Cedar Junction ("MCI-CJ") provided plaintiff with adequate and appropriate medical care, based on the medical reports and plaintiff's medical condition. (Exhibits 1, 2, and 3).

5. Plaintiff names myself, June Binney Stanley Galas, Jeff Shorey, R.N., Kara Erdody, R.N., Donna Fitzgerald, L.P.N., Donald Kern, M.D., and Gurvinder Jaiswal, M.D. as medical defendants in the complaint underlying this Motion for Temporary Restraining Order/ Preliminary Injunction. All of the above-named individuals, with the exception of June Binney and myself, are UMCH employees, who provided medical treatment to inmates incarcerated at MCI-CJ during the time stated in Mr. Niemic's complaint.

6. The plaintiff's medical records indicate that none of the medical defendants mentioned in Paragraph 5, including myself or June Binney, provided Mr. Niemic with medical care from June 2005 through the present.

959628v1

7. Regarding plaintiff's head wounds, on June 13, 2005, when Mr. Niemic was brought down to MCI-CJ's Health Service Unit ("HSU"), the medical staff applied nylon sutures on his two large head lacerations, and treated the plaintiff's pain with lidocaine. (Exhibit 1, progress note).

8. On June 23, 2005, the MCI-CJ staff removed Mr. Niemic's sutures, and his wounds were found to be clean and dry. (Exhibit 1).

9. When the plaintiff requested his wounds be reviewed on July 2, 2005, Dr. Augustin Enaw examined the lacerations on July 11, 2005, and noted that the wounds were not infected. (Exhibit 1, progress note).

10. Mr. Niemic's sought-after relief focuses on his herniated disc. Specifically, the plaintiff requests that I arrange an appointment for him with a neuro specialist, and then I order that he either be provided with physical therapy or surgery to repair his movement.

11. As Program Director of UMCH, my job is to oversee the medical decisions made by the staff at each prison facility. However, I generally do not personally treat individual prisoners, nor do I interfere with their treatment, unless policy or treatment renders it necessary to do so. In Mr. Niemic's case, the medical records indicate that the medical staff at MCI-CJ provided Mr. Niemic with outside medical consultations when appropriate, and that the staff at MCI-CJ also treated the plaintiff's back pain with the proper pain medication.

12. During his incarceration at MCI-CJ, Mr. Niemic complained of back pain on July 2, 2005. (Exhibit 1, sick call request). On July 9 and July 11, 2005, the medical defendants prescribed him with Motrin, Toradol and Percocet to treat his pain, until his back could be reviewed by an outside specialist. (Exhibit 1, physician orders).

13. On July 12, 2005, Greystone Radiology Associates reported on plaintiff's three lumbar spine views. The findings indicated that there was no evidence of compression fracture, narrowed disc space, or significant degenerative disease. There were no lesions seen, and the views of Mr. Niemic's *lumbar spine were normal.* (Exhibit 2, outside medical records).

14. Even though plaintiff's lumbar spine appeared normal, a view of the plaintiff's cervical spine revealed that there was localized lower cervical spondylosis and degenerative joint disease at the C6-7 level, despite the fact that there was no evidence of fracture or subluxation seen. (Exhibit 2).

15. In response to the abnormal report, on July 12, 2005, MCI-CJ's nurse practitioner, May Votock, requested an MRI of plaintiff's lumbar spine, at the Lemuel Shattuck Hospital ("LSH"), to further evaluate Mr. Niemic's back pain. (Exhibit 3 attached, UMCH specialty referral request).

16. While the MRI was pending, on July 12th and then July 18th, MCI-CJ's physician, Dr. Carl Singletary, prescribed the plaintiff Motrin, Robaxin, Percocet, Toradol injections, and Ultram to treat the his lower back pain. (Exhibit 1, physician orders).

17. Mr. Niemic was then sent to the New England Medical Center on July 25, 2005. Refeeque Bhadelia, M.D. reviewed Mr. Niemac's lumbar spine and found that, at the L4-5 level, Mr. Niemic had disc herniation on the right side, extending superiorly to the right lateral recess of

2

959628v1

Mr. Niemic had disc herniation on the right side, extending superiorly to the right lateral recess of L4, and extending to the right L4-5 neural foramen. (Exhibit 2). Dr. Bhadelia was concerned that plaintiff's disc herniation could irritate his L4 nerve root. (Exhibit 2).

18. Mr. Niemic was transferred from MCI-CJ to the Souza Baranowski Correctional Center ("SBCC") on July 26, 2005, one day after MCI-CJ's medical staff learned of his disc herniation diagnosis. One day of notification regarding his diagnosis is not enough time to treat Mr. Niemic for a herniated disc. (Exhibit 1, intrasystem transfer form).

19. After reviewing Mr. Niemic's medical records, on July 26th, SBCC's physician, Dr. Paul Tavares, prescribed Ultram, and Angela D'Antonio, R.N. continued plaintiff's current medicine regimen. (Exhibit 1, physician order and sick call request). Additionally, on July 28, 2005, Nurse D'Antonio prescribed Mr. Niemic Robaxin for his back spasms, and continued plaintiff's Ultram taper. (Exhibit 1, physician order).

20. On August 2, 2005, Nurse D'Antonio requested a neurosurgical consult evaluation at New England Medical Center to review Mr. Niemic's right disc herniation. (Exhibit 3). While this consult was pending, Dr. Tavares and Nurse D'Antonio prescribed the plaintiff Ultram. (Exhibit 1, physician order).

21. On August 6, 2005, Mr. Niemic requested crutches to assist in ambulation when showering. (Exhibit 1, sick call request). In response, Nurse D'Antonio requested that plaintiff meet with Dr. Tavares to discuss the crutches because crutches are not usually used to assist with back pain, and because Mr. Niemic did not appear to have any difficulty walking. (Exhibit 1, progress note).

22. On August 10, 2005, Dr. Tavares met with Mr. Niemic, who requested an increase in his Ultram medication, or else an oxycodone prescription. Dr. Tavares was understandably concerned over these medication requests, especially given that the plaintiff also suffered from Hepatitis C. Additionally, Dr. Tavares advised against using crutches, as they would harm Mr. Niemic's back even more. (Exhibit 1, progress note).

23. The plaintiff's medical records indicate that the medical staff at MCI-Cedar Junction treated Mr. Niemic's head wound and back pain in the appropriate manner. Given these facts, along with the fact that Mr. Niemic is awaiting a neuro surgical consult, it is my recommendation that additional medical care is not necessary because the plaintiff is already receiving the appropriate treatment for his herniated disc.

24. All the above statements are true and accurate and are based upon my personal knowledge.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

THIS 30 DAY OF August, 2005.

Arthur Brewer, M.D.

959628v1