```
                     United States District Court
                       District of Massachusetts
_____
                                   )
KEITH NIEMIC,                      )
                                   )
        Plaintiff,                 )
                                   )    Civil Action No.
        v.                         )    04-11482-NMG
                                   )
MICHAEL MALONEY et al.,            )
                                   )
        Defendants.                )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Pending before the Court are multiple motions filed by the plaintiff, Keith Niemic ("Niemic"), an inmate of the Massachusetts state correctional system, against various defendants associated with his incarceration. Although Niemic is apparently now housed at the Souza-Baranowski Correctional Center in Shirley, Massachusetts, the events described in the complaint took place while he was incarcerated at MCI-Cedar Junction, the state correctional facility in Walpole, Massachusetts ("Walpole").

**I.   Factual Background**

Niemic has suffered from liver pain and chronic migraine headaches as well as other physical and mental conditions during his time at Walpole and continuing to the present. He states

that he began requesting treatment for his liver pain in 1997 but that he was not started on a program of interferon to treat Hepatitis C until December 31, 2001. The treatment was discontinued in June, 2002, apparently because of the flu-like symptoms it caused, which the plaintiff found difficult to endure when combined with his migraines.

In July, 2003, Niemic requested the recommencement of treatment for his liver condition and was told that a six-month waiting list existed for the treatment he sought. In September, 2003, Niemic alleges that he was forcibly and coercively subjected to a medical examination, including being forced to provide a urine sample and receive treatment against his will. After that episode, Niemic again requested treatment for his liver condition but was told that it could not be commenced because he had submitted a "dirty" urine sample.

With respect to his migraines, Niemic contends that although several doctors prescribed various medications for him in November, 2001, May, 2002 and April, 2003, he was either denied those prescriptions or given inadequate substitutes. He contends, moreover, that he had to wait a long time before his request to see a neurologist was granted.

In September, 2003, the plaintiff was moved to the Departmental Disciplinary Unit ("DDU") at Walpole to serve a one-year term for reasons that Niemic maintains were unjustified. He

contends that after he was moved to the DDU he was deprived of various legal materials and personal records for a significant amount of time in contravention of the policy set forth in the DDU manual.

In addition, Niemic contends that his complaints and requests relating to his physical ailments went unaddressed in the DDU. In October, 2003, for instance, he made numerous complaints about physical pain and a rapid 20-pound weight loss, without receiving adequate responses. He alleges that he continued to suffer pain and make complaints over the next eight months but that his requests for evaluations and treatment were denied.

Also in October, 2003, Niemic attended a disciplinary hearing for the allegedly "dirty urine" he had submitted in September, 2003. He contends that he was denied adequate access to legal materials in order to prepare for that hearing and that, after the hearing, he was denied a tape recording of the proceedings. Niemic was found guilty at the hearing and assessed a fine and a penalty depriving him of various privileges, including visits, telephone, television, radio and commissary, for six months. He submits that he was deprived of adequate legal materials to appeal that decision.

In addition to the foregoing allegations, Niemic alleges that 1) he has been deprived of, or been delayed in his access

to, incoming and outgoing U.S. mail service for several years, 2) he has been deliberately deprived of access to legal materials on multiple occasions which has materially harmed his ability to participate effectively in legal proceedings commenced by or against him, 3) deliberately false reports have been made about him, 4) a freeze was put on his personal account in order to prevent him from filing legal papers and 5) various grievances and requests made by him were responded to with deliberate indifference and callousness.

## II. **Procedural History**

On June 29, 2004, Niemic filed a handwritten, 68-page complaint against 20 defendants in their individual and official capacities alleging numerous violations of federal and state law. The defendants fall generally into two categories: twelve employees of the Massachusetts Department of Corrections ("the D.O.C. defendants") and eight employees of the University of Massachusetts Correctional Health, which has a partnership program with the Massachusetts Department of Corrections through which it provides services to Walpole among other correctional institutions ("the U. Mass. defendants"). The complaint states numerous counts under 42 U.S.C. § 1983 and seeks relief in the form of various declaratory judgments (29 in all), injunctive relief, and compensatory and punitive damages.

The Court allowed the plaintiff to proceed in forma pauperis

but because of a mathematical error, some confusion ensued over the proper filing fee. Pending before the Court is Niemic's Motion to Correct an Erroneous Filing Fee Computation.

In an Order issued by the Court on April 4, 2005, Niemic was ordered to show cause why his case should not be dismissed against one of the D.O.C. defendants, Michael Maloney ("Maloney"). Niemic subsequently filed a pending "motion" in response to that order.

On July 11, 2005, Niemic moved for judgment as a matter of law against the U. Mass. defendants. Those defendants oppose the motion and Niemic has "moved" to "strike" their opposition to his motion.

The D.O.C. defendants requested and received an initial extension of time, and two enlargements thereof, to respond to plaintiff's complaint. On November 9, 2005, the expiration date of the third extension, ten of the D.O.C. defendants filed an answer to the complaint. Defendants Maloney and Allen did not join that answer and therefore have not filed any responsive pleading. This may be because 1) no summons was issued as to defendant Maloney (presumably because of the order to show cause why claims against him should not be dismissed) and 2) the summons as to defendant Allen was returned unexecuted.

After the D.O.C. defendants requested, but before this Court allowed, the first extension of time to answer plaintiff's

complaint, Niemic moved for a default judgment against 11 of those 12 defendants.

Finally, Niemic moved on August 11, 2005, for a temporary restraining order and preliminary injunction. The U. Mass. defendants oppose plaintiff's motion but the D.O.C. defendants submitted no opposition or other response. The Court addresses the merits of each motion seriatim.

### III. Plaintiff's Motion to Correct Erroneous Filing Fee Computation

An error in the computation of the appropriate filing fee was made in the form allowing Niemic to proceed in forma pauperis. That error was corrected by the Court in a subsequent Order entered on April 4, 2005. The subject motion filed by plaintiff reveals some confusion as to how much of the filing fee remains unpaid. As plaintiff correctly notes, the total fee is $150. See Order (Docket No. 7). Because plaintiff has paid a total of $40 to the Court, he now owes $110. See Memorandum and Order (Docket No. 16). Consequently, plaintiff's motion to alter the remaining balance from $110 to $70 will be denied.

### IV. Motion to Show Cause

In an Order entered April 4, 2005, the Court ordered the plaintiff to show cause why his claims against defendant Maloney, the former Commissioner of the Massachusetts Department of Corrections ("Commissioner"), should not be dismissed on the grounds that they are based on a theory of respondeat superior,

in which context § 1983 does not support liability.

In his response to that Order (which he has couched as a "motion"), Niemic states that he "explicitly" addressed to Maloney, who was the acting Commissioner at relevant times set forth in the complaint, various complaints about constitutional violations to which plaintiff was subjected. He suggests that Maloney's obligations to oversee state correctional facilities and enforce standards therefor, combined with his failure to act upon the violations that Niemic brought to his attention, render him liable for such violations as though he committed them personally.

The Court finds that Niemic has adequately stated a claim with respect to defendant Maloney's liability. A handwritten document filed by a pro se plaintiff is to be liberally construed. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A court should not dismiss a pro se complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Id. (citations and internal quotation marks omitted).

In this case, it is not inconceivable that Niemic can establish Maloney's liability. While the theory of respondeat superior does not support liability under § 1983, a plaintiff can state a § 1983 claim for supervisory liability where he alleges

with some foundation that the defendant's acts or omissions "amount[ed] to a reckless or callous indifference to the constitutional rights of others". Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994) (citations omitted). Apart from supervisory liability, of course, a plaintiff can also assert direct liability. By alleging that he directly informed Maloney of his unconstitutional treatment as to which the Commissioner neglected his responsibility to address, Niemic has adequately pled a causal connection between Maloney's failure to act and the plaintiff's alleged deprivation of civil rights. See Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir. 1987)(citations omitted).

Given the low threshold that plaintiff must surpass to avoid dismissal for failure to state a claim, the Court will allow Niemic's "motion" and decline to dismiss his complaint against defendant Maloney.

**V.    Motions for Judgment as a Matter of Law and to Strike Defendants' Opposition Thereto**

Niemic has moved for judgment as a matter of law against the U. Mass. defendants on the grounds that those defendants admitted the allegation in paragraph 3 of his complaint which states

> Plaintiff, Keith Niemic is a natural person incarcerated at MCI-Cedar Junction Walpole (Hereinafter "Walpole") all events described in this complaint did occur in Walpole where plaintiff was incarcerated. [sic]

Niemic contends that each of the U. Mass. defendants' responses

to that allegation, i.e., that "[t]he defendant makes no response to this paragraph of the plaintiff's Complaint as this paragraph does not pertain to the defendant" thereby admits the allegation as a matter of law and warrants judgment in Niemic's favor.

The U. Mass. defendants oppose Niemic's motion, maintaining that their responses to paragraph 3 were not intended to admit that any of the events alleged by plaintiff actually occurred but only that "whether or not Mr. Niemic was incarcerated at MCI-Cedar Junction when these alleged events occurred, is unrelated to any one of the particular defendants listed in the Complaint". Defendants further assert that to the extent any admission was made, it was an admission only that Niemic was indeed incarcerated at Walpole when and if the alleged incidents occurred.

Niemic has subsequently filed a motion to strike the U. Mass. defendants' opposition on the grounds that their answers to the complaint were not "concise" and "direct" as required by Fed. R. Civ. P. 8(e).  In substance, plaintiff's motion to strike is a reply to defendants' response.

This Court will deny plaintiff's motions for judgment as a matter of law and to strike the U. Mass. defendants' opposition thereto.  While the defendants' responses could have been stated more clearly, they do not merit an adverse judgment as a matter of law.  A plain reading of defendants' responses supports their

contentions.

**VI.  <u>Motion for Default Judgment</u>**

Niemic has moved for a judgment of default against 11 of the 12 D.O.C. defendants.[1]  Pursuant to this Court's Order on Screening entered April 4, 2005, those defendants were to respond to plaintiff's complaint within the time specified in the summonses, i.e., June 28, 2005.  The D.O.C. defendants did not answer the complaint within the specified time but, on July 11, 2005, moved for, and were granted, the first of three extensions of time to answer.  Reasons for seeking the extensions included the extent of investigation necessitated by the excessive number of allegations in the complaint and various scheduling difficulties brought about by vacation plans, illness and counsel's work on other cases.

Plaintiff filed a motion for default on August 1, 2005, on the grounds that the D.O.C. defendants had failed to move for an extension within the proper time limits and their stated reasons reflected a "gross disregard" for the judicial system and the plaintiff himself.  The U. Mass. defendants have not opposed Niemic's motion for default but they eventually answered his complaint within time limits approved by this Court.

Under Fed. R. Civ. P. 55(a), default shall be entered by the

---

[1] Apparently, plaintiff originally included, and then omitted, defendant Susan Martin from his motion.  No explanation is provided or evident.

Clerk where a party "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise". In this case, no default was entered despite the ostensible failure of the D.O.C. defendants to submit responsive pleadings or other defenses within the initial time required. Under Rule 55(b)(2), the court may enter judgment by default against a party 1) after notice and a hearing if the party has appeared in the action or 2) without notice and a hearing if no appearance has been made. See United States v. $23,000 in United States Currency, 356 F.3d 157, 163-64 (1st Cir. 2004). A court may not enter judgment by default, however, unless and until an entry of default under Rule 55(a) has been made. See id. at 168, n.15 (citation omitted).

Because no entry of default has been made in this case, the Court will treat Niemic's motion as one seeking both entry of default under Fed. R. Civ. P. 55(a) and judgment by default under subsection (b) of that rule. That motion will be denied.

Because courts prefer to resolve disputes on the merits, they generally disfavor default judgments. See, e.g., Key Bank of Maine v. Tablecloth Textile Co. Corp., 74 F.3d 349, 356 (1st Cir. 1996) (citations omitted); United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (calling it "inherently unfair" for a court to enter a default judgment because of filing delays). Default judgments entered pursuant to Fed. R. Civ. P. 55 are

intended to protect diligent parties whose adversaries are clearly unresponsive.  See, e.g., Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 63 (1st Cir. 2002) (citation omitted).

In this case, the D.O.C. defendants adequately indicated their intent to defend against plaintiff's claims and their motions for extensions of time to answer the complaint were sufficiently supported by good cause.  Furthermore, Niemic has suffered no undue disadvantage on account of the delay, which was brought about, in good part, by the plaintiff's lengthy complaint addressed to numerous defendants.

Although the Court will deny Niemic's motion, it advises the D.O.C. defendants that plaintiff's status as an incarcerated, pro se litigant does not diminish their explicit obligation to comply with applicable judicial orders and rules and that any further dilatory conduct will result in the imposition of appropriate sanctions.

**VII. Motion for Temporary Restraining Order and Preliminary Injunction**

Niemic has moved for a temporary restraining order and preliminary injunction to require the current Commissioner of the Massachusetts Department of Corrections, Kathleen Dennehy ("Commissioner Dennehy"), the Medical Director for U. Mass. Correctional Health, Arthur Brewer ("Brewer"), and their successors, agents and employees

    1)   to provide plaintiff an evaluation by a neurologist,

    2)    to provide medically appropriate treatment for plaintiff's pain and disability,

    3)    to move plaintiff to a medical facility to receive the above treatment,

    4)    to return to plaintiff various personal items including law books and radios,

    5)    to allow plaintiff visitation and communication privileges, and

    6)    to give plaintiff unrestricted access to legal materials, supplies, photocopies and U.S. mail to permit him access to the courts.

The U. Mass. defendants oppose plaintiff's motion on the grounds that they have provided adequate medical treatment for the conditions of which Niemic complains. Their answer includes numerous records of responses to plaintiff's "sick calls", medical prescriptions, referrals to external specialists and reports from those specialists after evaluation of Niemic. The D.O.C. defendants, on the other hand, have submitted no opposition to plaintiff's motion.

Because plaintiff has apparently served his motion on the parties to whom its terms are addressed, it will be considered solely as a motion for a preliminary injunction. A movant seeking a preliminary injunction under Fed. R. Civ. P. 65 must demonstrate a probability that he will ultimately succeed on the merits of his claim and irreparable harm absent the issuance of injunctive relief. See, e.g., Dialogo, LLC v. Santiago-Bauza, 425 F.3d 1, 3 (1st Cir. 2005) (citations omitted). The court is

also to consider the balance of equities between the parties and the public interest in determining whether or not relief is warranted.  Id. (citation omitted).

In this case, the U. Mass. defendants have made a compelling argument for the denial of the requested injunctive relief. Given the evidence of medical care recently afforded to plaintiff by the U. Mass. defendants, he has not demonstrated that he will suffer irreparable harm absent the relief he seeks.

The Court has more difficulty addressing the motion with respect to Commissioner Dennehy and the D.O.C. defendants because those defendants have not responded to it.  While Niemic has not made a strong showing that he will prevail on the merits of his claim, his contention that he has been denied sufficient access to legal materials including books that are his personal property, is troublesome in light of his pro se status. Accordingly, the Court will require Commissioner Dennehy and the D.O.C. defendants to respond to the pending motion forthwith. Their failure to do so will result in the allowance of the motion with respect to them.

## ORDER

In accordance with the foregoing analysis,

1)   Plaintiff's Motion to Correct Erroneous Filing Fee (Docket No. 17) is, because it is mistaken, **DENIED**;

2)   Plaintiff's Motion to Show Cause (Docket No. 18) is **ALLOWED** and a summons will issue as to defendant Maloney;

3)   Plaintiff's Motions for Judgment as a Matter of Law
     (Docket No. 51) and to Strike Opposition to Plaintiff's
     Motion for Judgment (Docket No. 64) are **DENIED**;

4)   Plaintiff's Motion for Default Judgment (Docket No. 65)
     is **DENIED**;

5)   Plaintiff's Motion for a Temporary Restraining Order
     and Preliminary Injunction (Docket No. 67) is, with
     respect to defendant Brewer and the other U. Mass.
     defendants, **DENIED**; and

6)   Commissioner Dennehy and the Department of Corrections
     defendants are ordered to respond to Plaintiff's Motion
     for a Temporary Restraining Order and Preliminary
     Injunction (Docket No. 67) on or before Friday, January
     13, 2006, in default of which the motion will be
     allowed.

**So ordered.**

                                     /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated: December 21, 2005