UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEITH NIEMIC,<br>      Plaintiff | )<br>)<br>) |
| VS. | )<br>) |
| STANLEY GALAS, ARTHUR BREWER, M.D.,<br>JUNE BINNEY, JEFF SHOREY, R.N.,<br>KARA ERDODY, R.N., DONNA<br>FITZGERALD, L.P.N., DONALD KERN, M.D.,<br>and GURVINDER JAISWAL, M.D., ET AL.,<br>      Defendants | )  CIVIL ACTION NO. 1:04-CV-11482-NMG<br>)<br>)<br>)<br>)<br>) |

**MEDICAL DEFENDANTS'**
**MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this civil action, the plaintiff, Keith Niemic ("Mr. Niemic"), a *pro se* prisoner, incarcerated within facilities operated by the Massachusetts Department of Correction ("MDOC"), seeks declaratory relief and compensation for purported civil rights and statutory violations allegedly committed by the medical defendants, **Stanley Galas, N.P., Arthur Brewer, M.D., June Binney, Jeff Shorey, R.N., Kara Erdody, R.N., Donna Fitzgerald, L.P.N., Donald Kern, M.D., and Gurvinder Jaiswal, M.D.** (the "defendants"). In his Complaint, Mr. Niemic asserts that the defendants were deliberately indifferent to his constitutional rights, violating the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments under Federal Statute §1983. Plaintiff also asserts that the defendants violated the Freedom of Information Act and committed both civil and criminal violations. The defendants dispute these assertions and, on the basis of the record set forth in the attached Statement of Material Facts, and the Affidavit of Arthur Brewer, M.D., incorporated herein by reference pursuant to Mass. R. Civ. P. Rule 10(c), move for summary judgment on the plaintiff's claims.

**ANALYSIS**

I.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is to be granted when, based on the pleadings, affidavits and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To succeed on a summary judgment motion, the moving party "need not negate, that is disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest." Id. at 714. Rather, the moving party need only show that proof of the essential element is unlikely forthcoming. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(citations omitted).

In the instant case, plaintiff's evidence fails to demonstrate that the defendants violated his civil rights or his statutory rights. Consequently, plaintiff's claim will not be supported at trial, and the defendants are entitled to summary judgment as a matter of law.

II.  **PLAINTIFF'S MEDICAL INFORMATION WAS DISSEMINATED TO THE MASSACHUSETTS DEPARTMENT OF CORRECTION IN ORDER TO MAINTAIN INTERNAL ORDER AND DISCIPLINE AT MCI-CEDAR JUNCTION.**

Under the Fourth Amendment, individuals have a right to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." USCS Const. Amend. 4 (2005). While inmates do not forfeit all constitutional protections by reason of their incarceration, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system." Bell v. Wolfish, 441 U.S. 520, 545 (1979); Price v. Johnson, 334 U.S. 266, 285 (1948). Prison administrators are afforded wide-ranging deference in the adoption and execution of policies and

practices which they believe are necessary to maintain internal order and discipline in such an institutional society. <u>Wolfish</u>, 441 U.S. at 547. Moreover, pursuant to 103 DOC 607.05(3)-(4), qualified health personnel on site are authorized to disclose an inmate's private health records to DOC personnel staff on a "need to know" basis. "Need to know" includes when it is necessary to protect the health of the patient and others.

In this case, Mr. Niemic claims that the defendants violated his Fourth Amendment rights when they disseminated his private medical information without his consent or signed release. Complaint, ¶¶279-280. As prison administrators, Dr. Arthur Brewer, Charlie Black, and June Binney are afforded wide-ranging deference in the execution of both UMCH and MDOC medical policies and practices which they believe necessary to maintain internal order and discipline at MCI-Cedar Junction. 103 DOC 607.05 authorized these defendants, and their medical personnel, to discuss Mr. Niemic's medical information with the DOC staff. Contrary to plaintiff's assertions, the defendants did not disclose Mr. Niemic's medical information with the intention of denying him medical care, nor did they perform an illegal search or seizure of the plaintiff's private medical records.

On September 8, 2003, Mr. Niemic tested positive for heroin and cocaine. *(Exhibit 2A)*. Fresh needle marks were noted on Mr. Niemic's arms. *(Exhibit 2A)*. In response, Mr. Niemic's medical information was discussed between both the MCI-Cedar Junction guards and health personnel. While the plaintiff may deny using drugs on this date, the defendants' medical findings needed to be disseminated between the MDOC correctional officers and the UMCH staff in order to not only treat Mr. Niemic for drug abuse, but to also allow the MDOC the opportunity to prevent such drug use in the prison. Thus, in this particular situation, it was necessary for these defendants to disclose evidence of plaintiff's drug abuse to the MDOC staff,

not to punish the plaintiff, but, rather, to provide Mr. Niemic with treatment, protect inmates incarcerated at MCI-Cedar Junction, and to prevent further drug abuse within the prison population. As such, the defendants did not violate the Fourth Amendment when they exercised practices which they believed to be necessary to maintain order and discipline within MCI-Cedar Junction.

III. PLAINTIFF'S FIFTH AMENDMENT CLAIM FAILS AS A MATTER OF LAW BECAUSE THE DISCLOSED MEDICAL INFORMATION WAS NOT INTENDED TO INCRIMINATE MR. NIEMIC DURING A CRIMINAL TRIAL.

Pursuant to the Fifth Amendment, "no person shall be compelled in any **criminal case** to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." The Fifth Amendment protects against self-incrimination, not the disclosure of private information. Fisher v. United States, et al., 425 U.S. 391, 401 (1976), citing United States v. Nobles, 422 U.S. 225, 233 n.7 (1975).

Plaintiff's Fifth Amendment claim fails because his urine sample was not used to incriminate him at a **criminal** trial. Plaintiff asserts that his Fifth Amendment rights were violated when the defendants forced him to undergo a medical treatment, over his objections, allegedly in order to incriminate the plaintiff. *Complaint, ¶280 & ¶284*. However, aside from mere allegations, there is no evidence demonstrating that the defendants forced Mr. Niemic to give a urine sample, or that they compelled him to undergo medical treatment in order to incriminate himself at a criminal trial. Nurse Erdody's progress note from September 8, 2003 indicates that plaintiff was brought before her by the MDOC officers to address the needle marks on Mr. Niemic's arms. *(Exhibit 2A)*. Nurse Erdody examined Mr. Niemic's pupils, which were constricted, and she was told that a urine screen by the DOC was positive for heroin and cocaine. *(Exhibit 2A)*. Given the medical records, it is clear that the defendants did not violate the Fifth

4

Amendment because they did not force Mr. Niemic to undergo medical treatment in order to obtain incriminating evidence for trial.

Even if there was evidence that the medical defendants forced plaintiff to undergo a urine sample, Mr. Niemic's Fifth Amendment claim still fails as a matter of law because the evidence was not used to incriminate plaintiff during a **criminal** trial. Mr. Niemic's own Complaint states that he "is a natural person incarcerated at MCI-Cedar Junction, Walpole" and that "all events described in this complaint did occur in Walpole, where plaintiff was incarcerated." *Complaint*, ¶3. Clearly the alleged urine sample Mr. Niemic speaks of was taken **after** plaintiff was **convicted** of a crime and **incarcerated** at MCI-CJ. This allegedly forced medical test was not obtained in anticipation of a criminal trial, but, rather, in response to Mr. Niemic's behavior **after** he was already found guilty and incarcerated. As such, Mr. Niemic's Fifth Amendment claim fails as a matter of law because his statements **after his incarceration** are not being used to incriminate him at a **criminal trial**.

Given that the medical records indicate that the defendants never forced plaintiff to undergo urine analysis in order to incriminate him at a future criminal trial, Mr. Niemic's Fifth Amendment claim fails as a matter of law, and summary judgment is appropriate on plaintiff's Fifth Amendment claim.

IV.   SUMMARY JUDGMENT IS APPROPRIATE ON MR. NIEMIC'S SIXTH AMENDMENT CLAIM BECAUSE THERE ARE NO CRIMINAL CHARGES PENDING AGAINST THIS PLAINTIFF.

"In all **criminal prosecutions**, the accused shall enjoy the right to a speedy and public trial…and to have the Assistance of Counsel for his defense." USCS Const. Amend. 6 (2005). While the Sixth Amendment right to effective assistance of counsel applies to individuals going to trial, the Amendment has no application to incarcerated prisoners already convicted, because

the right to counsel attaches only when there are "pending" criminal charges against an accused. Maine v. Moulton, 474 U.S. 159, 179-180 (1985); Snell v. Weld, 1998 U.S. Dist. LEXIS 5177 (1998). Additionally, the Sixth Amendment applies only to **criminal** proceedings. Baxter v. Palmigiano, 425 U.S. 308 (1976); Vanek v. Ponte, 1982 U.S. Dist. LEXIS 16675 (1982).

In the instant case, plaintiff claims that defendants violated his Sixth Amendment right by attempting to prolong litigation of this lawsuit. *Complaint, ¶285*. However, the Sixth Amendment only applies to **criminal proceedings**. This is a **civil suit** brought by Mr. Niemic against the medical defendants. As stated in Mr. Niemic's own Complaint, plaintiff is not on trial for a crime, and no criminal charges are pending against him related to this cause of action. *Complaint, ¶3*. To the contrary, Mr. Niemic was already tried and convicted, and is now incarcerated. Because plaintiff brings this **civil** suit against the defendants, this Sixth Amendment claim is misplaced and summary judgment is appropriate.

Moreover, Mr. Niemic's Sixth Amendment claim fails as a matter of law because the Amendment applies to claims for a right to counsel. In this case, plaintiff does not claim that the defendants denied him a right to counsel. As a *pro se* litigant, Mr. Niemic never states that he was denied representation of counsel, or that the defendants' actions prevented him from obtaining counsel. As a *pro se* claimant, Mr. Niemic's interest in obtaining counsel would be dependent on the Court's allowance, not on the defendants' permission. As such, this Sixth Amendment claim against the defendants fails as a matter of law.

V.  **THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF'S EIGHTH AMENDMENT CLAIM FAILS TO MEET THE DELIBERATE INDIFFERENCE STANDARD.**

Plaintiff fails to prove the elements required to establish an Eighth Amendment, deliberate indifference claim. Mr. Niemic's Complaint alleges that the defendants were

960870v1

deliberately indifferent to his serious medical needs when they failed to diagnose and treat his medical ailments. *Complaint, Count III & Count V*. However, this claim fails as a matter of law because the plaintiff's evidence does not demonstrate that his medical needs went unmet, or that the defendants deliberately ignored treating plaintiff's medical ailments.

It is clear that "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions' sufficiently harmful to evidence deliberate indifference to serious medical needs." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). In a fairly recent pronouncement, the United States Supreme Court reaffirmed Estelle, expressly holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As illustrated by both the holding in Farmer as well as the principal case law, in the context of §1983 claims for infliction of cruel and unusual punishment, the federal courts have applied the standard enunciated in Estelle strictly and have defined "deliberate indifference" narrowly. See e.g., Ferranti v. Moran, 618 F.2d 888 (1st Cir. 1980); Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1980).

As set forth above, if a plaintiff satisfies the first prong of the Estelle standard by showing his "serious medical need," something more than negligent treatment must then be alleged to state a claim for violations of the Eighth Amendment. To establish deliberate indifference, the plaintiff must prove that the defendant disregarded an excessive risk to his

health or safety. <u>Farmer</u>, 511 U.S. at 837. Specifically, plaintiff must establish that the specific acts or omissions, relative to a prisoner's medical treatment, constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." <u>Estelle v. Gamble</u>, 429 U.S. at 106. The deliberate indifference standard is not met, unless "defendant has a culpable state of mind and intended wantonly to inflict pain." <u>DesRosiers v. Moran</u>, 949 F.2d at 19. Because plaintiff cannot meet this burden at trial, summary judgment is appropriate.

A.  <u>Plaintiff's Deliberate Indifference Claim Fails Because the Defendants Did Not Know of and Then Disregard an Excessive Risk to Plaintiff's Health.</u>

The defendants acknowledge that plaintiff had serious medical needs from 2001 through 2004. However, the evidence in this case does not meet the extremely high burden of establishing deliberate indifference to those medical needs. In Mr. Niemic's case, the defendants did not disregard his medical needs with the intent to cause him pain while treating his migraines, Hepatitis, chest pain, hemorrhoids, H. Pylori, urinary condition, or cyst. *(Exhibits 1 through 5, Tab A – progress notes)*. The medical records clearly indicate that the defendants went to great lengths to treat <u>all</u> Mr. Niemic's ailments. *(Exhibits 1 through 5)*. The defendants continually monitored plaintiff's health condition, examining him on a regular basis, ordering tests, and prescribing him medication to treat his medical issues. *(Exhibits 1 through 5, Tabs A through C – progress notes, sick call requests, and physician orders)*. When Mr. Niemic's ailment required more specialized examinations, the defendants requested outside consults with the LSH clinics and consults with the UMCH chronic disease clinic. *(Exhibits 1 through 5, Tabs E through F – outside consult requests and specialist recommendations)*. When outside specialists recommended a certain course of treatment, the defendants followed the suggestions and ordered the drugs. *(Exhibits 1 through 5, Tab B – physician orders)*.

960870v1

On the occasion that the defendants did not abide by the specialist's recommendation, they had sound reasons for such decisions. For example, when LSH neurologist, Dr. Bharani, recommended taking plaintiff off Klonopin, and instead treating his migraines with Topamax, Zomig, and Indomethacin, on February 27, 2004, defendant Kern ordered Axert and Indocin, while decreasing plaintiff's Klonopin medication. *(Exhibit 1E, LSH consultation; Exhibit 1B, physician order)*. On March 22, 2004, defendant Galas explained to Mr. Niemic that, while Dr. Kern prescribed Axert rather than Zomig, Dr. Bharani's recommended prescription was satisfied because these two drugs are similar medications. *(Exhibit 1C, defendant's grievance response)*. Additionally, Stanley Galas noted that it was Mr. Niemic who was choosing not to follow Dr. Bharani's medical orders, not the defendants who were denying him treatment. *(Exhibit 1C)*. Given that the medical records clearly demonstrate that the defendants provided the plaintiff with proper and adequate medical care, the plaintiff fails to establish that the defendants deliberately disregarded his serious medical needs.

Moreover, Mr. Niemic fails to support his deliberate indifference claim with evidence contradicting his medical records and grievance records. Plaintiff does not provide doctors' statements or lab results recommending treatment contrary to that provided by the defendants. Mr. Niemic also does not provide documentary evidence to prove that the defendants deliberately ignored his sick call requests or that they failed to respond to his requests for medical care. To the contrary, the medical records demonstrate that the defendants regularly responded to Mr. Niemic's complaints, responded to his requests for treatment, provided him with proper medical care, and monitored his condition. *(Exhibits 1 through 5, Tab D – UMCH consultation requests)*. Without providing the Court with such evidence, Mr. Niemic cannot establish that there are genuine issues of material fact related to the defendants' medical care.

Given the plaintiff's medical records and grievance records, Mr. Niemic fails to establish the burden required of the plaintiff in a deliberate indifference claim. There is no evidence that the defendants' medical decisions were intended to cause the plaintiff pain or suffering. As such, summary judgment is appropriate on Mr. Niemic's Eighth Amendment claim.

VI.  THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY DID NOT VIOLATE PLAINTIFF'S DUE PROCESS RIGHTS SET FORTH UNDER THE FOURTEENTH AMENDMENT.

Summary judgment is appropriate on plaintiff's Due Process claim because medical decisions are under the sole province of the defendants. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty or property, without due process of law." These constitutional rights includes a right to adequate medical care. Youngberg v. Romeo, 457 U.S. 307, 315 (1982). While inmates are entitled to adequate medical care in prison, the medical care provided is subject to the policies and procedures established by both the health care provider, UMCH, and the MDOC. With respect to drug use in the prison system, community standards dictate that Hepatitis C treatment should be delayed until a drug-using inmate is clean for a period of one (1) year. *(Exhibit 2C, letter from defendant Galas to the plaintiff, dated September 25, 2003).* 103 DOC 518 and 103 DOC 607-608 also provide that IPS has a right to medical information in investigations in the prison facilities. *(Exhibit 2C, letter from defendant Galas to the plaintiff, dated October 17, 2003).* Additionally, while prisoners are entitled to disciplinary hearings for incident occurring within the MDOC's purview, "matters of medical, mental health and dental judgment are the sole province of the responsible physicians, psychiatrists or dentists." 103 DOC 610.01(2).

In the instant case, while plaintiff alleges that the defendants violated his Fourteenth Amendment right when they denied him a hearing to determine whether he was guilty of an

MDOC dirty urine disciplinary report, this claim fails as a matter of law because community standards and common practice dictate that a medical provider, in this case the defendants, had a right to postpone Mr. Niemic's Hepatitis C treatment for one (1) year from the date of use, until he demonstrated a willingness to remain drug-free. *(Exhibit 2C)*.

On September 8, 2003, Dr. Jaiswal was informed that plaintiff had tested positive for cocaine and heroin. *(Exhibit 2A)*. Community standards dictate that participating in risky behavior, such as drug abuse, defeats the purpose of Hepatitis therapy. *(Exhibit 2C, letter from Galas to plaintiff dated September 25, 2003; memo from Galas to Allen dated October 17, 2003)*. When Mr. Niemic tested positive for illegal drugs, the defendants explained this community standard to the plaintiff, and informed him that he would be ineligible for Hepatitis C treatment until he remained clean from drug use for one year. *(Exhibit 2C)*. The records demonstrate that the defendants repeatedly clarified the details of this policy to the plaintiff. *(Exhibit 2C, grievances)*. The records also indicate that the defendants reasonably implemented the policy. *(Exhibit 2B, physician orders; Exhibit 2C, grievance records)*. As such, plaintiff's Fourteenth Amendment claim fails as a matter of law because the defendants' denial of medical care was done based on Mr. Niemic's own illegal actions, and UMCH policy setting forth guidelines on how to deal with such drug abuse.

As mentioned above, "matters of medical, mental health and dental judgment are the <u>sole province</u> of the responsible physicians, psychiatrists or dentists." 103 DOC 610.01(2). Medical decisions are not considered disciplinary in nature within the prison. As such, no disciplinary hearing is required when making medical decisions. In the instant case, defendant Jaiswal decided to stop plaintiff's Hepatitis treatment because Mr. Niemic was caught using heroin and cocaine. The defendants were under no obligation to hold a hearing on plaintiff's guilt or

innocence prior to enforcing its UMCH policy. The defendants were also not obligated to verify the accuracy of the MDOC drug test prior to making their medical treatment decisions. As such, the plaintiff's Fourteenth Amendment Due Process claim fails as a matter of law because the defendants' medical decision regarding Mr. Niemic's dirty urine results was independent of the MDOC's disciplinary hearings.

Given that the medical records demonstrate that the defendants did not deny plaintiff medical care without just cause, and because the defendants are entitled to make medical judgments without a hearing, summary judgment is appropriate on Mr. Niemic's Due Process Claim.

VII.   THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOIA CLAIM BECAUSE THIS STATUTE DOES NOT APPLY TO RECORDS HELD BY STATE AGENCIES.

Under the Freedom of Information Act ("FOIA"), each federal agency is required to make available to the public certain information. 5 U.S.C.S. §552(a). However, excluded from this requirement are documents exempted by statute, and personnel and medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C.S. §552(b)(2); U.S.C.S. §552(b)(6). While FOIA applies to federal agencies, and records in the custody of a federal agency, it does not apply to state agencies. 5 U.S.C.A. §551(1)(West 1977); Marmarella v. County of Westchester, 898 F. Supp. 236 (SD NY 1995).. FOIA is also inapplicable to private citizens. Tudisca v. Leary, 1995 U.S. Dist. LEXIS 4297 (1995).

In the instant case, Mr. Niemic alleges that the defendants exchanged his medical records with MDOC officers, and that this act was in violation of the exemption clause set forth in FOIA. *Complaint, ¶275.* While not specifically stated in his Complaint, defendants assume the

12

960870v1

"exemption," cited to by Mr. Niemic in his Complaint refers to either the medical file exemption under the Act, or to the statutory exemption under the Act, specifically the Massachusetts Privacy statute.

UMCH is a **private** corporation, which works with the Commonwealth's Department of Correction (the "MDOC") to provide health care to inmates incarcerated in the state. *Affidavit of Arthur Brewer, M.D., ¶¶2-3*. UMCH is not a federal agency. While UMCH works closely with the Massachusetts prison facilities, the private corporation is also not considered a state agency or state actor. Rather, UMCH is considered a private corporation by legal standards, and, thus, neither FOIA, nor its exemptions, apply to UMCH or the other named defendants, who are UMCH employees. Because FOIA does not apply the these defendants, plaintiff's FOIA claim should be dismissed as a matter of law, and summary judgment is appropriate on this claim.

VIII. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S STATE LAW CLAIMS.

When defendants are entitled to summary judgment on a plaintiff's federal claims, plaintiff's state law claims against those same defendants should also be dismissed under United Mine Workers v. Gibbs, 383 U.S. 715 (1966). Husband v. Fair, 1993 U.S. Dist. LEXIS 12295 (1993). However, even if the defendants are not entitled to summary judgment on Mr. Niemic's federal claims in this case, Mr. Niemic's state law claims still fail as a matter of law for the following reasons. Id.

A. Plaintiff Offers No Evidence to Establish That Genuine Issues of Material Fact Exist With Respect to His Assault and Battery Claim.

Plaintiff's assault and battery claim fails as a matter of law because there is no evidence proving that either defendants Kern, Shorey or Erdody committed a battery on Mr. Niemic. In a case alleging the tort of assault and battery, plaintiff must demonstrate "intentional, unprivileged,

unjustified touching ... with such violence that bodily harm is likely to result." <u>Husband v. Fair</u>, 1993 U.S. Dist. LEXIS 12295 at 45, citing <u>Commonwealth v. Dixon</u>, 34 Mass. App. Ct. 653 (Mass. App. Ct. 1993).

In the instant case, plaintiff alleges that defendants Kern, Shorey and Erdody committed a battery upon him while forcing him to undergo medical treatment–specifically, forcing Mr. Niemic to urinate against his will. *Complaint, ¶255 & ¶257*. There is no dispute that the above-named defendants touched Mr. Niemic while providing him with medical care on September 8, 2003. When plaintiff arrived at the HSU, having **already** tested positive for heroin and cocaine, defendants Shorey and Erdody **examined** Mr. Niemic and **monitored** his condition. *(Exhibit 2A, progress note)*. However, there is no evidence, aside from Mr. Niemic's allegations, that these defendants intended bodily harm during treatment. Plaintiff submits only personal statements to prove that the touching was excessive and unjustified, and that it was likely to result in bodily harm. There is no evidence in the medical record or Mr. Niemic's Complaint demonstrating that this touching was likely to cause bodily harm. There are also no records indicating that Mr. Niemic refused the treatment on September 8, 2003. *(Exhibits 1 through 5)*. As such, plaintiff fails to submit evidence establishing that there is a genuine dispute as to whether defendants Kern, Shorey or Erdody committed assault and battery, and, thus, this claim fails as a matter of law.

B.    <u>The Defendants Are Immune From Plaintiff's Negligence Claim Because They Qualify as Public Officials.</u>

Public employees are not subject to liability for negligent acts committed during the scope of employment. "In cases of alleged negligence, no public employee ... shall be liable for any injury or loss of property ... caused by his negligent ... act or omission while acting within the scope of his office or employment ..." Mass. Gen. Laws Ann. Ch. 258, §2 (West 1988).

14

960870v1

However, medical personnel, under contract through UMCH to provide medical services to inmates at MCI-Cedar Junction, are considered the equivalent of public officials. <u>Husband v. Fair</u>, 1993 U.S. Dist. LEXIS 12295 at 19 (holding that medical personnel under contract with the Commonwealth to fulfill the state's duty to provide adequate medical care to prisoners are the functional equivalent of public officials).

In the instant case, Mr. Niemic alleges that defendants Binney, Galas, Brewer, and Jaiswal were negligent by failing to adequately oversee the work of their employees. *Complaint*, *¶262*. However, the above-named defendants are not subject to liability for negligent acts committed during the scope of employment because they were considered public officials at the time of the alleged negligence. Specifically, June Binney, Stanley Galas, Dr. Brewer, and Dr. Jaiswal were all administrators or physicians employed by UMCH, the contractual medical provider for the Commonwealth of Massachusetts, at the time of Mr. Niemic's Complaint. Thus, these defendants were public officials, acting within the scope of their employment, when they allegedly failed to oversee the medical staff at MCI-Cedar Junction. As such, these public officials are immune from liability on plaintiff's negligence claim.

C.    <u>Plaintiff Fails to Support His Medical Malpractice Claim With an Expert Opinion.</u>

Because plaintiff fails to supplement his medical malpractice claim with an expert opinion, his negligence claim fails as a matter of law. In Massachusetts, the standard of care alleged to have been breached as a result of malpractice must be established by expert evidence "except in the unusual case in which 'negligence and [the] harmful results [of that negligence] are sufficiently obvious as to lie within common knowledge.'" <u>Rosario v. United States</u>, 824 F. Supp. 268 (D. Mass. 1993)(quoting <u>Haggerty v. McCarthy</u>, 344 Mass. 136 (Mass. 1962)).

In the instant case, Mr. Niemic has not supported his negligence claim with a an expert opinion setting forth the relevant standard of care.  In fact, Mr. Niemic does not even state the standard of care for treatment in his case, or allege in his Complaint that the defendants breached that standard of care.  *Complaint.*  This is not an unusual case where the harmful effects of the defendants' alleged negligence are obvious and common knowledge.  To the contrary, medical treatment for Hepatitis C, migraines, hemorrhoids, H. Pylori, cysts, urinary infections, and chest pains is complex, and requires specialists to examine Mr. Niemic and make medical recommendations as to treatment.  *(Exhibits 1 through 5, Tabs D through F - outside medical records).*  Given that plaintiff fails to support his complex medical malpractice allegations with an expert opinion, summary judgment is appropriate on this claim.

D.   Mr. Niemic Fails to Establish the Elements Required of an Infliction of Emotional Distress Claim.

In Massachusetts, to establish the tort of intentional infliction of emotional distress, plaintiff must prove four (4) elements, where plaintiff has suffered no physical injury.  Specifically, plaintiff must establish that 1) that the actor intended emotional distress, or should have known emotional distress was the likely result of the conduct; 2) the conduct was extreme and outrageous; 3) the actions of the defendant were the cause of the plaintiff's distress; and 4) the emotional distress claimed by the plaintiff is severe.  Agis v. Howard Johnson, 371 Mass. 140, 355 N.E.2d 315 (1976); Bowler v. Department of Social Services, et al., 1998 Mass. Super. LEXIS 609 (1998).

In the instant case, plaintiff's evidence fails to establish any one of the four required IIED elements.  Plaintiff fails to prove the first (1st), second (2nd), or third (3rd) IIED elements because the medical records demonstrate that the defendants' medical care was intended to alleviate Mr. Niemic's pain, rather than increase his suffering.  *(Exhibits 1 through 5).*  Plaintiff

16

provides no contradictory documentation or medical opinions to support his allegation that the defendants intended to cause him emotional distress when providing treatment. *Complaint, ¶273 & ¶287.* There are no medical opinions discussing Mr. Niemic's alleged mental distress, nor are there reports indicating that plaintiff suffered any sort of anguish as a result of the defendants' medical care. Without such evidence, plaintiff cannot establish that the defendants intended to cause him emotional distress, that the defendants should have known he would suffer distress, or that the defendants' conduct was extreme or outrageous. Moreover, without physical or testimonial evidence demonstrating that the defendants intended to harm Mr. Niemic while providing him with medical care, plaintiff fails to prove that it was the defendants' actions which caused his alleged emotional anguish. As such, the plaintiff fails to meet the first, second, and third elements of the IIED standard.

Under the fourth (4th) required element of an IIED claim, the plaintiff is required to prove that his emotional distress is severe. While Mr. Niemic alleges that the defendants intended to caused him emotional distress, by deliberately not responding to his medical grievances, plaintiff fails to set forth or describe what type of emotional distress he has suffered. *Complaint, ¶273.* For instance, Mr. Niemic does not provide any doctors' reports detailing the harm he allegedly suffered. Without describing the details of his alleged mental distress, Mr. Niemic fails to prove that his alleged distress was severe. Because the plaintiff fails to cite to specific pain or suffering, and because he fails to support his allegations with direct evidence, Mr. Niemic fails to establish the fourth (4th) element required to satisfy the IIED standard.

Given that Mr. Niemic provides no evidence to support his claim of intentional infliction of emotional distress, plaintiff fails to establish any one of the four elements required to satisfy that standard of law, and summary judgment is appropriate on Mr. Niemic's IIED claim.

## CONCLUSION

For all of the foregoing reasons, the defendants, **Stanley Galas, N.P., Arthur Brewer, M.D., June Binney, Jeff Shorey, R.N., Kara Erdody, R.N., Donna Fitzgerald, L.P.N., Donald Kern, M.D., and Gurvinder Jaiswal, M.D.**, respectfully request that this Honorable Court enter summary judgment, in their favor, on the plaintiff's claims in this matter.

|  |  |
|---|---|
| I hereby certify that a true copy of the above document was served upon (each party appearing *pro se* and) the attorney of record for each (other) party by mail on this 31st day of January, 2006.<br><br>/s/ James A. Bello<br>_____<br>James A. Bello / Lisa R. Wichter | Respectfully Submitted,<br>The Defendants,<br>STANLEY GALAS, ARTHUR BREWER, M.D., JUNE BINNEY, JEFF SHOREY, R.N., KARA ERDODY, N.P., DONNA FITZGERALD, L.P.N., DONALD KERN, M.D. AND GURVINDER JAISWAL, M.D.<br>By their attorneys,<br><br>/s/ James A. Bello<br>_____<br>James A. Bello, BBO #633550<br>Lisa R. Wichter, BBO #661006<br>MORRISON MAHONEY LLP<br>250 Summer Street<br>Boston, MA 02210<br>(617) 439-7500 |

960870v1