UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

KEITH NIEMIC,
Plaintiff,

vs.

PATRICK MULVEY, D.O.C.
and UMCH. ET AL
Defendants

CIV.AC.No. 04-11482-NMG

### PLAINTIFF'S MOTION FOR LEAVE TO RESPOND/MOVE TO STRIKE DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION

For purposes of this motion and relevant state claims of which this court has supplemental jurisdiction under 28 U.S.C. §1367.

Plaintiff does move that the court, pursuant to Fed.R.Evid. 302, strike the MASS.D.O.C. defendants opposition to plaintiffs motion for Preliminary Injunction,.

The plaintiffs additional facts set forth herein, and applicable law in support, does make a showing that he will ultimately succeed on the merits of his claim, and irreparable harm absent the issuance of injunctive relief. Fed.R.CIV.P. 65.

Supporting the plaintiffs position is that the D.O.C. defendants opposition violates several federal and state court Rules including Fed.R.CIV.P. 11(6)(C)(1)(B). And plaintiff does submit an Affidavit of Expert witness Mr. Daniel Mason in support of plaintiffs position, with exhibits 1 thru 4.

2

1. Plaintiffs verified complaint does affirm under penalties of perjury the actions of both U-mass medical, and S.C.C. defendants did retaliate, assault, coerce and were deliberately indifferent to plaintiffs serious medical needs in which plaintiffs expert witness Mr. Daniel Mason does confirm by extensive affidavit, the severly mismanaged medical care of plaintiff. (see EXHIBIT-4, attached Affidavit of Mr. Mason ¶¶ 16-18, 30-33, 41-47, 54-65, 67-68, 70.)

2. On June 8, 2005 plaintiff did serve summonses and complaint on the defendants Patrick Mulvey, and Stanley Galas, et al via the U.S. Marshall service.

3. On June 13, 2005 plaintiff received substantial injuries from an altercation with another inmate consisting of several deep lacerations on his head, and a herniated disk in his lumbar spine, extending to the right neural foramen, irritating the nerve root. UMCH defendant Stanley Galas did only suture two of the three head wounds (see EXHIBIT-1)

4. The U-mass defendant Stanley Galas, who did use 'lidocaine as local anesthetic before suturing two of the three head wounds, while refusing to provide plaintiff any pain relief for his head wounds, or his spine, in which the U-mass defendants refused to treat plaintiffs herniated disk, despite his emphatic and multiple sick call requests expressing unbearable pain for one month. (see EXHIBIT-1 sick call requests dated: 6-14-05, 6-20-05, 6-23-05, 6-26-05, 7-2-05, 7-9-05). compare Affidavit of UMCH defendant Arthur Brewer EXHIBIT 4, ¶¶ 7,12)

---

¹LIDOCAINE is used as a topical agent for minor surgery and as pretreatment for infiltration anesthesia (PDR 58 Ed. Thomson 2004)

5. On June 13, 2005 D.O.C. defendant Patrick Mulvey did coercively confiscate plaintiffs personal address book while he was being given sutures, as retaliation for his complaints while under pretext of investigation with no correlation of materiality; Defendant Mulvey, refused to return plaintiffs address book containing 21 37¢ postage stamps with all his attorney and family addresses and phone #'s even after the Institutional Grievance Coordinator ordered him to do so. (EXHIBIT 4, attached Grievance. No. 11617)

6. The defendants refusal to provide plaintiff with his address book, or a copy thereof did result in the following damages:

a) The arbitrary disposal of plaintiffs personal appliances with an estimated cost of $331.96, because he could not contact his family to retrieve such "alleged contraband." (EXHIBIT-4, attached property contraband disposal form dated 8-30-05; attached RETURN TO SENDER) In violation of statute G.L.c.127§3 (EX-3)

b) The dismissal of a civil rights damages complaint, because plaintiff was unable to contact family members who can help provide for him the necessary $70.00 partial filing fee to pay by July 9, 2005. (See EXHIBIT-4 attached civil docket No. 05-00028, clerk's notice, plaintiff motion)

c) The extreme emotional distress in plaintiffs inability to contact his lawyers (one of whom is plaintiffs patent attorney) or his family to notify them of his current legal and medical situation. (EXHIBIT-4 attached return to sender) compare (D.O.C. opposition, attorney Affidavit ¶ 4)

7. After approximately one month of plaintiffs continued submission of sick call requests emphatically pleading for medical help for his Lumbar spine, he was finally taken to the Health services unit ("HSU") on July 9, 2005, and was given effective pain management from July 11, 2005 which consisted of Nubain injection, Oxycodone, Prednisone, Robaxin, thru July 18, 2005. (see EXHIBIT-1 attached sick call request forms dated: 7-9-05, and Dr's. orders dated, 7-10-05, 7-12-05, 7-18-05; compare EXHIBIT-3, attached DOC clinical Guidelines on Pain management)

8. On July 25, 2005 plaintiff was given an MRI at Lemuel Shattuck Hospital which confirmed a disk Herniation on plaintiffs Lumbar spine with complications. (See EXHIBIT-1 attached IMAGING INTERPRETATION)

On July 26, 2005 one day after plaintiffs MRI confirmed such disk herniation, he was abruptly transferred to the Souza Baranowski Correctional center ("SBCC") without his personal property, or his extensive legal material, as retaliation for his filing complaints, while the inmate with whom plaintiff did have an altercation with on 6-13-05 did remain at walpole.

During this time plaintiff did explicitly notify U-MASS & D.O.C. defendants informing them of his inadequate medical care, all of whom did fail to correct. (see EXHIBIT-4 attached grievance No's. 15115, and 11699, attached correspondence of Lois Russo (Supt. SBCC) dated 8-16-05, attached correspondence of Attorney Deirdre L. Thurber to Edward Flynn dated 8-24-05, attached correspondence of Attorney Thurber to DOC Commissioner Kathleen Dennehy dated 7-29-05, attached correspondence of Attorney Thurber to Walpole Superintendent David Nolan dated 8-12-05, attached Grievance Appeal No. 9-6-05; and U-mass grievance and Appeal form dated 8-23-05)

5

9. Since July 18, 2005 the D.O.C. and U-Mass defendants were deliberately utilizing an inadequate dosing of ultram at 150 mgs a day for pain management, that did equate to NO pain management at all, and refused to acknowledge plaintiffs explicit requests for effective pain relief over the course of one month, that did result in plaintiffs attempted suicide by swallowing a razor blade on August 24, 2005 whereupon the U-Mass defendants did increase the ultram to only 300 mgs a day which was still inadequate for pain relief; the daily maximum dose is 400 mgs a day.(See EXHIBIT-2, attached Disciplinary Report NO.61322, attached grievance No.12569, attached Progress Notes dated 7-16-05, 7-26-05, 7-27-05, 8-19-05, attached Drs. Orders dated 8-24-05, 8-29-05, 8-31-05, 9-16-05, attached sick call requests dated 7-29-05, 7-26-05, 7-25-05, 8-3-05, 8-4-05, 8-9-05, 8-22-05, 8-24-05)(See EXHIBIT 3 attached PDR description of ultram)

10. On October 11, 2005 plaintiff was transferred to MCI-Norfolk; due to the pain plaintiff was not able to go outside any time to get fresh air or exercise while at SBCC, and only a couple of times at Norfolk, the untreated pain of which 300 mgs of ultram, combined with Backlofin, or Robaxin, or Motrin, does not remotely take away any pain, and causes plaintiff to vomit, nausea, the inability to eat, sleep, or perform single mundane tasks like standing to brush his teeth, as his body movements are grossly limited due to such uncontrolled pain, resulting in plaintiff currently contemplating suicide due to the de-

6

fendants disregard of plaintiff's pain and their refusal to treat his pain as "community standard" of care, for which plaintiff has a contractual right, but is denied such liberty interest. (See EXHIBIT 2 attached sick call requests dated: 10-19-05, 11-27-05, 12-18-05, 12-19-05, attached progress note dated 12-27-05, and ECG interpretation, two written letters from plaintiff to psychiatrist dated 10-27-05, other undated, and attached inmate grievance and appeals dated 12-22-05, & 1-31-06; EX-3 attached D.O.C. Clinical Guidelines on Pain Management)

11. The Mass. Department of Correction defendants have an established standard of Clinical Guidelines for pain management of patients with chronic pain in which inmates/patients have a contractual right therein to consent to agreement of pain therapy, which deals with moderate to severe pain. See EXHIBIT 3 attached DOC Clinical Guidelines on pain management pgs. 3, 8, 9, 17, 18)

Neither the U-Mass Defendants, nor the DOC Defendants would allow plaintiff to sign, or take part in his contractual right to community standard pain relief and treatment. Compare EXHIBITS 1, 2, 4

12. The Mass. DOC which is a corporation in trust for the commonwealth (EXHIBIT 3. attached MGL c.124 §10).

The DOC fiduciary duties are to provide safety and medical care to its inmates (EXHIBIT 3 attached MGL c.124 §1) and "they shall keep a record of all money or other property found in possession of prisoners committed to such institutions

and shall be responsible to the commonwealth for the safe keeping and delivery of said property to said prisoners or their order on their discharge or at any time before." (EXHIBIT 3 attached MGL c. 127 §3)

13. On October 10, 2005 plaintiff did submit a legal material request and with it his only copy of his medical records seeking copies for this current proceeding, at which the SBCC Librarian and both the SBCC Superintendant denied plaintiff his right to recieve such submitted documents. (See EXHIBIT 4 attached Grievance Appeal No: 12780) After plaintiff was transferred to Norfolk on 10-11-05, The plaintiff has subsequently been denied reciept of all his medical records pertinent to this current proceeding, in which the SBCC Librarian refuses to return to him. (See EXHIBIT 4 Response from Renate M. White to plaintiff's medical records request dated (on second page therein) 12-19-05)

As plaintiff was not given access to his relevant records and documents to this case until November 12, 2005. (See EXHIBIT 4 attached Property Contraband Notification and Disposal form dated 11-12-05) See also D.O.C. defendants opposition (Affidavit of Counsel ¶¶ 5,7)

14. Pursuant to Superior Court Rules Rule 11, does explicitly state that "No attorney shall become bail or surety in any... civil action...", and Rule 12 states: "No attorney shall be permitted to take part in the conduct of a trial in which he has been or intends to be a witness for his client, except by special leave of court." (See DOC opposition Affidavit of Counsel)

15. Not one DOC defendant responded as ordered by the court but only by Affidavit of D.O.C. attorney Stephen Dietrick, who in addition to committing perjury while in a course of justice did violate Fed. R. Civ. P. 11(6), and plaintiff does move to strike defendants opposition to plaintiff's motion for Preliminary injunction, and the affidavit of counsel because it contains legal arguments, conclusions of law, and fact, and allegations made on information, belief and hearsay, the very contents of which he neither has personal knowledge nor evidentiary support, and defendants for the DOC are in contempt (see Document 17, Order No. 6 pg 14, 12-21-05.)

a) plaintiff who has a liberty interest in the preservation and safe keeping of his personal property while in the DOC custody (see EX-4 MGL c 127§3) He did suffer the arbitrary disposal of his personal property due to his inability to contact his family for purposes of recieving such alleged "contraband property" (EX-4 Return to Sender; property notification form dated 8-30-05.)

Plaintiff did also suffer the dismissal of a state civil damages complaint because he was unable to contact his family to help provide him with the necessary $10.00 for filing fees,. all because DOC defendant Pat Mulvey did coercively confiscate plaintiffs address book in retaliation. (EX-4 attached Notice of Docket Entry. Civ. AC. No. 05-0028) (compare Affidavit of DOC attorney Stephen Dietrick ¶ 4)

b) The DOC defendants who, after taking plaintiffs address book, and knowing that an MRI taken at Lemuel Shattuck

9

Hospital of plaintiffs spine on July 25, 2005 did confirm a disk herniation and nerve damage, did knowingly and intentionally transfer plaintiff to SBCC special management unit ("SMU") because of his filing complaints, on July 26, 2005.

The DOC defendants did deliberately deny plaintiff access to pertinent legal material necessary for discovery and litigation purposes until November 12, 2005, while coercively threatening plaintiff to dispose of such legal books and material in the interim. (EX-4 attached property contraband disposal form dated 11-12-05, attached grievance No. 15115) (compare affidavit of Attorney Deitrick ¶5)

c) The DOC defendants did arbitrarily dispose of plaintiffs personal property in retaliation for filing complaints, exceeding in costs of approximately $331.96, in violation of DOC statute (MGL c 127 §3, EX:3)(see EXHIBIT 4 attached property contraband disposal form dated 8-30-05, attached grievance and grievance appeal No. 11699, correspondence of plaintiff dated 9-1-05, attached grievance No. 13162, and attached Cedar Junction Appliance order form) The DOC did deliberately dispose of plaintiffs property even after receipt of plaintiffs certified mail letter seeking long term storage; the confirmation of such certified mail was acknowledged by the SBCC institutional Grievance Coordinator Barbara McDermott. (see EXHIBIT 4, attached grievance No. 13162, plaintiffs correspondence dated 9-1-05). (Compare Affidavit of DOC counsel Mr. Deitrick ¶6)

10

MGL c 127§3 does not grant DOC defendants any discretion to be made regarding the disposal of inmate property. However the DOC defendants property Policy 103 CMR 403 does allow the DOC defendants the unconstitutional use of discretion contrary to statute. (See DOC defendants Opposition Exhibit E therein)(see EXHIBIT 4 attached Grievance Appeal No. 11699) Compare Affidavit of Counsel ¶6)

d) The DOC defendants and Attorney Stephen Dietrick did violate MGL c. 214 §1B, and US Dist. Court Local Rule 5.3(A)(2) by using the full name of my son Jonathan who is a minor at the date of such disclosure of his name and phone number being an unwarranted intrusion into another's physical seclusion. DOB 12-26-87 (See defendants opposition to Plaintiff's Motion for Preliminary Injunction, Exhibit C, and Affidavit of Counsel ¶4)

The DOC defendants and attorney Dietrick did violate MGL c 214 §1B in the public disclosure of private facts in which the public disclosure of plaintiffs' family, friends, and attorney's phone numbers, some of whom may have enjoyed the non-public listing of their telephone numbers, prior to such invasive disclosure. Where the defendants did adamantly refuse to forward a copy of such names and #'s to plaintiff, despite the institutional Grievance Coordinator's urging to do so. (See EXHIBIT 4 attached grievance No. 11617) (Compare attorney Dietrick Affidavit ¶4)

e) The DOC defendants did violate MGLc 214 §1B and U.S. Dist. Court Local Rule 83.2A by publicly placing plaintiff in a bad light with fraudulently written Disciplinary Reports, and clearly erroneous Classification Report. compare Commonwealth v. Keith Niemic, 427 Mass. 718 (1998), and the disclosure of criminal facts that are currently before the district attorney's office of which plaintiff is also awaiting a DDU placement. in D Report No. 61907. (see Exhibit B of DOC defendants opposition)

The dissemination of which goes beyond the public record and the prejudice of which any of plaintiff's statements or remarks in response to the DOC defendants breach, all of which is immaterial to the present matter, may be used against the plaintiff in both subsequent criminal and Departmental Disciplinary Unit hearing. (see Affidavit of Attorney Dietrick ¶12)

16. On January 27, 2006 a U-Mass medical psychiatrist Dr. Nancy Felder did abruptly come out of nowhere and did state to plaintiff at his cell door that she will be discontinuing his Adderal - psychotropic medication without informed consent or any reasons provided, as plaintiff has not received any disciplinary reports nor has the psychiatrist or mental health dept. been involved with the plaintiff in any on-going therapy. The abrupt discontinuation of which is retaliation for plaintiffs motion for temporary Restraining Order, Preliminary Injunction which was

12

denied by this court on December 21, 2005. The abrupt discontinuation of at least 40 mgs. a day, of Adderal, that I have been taking 80 to 100 mgs a day for several years is causing plaintiff to suffer severe withdrawal symptoms consisting of depression, fatigue, anxiety, suicidal thoughts, extreme emotional Distress, loss of Appetite, loss of sleep, and has resulted in plaintiffs filing several U-MASS grievance and Appeal forms dated: 1-27-06, and 2-6-06, with no responses forthcoming as of the present date (see EXHIBIT-4)

17. On February 1, 2006, the DOC defendants did retaliate, against plaintiff, and who did conspire to coerce plaintiff from actively pursuing his civil legal actions, particularly this present action, for Temporary Restraining Order, Preliminary injunction, by verbally harrassing him about "Legal actions" and upon plaintiffs' return from the shower on this date, every legal book, and every legal envelope owned by the plaintiff containing legal material was strewn about on my cell floor, and missing from plaintiffs cell are several documents related to other state civil matters, and also missing related to the present case are half of his original and only copy of REQUEST FOR ADMISSION UNDER COURT RULE 36, and missing are the entire original and only copy of DEPOSITION UPON WRITTEN QUESTIONS, UNDER COURT Rule 31, both discovery requests of which plaintiff did intend to make copies and to serve upon the U-MASS, and D.O.C. defendants, the liability of which a DOC employee did write plaintiff a Disciplinary Report as subterfuge. (EXHIBIT 4, D-Report No. 69413, Grievance No. 16034, unnumbered Grievance)

The above is a true statement of facts to the best of my knowledge and memory.  SIGNED UNDER THE PENALTIES OF PERJURY  Keith Niemic
DATE: 2-11-06  Keith Niemic

## ARGUMENT

a) MASSACHUSETTS statute MGLc.127§3 does mandatorily state that the D.O.C. shall keep safe and return to all prisoners, any, and all property found in their possession. While the DOC defendants promulgated property policy 103 CMR 403 et seq (see DOC opposition EXHIBIT E) is contrary to statute which allows impermissible discretion and the DOC decision to limit and dispose of any inmates property without due process notwithstanding his liberty interest. see <u>Scott v. Angelone</u> 771 F.2d 1064 (1991); see also the similarity in <u>BLUM v. STATE of ARIZONA</u>, 829 P.2d 1247, 1250-1253 (1992)

In this instance a mere Declaratory Judgment would favorably support plaintiffs position in a state court proceeding because the easy interpretation of statute 127 §3 would result in the courts binding declaration respecting my right, the defendants duty, status, or other legal relation in question for the defendants safe keeping of my property, and it's return to me. Compare <u>Vining v. Com</u>, 828 NE 2d 576, 63 MASS APP. Ct. 690, review denied 834 NE 2d 257, 445 MASS 1103 (2005) see also <u>Nelson v. Commissioner of Correction</u>, 390 MASS 379, 388 456 NE 2d 1100, 1105 (1983)

The DOC defendants destruction/disposal of plaintiffs personal property after plaintiff served summonses and complaints on them does reveal retaliation. compare <u>Spruytte v. Haffner</u>, 181 F.Supp. 2d 736 (W.D. Mich. 2001) and in that regard plaintiff does adequately satisfy all four criteria for a Preliminary Injunction Fed.R.Civ.P. 65. see <u>Echomail Inc. v. American Exp. Co</u>, 378 F.Supp. 2d.1 (D.MASS 2005) The DOC defendants

use of property policy 103 CMR 403, in disposing of plaintiffs property without due process protection did amount to violation of protected liberty interest. See Ferranti v. Moran, 618 F.2d 888 (1st cir 1980) see also, in analogous context O'Conner v. Keller, 510 F.Supp 1359 (D. Maryland 1981)

b) It is well established that since prisoners cannot obtain their own medical services, the constitution requires prison authorities to provide them with "reasonably adequate" medical care. See Bell v. Wolfish, 441 U.S. 520 (1979). Courts have defined "adequate medical services, as services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards". United States v. DeCologero, 821 F.2d 39, 43 (1st cir 1987) And at a level of health services reasonably designed to meet routine and emergency medical, dental, and phychological or psychiatric care. Tillary v. Owens, 719 F.Supp. 1256 at 1301 (W.D. Pa 1989) Some courts have held that state prison regulations or state health and safety requirements, as well as statutes, reflect current standards of decency. See Richardson v. Sheriff of Middlesex County, 407 Mass 455 (1990).

Some courts have held that a medical need is serious if it has been diagnosed by a physician as mandating treatment of... is so obvious that even a layperson would easily recognize the necessity for a Dr's care. See Gaudreault v. Municipality of –

15

Salem Mass, 923 F.2d 203, 208 (1st Cir 1990) A medical need is serious if it significantly affects an individuals daily activities. Tillery v. Owens, 719 F.Supp. 1256, 1286 (W.D.Pa. 1989) aff'd 907 F.2d 418 (3rd Cir 1990) and if the medical condition is painful see Bouchard v. Magnusson, 715 F.Supp. 1146, 1148 (D.Me. 1989).

In the present case Deliberate Indifference can be shown to plaintiffs serious medical need where the U-Mass/DOC defendants knew of plaintiffs painful and serious condition and refused to provide proper medical treatment. see above statement of facts ¶¶ 3-4, 7-11, 12, see Boyd v. Rhode Island Dept of Corrections, 160 F.Supp.2d 213 (D.R.I. 2001)

And here due to the DOC defendants knowledge ¶¶ 7, 8, 9, 10, and their failure to provide plaintiff with his contractual right to "community standard of health care and pain relief," of which he has a liberty interest, and substantive Due Process right ¶ 11. was deliberate indifference Estelle v. Gamble, 429 US 97, at 104 (1976), the repeated continuance of such inadequate care did amount to a refusal to provide essential care ¶¶ 3-4, 7-12, see Thomas v. Pate 493 F.2d 151, 158 cert. denied 419 U.S. 879, 95 S.Ct. 143, 42 LEd 2d 119 (7th Cir 1974) and where the defendants had knowledge that such inadequate medical care did result in plaintiffs attempted suicide, and subsequent contemplations of suicide which was explicitly made known to the DOC and U-Mass defendants, all of whom did respond not with the provision of adequate contrac-

tual medical care ¶11, but instead with the abrupt discontinuation of one of plaintiff's psychiatric medications which helped control his Attention Deficit Hyperactive Disorder, ¶16. This grossly inappropriate treatment was so excessive as to shock the conscience, by knowingly causing plaintiff to suffer additional physical and emotional distress, enough so that he did again express suicidal thoughts in response. See Rosen v. Chang, 811 F.Supp 754, 760-61 (D.R.I. 1993) see also in analogous context Rogers v. Evans, 792 F.2d 1052, 1060-62 (11th Cir 1986)

    Plaintiff's expert witness, does affirm in his affidavit serious medical matters penumbral to the current medical matter (Herniated disk, with nerve damage) in which the defendants are refusing to provide essential care, does clearly establish "severly mismanaged" medical care that support deliberate indifference. ¶1. see Liscio v. Warren, 901 F.2d 274, 276 (2d Cir 1990). The defendants failure to provide equal rights to plaintiff for his protected liberty interest, and substantive Due process right to essential health care and "community standard" pain management, all the prerequisite factors of which does allow plaintiff to fall within the ambit of preliminary injunction. Fed.R.Civ.P. 65. see Yarbough v. Roach, 736 F.Supp. 318, 319-320 (D.D.C. 1990)

C)    The defendants, who have a fiduciary relationship with plaintiff, as beneficiary; both MASSACHUSETTS statute and D.O.C. policy guidelines, which in essence identifies the settlor, trustee, and beneficiary, describes the trust property,

and spells out the rights of the trust parties. see ¶¶ 11-12, herein; and 103.DOC.630.et seq attached to plaintiff's motion for TRO/Preliminary injunction; <u>Ventura v. Ventura</u>, 407 MASS 724, 727-728, 555 NE2d 872, 874 (1990)

d)     In the present matter it is no mere coincidence that plaintiff was transferred out of walpole, after very nearly being stabbed to death, in which his personal address book and stamps were immediately taken from him by a defendant in this case so that plaintiff could not contact his family, friends or attorneys. The actions of which may ring of a state tort, however the material connection to the facts in this case establish the acts to be retaliation for serving summonses and complaints on the defendants on June 8, 2005. Such retaliation was also explicitly set forth in plaintiffs verified complaint ¶¶ 51-67. The continuous actions of which a Preliminary injunction may remedy see. <u>Pratt v. Rowland</u>, 770 F.Supp. 1399, 1406 (N.D.Cal 1991).

    More importantly the defendants recent confiscation and destruction of plaintiffs legal material relevant to this case in which the DOC defendants intentionally destroyed/confiscated discovery materials intended to be submitted in this case, did prejudice the plaintiff. see <u>Simmons v. Dickhaut</u>, 804 F.2d 182, 183 (1st Cir. 1986) The delay of which is damage, because the U-MASS defendants have already filed motion for summary judgment, in January 31, 2006, in which plaintiff was not in receipt of all of his legal material relevant to this matter until November 12, 2005 see ¶¶ 13,15,17; see <u>Ryland v. Shapiro</u>, 708 F2d 967 (5th Cir. 1983)

e) Lastly, not one D.O.C. defendant did respond to plaintiff's motion for preliminary injunction either before, or after this courts 12-21-05 order. see ¶15 herein.

The DOC defendants did intentionally fail to respond all of whom impermissibly relied upon their attorney to respond of which he has no personal knowledge of the matters being affirmed in his affidavit. See in analogous context: TLT CONSTRUCTION CORP. V. A ANTHONY TAPPE AND ASSOCIATES, INC., 48 MASS. APP. Ct. 1, 716 NE2d 1044 (1999); see also BONGAERS V. MILLEN, 55 MASS APP. Ct. 51, 768 NE2d 1107 (2002). The very affidavit of which would not be admissible in evidence, because it contains legal argument, see Affidavit of Attorney Stephen Dietrick, in DOC defendants opposition. ¶¶ 2-7, conclusions of law and fact ¶¶ 2-7, and allegations made on information and belief ¶¶ 1-9. Compare Jackson v. Hogan, 388 mass 376, 378, 446 NE2d 692, 694 (1983). Who did commit perjury while in a course of justice, because nowhere in the record is there any substantive facts or evidence of plaintiff's misuse of medication, compare Affidavit of Counsel at ¶2; and plaintiffs record and statement of facts herein does establish that he was unable to contact his family due to defendant Mulvey's confiscation of his address book, compare counsels Aff. ¶4.

Also, where the counsel for defendants does affirm that the walpole property officer did not recieve a response from plaintiff to any of his property disposal notices, is contra-

dicted by plaintiffs certified mail, verified by the SBCC institutional Grievance Coordinator,. See ¶15(e) herein, compare Affidavit of Counsel at ¶6. Finally the DOC and U-MASS defendants refuse to provide plaintiff with pertinent material medical records, see ¶13 herein, compare Affidavit of Counsel at ¶¶5,7.. The very intent and Knowledge of which was perjury see in analogous context. U.S. v. Richardson, 421 F.3d.17 (CA1 MASS 2005)

The conspired misconduct of which (is not indispensible element under §1983, see Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983)) was for the intentional contempt of this court's order on 12-21-05, in violation of United States District Court Magistrate Rule 16; and M.G.L.c. 231A §5, see Allen v. School Committee of Boston, 400 MASS. 193, 194 (1987). See also Fed. R.Civ.P. Rules 37(b), 4.1, 45, and 56.

f) The DOC defendants attorney did violate the sub tort of "false light" invasion of privacy ¶15(e) as subterfuge, in violation of MGLc 214 §1B, by utilizing plaintiffs Disciplinary Chronology and classification report, some material parts of which are fraudulent, the bad light of which is in further violation of U.S. Dist. Ct. Local Rule 83.2A; because of currently pending criminal charges, and a ("DDU") ticket. DOC deft. opposition, Exhibit B D-Report No. 61907. See also Morrell v. Forbes Inc., 603 F.Supp. 1305 (D.MASS.1985)

The DOC defendants in their hurried scamper of consciousness of liability and their brazen retort in violating the privacy of my under age son, pursuant to U.S. Dist. Ct. Local rule 5.3(A)(2) and that of my family contrary to statute MGLc.

214 §1B; §15(d) was evidentiary Admissions Obstruction of Justice as an implied admission. See MASSACHUSETTS Evidentiary Standard 801(6)(3)(B), compare Mikkelson v. Connelly, 229 Mass. 360 118 NE 649 (1918); see also Fed.R.Evid. 801(d)(2); now see in analogous context. Bennett v. City of Holyoke, 230 F.Supp.2d 207 (D. MASS 2002)

Although the pro se plaintiff has not moved for sanctions pursuant to Fed.R.Civ.P. Rule 11(C)(1)(A), he does however leave it upon the courts own initiative. (C)(1)(B)., who also states that in addition to the defendants contempt of court, plaintiff has shown (pursuant to Fed.R.Civ.P. 65) herein, : (1) his likelihood of success on the merits, (2) irreparable injury, (3) that such injury outweighs any harm to defendants, and (4) that injunction would not adversely harm public interest. See Echomail Inc. v. American Exp. Co., 378 F.Supp.2d 1 (D. MASS 2005)

WHEREFORE, plaintiff respectfully requests that with the additional facts set forth herein, that the court grant his motion for preliminary injunction regarding his contractual right to community standard pain management; with hearing for damages on all of plaintiffs disposed property in violation of statute, and the return of his address book with contents therein, or copy thereof, and contents therein. And any other relief that this court deems just and proper.

DATE: 2-11-06

respectfully Submitted
Keith Niemic
Keith Niemic
PO BOX 43 SMU-1
Norfolk, MA 02056

I do hereby certify that a true copy of the above was served upon counsel for all parties, by mail this day: 2-17-06
Keith Niemic