PRISONS    127 § 3

## § 3. Money and property of prisoners; records; custody and return; transmission to court; interest on deposits

They shall keep a record of all money or other property found in possession of prisoners committed to such institutions, and shall be responsible to the commonwealth for the safe keeping and delivery of said property to said prisoners or their order on their discharge or at any time before. The superintendents and keepers of jails, houses of correction and of all other penal or reformatory institutions shall, upon receipt of an outstanding victim and witness assessment, transmit to the court any part or all of the monies earned or received by any inmate and held by the correctional facility, except monies derived from interest earned upon said deposits and revenues generated by the sale or purchase of goods or services to persons in correctional facilities, to satisfy the victim witness assessment ordered by a court pursuant to section eight of chapter two hundred and fifty-eight B. Any monies derived from interest earned upon the deposit of such money and revenue generated by the sale or purchase of goods or services to persons in the correctional facilities may be expended for the general welfare of all the inmates at the discretion of the superintendent.

Amended by St.1962, c. 569; St.1994, c. 60, § 125; St.1996, c. 450, § 171.

### Historical and Statutory Notes

St.1861, c. 138.
P.S.1882, c. 222, § 1.
R.L.1902, c. 225, § 2.

St.1962, c. 569, an emergency act, approved June 19, 1962, added the second sentence.

St.1994, c. 60, § 125, approved July 1, 1994, and by § 315 made effective as of July 1, 1994, inserted the second sentence, and rewrote the former second sentence (now third), which prior thereto read, "Any interest accruing as a result of the deposit of such money may by agreement with the prisoners concerned, be expended for the general welfare of all the inmates at the discretion of the superintendent".

St.1996, c. 450, § 171, an emergency act, approved Dec. 27, 1996, in the second sentence, substituted "two hundred and fifty-eight B" for "two hundred fifty-eight B".

### Code of Massachusetts Regulations

Correction department,
    Inmate funds, see 103 CMR 405.01 et seq.
    Inmate property policy, see 103 CMR 403.01 et seq.

### American Law Reports

Validity and construction of prison regulation of inmates' possession of personal property. 66 ALR4th 800.

### Law Review and Journal Commentaries

Criminal conviction and civil rights. (1962) Search incident to incarceration. 30 Ann.
42 B.U.L.Rev. 110.                                                   Surv.Mass.L. 125 (1983)

---

PRISONS    127 § 4

### Library References

Convicts ⟶3.                    C.J.S. Convicts § 4.
Costs ⟶304, 310.                C.J.S. Criminal Law §§ 1759, 1761 to 1772,
Criminal Law ⟶1220.                 1774 to 1786.
Prisons ⟶9.                     C.J.S. Prisons and Rights of Prisoners §§ 16,
WESTLAW Topic Nos. 98, 102, 110, 310.  20.

### Westlaw Electronic Research

See Westlaw Electronic Research Guide following the Preface.

### Notes of Decisions

Inventory searches    1

1. **Inventory searches**

To keep weapons and contraband from prison population is justification for preincarceration searches; this objective, however, does not justify inspection of contents of wallet if custodian is going to retain it. Com. v. Wilson (1983) 448 N.E.2d 1130, 389 Mass. 115.

Chapter 276, § 1 authorizing search to be made incident to an arrest only for purpose of seizing evidence of crime for which arrest has been made in order to prevent its destruction or concealment or for purpose of removing any weapon arrestee might use to resist arrest or to escape did not limit admissibility of evidence found during inventory search of defendant's wallet at county jail made pursuant to this section, requiring superintendents and keepers of jails to keep record of all money or other property found in possession of prisoners committed.

Amended by St.1955, c. 770, § 14.

to such institutions; thus, motion to suppress lysergic acid diethylamide seized in the search of defendant's wallet as evidence of possession of lysergic acid diethylamide was properly denied. Com. v. Wilson (1983) 448 N.E.2d 1130, 389 Mass. 115.

Although demonstration that inventory search of defendant's wallet at county jail following arrest on charge of assault and battery by means of dangerous weapon was made pursuant to standard procedures could have been more detailed, routine nature of search was supported by trial court's finding that such searches are usual and by duty under this section of sheriff and his assistants to "keep a record of all money or other property found in possession of prisoners," and thus search of defendant's wallet was not unreasonable search in violation of his rights under U.S.C.A.Const. Amend. 4. Com. v. Wilson (1983) 448 N.E.2d 1130, 389 Mass. 115.

### § 4. Records of punishment by isolation

They shall keep a record of the name and number or other sufficient designation of every person punished by isolation, the day and hour when he was placed in isolation, the day and hour when released, the offense, and such remarks as may be necessary to complete the record. The commissioner shall ascertain whether the requirements of this section are observed.

Amended by St.1955, c. 770, § 14.

### Historical and Statutory Notes

St.1876, c. 61, §§ 2, 3.            R.L.1902, c. 225, § 3.           St.1919, c. 350, §§ 82, 83.
P.S.1882, c. 222, §§ 4, 5.          St.1916, c. 241, § 1.

St.1955, c. 770, § 14, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, in the first sentence,

substituted "isolation" for "solitary imprisonment" in two places.

### Library References

Prisons ⟶9, 12, 13(5).          C.J.S. Prisons and Rights of Prisoners §§ 6,
WESTLAW Topic No. 310.              16, 20 to 21, 25 to 27, 50 to 53, 55, 59.

# DEPARTMENT OF CORRECTIONS

## 124 § 6

St.1939, c. 451, § 39, approved Aug. 10, 1939, in the third sentence, substituted "parole board" for "board of parole".

St.1955, c. 770, § 10, an emergency act, approved Sept. 12, 1955, and by § 123 made effective Oct. 20, 1955, in the first sentence, substituted "each correctional institution of the commonwealth" for "the state prison, Massachusetts reformatory, state prison colony, state farm and reformatory for women".

### Library References

Prisons ⟨key⟩9.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 16, 20.

## § 7. Repealed by St.1954, c. 567, § 3

The repealed section, which related to the parole board's powers and duties, was derived from:

St.1913, c. 829, §§ 1 to 3, 6.
St.1915, c. 35.

### Historical and Statutory Notes

St.1954, c. 567, § 3, an emergency act, repealing this section, was approved June 7, 1954.

See c. 127, § 154.

## § 8. Reports of criminal cases by clerks of courts

Clerks of courts shall annually, on or before January fifteenth, make reports to the commissioner of all criminal cases commenced in the superior court in the several counties during the year ending on December thirty-first, and of all criminal cases entered therein on appeal during such time. Clerks of district courts shall annually, at the same time and for the same period, make like reports of criminal cases in which such courts have exercised jurisdiction, and shall state whether such jurisdiction was final or otherwise. Blank forms for such reports shall be prepared and furnished by the commissioner. Whoever refuses or neglects to make the report required of him by this section shall forfeit two hundred dollars.

Amended by St.1935, c. 48, § 1; St.1953, c. 319, § 18.

### Historical and Statutory Notes

St.1851, c. 216, § 2.
St.1852, c. 289, § 3.
G.S.1860, c. 14, §§ 11, 12, 15.
St.1881, c. 66.
P.S.1882, c. 219, §§ 34, 35, 37.
St.1882, c. 226, § 1.
R.L.1902, c. 222, § 6.

St.1935, c. 48, § 1, approved March 7, 1935, in the first sentence, substituted "January" for "October" and "December thirty-first" for "September thirtieth".

St.1953, c. 319, § 18, approved May 1, 1953, and by § 40 made effective Oct. 1, 1953, in the second sentence, deleted "and trial justices" following "district courts" and "or justices" preceding "have exercised".

Section 39 of St.1953, c. 319, provides:

"The powers and duties of trial justices shall hereafter be exercised and performed by justices of the district courts, and when used in any statute, rule or regulation the words 'trial justice' or any words connoting the same shall mean the justice of a district court, unless a contrary intent clearly appears. No party to a proceeding pending before a trial justice upon the effective date of this act shall lose any rights by reason of the abolishing of the position of trial justice."

12

---

# DEPARTMENT OF CORRECTIONS

## 124 § 10

## § 9. Monthly reports of arrests

The police commissioner of Boston, city marshals or chiefs of police and every officer making an arrest in a town not having a city marshal or chief of police shall make monthly reports to the commissioner of the number of persons of each sex arrested in their several towns. Such reports shall be classified according to offences. An officer who refuses or neglects to make such report shall be punished by a fine of fifty dollars.

St.1882, c. 226, § 2.
St.1892, c. 290, § 3.

### Historical and Statutory Notes

R.L.1902, c. 222, § 7.
St.1906, c. 291, § 10.

### Library References

Municipal Corporations ⟨key⟩181, 182, 183(5), 189(2).
WESTLAW Topic No. 268.

C.J.S. Municipal Corporations §§ 454 to 465, 471 to 472, 492 to 495, 497.

## Public records 1

### Notes of Decisions

1. **Public records**

Even if certain records kept by police officers and employees are not public records, they are subject to being summoned before a proper tribunal in accordance with established rules of law. Dunn v. Board of Assessors of Sterling (1972) 282 N.E.2d 385, 361 Mass. 692.

Even if police monthly statistical reports to Commissioner of Corrections and to town selectmen are public records, inclusion in such reports of data derived from police arrest register and daily log did not make such subsidiary reports also public records available for review by the public. Police of Weston (1972) 282 N.E.2d 379, 361 Mass. 682.

All police records, whether public records or not, are subject to being summoned before a proper tribunal in accordance with established rules of law. Town Crier, Inc. v. Chief of Police of Weston (1972) 282 N.E.2d 379, 361 Mass. 682.

Police arrest register and daily log, entries in which were not made pursuant to requirement of law, were not "public records" and thus their public disclosure could not be compelled by writ of mandamus. Town Crier, Inc. v. Chief of Police of Weston (1972) 282 N.E.2d 379, 361

## § 10. Corporate status of department for purpose of grants, gifts or bequests; site selection for new facilities; title to property

The department shall be a corporation for the purpose of taking, holding and administering in trust for the commonwealth any grant, gift or bequest made either to the commonwealth or to it for the use of persons under its control in any correctional facility of the department or for expenditure upon any work which the department is authorized to undertake. The department may accept, receive and use money, goods or services given for the general purposes of the department by the federal government or from any other source, public or private, and may comply with such conditions and enter into such agreements

13

**125 § 13**  CORRECTIONAL INSTITUTIONS

St.1926, c. 343, §§ 1, 3.
St.1931, c. 426, § 238.

G.L.1932 (Ter.Ed.), c. 125, §§ 13, 16, 21, 24, 27, 31, 35.
St.1936, c. 276.
St.1939, c. 360, § 2.

**Library References**

Prisons ⚖=5.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 14, 61.

**Notes of Decisions**

In general 1

**1. In general**

A state-salaried department of correction officer is not obligated to use his private vehicle in service of a county writ without compensation from the county. Op.Atty.Gen. Oct. 14, 1976, p. 96.

**§ 14. Superintendent; powers and duties**

Subject to rules and regulations established by the commissioner and according to law, the superintendent shall be responsible for the custody and control of all prisoners in the correctional institution, and shall govern and employ them pursuant to their respective sentences until their sentences have been performed or they are otherwise discharged by due course of law, or they are removed by the commissioner, and shall also have the charge and custody of the institution and of the land, buildings, furniture, tools, implements, stock, provisions, and all other property belonging to it or within its precincts. The superintendent shall establish and maintain at each correctional institution of the commonwealth a safe and secure place for the storage of firearms carried by uniformed correctional officers of said institutions to and from their place of employment.

Added by St.1955, c. 770, § 11. Amended by St.1957, c. 777, § 5; St.1974, c. 293.

**Historical and Statutory Notes**

St.1957, c. 777, § 5, approved Sept. 24, 1957, substituted "superintendent" for "principal officer".

St.1974, c. 293, approved June 4, 1974, added the second sentence.

**Prior Laws:**

St.1811, c. 32, § 3.
St.1827, c. 118, §§ 3, 10.
R.S.1836, c. 144, §§ 16, 25, 30.
G.S.1860, c. 179, §§ 27, 28.
St.1866, c. 198, §§ 2, 4.
P.S.1882, c. 88, § 2; c. 221, §§ 20, 21.
St.1883, c. 267, § 1.
St.1898, c. 393, §§ 5, 6.
St.1901, c. 224, § 1.

R.L.1902, c. 85, § 28; c. 223, §§ 6, 34; c. 225, § 65.
St.1905, c. 355, § 4.
St.1906, c. 243, § 1.
St.1916, c. 183.
St.1919, c. 241, § 1.
St.1919, c. 199, § 1.
St.1919, c. 350, §§ 82, 84, 86.
St.1923, c. 362, § 79.
St.1924, c. 260.
St.1927, c. 289, § 1.
St.1931, c. 301, §§ 96, 97.
St.1932 (Ter.Ed.), c. 125, §§ 14, 34, 41B, 41C, 45.
St.1945, c. 537, § 4.

---

CORRECTIONAL INSTITUTIONS  **125 § 15**

**Law Review and Journal Commentaries**

Penal and reformatory institutions; rules and regulations. George F. McGrath, 2 Ann. Surv.Mass.L. 124 (1955).

**Library References**

Prisons ⚖=9.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners §§ 16, 20.

**Westlaw Electronic Research**

See Westlaw Electronic Research Guide following the Preface.

**§ 15. Superintendent and deputies; residences**

The superintendent, and his deputy, shall reside constantly within the precincts of the correctional institution, unless otherwise authorized by the commissioner.

Added by St.1955, c. 770, § 11. Amended by St.1957, c. 777, § 6.

**Notes of Decisions**

In general 1

**1. In general**

Superintendent of the Massachusetts Correctional Institution at Bridgewater could legally grant permission to make an educational film within that institution. Op.Atty.Gen. March 21, 1966, p. 290.

**United States Supreme Court**

Access to courts, prisoners, delays in receipt of legal materials or assistance, actual injury, systemwide relief, prison regulations reasonably related to legitimate penological interest, see Lewis v. Casey, 1996, 116 S.Ct. 2174, 135 L.Ed.2d 606.

Communications by prison inmates, see Procunier v. Martinez, U.S.Cal.1974, 94 S.Ct. 1800, 416 U.S. 396, 40 L.Ed.2d 224, 71 O.O.2d 139.

Law libraries in prisons, access to courts, see Bounds v. Smith, 1977, 97 S.Ct. 1491, 430 U.S. 817, 52 L.Ed.2d 72.

**Historical and Statutory Notes**

St.1957, c. 777, § 6, approved Sept. 24, 1957, substituted "superintendent" for "principal officer".

**Prior Laws:**

St.1827, c. 118, § 5.
R.S.1836, c. 144, § 28.
St.1852, c. 275, § 5.
G.S.1860, c. 71, § 34; c. 179, § 25.
St.1874, c. 385, § 10.
St.1876, c. 179, § 1.
St.1879, c. 291, § 10.
P.S.1882, c. 86, §§ 16, 19; c. 88, § 2; c. 221, §§ 18, 19.

St.1883, c. 267, § 1.
St.1884, c. 255, §§ 23, 24.
St.1886, c. 323, § 6.
St.1899, c. 245, § 2.
St.1900, c. 286, § 2.
St.1901, c. 224, § 1.
R.L.1902, c. 85, § 6; c. 223, §§ 11, 24, 33.
St.1916, c. 241, § 1.
St.1919, c. 199, § 1.
St.1919, c. 350, §§ 82, 84.
St.1923, c. 362, § 78.
St.1926, c. 343, § 5.
G.L.1932 (Ter.Ed.), c. 125, §§ 15, 26, 33, 47.
St.1945, c. 537, § 3.

**Library References**

Prisons ⚖=6.
WESTLAW Topic No. 310.

C.J.S. Prisons and Rights of Prisoners § 14.

## DEPARTMENT OF CORRECTIONS

- retrieve current, comprehensive history and citing references to a case with KeyCite

For more information on using Westlaw to supplement your research, see the Westlaw Electronic Research Guide, which follows the Preface.

*The section headings for Massachusetts General Laws Annotated have been editorially supplied.*

### Cross References

Correctional institutions of the commonwealth, see c. 125, § 1 et seq.
Department of correction, generally, see c. 27, § 1 et seq.
General provisions relative to state departments, commissions, officers and employees, see c. 30, § 1 et seq.
Mental health legal advisors committee, volunteer legal assistance program, see c. 221, § 34E.
New England interstate corrections compact, see c. 125 App. § 1-1 et seq.
State administrative procedure, see c. 30A, § 1 et seq.

### Code of Massachusetts Regulations

Correctional industries, department of corrections, see 103 CMR 455.01 et seq.

### Law Review and Journal Commentaries

County jails and houses of correction. George F. McGrath, 9 Ann.Surv.Mass.L. 128 (1962).
Miranda as part of a prisoner's bill of rights: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 576.
Penal reform; powers and duties of department of correction. George F. McGrath, 2 Ann. Surv.Mass.L. 119 (1955).
Power of federal courts to order a state agency to cure a constitutional violation of another state agency: First Circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 316.
Requirements for state prison disciplinary hearings: First circuit, 1973–1974 term. (1975) 9 Suffolk U.L.Rev. 533.

### Library References

Prisons ⟨=⟩9.
WESTLAW Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 16, 20.

### United States Supreme Court

Confinement conditions and practices, custodial facilities, see Bell v. Wolfish, U.S.N.Y.1979, 99 S.Ct. 1861, 441 U.S. 520, 60 L.Ed.2d 447.

## § 1. Powers and duties of commissioner of correction

In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction, in this chapter called the commissioner, shall:

(a) designate, establish, maintain, and administer such state correctional facilities as he deems necessary, and may discontinue the use of such state correctional facilities as he deems appropriate for such action; provided that no state or county correctional facility named in paragraph (n) of section one of

2

## DEPARTMENT OF CORRECTIONS     124 § 1

chapter 125 shall be discontinued without specific authorization and approval of the General Court;

(b) maintain security, safety and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any such facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot or insurrection at any such facility, including but not limited to the development, planning, and coordination of emergency riot procedures with the colonel of state police, and take suitable measures for the restoration of order;

(c) establish and enforce standards for all state correctional facilities;

(d) establish standards for all county correctional facilities and secure compliance with such standards, if necessary, through the enforcement provisions of section one B of chapter one hundred and twenty-seven;

(e) establish, maintain and administer programs of rehabilitation, including but not limited to education, training and employment, of persons committed to the custody of the department, designed as far as practicable to prepare and assist each such person to assume the responsibilities and exercise the rights of a citizen of the commonwealth;

(f) establish a system of classification of persons committed to the custody of the department for the purpose of developing a rehabilitation program for each such person;

(g) determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer such persons to appropriate facilities and programs;

(h) establish training programs for employees of the department and, by agreement, other corrections personnel;

(i) investigate grievances and inquire into alleged misconduct within state correctional facilities;

(j) maintain adequate records of persons committed to the custody of the department;

(k) establish and maintain programs of research, statistics and planning, and conduct studies relating to correctional programs and responsibilities of the department;

(l) utilize, as far as practicable, the services and resources of specialized community agencies and other local community groups in the rehabilitation of offenders, development of programs, recruitment of volunteers and dissemination of information regarding the work and needs of the department;

(m) make and enter any contracts and agreements necessary or incidental to the performance of the duties and execution of the powers of the department, including but not limited to contracts to render services to committed offenders, and to provide for training or education for correctional officers and staff;

3

☐ I.V. administration
- Drug should be administered only by persons trained in the use of I.V. anesthetics.
- Give drug by direct I.V. injection. Drug has been given by intermittent I.V. infusion, but drug compatibility and stability in I.V. solutions aren't fully known.

PATIENT TEACHING
- Inform patient and family of need for drug and answer any questions.
- Encourage turning, coughing, and deep breathing postoperatively to prevent atelectasis.

### tramadol hydrochloride
Ultram, Zamadol§, Zydol§

*Pregnancy risk category C*

| | | |
|---|---|---|
| P.O. | Unknown | 2 hr | Unknown |

HOW SUPPLIED
*Tablets:* 50 mg

ACTION
Unknown. A centrally acting synthetic analgesic compound not chemically related to opiates. Drug is thought to bind to opioid receptors and inhibit reuptake of norepinephrine and serotonin.

INDICATIONS & DOSAGES
*Moderate to moderately severe pain—*
**Adults:** 50 to 100 mg P.O. q 4 to 6 hours, p.r.n. Maximum, 400 mg daily.
**Elderly patients:** For patients over age 75, maximum is 300 mg daily in divided doses.
***Adjust-a-dose:*** For renally impaired patients with creatinine clearance below 30 ml/minute, increase dose interval to q 12 hours; maximum is 200 mg daily. For patients with cirrhosis, give 50 mg q 12 hours.

ADVERSE REACTIONS
**CNS:** *dizziness, vertigo, headache, somnolence,* CNS stimulation, asthenia, anxiety, confusion, coordination disturbance, euphoria, nervousness, sleep disorder, **seizures,** malaise.

**CV:** vasodilation.
**EENT:** visual disturbances.
**GI:** *nausea, constipation, vomiting,* dyspepsia, dry mouth, diarrhea, abdominal pain, anorexia, flatulence.
**GU:** urine retention, urinary frequency, menopausal symptoms, proteinuria, increased creatinine clearance.
**Hematologic:** decreased hemoglobin levels.
**Hepatic:** increased liver enzyme levels.
**Musculoskeletal:** hypertonia.
**Respiratory:** *respiratory depression.*
**Skin:** pruritus, diaphoresis, rash.

INTERACTIONS
**Drug-drug.** *Carbamazepine:* Increased tramadol metabolism. Patients receiving long-term carbamazepine therapy at up to 800 mg daily may need up to twice the recommended dose of tramadol.
*CNS depressants:* Additive effects. Use together with caution. Dosage of tramadol may need to be reduced.
*Cyclobenzaprine, MAO inhibitors, neuroleptics, selective serotonin reuptake inhibitors, tricyclic antidepressants:* Increased risk of seizures. Monitor patient closely.
*Quinidine:* Increased levels of tramadol. Monitor patient closely.

EFFECTS ON DIAGNOSTIC TESTS
None reported.

CONTRAINDICATIONS
Contraindicated in patients hypersensitive to drug and in those with acute intoxication from alcohol, hypnotics, centrally acting analgesics, opioids, or psychotropic drugs.

NURSING CONSIDERATIONS
- Use cautiously in patients at risk for seizures or respiratory depression; in increased intracranial pressure or head injury, acute abdominal conditions, or renal or hepatic impairment; and in physical dependence on opioids.
- Monitor CV and respiratory status. Withhold dose and notify prescriber if respirations decrease or rate is below 12 breaths/minute.
- Monitor bowel and bladder function. Anticipate need for laxative.

better analgesic effect, give drug before onset of intense pain.
- Monitor patients at risk for seizures. Drug may reduce seizure threshold.
- Monitor patient for drug dependence. Drug can produce dependence similar to that of codeine or dextropropoxyphene and thus has potential for abuse.

PATIENT TEACHING
- Instruct patient to take drug as prescribed and not to increase dose or dosage interval unless ordered by prescriber.
- Caution ambulatory patient to be careful when rising and walking. Warn outpatient to avoid driving and other potentially hazardous activities that require mental alertness until drug's CNS effects are known.
- Advise patient to check with prescriber before taking OTC drugs; drug interactions can occur.