UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2006 MAR 15 P 2:07
U.S. DISTRICT COURT
DISTRICT OF MASS.

KEITH NIEMIC,
          Plaintiff,
V.

MICHAEL MALONEY ET AL,
          Defendants.

C.A. No. 04-11482-NMG

## PLAINTIFFS VERIFIED MOTION TO CLARIFY FACTS

    Now comes the pro se plaintiff, who does state the following verified facts for the court in a brief concise statement, making reference pursuant to Fed.R.Civ.P. 10(c) to his previous pleading: "MOTION FOR LEAVE TO RESPOND/MOVE TO STRIKE DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION."[1]

    As reasons therefor plaintiff does assert that following his move for a preliminary injunction both D.O.C. and U-mass defendants have filed dispositive and responsive motions that did obscure the clarity of facts to be percieved by this court, relating to such prelim. injunction; combined with plaintiff suffering psychological problems while drafting the above italicized motion,[2] due to Dr. Sandra Felder psychiatrist, (U-mass Correctional Health defendants) abrupt discontinuation of plaintiffs Attention Deficit Hyperactivity Disorder ("ADHD") medication, id at ¶16. resulting in inarticulate pleadings.

---

1. Reference to said motion will be illustrated as (¶/paragraph Number)
2. including plaintiffs suffering his untreated current Herniated disk.

visit and consult with Dr. Stevens on 11-14-05 His epidural was not given because the record showed that he had taken motrin-(Ibuprofen) that day which can cause excessive bleeding and potentially life threatening, whereupon during his second epidural visit on 1-17-06 it had to be cancelled due <u>luckily</u> to plaintiffs random disclosure of his recent consumption of Ibuprofen, THAT IS NOT ON THE RECORD AS Dr. Stevens did expound on this grossly negligent act. Because U-MASS personnel do know of all inmates appointments with outside providers well ahead of time. (See Dr. Stevens memorandum dated 1-17-06 in EXHIBIT 4)

5. The U-MASS defendants continue to treat plaintiff's Disk Herniation with neuralgia, with the well known ineffective 300 mgs of (ultram) tramadol, (the daily maximum dose of which is 400 mgs a day) which is an analgesic, with Robaxin, (a muscle relaxer) and NSAIDS, ie. Tylenol, motrin, Naprosyn, while continuously denying plaintiff his many times requested contractual and liberty interest right to "community standard" pain management, as set forth in the D.O.C. Clinical Guidelines. (EXHIBIT 4)(EXHIBIT 2 all contents therein), at ¶¶ 8-11; the

6. The U-MASS and DOC defendants continued unnecessary and wanton infliction of pain by denying plaintiff pain management and failing to accomodate his disability, has re-

3

sulted in plaintiffs legs giving out underneath him on July 27, 2005 causing him to fall to the floor in which a "CODE 99" (Emergency) was instituted (See EXHIBIT 1, attached grievance Appeal dated 9-6-05) and again his leg (right) gave out on him on February 22, 2006. Both times at which he was denied his requests for a physical examination pursuant to MGL c 127 §§ 16-18; and Dept. Public Health Min Standards 105 CMR 205:100-200. Id. including U-MASS defendants refusal to provide plaintiff with a subsequent X-Ray or MRI to determine the extent of any further injury.

As of the current date plaintiff has not been outside in nearly (2) months to enjoy his one hour of exercise, he's further been unable to walk to the shower (3) times a week for his personal hygeine, including his inability to attend the law library, the intense and relentless pain of which has kept plaintiff primarily bedridden in his segregation cell, with no participation in any daily activities (See EXHIBIT 2) with constant thoughts of suicide (EXHIBIT 1) and reluctantant relinquishment of a GI clinic visit.[4]

7. An MRI taken of plaintiffs spine on July 25, 2005 did confirm a disk Herniation with potential nerve damage (see EXHIBIT 4 attache consult Report dated 11-14-05)

Despite his severe Lumbar spine condition he was forcefully moved to SBCC on 7-26-05, who was again forcefully moved was gassed and beat up by tactical move team members because he requested medical and

[4]. The GI consult was for preparation of his long sought Hep-C treatment.

4

mental Health care on October 25, 2005 (See EXHIBIT 1 attached grievance No's 14236, 14237) and was subsequently denied effective pain relief or any kind of physical exam pursuant to MGL c 127 §16-18, or MGL c 111 §70E;

At no time have the U-MASS defendants provided plaintiff with informed consent pursuant to statute, further depriving him his right to actively take part in the provision of health care, this fundamental standard and practice of which is identical for civilians and prisoners alike. id. (See EXHIBIT 4, attached Affidavit of Expert witness at ¶ 32.)

8. All segregation inmates who need access to writing or legal materials must be made through the segregation caseworker, who in this instance is (nondefendant) Mr. Nelson Alves, and who's duty it is to go to the segregation unit ("SMU") (3) times a week to provide inmates with their material/legal needs.

The gross negligence of Mr. Alves has resulted in plaintiff filing several grievances because of his constant inability to effectively access court (See EXHIBIT 3)

9. Plaintiff did find that after two MCI-Norfolk prison Guards Mr. Joseph Tammara, and Mr. Gary Levesque did make a cell search and ultimately trashed plaintiffs cell on February 1, 2006, he was later found to be missing pertinent legal material to this very case. ¶17. (EXHIBIT 3) resulting in his filing **another** grievance on the matter id.

5

10. Unlike the U-mass defendants and their attorneys evidentiary Admissions - conduct indicative of consciousness of Guilt. MASSACHUSETTS EVIDENTIARY STANDARD 801 (d)(3)(B); see also FEDERAL RULES of EVIDENCE 801 (d)(2)(C)(E);

  Lidocaine is used as a topical agent for minor surgery and as a pretreatment for infiltration anesthesia (See PDR 58 Ed. Thomson 2004)

  This medicine is not used as a pain relief as asserted by the U-mass defendants; but is analogous to how dentists use novocaine to work on teeth. ¶4.

11. Plaintiff is currently without the necessary records and documents needed to set forth in an affidavit in response to the U-mass defendants motion for a summary Judgment, because the U-mass defendants refuse to provide plaintiff with all his requested medical records. at ¶13. (See EXHIBIT 3)

12. In response to plaintiffs obvious physical pain and overwhelming Emotional Distress from his forced transfer to SBCC on 7-26-05, the Mental Health Dept. did in response increase plaintiffs Attention Deficit Hyperactivity Disorder ("ADHD") medicine from 40 mgs. in the AM. to 60 mgs. which did have somewhat of a beneficial effect. (See EXHIBIT 1, attached U-mass Health Treatment Admin. Record dated July 8.05, and attached Dr's. order dated 8-19-05)(¶8)

6

However, the U-MASS defendants did subsequently lash out and retaliate against plaintiff with the intention of causing him harm by abruptly discontinuing his ADHD medicine without a taper, nor without any alternative therapy, causing plaintiff to endure several weeks of insomnia with mental and emotional distress manifesting itself through paranoia, fatigue, anxiety, fear, depression, continued thoughts of suicide, (see EXHIBIT 1) at ¶16.

13. Since U-MASS defendants have stopped my ADHD medicine I've been experiencing extreme difficulty in reading, and understanding what I read, id.

14. Several Disciplinary reports that DOC counsel did affirmatively expound on in his Affidavit (DOC Defendants opposition to plaintiff's motion for Preliminary Injunction) the majority and substance of which, is hearsay, interalia, plaintiff does again move to strike, ¶15, and does object to the proffer of such evidence as being based upon conspiracy and fraud, the evidentiary Admissions of which are obstruction of Justice as an implied Admission. See MASS. Evidentiary Standard 801(d)(3)(B) Because two Disciplinary Reports relied upon to influence this court were fraudulently contrived, and were thus dismissed (see EXHIBIT 3 attach-

7

ed D-Reports Nos. 59722, and 62050. at ¶15.

Wherefore plaintiff respectfully requests Judicial notice of these facts. Fed R. Evid. 201(b)(a)(e);.

ARGUMENT

a) The Mass. D.O.C. Clinical Guidelines on pain management is a liberty interest placing substantive limitations on the U-Mass official discretion, the very substance of which is buttressed by M.G.L. c. 111S 70E, and that of Expert opinion. (EXHIBIT 4 Attached Affidavit of Mr. Daniel Mason ¶¶ 32, 57-58.; See Rodi v. Ventura, 941 f.2d 22 (1st cir 1991)

The liberty interest of which grants plaintiff his contractual right to consent to effective "community standard" pain management. See MGLC 93 §102(a)(d) LANIER V. FAIR, 876 f.2d 243, 247-248 (1st cir 1989)

The DOC and U-Mass defendants had a reckless disregard for plaintiff's suicidal feelings ¶9. See (EXHIBIT 2) LAYNE V. VINZANT, 657 f.2d 468, 471 (1981)

The defendants repeated and relentless actions of which was nothing less than the "unecessary and wanton infliction of pain." MICHAUD V. SHERIFF OF ESSEX COUNTY, 458 NE 2d 702, 705; 390 Mass 523 (1983)

Neither the U-MASS nor the DOC defendants have done a single thing to accomodate plaintiffs dis-

ability so that he can attend the law library, the showers, outside recreation and necessary medical visits outside SHEDLOCK v. DEPARTMENT OF CORRECTION, 818 NE2d 1022, 1032-1035, 442 MASS 844 (2004), free of pain. (EXHIBIT 4 consult Report) BOUCHARD v. MAGNUSSON, 715 F.Supp. 1146 (D.Me 1989)

It is here that the gross incompetence is excessive enough to shock the conscience, and is so inappropriate as to evidence intentional maltreatment. ROSEN v. CHANG, 811 F.Supp. 754, 760-61 (D.R.I 1993) As their deliberate indifference is prompting him to find pain relief in suicide. compare ESTATE OF SISK v. MANZANARES, 262 F.Supp 2d 1162 (D. Kan. 2002)

Plaintiffs condition is a serious medical need with his legs giving out on him with possible risk for more permanent damage. see. SPRUILL v. GILLIS, 372 F.3d 218 (Pa. 2004)

With the clarity of facts set forth herein A remedy for unsafe conditions need not await a tragic event GONYER v. McDONALD, 874 F.Supp 464, 467 (D.MASS 1995)

The circumstances here do satisfy the 4 criteria for a Preliminary injunction. Fed. R.Civ.P. 65, as the plaintiff will suffer irreparable injury, and the balance of hardships falls in plaintiffs favor. see DURAN v. ANAYA, 642 F.Supp. 510, 527 (DNM 1986)

Plaintiff does show not only a fair ground for

litigation, but further a likelihood of success on the merits, as previously established in his "motion for show cause" compare ENG V. SMITH, 849 F.2d 80, 81 (2d cir 1988) Including the testimony of his expert witness.

It is also in the public interest to grant the injunction because its always in the public interest for government officials, including prison personnel, to obey the constitution and other Laws. DURAN V. ANAYA, 642 F.Supp at 527. See also YARBAUGH V. ROACH, 736 F.Supp. 318 (DDC 1990)

WHEREFORE, plaintiff respectfully requests that the court enter a preliminary injunction granting plaintiff his contractual right to "community standard" pain management as set fourth in the DOC Guidelines, with whatever other relief that this court deems proper

Respectfully Submitted
Keith Niemic

I do certify that a true copy of the above has been served upon both attorney's for the defendants via first class mail on this day:
3-13-06  ;

Keith Niemic
PO Box 43
Norfolk, MA 02056

10