**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **KEITH NIEMIC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) **Civil Action No.** |
| v. | ) **04-11482-NMG** |
| | ) |
| **MICHAEL MALONEY et al.,** | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiff, Keith Niemic ("Niemic"), who represents

himself, alleges that defendants Michael Maloney, Peter Allen,

David Nolan, Pat Mulvey, David Brian, Paul Murphy, Gary Hebda,

Ann Marie Aucoin, Dick Sclom, Beverly Veglas, Susan Martin,

Kristie LaDouceur, Stan Galas, Arthur Brewer, June Binney, Jeff

Shorey, Kara Erdody, Donna Fitzgerald, Donald Kern and Gurvinder

Jaiswal violated his civil rights under 42 U.S.C. § 1983 and the

United States Constitution and the Freedom of Information Act

("FOIA") and are liable to him under several common law tort

theories. Several motions have been filed in this Court,

including motions for summary judgment and for a preliminary

injunction. Having considered the memoranda in support of and in

opposition to the multiple pending motions, the Court rules as

follows.

## I.    Background

### A. Facts

Niemic is currently incarcerated at the Souza-Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts, although most of the events described in his complaint took place while he was incarcerated at the MCI-Cedar Junction state correctional facility in Walpole, Massachusetts ("the Walpole facility").

For several years, Niemic has suffered from a liver ailment, chronic migraines and other physical and mental conditions.  He alleges that he began requesting treatment for his liver problem in 1997 but that he did not begin a program of Interferon to treat Hepatitis C until December 31, 2001.  The treatment was discontinued in June, 2002, apparently because Niemic told his doctors that the side-effects were too painful.

In July, 2003, Niemic requested that his Hepatitis C treatment be resumed but was told that a six-month waiting list existed for the treatment.  Niemic alleges that in September, 2003, he was forcibly and coercively 1) subjected to a medical examination, 2) required to provide a urine sample and 3) given medical treatment against his will.  After that episode, Niemic again requested treatment for his liver condition but was told that treatment could not begin because he had submitted a "dirty" urine sample and needed to be drug-free for 12 months before commencement of the program.

-2-

With respect to his migraines, Niemic contends that, although several doctors prescribed various medications for him in November 2001, May, 2002, and April, 2003, he was either denied those prescriptions or given inadequate substitutes. The medical records show that he consistently refused Tylenol and Motrin and wanted only more potent narcotics to treat his pain. Moreover, he contends that he was subjected to an extended delay before being allowed to see a neurologist.

According to the plaintiff, the ineffective treatment, willful indifference and various denials of his complaints and requests for relief from physical pain caused him serious injury and emotional distress.

In September, 2003, the plaintiff was transferred to the Departmental Disciplinary Unit ("DDU") at the Walpole facility to serve a one-year term for reasons that Niemic maintains are unjustified, i.e., for making complaints about being placed illegally in a segregated block. He contends that after he was removed to the DDU he was deprived of various legal materials and personal records for a significant length of time in contravention of the policy set forth in the DDU manual.

Niemic further contends that his complaints and requests relating to his physical ailments went unaddressed while he was in the DDU. In October, 2003, for instance, he made numerous complaints about physical pain and a rapid 20-pound weight loss

-3-

without receiving an adequate response. He alleges that he
continued to suffer pain about which he complained for the
following eight months but that his requests for evaluations and
treatment were denied.

In October, 2003, Niemic attended a disciplinary hearing
with respect to the alleged "dirty" urine incident but was
allegedly denied adequate access to legal materials in advance of
that hearing and of a tape recording of the proceedings
afterward. The results of the drug test were affirmed at the
hearing and Niemic was assessed a fine and a penalty depriving
him of various privileges, including visits, telephone,
television, radio and commissary, for six months. He submits
that he was, furthermore, deprived of adequate legal materials to
appeal that decision.

In addition to the foregoing allegations, Niemic alleges
that 1) he has been deprived of timely access to incoming and
outgoing mail for several years, 2) he has been deliberately
deprived of access to legal materials on multiple occasions,
which has specifically deprived him of meaningful participation
in legal proceedings brought by or against him, 3) deliberately
false reports have been made about him, 4) a freeze was put on
his personal financial account in order to prevent him from
filing legal papers and 5) various grievances and requests were
treated with deliberate indifference and callousness.

-4-

## B. Procedural History

On June 29, 2004, Niemic filed a handwritten, 68-page complaint against the named defendants in their individual and official capacities alleging numerous violations of federal and state law. The defendants fall generally into two categories: a) 12 employees of the Massachusetts Department of Corrections ("the Corrections defendants") and b) eight employees of the University of Massachusetts Correctional Health ("UMCH") ("the medical defendants"), which provides medical services to the Walpole facility (among other correctional institutions). The complaint states claims under 42 U.S.C. § 1983, the FOIA and for common law tort violations.

Niemic has requested relief in the form of 1) 29 declaratory judgments, 2) injunctive relief addressing plaintiff's medical treatment and the disciplinary action taken in response to the "dirty urine" hearing, 3) compensatory damages totaling $455,000 and 4) punitive damages in the amount of $300,000. He has requested a jury trial.

On December 21, 2005, this Court issued a Memorandum and Order which disposed of multiple pending motions of the plaintiff and ordered the Corrections defendants to respond to the plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction on or before January 13, 2006. That response was filed on January 12, 2006.

-5-

At present, there are seven motions pending before this Court:

1) plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction against the Corrections defendants (Docket No. 67);

2) medical defendants' Motion for Summary Judgment (Docket No. 81);

3) plaintiff's Renewed Motion for Appointment of Law Student to represent him (Docket No. 87);

4) plaintiff's "Motion to Deny Defendant's Motion for Summary Judgment or in the Alternative to Stay Such Motion" (Docket No. 88);

5) plaintiff's Motion for Leave to Respond/Move to Strike Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Docket No. 89); and

6) plaintiff's Motions for Relief From Judgment or Order (Docket Nos. 90, 91).

## II. **Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction Against the Corrections Defendants**

The plaintiff filed a motion with respect to all defendants on August 11, 2005 (Docket No. 67), seeking to require them 1) to provide him with an evaluation by a neurologist, 2) to provide medically appropriate treatment for his pain and disability, 3) to remove him to a medical facility for proper

-6-

treatment, 4) to return to him various personal items including law books and radios, 5) to allow him visitation and communication privileges and 6) to give him unrestricted access to legal materials, supplies, photocopies and mail in order to allow him access to the courts. In support of his motion Niemic argues that a) his medical needs are going unmet, b) he was improperly transferred from the Walpole facility to SBCC (both level six facilities) in retaliation for his ongoing legal claims and c) he has suffered irreparable harm from being denied access to his legal materials.

As the Court reasoned in its Memorandum and Order of December 21, 2005, the motion will be treated as one for a preliminary injunction only, because it was served directly on the parties to whom it is addressed. In evaluating a motion for a preliminary injunction, a court must consider 1) the movant's likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is denied, 3) the balance of relative harms and 4) the effect of the ruling on the public interest. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996).

Niemic has not established that he would likely prevail on the merits against the Corrections defendants. Numerous documented responses to sick calls, medical prescriptions and reports of evaluations and treatment by specialists all suggest

-7-

that Niemic has received adequate medical care. Indeed, it was this evidence that prompted the Court previously to deny a similar motion against the medical defendants. Furthermore, neither the plaintiff's own affidavit nor that of fellow-inmate Daniel Mason ("Mason") asserts facts suggesting that the Corrections defendants were deliberately indifferent to the plaintiff's medical needs.

Niemic's remaining two arguments in favor of a preliminary injunction are equally unpersuasive. The documentation suggests that the decision to transfer Niemic was based on, among other things, ongoing disciplinary problems, "present segregation status" and departmental housing needs. Likewise, the record shows that the plaintiff does presently have access to his legal materials, law books, telephone and written communication and visitation. Consequently, because Niemic cannot prove that he would likely prevail on the merits of his claim, his motion for a preliminary injunction as to the Corrections defendants will be denied.

## III. **Medical Defendants' Motion for Summary Judgment**

### A.   **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50

-8-

(1st Cir. 1990). The movant has the burden to show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law", Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), but "factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant has satisfied its burden, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the nonmovant and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If after viewing the record in the nonmovant's favor the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. These standards for summary judgment apply even where the plaintiff proceeds pro se. See Posadas de P.R., Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988).

-9-

**B.    Analysis**

The medical defendants have moved for summary judgment with respect to Niemic's claims under 1) 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution, 2) the FOIA and 3) various common law tort theories.    In response, the plaintiff has filed a Motion to Deny or Stay the Defendants' Motion for Summary Judgment in an effort to gain access to his records, redraft discovery requests and serve discovery on the medical defendants.    On the basis of the following analysis, plaintiff's motion to deny or stay defendants' motion for summary judgment is superfluous and will be denied.

**1.   Fourth Amendment Claim**

The Fourth Amendment states in pertinent part that

> [t]he right of the people to be secure
> in their persons, houses, papers, and
> effects, against unreasonable searches
> and seizures, shall not be violated ....

An inmate's Fourth Amendment rights are not violated by searches and seizures that are "reasonable".  Bell v. Wolfish, 441 U.S. 520, 558 (1979).    In determining the extent to which a given search is reasonable, courts are to consider the scope, manner, justification and place of the intrusion.  Id. at 559.    The Bell Court, applying those principles, allowed the unannounced searches of inmate living areas and visual body cavity searches following visits with outsiders.    Specifically, the Court

-10-

reasoned that "no one can rationally doubt that room searches represent an appropriate security measure", id. at 558, and that after "balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates", visual body cavity searches following visits with outsiders are a reasonable means of preventing the smuggling of contraband into the facility.  Id. at 560.  Consequently, the Court concluded that neither search violated the Fourth Amendment.

In the instant case, Niemic contends that his Fourth Amendment rights were violated when the medical defendants "exchanged private, confidential and medical information without informed consent of the plaintiff."  In light of the standard set forth in Bell, his argument fails for two independent reasons. First, Corrections officers have a reasonable need to know that an inmate's drug test showed use of heroin and cocaine.  Second, Niemic offers no case law supporting the proposition that the mere sharing of information can contravene the Fourth Amendment. The medical defendants' motion for summary judgment on this claim will be allowed.

## 2.  Fifth Amendment Claim

The Fifth Amendment provides, in relevant part, that no person "shall be compelled in a criminal case to be a witness against himself".  Despite the fact that "prison disciplinary

-11-

hearings are not criminal proceedings", inmates at such hearings must be afforded immunity from self-incrimination if the evidence might incriminate them at later criminal proceedings.  Baxter v. Palmigiano, 425 U.S. 308, 316 (1976).  Nevertheless, the privilege against self-incrimination can be invoked only where an individual incriminates himself by his own compelled "testimonial communications".  Schmerber v. California, 384 U.S. 757, 761 (1966).  For example, the drawing of blood and its use at later criminal proceedings, even if done by force, does not contravene the protection against self-incrimination because the blood test evidence is neither testimony nor a communicative act.  Id. at 765.

Niemic contends that the medical defendants compelled him to provide a urine sample under threat of solitary confinement and that the results of the drug test were used against him at a subsequent disciplinary hearing.  This Court need not evaluate the factual merit of the plaintiff's claim, however, because evidence derived from urine samples, such as that which is discerned from blood tests, is neither communicative nor testimonial and is, therefore, not subject to the privilege against self-incrimination.  See, e.g., United States v. Edmo, 140 F.3d 1289, 1292-93 (9th Cir. 1998)(applying the reasoning of Schmerber to hold that urine tests are nontestimonial and thus not protected by the privilege against self-incrimination);

Lucero v. Gunter, 17 F.3d 1347, 1350 (10th Cir. 1994)(same).
Because Niemic's claim falls outside the ambit of the Fifth
Amendment, the medical defendants' motion for summary judgment on
that claim will be allowed.

### 3. Sixth Amendment Claim

The Sixth Amendment provides in pertinent part that "[i]n
all criminal prosecutions, the accused shall enjoy ... the
assistance of counsel for his defence". Niemic bases his Sixth
Amendment claim on the fact that he does not have counsel
assisting him in this case. There is, however, no constitutional
right to counsel in civil cases. See Lassiter v. Dep't of Soc.
Sevs. of Durham County, N.C., 452 U.S. 18, 25 (1981)(explaining
that the right to counsel attaches only where an individual "may
lose his physical liberty if he loses the litigation."). See
also Argersinger v. Hamlin, 407 U.S. 25, 37 (1972). Therefore,
because this is a civil case, Niemic has no constitutional right
to counsel. The medical defendants' motion for summary judgment
on this issue will be allowed.

### 4. Eighth Amendment Claim

The medical defendants have also moved for summary judgment
on Niemic's claim that they violated his Eighth Amendment right
not to be subjected to cruel and unusual punishment by showing
deliberate indifference to his medical needs. See Estelle v.
Gamble, 429 U.S. 97, 104 (1996)(holding that deliberate

-13-

indifference to medical needs contravenes the Eighth Amendment protection against "cruel and unusual punishment"). Negligence or medical malpractice does not amount to a constitutional violation. Id. at 106. Rather, a plaintiff must meet the much higher bar of establishing 1) that the deprivation of medical services is objectively, sufficiently serious and 2) that officials acted with "deliberate indifference" to the health or safety of the individual. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

In showing that the defendants acted in a "deliberate" manner, a plaintiff must show actual, subjective recognition of risk. Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir. 1999). See also Farmer, 511 U.S. at 837. A showing of "indifference" requires the plaintiff to prove that the defendants did not act reasonably or in good faith. Burrell v. Hampshire County, 307 F.3d 1, 8 (1st Cir. 2002)(internal citations omitted). The First Circuit has narrowly construed "deliberate indifference", in one case holding that where there is no evidence of treatment "so inadequate as to shock the conscience" or "so dangerous that a defendant's knowledge of a large risk can be inferred", summary judgment is warranted. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991)(internal citations omitted).

-14-

In the instant case, Niemic contends that he was denied access to medical experts and that the medical defendants failed to treat his various medical conditions properly, including migraines, Hepatitis C, chest pain, gastroenterological problems, testicular cysts and other urinary maladies. It is important to note at the outset that Niemic has a reported history of substance abuse. As early as 2002, at least one of the medical defendants believed that Niemic was manipulating his Hepatitis treatment in order to obtain a prescription for narcotic drugs.

Niemic offers the affidavit of Daniel Mason, a fellow-inmate who had completed almost all of medical school before being arrested, as support for his medical claims. Mason suggests that 1) there is no evidence that Niemic was manipulating his treatments in an effort to be prescribed narcotics, 2) the medicines prescribed to Niemic for his migraines (i.e., Motrin and Tylenol) carry labels cautioning against their use for patients suffering from Hepatitis C, 3) there were alternative ways of treating his various medical maladies and 4) there is no evidence in the record suggesting that Niemic has a history of substance abuse.

Mason's assertions, like those in Niemic's own affidavits, even when construed in a manner most favorable to Niemic, at most support a claim for medical malpractice. Nowhere in his affidavit does Mason assert facts from which an inference could

-15-

be drawn that the medical defendants were deliberately indifferent to the plaintiff's medical needs.

Moreover, the vast medical documentation in this case does not remotely implicate deliberate indifference. Niemic was provided multiple medicines for his migraine headaches and he was seen on several occasions by a neurologist, a gastroenterologist and a pain management specialist, all of whom performed tests and ongoing evaluations. He was started on Interferon for his Hepatitis C but he stopped taking the medication because of the painful side effects. The only time that the medical defendants refused Niemic's request for Interferon was after his failed drug test on September 8, 2003. That decision was based on, and in accord with, community standards which dictate that users of illicit drugs are not to be given Hepatitis C treatment until they are clean of drugs for a period 12 months. See, e.g., Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993).

It is evident that the medical defendants were not deliberately indifferent to Niemic's medical needs. Negligence or medical malpractice does not give rise to a constitutional claim for deliberate indifference to medical needs, Estelle, 429 U.S. at 106. Because that is the most that the evidence can conceivably establish, the medical defendants' motion for summary judgment on that issue will be allowed.

-16-

### 5. Fourteenth Amendment Claim

The due process clause of the Fourteenth Amendment states, in part, that no state shall "deprive any person of life, liberty, or property without due process of law". The Supreme Court has recognized that inmates do have certain due process rights, <u>see</u> <u>Sandin</u> v. <u>Conner</u>, 515 U.S. 472, 479 n.4 (1995), and the Court has often relied on the specific language of prison regulations when evaluating an inmate's due process claims. <u>See</u>, <u>e.g.</u>, <u>Ky. Dep't of Corr.</u> v. <u>Thompson</u>, 490 U.S. 454 (1989); <u>Olim</u> v. <u>Wakinekona</u>, 461 U.S. 238 (1983).

The medical defendants move for summary judgment on Niemic's claim that his Fourteenth Amendment due process rights were violated when the medical defendants denied him his Hepatitis C treatment subsequent to the "dirty" urine test without first offering him a hearing to confirm the results of that test. The medical defendants cite prison regulations establishing that medical decisions made in prison facilities are not disciplinary in nature and that such decisions are "the sole province" of prison physicians. 103 DOC 610.01(2). Evidence in the record further shows that Niemic was made aware of the policy and that the medical defendants acted consistent with community standards in refusing to provide Niemic with Hepatitis C medication following the failed drug test.

-17-

Furthermore, there appears to be no case law directly
supporting Niemic's contention that he had a due process right to
a hearing before the medical defendants found him ineligible for
Interferon. Inmates have a due process interest that is
"generally limited to freedom from restraint which ... imposes
atypical and significant hardship" on an inmate as compared to
the "ordinary incidents of prison life". Sandin, 512 U.S. at
484. The denial of Interferon subsequent to a failed drug test
is neither related to freedom of restraint nor an "atypical and
significant hardship", especially given that a decision to deny
Interferon to active drug users is in accord with medical custom.
See, e.g., Johnson v. Wright, 412 F.3d 398, 401 (2d Cir. 2005).
Accordingly, summary judgment will be entered for the defendants
on that claim.

## 6. Freedom of Information Act Claim

The defendants have also moved for summary judgment on
Niemic's claim that the medical defendants violated the exemption
clause of the Freedom of Information Act, 5 U.S.C.
§ 552(a), when they shared his medical records with the
Corrections defendants. The FOIA applies only to the executive
branch of the federal government, see 5 U.S.C. § 551. The
medical defendants do not, however, work for the federal
government and therefore, the FOIA is inapplicable in this case.
Consequently, the medical defendants' motion for summary judgment

-18-

on this claim will be allowed.

### 7. State Law Claims

In addition to the federal claims outlined above, Niemic has also brought common law tort claims for assault and battery, negligence, medical malpractice and intentional infliction of emotional distress. Because the federal claims will be dismissed on summary judgment, this Court lacks subject matter jurisdiction to hear the pending state claims. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). See also 28 U.S.C. § 1367(c)(3)(providing that a district court can decline supplemental jurisdiction over a claim once all of the federal claims have been dismissed). Thus, the state law claims are dismissed without prejudice to Niemic filing them in the trial court of the Commonwealth of Massachusetts.

## IV. Renewed Motion for Appointment of Law Student

On February 21, 2006, the plaintiff moved this Court to appoint a law student as counsel on his behalf. On September 16, 2004, the Court denied without prejudice a similar motion, instructing the plaintiff to renew his motion subsequent to the Court's screening of the plaintiff's complaint.

There is no constitutional right to counsel in civil cases, Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986), and federal statute permits but does not require a court to appoint counsel

in a civil case. See 28 U.S.C. § 1915. In Cookish, the First
Circuit explained that an indigent must demonstrate "exceptional
circumstances" to justify the appointment of counsel. Id. at 3.
To that end, courts may consider the indigent's ability to
conduct fact investigation, the complexity of the legal issues
and the indigent litigant's ability to present the case. Id.

In the instant case, Niemic seems fully capable of
conducting fact investigation, appropriately filing court
documents and understanding and asserting legal claims.  The
detailed complaint, the multiple counts of alleged
constitutional, statutory and state tort violations and the
organized manner in which Niemic has presented his case belie his
purported need for the assistance of counsel. As such, the
motion will be denied.

## V.  **Motions for Relief From Judgment or Order**

Finally, plaintiff has filed two Motions for Relief from
Judgment or Order. On February 21, 2005, Niemic filed a motion
(Docket No. 90) requesting that this Court correct the record to
note that he sought an entry of default against the Corrections
defendants for failing to file a timely answer. As evidence,
Niemic points to an affidavit filed on June 26, 2005, and to
Docket No. 52. The court docket reflects no filing on June 26,
2005, and docket entry 52 does not contain an entry of default.

Furthermore, Niemic's only motion for default judgment, dated
August 1, 2005, was appropriately addressed in the Court's
Memorandum and Order of December 21, 2005.  The plaintiff's
motion will, therefore, be denied.

Also on February 21, 2006, the plaintiff filed a motion
(Docket No. 91) requesting that this Court reconsider and amend
its decision of December 21, 2005, denying the plaintiff's Motion
for a Preliminary Injunction against the medical defendants.  The
original motion was denied because the medical defendants
presented persuasive evidence establishing that they have
provided adequate medical care to the plaintiff and that he will
not suffer irreparable harm absent the relief he seeks.
Plaintiff's new motion, although purporting to assert "newly
discovered evidence", asserts facts similar to those which he had
previously offered and which fail to negate the vast medical
evidence suggesting that he has received adequate medical care.
The motion will, therefore, be denied.